# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| **BENNIE ADAMS, et al.,** ) | **Case No.  2:11-cv-1016** |
| ) | **District Judge Gregory L. Frost** |
| **Plaintiffs,** ) | **Magistrate Judge Mark R. Abel** |
| ) | |
| **v.** ) | **Plaintiff Lorraine's Motion for a** |
| ) | **Temporary Restraining Order and a** |
| **JOHN KASICH, et al.,** ) | **Preliminary Injunction** |
| ) | |
| **Defendants.** ) | **(Expedited Oral Argument and** |
| ) | **Evidentiary Hearing Requested)** |
| ) | |
| ) | **Death Penalty Case: Execution Scheduled** |
| ) | **for January 18, 2012** |

---

## Plaintiff Charles Lorraine's Motion for a
## Temporary Restraining Order and Preliminary Injunction

---

Plaintiff Charles Lorraine, having filed his Complaint in the above-captioned case, submits this motion, pursuant to Federal Rule of Civil Procedure 65(a) and (b), for a temporary restraining order ("TRO"), a preliminary injunction and a stay of execution.  Lorraine seeks injunctive relief barring Defendants and each of them and/or their agents, from acting jointly or severally to execute him on January 18, 2012, by means that will deprive him of his rights in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

In light of the scheduled execution date, a temporary restraining order and a preliminary injunction are necessary to allow Lorraine to litigate his claims before he is unconstitutionally executed.  Lorraine requests expedited discovery, oral argument and an evidentiary hearing with post-hearing briefing as the Court deems necessary on his motion.  The reasons supporting this request are explained in the attached memorandum in support.

Respectfully submitted this 23rd day of November, 2011.


*/s/ Allen L. Bohnert* _____
**Allen L. Bohnert (0081544)**
Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, OH 43215
614-469-2999
614-469-5999 (fax)
Email: Allen_Bohnert@fd.org
**Trial and Lead Counsel for Plaintiff**
**Charles Lorraine**


*/s/ Carol A. Wright* _____
**Carol A. Wright (0029782)**
Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, OH 43215
614-469-2999
614-469-5999 (fax)
Email: Carol_Wright@fd.org
**Co-Counsel for Plaintiff Charles Lorraine**


*/s/ Randall Porter* _____
**Randall Porter (0005835)**
Office of the Ohio Public Defender
250 E. Broad Street
Suite 1400
Columbus, OH 43215
614-466-5394
614-728-3670 (fax)
Email: Randall.Porter@opd.ohio.gov
**Co-Counsel for Plaintiff Charles Lorraine**

**Memorandum in Support**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................... 1

II. Procedural Background .............................................................................................. 2

III. This Court should grant Lorraine a temporary restraining order and a preliminary injunction. ................................................................................................ 6

    A. Summary of the argument .................................................................................. 6

    B. The relevant law governing the injunctive relief requested. ................................. 7

    C. The relevant evidence to consider includes all of the historical evidence related to Defendants' administration of their execution protocol and policies. ............................................................................................................... 7

    D. Lorraine has a strong likelihood of success on the merits of his Fourteenth Amendment Equal Protection Clause claims ....................................................... 9

        1. Defendants' non-compliance with their written execution protocol will unconstitutionally burden the fundamental rights under the First, Eighth, Ninth, and Fourteenth Amendments of a class of persons that includes Lorraine, in violation of the Equal Protection Clause. ......................................................................................................... 11

            a. Strict scrutiny applies. ..................................................................... 12

            b. Defendants are burdening fundamental rights under the First, Eighth, Ninth, and Fourteenth Amendments. ..................... 13

            c. Defendants cannot survive strict scrutiny because their protocol non-compliance is neither necessary nor connected to achieving a compelling state interest. ..................................... 15

        2. Defendants' non-compliance with their protocol will violate Lorraine's rights under the Equal Protection Clause because Lorraine will be treated differently than similarly situated inmates and such disparate treatment is irrational ................................................. 16

            a. Defendants' actions, in the form of their failures to comply with their written execution protocol, are irrational. ................... 17

            b. Defendants have no legitimate state interest in failing to comply with their written execution protocol, and any conceivable state interests are not actually related to Defendants' non-compliance. ..................................................... 22

        3. Conclusion ........................................................................................... 25

i

E.     There is a substantial threat that Lorraine will suffer an irreparable injury if the temporary restraining order and preliminary injunction is not granted.................................................................................................. 25

     1.     Lorraine will suffer irreparable injury as a matter of law. ...................... 25

     2.     Lorraine will suffer irreparable injury as a matter of fact. ..................... 26

F.     Granting a temporary restraining order will not substantially harm other parties and, if there was some harm, Plaintiff Lorraine's potential injury outweighs that harm. ........................................................................... 27

G.     The public interest would be served by issuing a temporary restraining order. ................................................................................................. 27

IV.    Certification of Notice ...................................................................................... 28

V.    Conclusion and Prayer for Relief ..................................................................... 29

CERTIFICATE OF SERVICE .................................................................................... 31

## I.      Introduction

This request for a temporary restraining order and preliminary injunction staying Plaintiff

Charles Lorraine's execution involves one fundamental issue:

> Defendants plan to attempt to execute Lorraine on January 18, 2012.  This case, consolidated with the other lethal injection cases, will ultimately be tried on the merits before this Court.  If Lorraine can demonstrate a likelihood of success on the merits of his constitutional challenges to Defendants' execution policy to which he will be subjected, should Defendants be temporarily and preliminarily enjoined from attempting to execute him on January 18, 2012?

Or, as this Court phrased it recently in granting Kenneth Smith's requested injunctive

relief: has Plaintiff demonstrated that he is likely to succeed in establishing that Ohio has an

unconstitutional execution policy so that he deserves a stay of execution that will afford him the

chance to prove his case?  *Cooey (Smith) v. Kasich*, No. 04-1156, Doc. No. 947, PageID 25929,

2011 U.S. Dist. LEXIS 73606, *9-10 (S.D. Ohio July 8, 2011).[1]

Whether Lorraine can demonstrate a likelihood of success on the merits of his Equal

Protection claims involves the following consideration:

> The Fourteenth Amendment guarantees equal protection of the laws. Defendants have a demonstrated, lengthy and continuing pattern of arbitrary and capricious deviations from their written execution protocol sufficient to satisfy the injunctive relief standard, which continues under the September 18, 2011 written protocol.  Defendants' actions cannot survive strict scrutiny because they burden the fundamental rights of a class of persons that includes Lorraine.   And their actions cannot withstand rational basis scrutiny because they are irrational.  *Should Defendants be enjoined from attempting to execute Lorraine in a way that will violate his rights to equal protection?*

---

[1] Per discussions involving the Court and counsel for both sides, *Cooey v. Kasich*, Case No. 04-cv-1156 and the cases already consolidated with that case, will be consolidated with the above-captioned case and renamed.

