UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: OHIO EXECUTION
PROTOCOL LITIGATION          Case No. 2:11-cv-1016
                                                     JUDGE GREGORY L. FROST
                                                     Magistrate Judge Mark R. Abel

**This document relates to: Dennis McGuire.**

## OPINION AND ORDER

This matter is before the Court for consideration of an amended motion for a stay of execution, a temporary restraining order, and a preliminary injunction filed by Plaintiff Dennis McGuire (ECF No. 383) and a memorandum in opposition filed by Defendants (ECF No. 385). The motion presents the question of whether this Court believes that Ohio will not fulfill its duties under the Constitution so that the Court should stop the scheduled January 16, 2014 execution of McGuire.  Because he has failed to meet his burden of proving that a stay is warranted, Ohio can proceed to fulfill its lawful duty to execute McGuire.

### I.  Background[1]

This litigation is a 42 U.S.C. § 1983 civil rights action brought by multiple inmates who challenge various facets of the execution protocol used by the State of Ohio.  Although this litigation originated as a challenge to the protocol under the Eighth Amendment, the primary focus of the action in recent years has been on claims that Ohio's execution protocol and

---

[1] The findings of fact related to this Opinion and Order are not conclusive given that "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits."  *United States v. Edward Rose & Sons*, 384 F.3d. 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

practices violate the Equal Protection Clause of the United States Constitution.² Today's challenge returns the focus to the Eighth Amendment so that the question is not whether Ohio can be trusted to do what it says it will do, but whether following the protocol will subject McGuire to an unconstitutional substantial risk of severe pain that constitutes cruel and unusual punishment.

McGuire is scheduled to be executed on January 16, 2014. On January 6, 2014, he filed a motion for a stay of that execution (ECF No. 379), which led this Court to conduct an informal preliminary telephone conference with the parties on January 7, 2014, pursuant to S. D. Ohio Civ. R. 65.1(a) (ECF Nos. 381, 382). McGuire then filed an amended motion on January 7, 2014 (ECF No. 383), and Defendants filed a memorandum in opposition on January 9, 2014 (ECF No. 385).³ The amended motion came on for an evidentiary hearing that took place on Friday, January 10, 2014, and, to accommodate Defendants' expert witness, on Sunday, January 12, 2014. At the conclusion of the evidentiary hearing, this Court took the matter under advisement.⁴

---

² The recent history of this litigation and its often frustrating factual developments can be found in the following Opinion and Orders, which this Court expressly incorporates herein by reference: *In re Ohio Execution Protocol Litigation (Phillips)*, No. 2:11-c-v1016, 2013 WL 5963150 (S.D. Ohio Nov. 7, 2013); *In re Ohio Execution Protocol Litigation (Hartman)*, 906 F. Supp. 2d 759 (S.D. Ohio 2012), *In re Ohio Execution Protocol Litigation (Wiles)*, 868 F. Supp. 2d 625 (S.D. Ohio 2012), *In re Ohio Execution Protocol Litigation (Lorraine)*, 840 F. Supp. 2d 1044 (S.D. Ohio 2012), *Cooey (Brooks) v. Kasich*, Nos. 2:04-cv-1156, 2:09-cv-242, 2:09-cv-823, 2:10-cv-27, 2011 WL 5326141 (S.D. Ohio Nov. 4, 2011), and *Cooey (Smith) v. Kasich*, 801 F. Supp. 2d 623 (S.D. Ohio 2011).

³ The filing of the amended motion for a stay (ECF No. 383) moots the original motion (ECF No. 379). Accordingly, the Clerk shall terminate the January 6, 2014 motion for a stay as moot and remove its designation as a pending motion. (ECF No. 379.)

⁴ In addition to the hearing testimony and exhibits, the Court has also considered a declaration from McGuire's expert (ECF No. 381), a deposition from Defendants' expert (ECF

## II. Discussion

### A. Standard Involved

In considering whether injunctive relief staying McGuire's execution is warranted, this Court must consider (1) whether McGuire has demonstrated a strong likelihood of success on the merits; (2) whether McGuire will suffer irreparable injury in the absence of equitable relief; (3) whether a stay would cause substantial harm to others; and (4) whether the public interest is best served by granting a stay. *Cooey v. Strickland (Biros)*, 589 F.3d 210, 218 (6th Cir. 2009) (citing *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). The Sixth Circuit has explained that " '[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.' " *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

### B. Analysis

Before reaching the merits of McGuire's grounds for a stay, this Court must first address a number of threshold issues. Defendants raised these issues as grounds for this Court denying the stay request, but the issues do not prove dispositive.