Granting a temporary restraining order and a preliminary injunction is proper and necessary. Lorraine has a substantial likelihood of prevailing on the merits of both of his equal protection claims; there is a threat of irreparable harm to him; an injunction will not cause substantial harm to others; and the public interest lies in favor of not subjecting Lorraine to an unconstitutional execution, and in ensuring that Defendants are required to abide by the federal Constitution in carrying out criminal sentences.

Moreover, Defendants' adoption of the September 18, 2011 written execution protocol does nothing to change the proper result. In the *Smith* order, the Court observed that the written protocol was constitutional under the Equal Protection Clause as written; it was Defendants' behavior and attitudes in administrating the written protocol that were constitutionally problematic. Defendants responded to the *Smith* order, however, primarily by changing the written protocol. Although Defendants professed fealty to the requirements of the written protocol in proceedings on a motion for injunctive relief filed by Reginald Brooks, discovery will demonstrate that Defendants continue to struggle in their efforts to comply with the written protocol. And the September 18, 2011 written protocol facially violates the Equal Protection Clause, because it explicitly codifies arbitrary and irrational unequal treatment of death-sentenced inmates.

## II.    Procedural Background

On March 1, 2011, the Supreme Court of Ohio set Plaintiff Lorraine's execution date for January 18, 2012. On March 9, 2011, Defendants adopted a revised written execution protocol. Defendants adopted another revised written execution protocol on April 11, 2011. On May 10, 2011, undersigned counsel filed a motion for injunctive relief on behalf of Kenneth Smith raising various constitutional claims including, for the first time in Ohio's lethal injection litigation,

2

claims for violations of rights protected by the Equal Protection Clause of the Fourteenth Amendment.  Following extensive briefing on the injunctive relief motion and on Defendants' motion for summary judgment as to Smith, this Court held a hearing on Smith's motion on June 29, 2011.  At that hearing, the Court heard testimony from four witnesses, and new and critical evidence was discovered for the first time.  Following post-hearing briefing related to evidence produced to Smith's counsel the night before the hearing, the Court issued an opinion and order granting a TRO and preliminary injunction in Smith's favor.

In the July 8, 2011 order, the Court made extensive findings of fact related to Defendants' execution policy, including Defendants' written execution protocol.  The Court found that Defendants deviate from their written execution protocol in at least four "core" ways. The Court rejected Defendants' arguments that the equal protection claims are simply Eighth Amendment claims by another name.  The Court found that Defendants' actions treated Smith disparately and burdened his fundamental rights without any compelling governmental interest. The Court also found that Defendants' actions treated Smith disparately and that the disparate treatment was arbitrary, capricious and irrational, without any legitimate governmental interest. After finding that Smith had demonstrated a strong likelihood of success on the merits of his equal protection claims, the Court found that "[t]he first injunctive factor weighs heavily in [Smith's] favor."  *Cooey (Smith) v. Kasich*, 2011 U.S. Dist. LEXIS 73606, at *105 (S.D. Ohio July 8, 2011).  The Court then found that the other injunctive factors weighed in favor of a stay. Accordingly, the Court enjoined Defendants and anyone acting on their behalf from attempting to execute Kenneth Smith on July 19, 2011.

The remaining schedule of executions was and/or is as follows:

- Brett Hartman — August 16, 2011

- Billy Slagle — September 20, 2011

- Joseph Murphy — October 18, 2011

- Reginald Brooks — November 15, 2011

- Charles Lorraine — January 18, 2012

- Michael Webb — February 22, 2012

- Mark Wiles — April 18, 2012

- Abdul Awkal — June 6, 2012

- John Eley — July 26, 2012

- Donald Palmer — September 20, 2012

- Brett Hartman — November 13, 2012

- Ronald Post — January 16, 2013

- Fred Treesh — March 6, 2013

- Steven Smith — May 1, 2013

- Billy Slagle — August 7, 2013

- Harry Mitts — September 25, 2013

Following the *Smith* proceedings, all parties and the Court proceeded with a "next man up" approach. Following a motion for injunctive relief filed on July 20, 2011 by the undersigned on behalf of Brett Hartman, Defendant Kasich reprieved Hartman's execution date to November 13, 2012. Hartman withdrew his injunctive relief motion as a result.

Counsel next filed a motion for injunctive relief on behalf of Billy Slagle on July 22, 2011, at which point additional discovery depositions began. Undersigned counsel subsequently

filed an amended motion for injunctive relief on Slagle's behalf on August 25, 2011, following Defendants' adoption of a revised written execution protocol with an effective date of September 18, 2011.  The Court scheduled a hearing on Slagle's motion for September 13, 2011.  On September 2, 2011, Defendant Kasich reprieved Billy Slagle's execution date to August 7, 2013, and Slagle therefore withdrew his injunctive relief motion.

On September 8, 2011, undersigned counsel filed a motion for injunctive relief on behalf of Joseph Murphy.  The Court scheduled a hearing on Murphy's injunctive relief motion for Thursday, September 29, 2011.  On Monday, September 26, 2011, Defendant Kasich commuted Murphy's sentence to life in prison, and the scheduled hearing, like those for Hartman and Slagle, was cancelled when Murphy withdrew his injunctive relief motion.

On September 29, 2011, undersigned counsel filed a motion to intervene, a proposed complaint, and a motion for injunctive relief on behalf of Reginald Brooks.  The Court scheduled a hearing on Brooks's motion to begin on October 31, 2011.  Following briefing, the Court granted Brooks's motion to intervene on October 7, 2011.  The Court held a hearing on Brooks's injunctive relief motion on October 31, 2011-November 2, 2011.  Brooks's equal protection claims included the same arguments and evidence Smith presented.  Following the hearing, the Court found that "the execution protocol and Defendants' approach to the protocol have by all appearances matured. . . .  Defendants have addressed the key concerns that provided the animus underlying the *Smith* decision."  (Order denying Pl. Brooks's Mot. for Injunctive Relief, Doc. No. 264, p. 9, PageID 10079.)  The Court denied Brooks's motion, citing a lack of evidence presented to warrant injunctive relief.  Defendants executed Brooks on November 15, 2011.