The evidence establishes that McGuire has had breathing issues since at least 2009, when prison doctors began to prescribe him inhalers. Subsequent prescriptions support the contention that the underlying breathing issues continued into at least 2011, with the logical inference presented by the evidence that McGuire still has breathing issues today. This begs the question of why McGuire failed to assert his individualized, breathing-centric challenge to the use of

---

No. 387), and stipulations reached by the parties (ECF No. 389).

midazolam and hydromorphone when those drugs first appeared in Ohio's protocol in late 2009 as what this Court and the parties have routinely designated "Plan B" in this litigation. The Plan B scenario contemplates an intramuscular injection of these drugs, while the current "Plan A" scenario now employs the same drugs and same dosages in intravenous administration.

Defendants argue that a procedural bar to a stay exists. Because McGuire failed to raise this specific medical challenge to the use of midazolam and hydromorphone in his supplemental individual complaint, Defendants reason, he is seeking relief on a theory not embodied in any claim currently before this Court. Certainly, neither the 2011 omnibus complaint (ECF No. 4) nor the 2013 amended omnibus complaint (ECF No. 158) explicitly plead this issue. This is understandable. Such a claim, turning on McGuire's individual medical condition, was not intended for the omnibus pleading; rather, by agreement of the parties and with the approval of this Court, McGuire can plead the claim via a supplemental individual complaint. McGuire in fact filed such a pleading in January 2013. (ECF No. 188.) Construed generously, that supplemental pleading presents his individualized claim in general terms and without expressly pleading the particularized facts upon which his amended motion for a stay relies.

But as with almost everything in this litigation, things then get messy. On October 2013, Ohio adopted its current protocol. (ECF No. 323.) This led to the filing of the second amended omnibus complaint, which again failed to present the precise issue and facts involved in today's inquiry. (ECF No. 378.) McGuire now has until January 27, 2014, to file an amended supplemental individual complaint. (ECF No. 372.)

This Court will not decline to consider the merits of McGuire's individualized argument when the deadline for pleading that argument has not yet arrived. The Court is cognizant that

4

this puts the amended motion for a stay in the nonsensical position of presenting a likelihood of success argument on a claim that is arguably not even fully before this Court. At the same time, however, the alternative route is equally odd. The Court can not tell McGuire that he has time yet in which to plead his claim more sufficiently and then refuse to consider the merits of the claim when he is relying on that permission. In light of this pleading issue–partially self-inflicted by McGuire and approved by this Court, even if perhaps none of these actors sufficiently appreciated the effect of the timing issues involved as they apply to today's motion–neither considering nor declining to consider McGuire's individualized medical challenge is fully palatable to this Court. As inherently distasteful as it is, the Court will therefore err if at all on the side of considering the merits and not letting a stay request turn unnecessarily on a procedural morass.

  Defendants also assert that an equitable bar to a stay exists. By waiting until only ten days prior to his execution to file his initial motion for a stay, Defendants argue, McGuire has delayed unnecessarily in bringing a claim that he could have asserted as far back as late 2009. Defendants argue that McGuire's timing falls within the "strong equitable presumption" against a stay discussed in *Workman v. Bredesen*, 486 F.3d at 911. This is not an argument without some traction. Plaintiffs' counsel seem to be increasingly intent on pushing the boundaries of when they can file a motion for a stay before either an evidentiary hearing or even the possibility of a stay become unavailable based on simple equitable considerations. The Court will not deny McGuire consideration of his merits arguments today, but the parties and counsel in this litigation long ago all but exhausted the patience of this Court. Other plaintiffs seeking a stay in the future should note this point and make informed litigation choices accordingly.

One final comment on Defendants' "too little, too late" arguments is warranted. This Court would perhaps consider Defendants' arguments dispositive if only Plan B were involved. Because the amount and not the administration of the protocol drugs is at issue today, McGuire could certainly have raised his individualized medical challenge to the effect of these drugs as part of Plan B as far back as late 2009. He failed to do so and instead elected to wait until nearly the eve of his execution to inform Defendants and this Court of the precise nature of his individualized challenge, much less to assert that challenge as the basis of a stay request. There has been too little evidence presented to this Court for the Court to make a reasoned analysis of whether the slower process presented by the Plan B intramuscular injection presents a substantively significant greater risk of the problem that McGuire raises in attacking primarily the Plan A intravenous injection. As a result, this Court need not delve into whether it should foreclose McGuire from attacking Plan B. The Court merely notes its concern that McGuire sandbagged its Plan B medical challenge.

Having rejected Defendants' threshold arguments, the Court now turns to McGuire's substantive grounds for relief and the issue of whether he has met his burden to obtain injunctive relief.