Meanwhile, on October 24, 2011 and again on October 27, 2011, the Court held status conferences at the undersigned counsel's request to discuss procedural matters related to

numerous additional inmates joining the lethal injection litigation by the end of November of 2011. Plaintiff Lorraine was among over eighty inmates who filed an Omnibus Complaint in the above-captioned case on November 14, 2011, per the discussions between the Court and opposing counsel during the status conferences.

In accordance with the approach employed since the *Smith* proceedings, Lorraine, as the "next man up," now files his injunctive relief motion, well in advance of his execution date. As of the date of this motion, undersigned counsel has received only a single document of evidence in the entire time following the Brooks injunctive relief hearing; the timeline of Brooks's execution, which was only provided to Lorraine's counsel at his prompting. Additional document and deposition discovery related to the Brooks execution is necessary.

### III. This Court should grant Lorraine a temporary restraining order and a preliminary injunction.

#### A. Summary of the argument

Despite the *Brooks* order, and under the same reasoning that this Court adopted in its *Smith* order, Lorraine is likewise deserving of injunctive relief. Defendants' past and present failures to follow the written protocol's requirements in administering executions subject Lorraine to violations of his Fourteenth Amendment right to equal protection of the laws.

Lorraine is one of a small class of condemned inmates whose fundamental rights are being violated because they cannot be ensured that Defendants will apply their execution policy equally to all similarly situated persons. Likewise, Lorraine, as a class of one, will not be treated the same as similarly situated individuals as demonstrated by Defendants' ongoing failure to comply with their execution protocol. There is no rational basis for the different treatment.

Lorraine seeks a TRO and preliminary injunction barring Defendants from executing him by means that will violate his constitutional rights. *See* Fed. R. Civ. P. 65.

6

**B.     The relevant law governing the injunctive relief requested.**

The purpose of TRO and preliminary injunctive relief is to preserve the status quo until the rights of the parties can be fairly and fully litigated through a final hearing or trial on the merits of a request for a permanent injunction.  *See Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held"); *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1378 (6th Cir. 1995) (citations omitted).

The following factors determine whether injunctive relief such as a preliminary injunction is warranted: "(1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction."  *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010).  No single factor is determinative.  *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001).  The four factors are to be balanced; they are not prerequisites to be met. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) and *In re De Lorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)).  Accordingly, the degree of likelihood of success required to obtain a preliminary injunction may depend on the strength of the other three factors.  *De Lorean Motor Co.*, 755 F.2d at 1229.

**C.     The relevant evidence to consider includes all of the historical evidence
        related to Defendants' administration of their execution protocol and policies.**

The evidence relevant to Lorraine's claims should not be limited to just the evidence produced since Defendants adopted their September 18, 2011 written protocol.  Defendants have demonstrated a lengthy pattern of non-compliance with their execution protocol.  The fact that

7

the failed Broom execution and several other executions in which troubling non-compliant behavior were discovered were conducted under a previous written protocol does not diminish the relevance of that evidence to Lorraine's claims.  Critically, at the time of the Broom failure, as now, Defendants' position was that they would follow the written execution protocol.  But they did not do so when it became inconvenient, impractical, or difficult to carry out the execution.

Moreover, Defendants discarded their previously sworn position regarding the written protocol when it became inconvenient, impractical or difficult to follow the protocol during the execution of Vernon Smith.  That execution was just the second one following the Broom failure.  Defendants similarly discarded their promised adherence to the written protocol in the execution of Michael Beuke four months later.

While Defendants had previously sworn that they followed their written protocol as binding law, that position was ultimately disproven.  And the way in which non-compliance related to executions of Vernon Smith, Michael Beuke, Darryl Durr, Michael Benge, Joseph Clark, Reginald Brooks and others came to light reveals that only through close judicial scrutiny will Defendants' non-compliant actions be discovered.  Notwithstanding Defendants' assurances and promises to comply with the protocol, they took the strategic tack of arguing that the written protocol was in fact "mere guidelines" when their non-compliance was discovered in *Smith*.  When that argument proved unconvincing to this Court in *Smith*, Defendants again reversed their stated position and again pledged fealty to the written protocol during the *Brooks* proceedings.

The best indicator of Defendants' behavior in the future is the evidence of their behavior in the past, so the evidence of Defendants' actions before the September 18, 2011 protocol remains highly relevant to the question whether they will faithfully follow the written protocol

8

going forward.  Furthermore, Lorraine believes that the evidence will demonstrate Defendants'

pattern of non-compliance continues even under the September 18, 2011 version of the protocol.

There has now been an execution under the revised protocol.  Lorraine has reason to believe the

evidence will demonstrate that the *appearance* of compliance is Defendants' key consideration,

not compliance itself, especially when failure to comply would, under the protocol, require

cancellation of an execution.  Lorraine further believes that evidence will demonstrate

Defendants will go to great lengths to preserve the appearance of compliance.  Accordingly,

notwithstanding Defendants' assurances during the *Brooks* hearing, Defendants' goal remains

the same as that condemned in the *Smith* order—to complete an execution at all costs—and their

actions reflect that.  The evidence that predates the September 18, 2011 protocol remains highly

relevant to Lorraine's claims.

> **D.** **Lorraine has a strong likelihood of success on the merits of his Fourteenth Amendment Equal Protection Clause claims.**

It is not necessary for Lorraine to demonstrate a likelihood of success on the merits of

both of his Equal Protection claims; either ground entitles Lorraine to temporary and preliminary

injunctive relief.  *Cf. Shieh v. Mortgage Electr. Registration Sys., Inc.*, No. C 11-0106, 2011 U.S.

Dist. LEXIS 5932, *5-6, 2011 WL 109548, *2 (N.D. Cal. Jan. 12, 2011) (rejecting TRO request

in part because "plaintiff has failed to adequately set forth a likelihood of success on the merits

*of any claim in her complaint*") (emphasis added).

Defendants will violate Lorraine's rights under the Fourteenth Amendment's Equal

Protection Clause because they have a policy of adhering to their execution protocol except when

they don't.  Accordingly, this Court may predicate injunctive relief on the likelihood of success

on the merits of Lorraine's claims in the Fourth Claim in his Complaint.  (*See* Omnibus

Complaint, Doc. No. 4.)

9

Defendants' written protocol encompasses more than just the specific lethal drugs to be administered.  The protocol also contains numerous other mandates and non-discretionary requirements, such as qualification requirements for the participants with specialized roles, for instance, and training and rehearsal requirements for all team members.  The protocol also includes mandates that must occur before the inmate even leaves the parent institution.