### 1. *Likelihood of Success on the Merits*

McGuire's stay request is predicated on his Eight Amendment claim under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, in order to prevail on his § 1983 claim, McGuire must show that, while acting under color of state law, Defendants deprived or will deprive him of a right secured by the Federal Constitution or laws of the United States.  *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

The right McGuire targets is his right to be free from cruel and unusual punishment under the Eighth Amendment.  The Sixth Circuit has explained that "[t]o demonstrate that Ohio seeks to impose 'cruel and unusual' punishment, [a plaintiff] must show that its protocol ignores a '*sure* or *very likely*' risk of serious pain 'and needless suffering,' . . . which 'creates a demonstrated risk of severe pain' that is 'substantial when compared to the known and available alternatives.' "  *Cooey (Biros)*, 589 F.3d at 220 (quoting *Baze v. Rees*, 128 S. Ct. 1520, 1531, 1537 (2008) (plurality opinion)).

Defendants argue that McGuire's challenge under this standard fails as a matter of law because he has not suggested even one alternative, constitutionally acceptable method of execution.  McGuire asserts that he does not have to suggest another means by which Ohio should or could execute him.  This is perhaps contrary to binding precedent because even if the United States Supreme Court failed to present more than a plurality opinion on this issue, the Sixth Circuit has held in interpreting the Supreme Court's guidance that "an inmate cannot question a state's execution protocol without providing 'feasible, readily implemented' alternatives that '*significantly* reduce a substantial risk of severe pain.' "  *Id.* (quoting *Baze*, 128 S. Ct. at 1532.

The parties' debate is moot, however, because this Court concludes that McGuire did present an alternative means of execution: using a dosage of midazolam such as that found in

7

Florida's execution protocol.  Granted, he did so by presenting evidence that implicitly asked this Court to draw the inference that a dosing scheme analogous to that found in Florida's protocol would alleviate his concerns, but as McGuire's counsel aptly noted, he stopped short from presenting this alternative expressly.  Testimony at the hearing underscored that the experts could not counsel anyone, including the Court, on how to execute an individual; all they could do was offer opinions.  Counsel argued that this handicapped McGuire a bit in presenting an alternative because the means by which to present that alternative most effectively would be to have an expert testify as to its effectiveness and why it would be preferred over Ohio's protocol.  To this Court and no doubt to everyone present in the courtroom during the evidentiary hearing, however, the message was clear.  A far greater dose of midazolam would be an alternative.

This Court therefore rejects Defendants' argument that it cannot reach the merits of McGuire's claims due to McGuire failing to present an alternative means of execution.  This does not mean that the Court makes any findings in regard to whether a midazolam dose similar to Florida would be constitutionally preferable.  Despite what the history of this litigation and the arguments of the parties at times might appear to suggest, "the Constitution does not allow the federal courts to act as a best-practices board empowered to demand that the states adopt the least risky execution protocol possible." *Cooey (Biros)*, 589 F.3d at 220-21.  Instead, this Court's "rightful function [is] as a constitutional check on the 'wanton infliction of pain' by the state." *Id.* at 233 (quoting *Louisiana ex rel Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion)).

The extant question is thus whether, given his individual characteristics, Ohio's protocol subjects McGuire to a substantial risk of severe pain constituting cruel and unusual punishment .

It is worth noting at the outset that " 'the Constitution does not demand' a pain-free execution." *Cooey (Biros)*, 589 F.3d at 220 (quoting *Baze*, 128 S. Ct. at 1529, 1537).  What the Constitution does demand is avoidance of a demonstrated or substantial risk of severe pain.

McGuire's argument for a stay is straightforward.  Based on the testimony of his expert, Dr. David Waisel, McGuire contends that he possesses physical and medical characteristics that increase his risk of obstructive sleep apnea.  This proclivity toward obstruction means that following the administration of midazolam and hydromorphone, his breathing will be suppressed, he will experience a consequent rise in the amount of carbon dioxide in his system, he will experience a need or sensation to breathe, and he will suffer an obstruction that he will be unable to mitigate through physical manipulation or otherwise.  This in turn will lead him to experience "air hunger," which Waisel characterized as a terrifying inability to obtain a breath to satisfy the ventilatory drive.  Waisel testified that this will result because the ventilatory depressant effects of the protocol will occur prior to the pain relief or sedative effects.  Stated most simply:  McGuire asserts that here will be up to a 5-minute window before the drugs alleviate his awareness of air hunger and that he will suffer air hunger during this time period.