In the past, Defendants or others in their same official positions have testified that they would follow, and would not deviate from, the written protocol.  But that professed position has not prevented non-compliance with the written protocol.  Defendants have again stated that they would not deviate from the written protocol, but Lorraine believes the evidence will yet again demonstrate that Defendants' professed position has not and will not prevent non-compliance with the written protocol.  In short, the history of Defendants' non-compliance with their protocol is lengthy, it grows ever longer with each monthly execution they conduct, and it is directly relevant to showing that Lorraine's constitutional rights will be violated.

The purpose of the equal protection clause "is to secure every person within the State's jurisdiction against intentional and arbitrary" differential treatment, whether "occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (internal quotation marks and citation omitted)); *see also Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (same).

In a suit brought under § 1983, a plaintiff must prove a violation of the underlying constitutional right.  *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996) (citation omitted).  So, for example, in a suit involving a Fourth Amendment violation, the plaintiff "must prove that the official conduct was 'unreasonable.'"  *Id.*  Or in a claim alleging a violation of one's liberty

interests protected by the procedural component of the Due Process Clause, a plaintiff "must prove something more than negligence." *Id.*

Here, Lorraine alleges violations of his rights protected under the Equal Protection Clause of the Fourteenth Amendment. "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer v. Shelby*, 470 F.3d 286, 298 (6th Cir. 2006) (citations omitted). Lorraine's equal protection claims are founded upon both the first and third of these grounds.

For purposes of either and both of these equal protection claims, Lorraine satisfies the first of the two-part inquiry: he is similarly situated with the other condemned inmates subject to execution at Defendants' hands merely by sharing the singular characteristic that they are all subject to execution under Defendants' policy. *See Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (explaining that in assessing the "similarly situated" inquiry, "courts should not demand exact correlation, but should instead seek relevant similarity") (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

The analysis for the second inquiry on Lorraine's claims is unique to the particular type of claim, but Lorraine can satisfy the second consideration for both claims.

> **1.** **Defendants' non-compliance with their written execution protocol will unconstitutionally burden the fundamental rights under the First, Eighth, Ninth, and Fourteenth Amendments of a class of persons that includes Lorraine, in violation of the Equal Protection Clause.**

Defendants' pattern of non-compliance with their execution protocol treats each condemned inmate differently and burdens the fundamental rights, under the First, Eighth, Ninth,

and Fourteenth Amendments, of the class of inmates who are under a death sentence in Ohio—
which includes Lorraine.

> ### a.     Strict scrutiny applies.

When an equal protection claim implicates a burden on the fundamental rights of a class
of persons, the state action involved is subjected to strict judicial scrutiny.  *Mass. Bd. of Ret. v.
Murgia*, 427 U.S. 307, 312 (1976) (explaining that strict scrutiny is the standard of review where
a state practice interferes with a fundamental right or discriminates against a suspect class of
individuals); *Mixon v. Ohio*, 193 F.3d 389, 402 (6th Cir. 1999) (same); *see also Miller v. City of
Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010) (explaining that strict scrutiny is appropriate if
state action treating persons differently infringes on a class of people's fundamental rights);
*Bower v. Mt. Sterling*, 44 Fed. App'x. 670, 676 (6th Cir. 2002) (citing, *inter alia*, *Equality
Foundation of Greater Cincinnati, Inc. v. City of Cincinnati*, 128 F.3d 289, 293 n.1 (6th Cir.
1997)).

Under strict scrutiny, state action—or inaction, as the case may be—will be
presumptively unconstitutional, and must be enjoined—*e.g.*, by a prohibitory injunction—or
required—*e.g.*, by a mandatory injunction—if the subject state action is not necessary to achieve
a compelling state interest.  *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

The class of persons in question for this type of equal protection claim need not be a
"suspect classification" for strict scrutiny to apply, so long as the fundamental rights of a class of
persons is infringed.  *See Miller*, 622 F.3d at 539 (identifying a class of persons, finding that the
class was not a suspect class, and explaining that, therefore, "strict scrutiny is appropriate only if
the classification infringes on fundamental rights").

Here, the class of persons in question is those subject to a death sentence in Ohio and therefore subject to an execution at Defendants' hands.  And Defendants' application of their execution policy infringes on the fundamental rights of this class of persons.[2]

> **b.** **Defendants are burdening fundamental rights under the First, Eighth, Ninth, and Fourteenth Amendments.**

Fundamental rights are those explicitly or implicitly derived from the Constitution itself. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34 (1973).  This includes explicitly enumerated rights "such as freedom of speech or religion."  *See Bower v. Mt. Sterling*, 44 Fed. App'x. 670, 676 (6th Cir. 2002) (citing, *inter alia*, *Equality Foundation of Greater Cincinnati, Inc. v. City of Cincinnati*, 128 F.3d 289, 293 n.1 (6th Cir. 1997)); *see also, e.g.*, *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The right to counsel is a fundamental right of criminal defendants.").  It likewise includes the Eighth Amendment's explicit proscription on cruel and unusual punishment.  *See Baze v. Rees*, 553 U.S. 35, 61 (2008) ("State efforts to implement capital punishment must certainly comply with the Eighth Amendment.").  It also, by definition, includes the fundamental, unenumerated rights arising under the principles of liberty and/or natural law such as Lorraine's right to privacy, his right to personal dignity, his right to bodily integrity and others, all of which are protected by the Ninth Amendment.

Defendants' non-compliance with their written execution protocol denies or substantially burdens Lorraine's fundamental rights to free speech, to be free from cruel and unusual punishment, to privacy, personal dignity, bodily integrity and other unenumerated rights arising under the principles of liberty and/or natural law, and to due process.

_____

[2] Lorraine will refer to burdens on his fundamental rights as shorthand for "the fundamental rights of the class of persons that includes Lorraine."

The core principle from the Supreme Court's opinions addressing "fundamental right" equal protection claims is that procedural safeguards are the cornerstone upon which equal protection rests. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 104 (2000) (explaining that equal protection applies not just to the initial "allocation" of the fundamental right in question, but "applies as well to *the manner of its exercise*") (emphasis added); *id.* at 109 (holding that the procedures employed by the State of Florida to conduct its recount of ballots were "inconsistent with the minimum procedures necessary to protect the fundamental right of each voter").

Here, Defendants' written protocol expressly codifies a burden on the inmate's free speech rights by vesting in the Warden discretion to cut off the inmate's last words based on the Warden's subjective interpretation of those words. Similarly, the Supreme Court has found that the procedural safeguards contained in a state's execution protocol—as written and as applied— are the critical bulwark to ensure against an Eighth Amendment violation during an execution. *Baze*, 553 U.S. at 56 (concluding that, on the record evidence, petitioners had not demonstrated substantial risks of serious pain "*[i]n light of these safeguards*" that Kentucky follows) (emphasis added). In the same way, the written execution protocol also functions as a bulwark against violations of an inmate's fundamental, unenumerated rights arising under the principles of liberty and/or natural law such as the rights to privacy, to personal dignity, and to bodily integrity, which are protected by the Ninth Amendment.

Applying these principles, it follows that if a state does not actually abide by its own written execution protocol, those critical safeguards are a nullity, *see Dickens*, 631 F.3d at 1146, or, at least, "inconsistent with the minimum procedures necessary to protect the fundamental right[s]" of a condemned inmate, *Bush*, 531 U.S. at 109. This, in turn, implicates the

fundamental rights of the class of persons that includes condemned inmates in Ohio, including Lorraine.

The evidence of Defendants' written protocol and their pattern of non-compliance with the written protocol demonstrates that Defendants will treat each of these inmates—including Lorraine—differently than other condemned inmates in administering the written protocol. Consequently Lorraine and the other condemned inmates will not receive equal protection of the laws.  Nor will they receive the full panoply of procedural protections the Supreme Court has held must be given.  The evidence demonstrates that Defendants' protocol as written, and as administered in non-compliance, burdens the fundamental rights of Lorraine and the other condemned inmates.  The evidence also demonstrates that Defendants' non-compliance with the protocol strips away the necessary protections of their execution protocol, thereby severely burdening, if not wholly depriving, Lorraine and the other condemned inmates of their fundamental rights.

Accordingly, the Court should apply strict scrutiny—and its presumption of unconstitutionality—to its review of this part of Lorraine's equal protection claims.

> **c.** **Defendants cannot survive strict scrutiny because their protocol non-compliance is neither necessary nor connected to achieving a compelling state interest.**

Defendants bear the burden under strict scrutiny to demonstrate that their supposed purpose for their non-compliance with their written execution protocol is vital or compelling. *See Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010) (citation omitted) (strict scrutiny review requires the government to prove that a burden on a fundamental right furthers a compelling government interest and is narrowly tailored to achieve that interest).  Defendants likewise bear the burden to demonstrate that their non-compliance is necessary or the least restrictive means to achieve their purportedly compelling state interest.  *Id.*  And Defendants also bear the burden to

prove that their discretionary application of the protocol to limit an inmate's free speech is necessary or the least restrictive means to achieve a compelling state interest. Defendants are unable to withstand any of these burdens.

Because Defendants' written protocol and their pattern and on-going history of non-compliance demonstrate that Lorraine will be treated differently than similarly situated persons, and because Defendants' protocol and their pattern and on-going history of non-compliance substantially burden the fundamental rights of the class of persons under an Ohio death sentence which includes Lorraine, without adequate justification, Defendants are violating and will violate Lorraine's rights to equal protection. *See Cooey (Smith) v. Kasich*, No. 04-cv-1156, 2011 U.S. Dist. LEXIS 73606, *94 (S.D. Ohio July 8, 2011).

> **2.    Defendants' non-compliance with their protocol will violate Lorraine's rights under the Equal Protection Clause because Lorraine will be treated differently than similarly situated inmates and such disparate treatment is irrational.**

Lorraine can also prevail on his equal protection claims under the "class-of-one" theory. *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *see also Benjamin v. Brachman*, 246 Fed. App'x. 905, 928 (6th Cir. 2007) (explaining that "in *Olech*, the Supreme Court allowed the plaintiff's class of one claim to proceed because the municipality allegedly deviated without justification from its clear procedure[s]."); *see also Cooey (Smith)*, 2011 U.S. Dist. LEXIS 73606, at *96 & 105. Such claims do not receive heightened judicial scrutiny, and are instead subject to the general "rational basis" test. *Olech,* 528 U.S. at 564; *see also Enquist v. Or. Dep't of Agriculture,* 553 U.S. 591, 601 (2008).

Under this theory, Lorraine can show that Defendants' non-compliance with their protocol treats each condemned inmate differently and that such disparate treatment is not rationally related to a legitimate state interest. *See Cooey (Smith)*, 2011 U.S. Dist. LEXIS 73606,

at *95-99; *see also Romer v. Evans*, 517 U.S. 620, 631–32 (1996) (striking down state statute on an equal protection theory by finding that the statute "fails, indeed defies, even" rational basis review, because "it lacks a rational relationship to legitimate state interests"); *Lawrence v. Texas*, 539 U.S. 558, 578–79 (2003) (striking down state anti-sodomy statute on a "fundamental rights" due process theory by finding that the "statute furthers no legitimate state interest which can justify its" burden on the fundamental rights in question); *id.* at 579–85 (O'Connor, J., concurring in judgment) (concluding statute at issue violated Equal Protection Clause because the state "cannot assert any legitimate state interest here").

When Defendants' actions are "unrelated to the achievement of any combination of legitimate purposes," the Court "can only conclude that the [Defendants'] actions were irrational." *Bower v. Mt. Sterling*, 44 Fed. App'x. 670, 677–78 (6th Cir. 2002) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 84 (2000)).  Thus, "an equal protection violation will be made out" if Defendants' pattern and on-going history of non-compliance is shown to be "irrational," or unrelated to any conceivable legitimate state interest.  *See Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 791 (6th Cir. 2005) (citation omitted).

Here, Lorraine is similarly situated with other condemned inmates who are also subject to Defendants' execution protocol.  Defendants' pattern and on-going history of non-compliance is irrational.  Defendants have no legitimate state interest in failing to comply with their written execution protocol, and any conceivable state interests are not actually related to Defendants' compliance failures.

> **a.  Defendants' actions, in the form of their failures to comply with their written execution protocol, are irrational.**

Showing that official state action is irrational necessarily "negatives" any possibility that a challenged state action can survive rational basis review.  *See Club Italia Soccer*, 470 F.3d at

299 (finding that plaintiff could not prevail on class-of-one claim because plaintiff could not show animus *or* that defendant's actions were "clearly contrary to any existing law," and, consequently, plaintiff could not negate every conceivable basis for defendant's action). Defendants' pattern and on-going history of non-compliance is irrational in several ways.

> **i.** **Defendants' non-compliance is irrational because it is clearly contrary to law.**

Lorraine can "negative" any conceivable rational basis for Defendants' non-compliance by demonstrating that Defendants "acted in a manner clearly contrary to law." *Club Italia Soccer*, 470 F.3d at 298–99; *Bower*, 44 Fed. App'x at 678. When the challenged state action is contrary to state law, the legal presumption of rationality is overcome and it demonstrates the lack of a rational basis for the state's actions. *Bower*, 44 Fed. App'x at 678; *see also Club Italia Soccer*, 470 F.3d at 298. State actions that violate state or federal law are, therefore, irrational by definition, and thus incapable of surviving rational basis review.

Defendants' non-compliance violates state law. The written execution protocol, promulgated solely at the hand of the DRC Director, has the force and effect of state law. *See* Hr'g Test. of Former DRC Director Terry Collins, 16:23-17:1, Mar. 27, 2009; Collins Dep., 13:8-11, Aug. 19, 2009; 14:4-9; Ohio Rev. Code § 5120.01 (delegating to the Director of DRC the authority to manage and direct the total operations of DRC and to establish such rules and regulations as the Director prescribes); *see also*, DRC Policy 01-COM-11, ¶ I (citing ORC § 5120.01 as source of authority to promulgate policy). Accordingly, when Defendants fail to follow the explicit mandates in the written execution protocol, they are necessarily acting in a manner that is clearly contrary to state law. The evidence abundantly demonstrates that Defendants regularly and consistently deviate, vary, or substantially vary from their written protocol, and Lorraine believes the evidence will show that this continues to be the case under

the September 18, 2011 protocol.  These non-compliant actions are contrary to state law, and are, therefore, irrational state actions.

> ii.     **Defendants' non-compliance is irrational because any differences between condemned inmates upon which Defendants purportedly rely to deviate, vary or substantially vary from the protocol's mandates are illusory, or any such differences are not actually the basis for Defendants' non-compliant actions.**

Defendants' actions are also irrational because their non-compliant actions are based on illusory differences between condemned inmates.  And their non-compliance is also irrational because any purported differences are not actually the bases for Defendants' deviations, variations, or substantial variations.  *See, e.g.*, *Rinaldi v. Yeager*, 384 U.S. 305, 308-309 (1966) (citing *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966); *Carrington v. Rash*, 380 U.S. 89, 93 (1965); *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 37 (1928); *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).

Although rational basis review is the "most deferential of standards," the Supreme Court has insisted on knowing the relation between the disparate treatment effected by the state action and the state interest or objective to be attained.  *Romer*, 517 U.S. at 632–33; *see also Rinaldi*, 384 U.S. at 308-309 (explaining that the Equal Protection Clause requires that the distinctions that underpin disparate treatment must have "some relevance to the purpose for which" the disparate treatment is applied) (citations omitted)).  Furthermore, governmental action which disparately treats similarly situated individuals must be rationally founded on differences that are real and not illusory.  *See, e.g.*, *San Antonio Independent School District*, 411 U.S. at 36-37; *Lindsey v. Normet*, 405 U.S. 56, 70 (1972); *Rinaldi*, 384 U.S. at 308-309.  Conversely, "[d]isparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational."  *Trihealth, Inc.*, 430 F.3d at 790.  There are no differences between

Lorraine and other similarly situated inmates that might justify Defendants' failures to comply with their written protocol.

And any differences that might exist are immaterial, illusory, or not actually the basis for Defendants' non-compliance.  For example, the evidence will demonstrate that the failures in compliance related to Reginald Brooks's execution were not based on anything unique to Brooks that might have reasonably supported deviation, variation, or substantial variation from the written protocol's mandates.  Ironically, it was only Brooks's individual characteristics — namely his refusal to take his blood pressure medication, based on his paranoid schizophrenic delusions — that led to Defendants having any records related to Brooks's physical health that they could pass off as evidence of the required pre-execution vein and physical health assessments required by the protocol.  But that medical assessment was done solely because of Dr. Escobar's efforts to limit any potential medical malpractice liability if Brooks were to have suffered a stroke, heart attack or kidney failure.  Brooks's individual characteristics were decidedly *not* the reason for Defendants' failure to conduct the required assessments and to complete the other associated communication requirements.

Moreover, many of the non-compliant actions or failures occur long before the Execution Team has any information about an inmate, such as failures to attend mandatory annual training or execution rehearsals because the team member in question is on vacation.  Defendants have previously advanced several purported justifications for their non-compliant behavior, but these all amount to interests of administrative convenience.  Any failures to comply with the written protocol based on administrative convenience are Defendant-centric; they are not related to, let alone based on, any concerns about any particular inmate.

Additionally, even the compliance failures related to the unsuccessful attempt to execute Romell Broom cannot be rationalized as attributable to any unique, individual characteristics applicable to Broom.  There is no evidence that there was anything medically unique about Broom that would have rationalized or necessitated a deviation from the written policy, even when Defendants were unable to obtain IV access.  (Heath Testimony, Biros TRO Hearing, December 4, 2009, at 42-43.)  Any deviations in that failed execution attempt—such as involving a medical doctor who was untrained to participate in an execution, who clearly did not have a comprehensive understanding of what she was being told or asked to do and who similarly failed to establish IV access—are related only to Defendants' "incompetence or inability to perform under the circumstances."  (*See* Doc. No. 621, at 184, 187.)  That evidence, along with evidence of other executions in which Defendants failed to comply with their written protocol in effect at the time when doing so would have made completing an execution impractical, difficult or impossible, is still highly relevant to showing how Defendants will act under their September 18, 2011 written protocol.

### iii. Defendants' pattern and on-going history of non-compliance is irrational because it is arbitrary and capricious.

Defendants' actions are also irrational because they are arbitrary and capricious.  *See Reynolds v. Sims*, 377 U.S. 533, 557 (1964) (a court can find an equal protection violation when the facts show that state action is "simply arbitrary and capricious action" rather than a state's policy); *see also Reed v. Reed*, 404 U.S. 71, 76 (1971) (a state's actions "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the [state action], so that all persons similarly circumstanced shall be treated alike") (citing *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).  Or, put another way,

21

Defendants' non-compliant actions are wholly unrelated to the achievement of any legitimate state purpose, and are, therefore, irrational. *See Trihealth*, 430 F.3d at 788.

There is no consistency in Defendants' non-compliance such that one might reasonably conclude that the non-compliance is for any particular purpose other than carrying out an execution at all costs. Instead, Defendants' non-compliant actions are actually a collection of random deviations, variations and substantial variations from the protocol, with similar or wholly different non-compliant behavior from execution to execution. This makes genuine application of the written protocol's protections freakish, merely random, or by arbitrary choice. These are all sufficiently problematic concerns to constitute irrational actions. *See Furman v. Georgia*, 408 U.S. 238, 309–10 (1972) (Stewart, J., concurring) ("[T]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed."). The evidence shows that Defendants' non-compliant actions are arbitrary and capricious, and therefore irrational state actions. This is sufficient evidence to conclude that Defendants' actions cannot survive rational basis review.

> **b.  Defendants have no legitimate state interest in failing to comply with their written execution protocol, and any conceivable state interests are not actually related to Defendants' non-compliance.**

Not only are Defendants' actions in deviating, varying, or substantially varying from their policy irrational, but Defendants also have no legitimate state interest in failing to comply with their written policy, and any conceivable legitimate state interests are not actually related to Defendants' deviations.

> **i.  Administrative convenience is not a legitimate state interest.**

The only state interests Defendants have advanced in this litigation to justify their behavior amount to interests in administrative convenience. (*See, e.g.*, Defs' Mot. for Summary Judgment, Doc. No. 842, PageID 21120–21; Aff. of Dir. Moore, Attached as Ex. 1 to Defs.' Mot.

22

for Summary Judgment in Defs.' Favor of Pl. Jerome Henderson's Remaining Claims, Doc. No. 831-1, PageID 19860–68, ¶¶ 27, 31, 34, 35–36, 38–42); Defs.' Reply Br., Doc. No. 861, PageID 21769-77 (attempting to explain away noncompliance with execution policies); *see also*, Pls.' Mem. in Opp. to Defs.' Mot. for Summary Judgment, Doc. No. 849, PageID 21231-33; Pls.' Sur-Reply Br., Doc. No. 864.)

For instance, Defendants at various points in this litigation have cited weather conditions, team members' unavailability, team members' vacations, and hour-and-wage-related employment concerns and the like to excuse their numerous instances of deviations from the training and/or execution rehearsal requirements and other requirements that mandate how an execution must be administered.  They cite administrative convenience to excuse incredible breaches of the execution protocol during the Vernon Smith and Michael Beuke executions, when TM # 21 conducted the execution administration alone rather than in the presence and with the assistance of a second medically trained and qualified person who was a member of the execution's medical team.  They cite administrative convenience to excuse breaches of the written protocol—and likely the state and/or federal controlled substances laws—in obtaining execution drugs.  And the evidence shows that the mentality of skirting rules, regulations and restrictions regarding obtaining difficult-to-find execution drugs continues apace regarding pentobarbital.  Defendants also attempted to pass off documents and actions that had nothing to do with the execution protocol's vein, physical, and/or mental health assessments as if they were evidence of compliance with the protocol, arguably based on administrative concerns; they had failed to actually comply with the protocol's mandates, but upon information and belief they did not want to have to seek a reprieve for inmates Slagle and Brooks based on those failures. Defendants also failed to identify, discuss, confer about, or otherwise even acknowledge a

23

genuine, documented medical issue with Brooks's shoulder that affected Brooks from the time he was strapped to the execution bed.

Lorraine can negate any administrative convenience interest, however, because the law is clear: a state's disparate treatment of similarly situated individuals "cannot be justified on the ground of administrative convenience." *Rinaldi*, 384 U.S. at 309–10; *see also Frazier v. Manson*, 703 F.2d 30, 35 (2d Cir. 1983) ("The constitutional imperatives of the Equal Protection Clause cannot be satisfied by mere conjecture as to administrative inconvenience."); *cf. Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 644 (1973) (addressing a due process claim and using analysis essentially identical to equal protection analysis, holding that "[w]hile it might be easier for the school board to conclusively presume that all pregnant women are unfit to teach past the fourth or fifth month or even the first month of pregnancy, *administrative convenience alone is insufficient to make valid what otherwise is a violation* of due process of law") (emphasis added).

Accordingly, as a matter of law, Defendants' non-compliance with the written protocol cannot be rationalized on the basis of administrative convenience.  This, too, is sufficient to conclude that Defendants' actions cannot survive rational basis review.

> ii. **The evidence demonstrates that the only conceivable, legitimate justification for Defendants' pattern and on-going history of non-compliance with their written protocol is not actually related to Defendants' actions.**

Defendants' pattern and on-going history of non-compliance with their written protocol is not rationally related to a legitimate state interest because the overwhelming evidence demonstrates that the only conceivable, legitimate reason for Defendants to fail to comply with their written execution protocol are unrelated to their actions.  It is conceivable that a condemned inmate's unique, individual characteristics, such as Kenneth Smith's medical conditions, might

24

require Defendants to rationally deviate or vary from their protocol. But those deviations or variations from the protocol are not what Lorraine is alleging violates his rights to equal protection under the law.

### 3. Conclusion

Lorraine has demonstrated that he is likely to succeed on the merits of his claims. Accordingly, the first element of the preliminary injunction analysis weighs heavily in his favor.

### E. There is a substantial threat that Lorraine will suffer an irreparable injury if the temporary restraining order and preliminary injunction is not granted.

If a TRO and preliminary junction is not granted, Lorraine will suffer irreparable harm as a matter of law, and as a matter of fact.

### 1. Lorraine will suffer irreparable injury as a matter of law.

If it is found that a constitutional right is being threatened or impaired, "a finding of irreparable injury is mandated," and "a successful showing on the first factor mandates a successful showing on the second factor—whether the plaintiff will suffer irreparable harm." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *see also KindHearts for Charitable Humanitarian Development, Inc. v. Geithner*, 676 F.Supp. 2d 649, 653 (N.D. Ohio 2009) (explaining that a plaintiff demonstrates irreparable harm if the plaintiff's claim is based upon a violation of the plaintiff's constitutional rights). Additionally, "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010).

Because Lorraine has demonstrated a likelihood of success on his constitutional claims, a finding of irreparable harm exists as a matter of law.

### 2. Lorraine will suffer irreparable injury as a matter of fact.

Even if a finding of irreparable harm were not mandated by law upon a finding of likely success on Lorraine's constitutional claims, there is no doubt in this case that failure to grant a temporary restraining order and preliminary injunction would cause Lorraine irreparable injury in fact, since Defendants will execute—or at least attempt to execute—him, and soon.  Lorraine will be denied the protections of the Equal Protection Clause, as vividly demonstrated by the face of the written protocol and by Defendants' lengthy pattern and on-going history of non-compliance with that written execution protocol.

Additionally, Lorraine is not seeking monetary damages, and there is no clear way to quantify the damages Defendants' actions will cause.  When this is so, courts should consider the injury to be irreparable, with no adequate remedy at law.  *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1382 (6th Cir. 1995) (citation omitted) ("An injury is irreparable if it cannot be undone through monetary remedies."); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (finding that without preliminary injunctive relief, the corporate plaintiff would suffer losses that might include the death of the company through bankruptcy, and "[c]ertainly" that type of injury "meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless"); *Warren v. City of Athens*, 411 F.3d 697, 712 (6th Cir. Ohio 2005) (financial ruin qualifies as irreparable harm for which there is no adequate remedy at law).

There is nothing more final and irreversible than death, and Lorraine obviously cannot be compensated adequately through money damages if or when Defendants violate his constitutional rights in executing him.  For Defendants to unconstitutionally execute Lorraine before he has a chance to be heard on the merits of his claims would be irreparable harm for which he has no adequate remedy.  A "final judgment" in the above-captioned case will be useless for Lorraine if his execution is not stayed.

**F.    Granting a temporary restraining order will not substantially harm other parties and, if there was some harm, Plaintiff Lorraine's potential injury outweighs that harm.**

While recognizing that State of Ohio has an interest in seeing finality by imposing the sentence of death, substantial harm will not ensue from this injunction.  Lorraine is seeking to enjoin Defendants from violating his constitutional rights in the process of carrying out his sentence.  Under these circumstances, this Court should not permit Lorraine's execution to proceed before the Court has the opportunity to review his constitutional claims.  The delay resulting from granting the relief sought here will have little adverse effect on the State's interest and will ensure that it does not perform an unconstitutional execution.  *See Gomez v. U.S. Dist. Ct. For N. Dist. of Cal.*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J., dissenting from grant of writ of mandate) ("The state will get its man in the end.  In contrast, if persons are put to death in a manner that is determined to be cruel, they suffer injury that can never be undone, and the Constitution suffers an injury that can never be repaired.").

Accordingly, the risk that Lorraine will be subjected to an unconstitutional execution outweighs the State's interest in carrying out Lorraine's sentence on January 18, 2012; the balance of equities favor granting a TRO and preliminary injunction preventing Defendants from attempting to execute Lorraine on that date.

**G.    The public interest would be served by issuing a temporary restraining order.**

The public interest is served by enforcing constitutional rights.  *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) (citing *Chabad of S. Ohio v. City of Cincinnati*, 233 F.Supp. 2d 975, 987 (S.D. Ohio 2002)); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001) ("[I]t is always in the public interest to prevent violation of a party's

constitutional rights." (citation omitted)); *see also Miller*, 622 F.3d at 540 ("[w]hen a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights.'") (quoting *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).

Additionally, the public has no interest in seeing its citizens' rights violated in the context of the execution process. *See In re Kemmler*, 136 U.S. 436, 447 (1890). And "the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights." *Cooey (Smith)*, 2011 U.S. Dist. LEXIS 73606, at *106.

The public interest will also be served because Ohio will continue to conduct executions unconstitutionally unless forced by this Court to make necessary changes. Ohio has twelve executions scheduled at the time of this motion, at the rapid pace of approximately one every 30-45 days, up to and including September 25, 2013. And additional motions to set execution dates remain pending in the Supreme Court of Ohio. There is a strong public interest in ensuring that these executions are carried out within the bounds of the Constitution.

## IV. Certification of Notice

The undersigned counsel for Lorraine certify that they have given notice of this motion for a TRO and preliminary injunction to counsel for Defendants, Charles Wille, Thomas Madden and Justin Lovett, by emailing a copy of this motion and all attachments to each of them on this 23rd day of November, 2011. Mr. Wille and Mr. Madden will also receive notice through the Court's ECF system.

## V.     Conclusion and Prayer for Relief

For the reasons outlined in this memorandum, this Court should:

(1)     grant Lorraine expedited discovery;

(2)     order expedited briefing on Lorraine's motion;

(3)     grant Lorraine an expedited oral argument and an evidentiary hearing on his request for a temporary restraining order or preliminary injunction, if the Court deems oral argument and an evidentiary hearing necessary in order to grant Lorraine's motion;

(4)     grant Lorraine the opportunity to submit post-hearing briefing, if the Court deems it necessary; and

(5)     grant Lorraine a temporary restraining order and preliminary injunction prohibiting Defendants from executing him as scheduled on January 18, 2012, until further order of the Court;

(6)     grant a temporary restraining order and preliminary injunction prohibiting Defendants from executing any inmates as currently scheduled, until further order of the Court;

(7)     grant any other relief as this Court deems appropriate.

Respectfully submitted,

/s/ Allen L. Bohnert
**Allen L. Bohnert (0081544)**
Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, OH 43215
614-469-2999
614-469-5999 (fax)
Email: Allen_Bohnert@fd.org
**Trial and Lead Counsel for Plaintiff**
**Charles Lorraine**

**and**

/s/ Carol A. Wright
**Carol A. Wright (0029782)**
Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, OH 43215
614-469-2999
614-469-5999 (fax)
Email: Carol_Wright@fd.org
**Co-Counsel for Plaintiff Charles Lorraine**

**and**

/s/ Randall Porter
**Randall Porter (0005835)**
Office of the Ohio Public Defender
250 E. Broad Street
Suite 1400
Columbus, OH 43215
614-466-5394
614-728-3670 (fax)
Email: Randall.Porter@opd.ohio.gov
**Co-Counsel for Plaintiff Charles Lorraine**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2011, I electronically filed the foregoing **Plaintiff Charles Lorraine's Motion for a Temporary Restraining Order and Preliminary Injunction** with the Clerk of the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to the following at the e-mail address on file with the Court:

Mr. Charles L. Wille
Principal Assistant Attorney General
Trial Counsel for all Defendants
Office of the Ohio Attorney General
Criminal Justice Section, Capital Crimes Unit
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215

Mr. Thomas E. Madden
Associate Assistant Attorney General
Co-Counsel for all Defendants
Office of the Ohio Attorney General
Criminal Justice Section, Capital Crimes Unit
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215

Mr. Justin M. Lovett
Assistant Attorney General
Co-Counsel for all Defendants
Office of the Ohio Attorney General
Criminal Justice Section, Capital Crimes Unit
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215

*/s/ Allen L. Bohnert*
Assistant Federal Public Defender
Trial and Lead Counsel for Plaintiff
Charles Lorraine