Defendants' argument in opposition is equally straightforward.  Relying on their expert, Dr. Mark Dershwitz, Defendants contend that Waisel–and therefore McGuire–is simply wrong.  They assert that Waisel has misunderstood the timing of the effects of the protocol drugs and the effect of the hydromorphone dose involved.  Under this argument, the analgesic effect occurs earlier so that it will precede ventilatory depression.  Moreover, because the amount of hydromorphone administered under the protocol is so massive, its effect must be regarded on a sliding scale that does not track traditional therapeutic dosing.  In other words, McGuire will not

9

be experiencing terror but rather possible euphoria, and even in the event of a possible obstruction, he will likely be unconscious by the time that happens.  Again attempting to summarize most simply:  Defendants assert that the window for experiencing air hunger is so much less than McGuire argues that it is likely non-existent or at worst far less than 5 minutes.

Assuming *arguendo* that the sensation of air hunger sufficiently constitutes severe pain falling within the Eight Amendment prohibition, this Court concludes that McGuire has failed to persuade that he is likely to experience this condition.  The Court accepts the parties' stipulations regarding McGuire's physical and medical characteristics (ECF No. 389) and concludes that these characteristics present a risk of obstruction.  The Court also credits Dershwitz's more credible testimony on the timing of the drugs involved and his estimates of the effects of their doses, while concurrently rejecting Waisel's conclusions regarding the timing of the drugs and their likely effects within the 5-minute window upon which McGuire relies.  The newness of this protocol and the obvious lack of human trials create a dearth of studies upon which to draw, but extrapolation from Dershwitz's research supports his opinions.  Waisel in turn presented a partially compelling argument that was undercut by its own reliance on apparently outdated data on the peak effect period of the drugs and his not crediting properly the overdosing the protocol employs.  This is not to say that Waisel is wholly wrong; rather, it leads to the conclusion that his opinions are inherently flawed so as to undercut the reliability of his ultimate conclusions.  It leads to the conclusion that because he has miscalculated the window of which he complains, McGuire has failed to convince this Court that he will experience air hunger.

But let no one pretend for even a moment that this analysis is without potential cracks.

There is absolutely no question that Ohio's current protocol presents an experiment in

lethal injection processes.  The science involved, the new mix of drugs employed at doses based on theory but understandably lacking actual application in studies, and the unpredictable nature of human response make today's inquiry at best a contest of probabilities.  To pretend otherwise, or that either of the experts or this Court truly knows what the outcome of that experiment will be, would be disingenuous.  But as odd as it sounds, this is not a problem until it is actually a problem.  The law teaches that Ohio is free to innovate and to evolve its procedures for administering capital punishment until such experimentation sufficiently risks running afoul of the constitutional protections afforded every citizen, regardless of his or her status, crime, or punishment.  *See Cooey (Biros)*, 589 F.3d at 229-30.

        The evidence before this Court fails to present a substantial risk that McGuire will experience severe pain.  This is not to say that the Court is convinced that the execution will be pain free or even complication free.  There is always a possibility of human error or unfortunate misadventure.  There is also the possibility that in the earliest moments of his execution, McGuire could experience an obstruction.  This Court credits the evidence that he has characteristics suggesting, if not establishing, a propensity for possible obstruction.  The simple possibility of obstruction leading to air hunger of which McGuire would be cognizant does not amount to a sufficient probability, however, and the weight of the evidence leads to the conclusion that the hydromorphone overdose employed in Ohio's protocol will most likely offset the risk factors and preclude the experience of air hunger.  Thus, although the Court is not without concern over what could transpire during McGuire's execution, the applicable law looks at the degree of risk and the amount of pain involved.  The only fair evaluation of the evidence here leads to the conclusion that the degree of risk that Ohio's protocol presents is acceptable

within the contours of the Constitution.

It is McGuire's burden to prove that he is likely to experience a constitutional violation. Because he has failed to meet that burden, the first factor weighs against his obtaining injunctive relief.

### *2. Irreparable Injury, Substantial Harm to Others, and the Public Interest*

The Sixth Circuit has explained that in regard to the issue of whether injunctive relief should stay an execution date, "the absence of any meaningful chance of success on the merits suffices to resolve this matter." *Workman*, 486 F.3d at 911. Because this Court has concluded that the first factor weighs against injunctive relief, the Court need not and does not discuss the remaining factors.

### III.  Conclusion

The Court **DENIES** McGuire's amended motion for a stay of execution. (ECF No. 383.) As in prior decisions, this Court does not conclusively hold here that Ohio's method of execution practices are constitutional or unconstitutional. Today's decision only recognizes that based on all of the record evidence, McGuire has not met his burden of persuading the Court that he is substantially likely to prove unconstitutionality and prevail in this litigation.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE