# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
 PROTOCOL LITIGATION,

:     Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs
 Phillips, Tibbetts, and Otte

## DECISION AND ORDER STAYING THE EXECUTIONS OF
## PLAINTIFFS PHILLIPS, TIBBETTS, AND OTTE *PENDENTE LITE*

This capital § 1983 case is before the Court on Motions for Preliminary Injunction of Plaintiffs Ronald Phillips, Raymond Tibbetts, and Gary Otte (ECF Nos. 714, 718, and 715). Part of the relief sought in those Motions is a stay of execution pending final resolution of this litigation.

Plaintiffs Phillips, Tibbetts, and Otte and the State of Ohio Defendants have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c) and the cases of these three Plaintiffs have been referred on that basis (ECF No. 734).

This Decision embodies the findings of fact and conclusions of law required by Fed. R. Civ. P. 52(a)(2).

**Recent Procedural History**

As of September 1, 2016, Ohio had twenty-six inmates on death row with scheduled execution dates as early as January 12, 2017. At that time, the execution drugs specified in Ohio's Execution Protocol (01-COM-11, eff. 06/29/2015; ECF No. 521-1) were pentobarbital and thiopental sodium only, each as an alternative to the other. *Id.* at PageID 14167. As best Plaintiffs knew, the Ohio Department of Rehabilitation and Corrections (ODRC) was still trying to obtain a supply of either of those drugs, possibly from a compounding pharmacy, to use in a single-drug lethal injection.

Because there were executions scheduled for the first quarter of 2017 and Plaintiffs had no notice of whether the State was going to be able to proceed, they requested and the Court conducted a status conference on October 3, 2016 (Minutes, ECF No. 655).[1] During the course of that conference, the State of Ohio announced its intention to proceed with the scheduled executions of Messrs. Phillips, Tibbetts, and Otte in the first quarter of 2017 using a new three-drug method and stated that it would promulgate a revised protocol on October 7, 2016.

A year earlier, Judge Frost had granted Ohio a protective order ("Protective Order") requiring

> that any information or record in Defendants' possession, custody, or control that identifies or reasonably would lead to the identification of any person or entity who participates in the acquisition or use of the specific drugs, compounded or not, that Ohio indicates in its execution protocol it will use or will potentially seek to use to carry out executions is protected and not subject to discovery.[4] This protective order is intended to extend to those persons who or entities that have not waived or forfeited its protection and who manufacture, compound, import, transport,

---

[1] This was the first proceeding at which Chief Judge Sargus and the undersigned presided, having assumed management of the case upon the retirement of District Judge Gregory Frost in May 2016.

2

> distribute, supply, prescribe, prepare, administer, use, or test the compounding equipment or components, the active pharmaceutical ingredients, the execution protocol drugs or combination of drugs, the medical supplies, or the medical equipment used in carrying out any execution under Ohio Revised Code § 2949.22.
>
> [4] At this time, "the specific drugs, compounded or not, that Ohio indicates in its execution protocol it will use or will potentially seek to use to carry out executions" means pentobarbital and thiopental sodium, compounded or not. If Ohio alters its execution protocol to include or substitute other drugs, those drugs would fall under the scope of this protective order unless Plaintiffs persuade this Court that the new drug(s) present some specific necessity for the source-and[-]identity information Plaintiffs would seek.

(ECF No. 629, PageID 19409-10, reported at 2015 U.S. Dist. LEXIS 144926.) Judge Frost then certified the Protective Order decision for interlocutory appeal under 28 U.S.C. § 1292(b) and stayed all further proceedings in the case pending appeal. *Id.* at PageID 19411.

By the time of the October 3, 2016, status conference, the Sixth Circuit had accepted the appeal *sub nomine Fears v. Kasich*, Case No. 16-3149, but had not yet decided it. The Court perceived that the first order of business would be discovery in preparation for a preliminary injunction hearing. It vacated the stay as to the above-named Plaintiffs and ordered them to file, by October 28, 2016, "a detailed description of all discovery sought to prepare for a preliminary injunction hearing for these three Plaintiffs." (Order Vacating Stay, ECF No. 658, PageID 19732.) Defendants were ordered to respond by November 4, 2016, "indicating what information it [sic] is willing to produce, in what form, and by what date." *Id.*

In the same Order, the Court noted the pendency before the Sixth Circuit of *Phillips v. DeWine*, Case No. 15-3238, and of *Fears v. Kasich*. In *Phillips* the plaintiffs appealed District Judge Gregory Frost's decision in *Phillips v. DeWine*, 92 F. Supp. 3d 702 (S.D. Ohio Feb. 17,

3

2015), dismissing their First Amendment attack on Ohio's execution confidentiality statute (H.B. 663, codified at Ohio Rev. Code § 2949.221 and .222) for lack of standing and failure to state a claim. In the Order Vacating Stay, this Court found that resolution of those two appeals would probably need to be completed before this Court could decide the preliminary injunction motions (ECF No. 658, PageID 19734).

Since the stayed was vacated, the Sixth Circuit upheld Judge Frost's decision in *Phillips*, concluding Plaintiffs lacked standing to bring some of their constitutional claims and that their remaining claims failed to state constitutional claims for relief. *Phillips v. DeWine*, 841 F.3d 405 (6th Cir. Nov. 2, 2016).

*Fears v. Kasich* was orally argued on November 18, 2016, but no decision has issued as of the date of this Order, even though the presiding judge indicated at the end of the oral argument that the court was aware of the imminence of executions.

Plaintiff Phillips filed as ordered his Notice of Discovery Topics listing twenty-three paragraphs of information, including by reference any Plaintiffs Tibbetts or Otte might seek that would be relevant to his case (ECF No. 697). Plaintiffs Tibbetts and Otte filed jointly and listed thirty-five paragraphs of information, mostly paralleling Phillips' list (ECF No. 698). Both documents list probable deponents and discovery to be sought from third parties.

Defendants responded to both lists with the general comment that "Plaintiffs' overarching discovery plans are an obvious attempt to circumvent [Ohio Revised Code §] 2949.221, Judge Frost's Protective Order [ECF No. 629, reported at *In re: Ohio Execution Protocol Litigation*, 2015 U.S. Dist. LEXIS 144926 (S.D. Ohio Oct. 26, 2015)], and overwhelm and bog down the Defendants with oral and written discovery that is unduly burdensome, overbroad, and unnecessary . . . ." (ECF Nos. 706 at PageID 21402; 707 at PageID 21420.) Defendants

expressly say they "will not provide discovery that would contravene [Ohio Revised Code] §§ 2949.221 and 2949.222. Nor will they provide discovery that has been the subject of any Protective Order previously issued by this Court." (ECF No. 706 at PageID 21402.) They also assert that "much of the information sought is protected by the attorney-client and/or common interest and/or common defense privilege and/or by the attorney work product doctrine." *Id.*

In the Order Vacating Stay, the Court noted the importance of the pending appeal:

> Judge Frost expressly found that his Order of October 26, 2015 (the "Protective Order"), "involve[d] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." (ECF No. 629, PageID 19411, quoting 28 U.S.C. § 1292(b).) Based on that finding, he certified the Protective Order for interlocutory appeal and "STAY[ED] this Opinion and Order and all further proceedings before this Court pursuant to § 1292(b) .... " *Id.*
>
> Requested to accept jurisdiction under 28 U.S.C. § 1292(b), the Sixth Circuit concluded that
>
>> [T]he pendency of the appeal in *Phillips v. DeWine*, No. 15-3238, coupled with the seriousness of the issues at stake, constitute exceptional circumstances that justify a departure from the final judgment rule. The district court's ruling involves controlling questions of law on which there is substantial ground for difference of opinion. Because resolving these questions will materially advance the ultimate termination of this litigation, furthermore, judicial and party economy will be served by this appeal.
>
> *In re: Ohio Execution Protocol Litigation; Angelo Fears, et al.*, Case No. 15-0305 (6th Cir. Feb. 22, 2016)(unreported, copy at ECF No. 643, PageID 19571-72).

(Order Partially Vacating Stay, ECF No. 658, PageID 19733-34.) Thus in October, this Court adopted the earlier conclusion of Judge Frost and the Sixth Circuit that a decision in *Fears v.*

5

*Kasich* was important to govern the discovery conducted before the preliminary injunction hearing set for January 3-5, 2017.

That conclusion has not wavered. Hoping to avoid the present situation, the Court urged the parties to consult and attempt to agree on a stay of execution *pendente lite* to allow careful consideration of the preliminary injunction motions in light of whatever discovery would be permitted after considering the circuit court's decision in *Fears v. Kasich*. In email correspondence prior to the status conference on November 28, 2016, Assistant Attorney General Madden reported to the Court that his "clients are not willing to consider a stay in any form, but provided – have provided us with the authority to examine what the potential contours of a proposed unilateral issuance of a gubernatorial reprieve would entail." (Transcript, ECF No. 763, PageID 23585-86.) Such a reprieve could only be for a slight delay and would only be considered if plaintiffs were "willing to offer concessions of sufficient value. . ." *Id.* at PageID 23586. Before any reprieve were granted, Mr. Madden represented that the Governor would have to call the victims' families and explain why he was doing so. *Id.* at PageID 23586-87. At that point no discussions had occurred between the parties about what "a short definite delay would be." *Id.* at PageID 23590.

Based on that lack of agreement, the Court understood that an agreed[2] reprieve was unlikely and it needed to set dates for a preliminary injunction hearing in sufficient time before the scheduled January 12, 2017, execution of Ronald Phillips to permit a decision which could be appealed. *Id.* at PageID 23591. The Court then issued a Scheduling Order setting the necessary dates and reminding counsel of their agreement to continue to talk (ECF No. 746, PageID 23300-01).

---

[2] I.e., unilateral legally, but with Plaintiffs having made concessions as a condition of the reprieve.

The Court's next status conference was held on December 6, 2016. The day before, Defendants' counsel filed a lengthy account of negotiations, including that "they did not think a decision in *Fears v. Kasich* was necessary for a response to, or decision on, any of these motions," including in particular the motions for preliminary injunction (ECF No. 764, PageID 23620). Defendants indicated they had "formally rejected Plaintiffs' proposal regarding a possible agreed-to gubernatorial reprieve because it failed to meet the parameters set forth in the Defendants' initial email on the matter." *Id.*

Thus informed that there would be no agreement, the Court issued its order to show cause the next day, specifically providing:

> The parties have been unable to negotiate agreed stays of executions to permit a more deliberate consideration of the issues raised in the Preliminary Injunction Motions (See ECF No. 764 and attached email correspondence[ )]. Rather than the procedure suggested in ¶ 7 of Mr. Sweeney's email and to attempt to ensure a prompter resolution of this issue, Defendants are ORDERED to show cause in writing not later than December 9, 2016, why this Court should not stay/enjoin the executions of Messrs. Phillips, Tibbetts, and Otte pending completion of the preliminary injunction proceedings. The Court particularly invites comment on any jurisdictional questions and on why this matter should not be stayed pending a decision by the Sixth Circuit in *Fears v. Kasich*, as contemplated by the Order of October 4, 2016 (ECF No. 658). Plaintiffs shall respond to Defendants' filing not later than Monday, December 12, 2016.

(ECF No. 767, PageID 23647-48.)

**Positions of the Parties**

Defendants assert that entering a stay is the legal and functional equivalent of "granting Plaintiffs' motion[s] for preliminary injunction." (Response, ECF No. 803, PageID 24023.)

7

Therefore Plaintiffs must meet the usual standard for preliminary injunctive relief, including showing a "strong likelihood of success on the merits" which they cannot do. *Id.* at PageID 24023, citing *Cooey (Biros) v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009). Any stay order must also satisfy the Prison Litigation Reform Act of 1995 Title VIII of P.L. 104-134, 110 Stat. 1321(effective April 26, 1996)(the "PLRA"). *Id*. at PageID 24024.[3]

Functionally, Defendants claim, a stay will not achieve the Court's purpose because it will require new execution dates which can only be set by the Ohio Supreme Court and will moot the preliminary injunction proceedings. *Id.* at PageID 24024, citing *Workman v. Bredesen*, 486 F.3d 896, 904 (6th Cir. 2007), and *University of Texas v. Camenisch*, 451 U.S. 390, 398 (1981).

Finally, Defendants argue that Plaintiffs have not demonstrated how receiving the information covered by the Protective Order, characterized by Judge Frost as "source information," would help them prove their case (Response, ECF No. 803, PageID 24026, citing ECF No. 629, PageID 19407).

Plaintiffs respond that the Court has authority to stay the executions *pendente lite* without deciding the preliminary injunction motions (Reply, ECF No. 814, PageID 24353-54). They emphasize how different this case is from the usual time-constrained preliminary injunction execution case because here the timing has been entirely in control of the Defendants. They note again the inconsistent positions taken by Defendants regarding the scope of the Protective Order. *Id.* at PageID 24350-52.

---

[3] The referenced provision of the PLRA, 18 U.S.C. § 3626(a)(1), applies only to prospective relief in prison conditions cases and thus does not apply to these methods of execution cases.

# Analysis

**1.     The interpretation of the Protective Order is properly on appeal to the Sixth Circuit**

Judge Frost certified the Protective Order as appealable upon concluding, as required by 28 U.S.C. § 1292(b), that the Protective Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." (Order, ECF No. 629, PageID 19411, quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).) The Sixth Circuit's jurisdiction over such an interlocutory appeal is discretionary; those with long experience in Sixth Circuit practice know how rarely it is accepted.   The Sixth Circuit not only accepted jurisdiction, but explained why it was justified in doing so:

> The district court's ruling involves controlling questions of law on which there is substantial ground for difference of opinion. Because resolving these questions will materially advance the ultimate termination of this litigation, furthermore, judicial and party economy will be served by this appeal. *See Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695, 699 (6th Cir. 2015)("[P]ermitting appellate courts to timely resolve disputed, controlling legal questions when doing so might avoid the need for protracted and expensive litigation serves the twin aims of judicial and party economy.") (hyphen omitted).

*In re: Ohio Execution Protocol Litigation:  Angelo Fears, et al.*, No. 15-0305, ECF 22-1 (Feb. 22, 2016)(unreported, copy at ECF No. 643 in this case).  That appeal has now been fully briefed and was argued on November 18, 2016, but has not yet been decided.  This Court and the Sixth Circuit have already decided that that appeal should be decided before this case proceeds.

Simple respect for the decisional process of the Court of Appeals strongly suggests waiting on its decision.

While the pendency of the appeal does not impede our jurisdiction as an appeal from a final judgment would,[4] the Sixth Circuit has jurisdiction to review the entire Protective Order and not just some certified question of law. *Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 859 F.2d 242, 249 (2nd Cir. 1988); *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 187-88 (3rd Cir. 1986); *Ducre v. Executive Officers of Halter Marine*, 752 F.2d 976, 983-84 (5th Cir. 1985); and *Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695 (6th Cir. 2015). As this Court has said to counsel before, the Sixth Circuit's ruling on the validity of the Protective Order may also involve interpreting the scope of the Order, a matter much in contention between the parties.

Defendants' responses to discovery in this case since the stay was partially vacated evince reliance on a much broader scope of protected information than just the "source information" that Defendants say is irrelevant. For example, Interrogatory No. 1 asks for the identity of "all compounding pharmacies and pharmacists contacted by you or anyone on your behalf, from [sic] the time period January 1, 2010, to present, in an effort to obtain compounded execution drugs." (Reproduced at ECF No. 814-1, PageID 24364.) Defendant Mohr, Director of ODRC, responds "Mohr objects because Plaintiffs seek information protected from disclosure by the District Court's Protective Order (See ECF No. 629 and 632) and by applicable Ohio law." *Id.* Does the Protective Order apply to entities contacted who declined to participate? Does H.B. 663 apply to them? Arguably the scope of both the Protective Order and the statute apply

---

[4] *See Ex Parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 161-62 (1906) (observing that when "an appeal is allowed from an interlocutory order . . . it is given precedence in the appellate court, [but] that the other proceedings in the lower court are not to be stayed." In addition, "that which is contemplated is a review of the interlocutory order, and of that only. It was not intended that the cause as a whole should be transferred to the appellate court prior to the final decree. The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered."

10

because entities contacted are possible or potential participants in the execution process, but whether the Protective Order is valid or applies is within the scope of the pending appeal.

Less likely to fit is Request for Production 1 which asks for "any and all reports or other documentation created by explicit or implicit mandate of 01-COM-11 created from January 1, 2010 to present. This includes but is not limited to any reports related to the availability of sufficient quantities of Execution Drugs." Director Mohr makes the same objection. *Id.* at PageID 24366. The same objection language is incorporated in almost all of the Supplemental Responses to discovery. *Id.* at PageID 24367-81. The discovery requests seek a great deal more than "source information," but Defendants claim the Protective Order and the statute protect that broader scope of information.[5]

It would be disrespectful of the § 1292(b) process for this Court to decide questions of interpretation of the Protective Order while those questions are pending before the circuit court. For that reason, the Court has postponed those questions pending a decision in *Fears v. Kasich* in a number of orders. But time has become very short. It is now less than a month from the next-scheduled (Phillips) execution. Discovery is heavily underway and will present questions about the scope of the Protective Order and H.B. 663. In the absence of a stay of execution, those questions will have to be answered without guidance from the Sixth Circuit and with the risk that Phillips will be denied information that might have made a difference in his case.

**2.     The Court has Authority to Stay the Execution *Pendente Lite***

---

[5] The Court presumes it is H.B. 663 which is being referred to in that phrase "applicable Ohio law."

On a basic level, this Court's authority to stay the executions is hardly doubtful. Federal courts as equity courts have always exercised equity jurisdiction to maintain the status quo pending a decision on the merits of a case. 1 Story's Commentaries on Equity Jurisprudence § 57 (10th ed. 1870). The question, rather, is when it is proper to exercise that jurisdiction to enjoin an execution to permit the Court time to adjudicate a matter.

Defendants argue it is not proper to grant a stay *pendente lite* without concluding that Plaintiffs meet the substantive standard for a preliminary injunction set forth in *Cooey (Biros) v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009). Defendants argue "[t]hese standards apply even if the intent of the stay is to permit additional time for litigation because the effect of that order would be an injunction preventing Ohio from executing its judgment." (ECF No. 803, citing *Workman v. Bredesen*, 486 F.3d 896, 904 (6th Cir. 2007), and *Alley v. Little*, 181 Fed. Appx. 509 (6th Cir. 2006)).

A stay of execution *pendente lite* would indeed operate as an injunction, but it would not necessarily vacate the execution date set by the Ohio Supreme Court and re-set by the Governor's reprieve. This Court's sole intention is to stay the execution of Phillips beyond January 12, 2017, if, but only if, the decision in *Fears v. Kasich* is not handed down in time to apply it to this case. By staying the execution now in a preliminary injunction immediately appealable under 28 U.S.C. § 1291(a), this Court again respects the decisional process of the Court of Appeals. If that Court decides a stay *pendente lite* is inappropriate, entering it now gives that Court almost a month to decide that question, as opposed to the three days the appellate court had in *Workman*. If a decision is issued in *Fears* in time to apply it before the

preliminary injunction hearing set for January 3, 2017,[6] this Court will immediately dissolve the stay, apply *Fears*, and render any interlocutory appeal moot.

*Workman* is apposite, but its facts are critically distinguishable.  In that case, the district court entered a temporary restraining order and set a preliminary injunction hearing for May 14, five days **after** Workman's scheduled execution with the practical effect of sending the State of Tennessee back to the Tennessee Supreme Court for a new date.  That will only happen here if this Court is unable to apply a decision in *Fears* to this case before it reaches a decision on the preliminary injunction motions after the hearing scheduled for January 3-5, 2017.  In other words, instead of granting a stay which extends past the execution date to the preliminary injunction hearing date, which is what happened in *Workman*, this Court has set a preliminary injunction hearing before the execution date and enters a stay only to allow appropriate appellate litigation.

Entering a temporary restraining order at this point would have no utility.  Because the scheduled execution is more than twenty days in the future, any temporary restraining order entered now would have been converted in effect to a preliminary injunction if it extended beyond January 4, 2017.  *Sampson v. Murray*, 415 U.S. 61, 85-86 (1974).

*Workman* does not hold that any stay *pendente lite* must meet the substantive standards for preliminary injunctive relief.  Instead, it holds that Workman's failure to show likely success on the merits was fatal to injunctive relief when coupled with his extraordinary dilatoriness in moving for relief.

*Alley v. Little*, *supra*, is to the same effect:  Alley was unlikely to succeed on the merits and "was on notice as to both the particulars of the protocol and the availability of making a

---

[6] This Order does not vacate the January 3-5, 2017, setting.  In order to protect Plaintffs' interests in litigating all the claims in their Preliminary Injunction Motions before January 12, 2017, that setting remains in place.

claim such as the one he now raises for **several years** before he filed his last-minute complaint." 181 Fed. Appx. 509, 513. The district court had stayed Alley's execution pending a decision by the Supreme Court as to whether a challenge to method of execution could be brought in a 42 U.S.C. § 1983 action as opposed to habeas corpus; *Hill v. McDonough*, 547 U.S. 573 (2006), was then pending before the Supreme Court. In vacating the stay, the Sixth Circuit noted that the Supreme Court itself had refused stays pending that decision and indeed vacated stays issued by lower courts for the same purpose.

Plaintiffs rely on the stay of execution pending appeal entered by the Supreme Court in the case of Russell Bucklew, reported in the opinion of the Eighth Circuit in *Bucklew v. Lombardi*, 783 F.3d 1120, 1122-23 (8th Cir. 2014), and also reported at 572 U.S. ___, 134 S. Ct. 2333 (2014). Defendants argue that stays of execution by the Supreme Court are not precedential (ECF No. 803, PageID 24025, citing *Schwab v. Sec'y, Dept. of Corr.*, 507 F.3d 1297 (11th Cir. 2007)). That is a fair reading of Supreme Court practice as this Court understands it. But an unexplained grant of a stay of execution at least implies there is power to grant that relief, even if it does not tell the lower courts what standard to apply.

The Court believes the present circumstances of this case are unique. The Court is not aware of another case in which a §1292(b) appeal is pending on an outcome-determinative question in which a defendant was determined to proceed without awaiting a decision. Under those circumstances, a preliminary injunction is warranted, including a stay of execution if ultimately needed, to protect the integrity of the appellate process, without any conclusion on the usual four factors ordinarily needed for preliminary injunctive relief.

3.  **In the Alternative, Plaintiffs Meet the Usual Standard for Preliminary Injunctive Relief**

In determining whether preliminary injunctive relief is merited in a capital § 1983 cases, a trial or appellate court applies

> the following established standards  (1) whether [petitioner] has demonstrated a strong likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay. *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *[N.E.]. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991).

*Cooey (Biros) v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009).  Judge Frost applied these same criteria in a prior preliminary injunction decision in this case.  *In re:  Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1048 (S.D. Ohio 2012).  They are consistently applied by the Sixth Circuit to preliminary injunctive relief requests across subject matter areas, *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000); *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994); *NAACP v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989);  *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

**3.1.    Plaintiffs have shown a substantial likelihood of success on their judicial estoppel[7] claim.**

In his Sixth Claim for Relief, Plaintiff Phillips alleges that the State of Ohio permanently renounced the use of pancuronium bromide and potassium chloride in lethal injection executions (Fourth Amended Complaint, ECF No. 692, PageID 20637-43).  Plaintiffs Tibbetts and Otte raise the same claims (ECF No. 691, PageID 20496-500; ECF No. 695, PageID 21143-47).

The newly adopted version of the Execution Protocol adds a paralytic agent (vecuronium bromide, pancuronium bromide, or rocuronium bromide[8]) as the second drug and potassium chloride as the third drug in the three-drug protocol Ohio has announced it intends to use to execute Plaintiffs Phillips, Tibbetts, and Otte.

In 2009 death-row inmate Ronald Biros was scheduled to be executed under a three-drug protocol in which thiopental sodium was the first drug, followed by a pancuronium bromide and potassium chloride.  Ohio had set his execution date for December 8, 2009.  *Cooey (Biros) v. Strickland*, 588 F.3d 921 (6th Cir. 2009).  On October 19, 2009, Judge Frost stayed Biros' execution pending further order (Case No. 2:04-cv-1156, ECF No. 590).  However, on November 13, 2009, the State changed its protocol to shift to a one-drug protocol:  five grams of thiopental sodium administered intravenously.  *Id.*  The State then moved to vacate the stay, Judge Frost refused, and the State appealed.  The Sixth Circuit accepted the representation of the ODRC's then-director Terry Collins that "pancuronium bromide . . .  [and] potassium chloride will no longer be used as part of that process. . . ."  588 F.3d at 923.  This representation, repeated by counsel in the State's filings in that case, persuaded the Sixth Circuit that the

---

[7] Phillips' Sixth Claim for Relief combines claims for judicial estoppel, judicial admission, and/or promissory estoppel.  Only the judicial estoppel claim is being considered here.
[8] Since each of these drugs is apparently intended to achieve the same result, the Court makes no further distinction among them at this time, without prejudice to any evidence to the contrary to be offered at the preliminary injunction hearing.

asserted[9] constitutional violations implicit in the old procedure would not be repeated. This rendered moot Biros' challenges to the old protocol and led the circuit court to vacate the stay.

The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding. *Mirando v. U.S. Dept. of the Treasury*, 766 F.3d 540, 545 (6th Cir. 2014), citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001); *Warda v. Commissioner of Internal Revenue*, 15 F.3d 533, 538 (6th Cir. 1994).

> The doctrine of judicial estoppel "forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Griffith v. Wal-Mart Stores*, 135 F.3d 376, 380 (6th Cir. 1998), quoting *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1217 (6th Cir. 1990). Courts apply judicial estoppel in order to "preserve[] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment." *Id*. quoting *Teledyne*, 911 F.2d at 1218. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. *Id*.

*Wells Fargo Bank, N.A. v. La Salle Bank, N.A.*, 643 F. Supp. 2d 1014, 1029 (S.D. Ohio 2009)(Merz, M.J.).

The position the State of Ohio now takes – that it will execute Phillips, Tibbetts, and Otte under a three-drug protocol using a paralytic agent and potassium chloride -- is completely inconsistent with the position it took on appeal in *Cooey (Biros)* and on remand from that decision before Judge Frost. Ohio prevailed on its contrary position and are now judicially estopped from re-adopting a paralytic agent and potassium chloride as part of the Execution Protocol.

---

[9] The court made it clear that the unconstitutionality of the old protocol was "by no means clear." *Id.*

### 3.2. Irreparable Injury Absent Stay

Absent a stay, Phillips, Tibbetts, and Otte will be executed without being able to obtain the information which may be useful to them and may be permitted by the impending decision in *Fears v. Kasich*. That constitutes irreparable harm.

### 3.3. Harm to Others (Balance of Equities)

Unlike the death row plaintiffs in many of these cases, the named Plaintiffs did not delay at all in bringing their claims. As the Sixth Circuit emphasized in *Workman* and *Alley*, for example, those plaintiffs had ample prior opportunities to challenge their method of execution before filing "last minute" § 1983 actions. Although this consolidated case has been pending for many years, it was only on October 7, 2016, that Ohio amended its Execution Protocol to reintroduce a paralytic and potassium chloride, drugs which had been abandoned on November 13, 2009. The first knowledge Plaintiffs had of the reintroduction of these drugs was when they were named in open court during the October 3, 2016, status conference. Plaintiffs then had to re-plead by filing their Fourth Amended Complaint and motions for preliminary injunction on a short schedule set by the Court and not objected to by the State.

The State of Ohio has been in complete control of the timing of this matter. It  obtained reprieves  and the Protective Order ostensibly to obtain compounded pentobarbital for future executions. Plaintiffs have presented evidence from Defendants' privilege log that they may

have acquired the reintroduced drugs[10] as early as July 2016, but no notice of intent to amend the Protocol was given to either the Plaintiffs or the Court until October 3, 2016. Thus to the extent there is a short time to litigate the issues here, it is because the State has shortened it, not because Plaintiffs have delayed.

Defendants emphasize the interest of the State, both as sovereign and as representative for the victims and their families, in the prompt execution of judicial sentences, including death sentences. But the State has failed to show a compelling interest in executing these Plaintiffs before the Sixth Circuit can decide *Fears* and this Court can apply that decision. Defendants have not shown they will suffer any more than minor inconvenience in asking the Ohio Supreme Court for new death warrants for these three Plaintiffs.

### 3.4. The Public Interest

The public is vitally interested in the integrity of the judicial process implicit in waiting on a decision in *Fears*. The public interest is even more vitally concerned with enforcing judicial estoppel.

**Conclusion**

Accordingly, it is hereby ORDERED that the Defendants and all persons in concert with them are ENJOINED from executing Ronald Phillips, Raymond Tibbetts, or Garry Otte pending

---

[10] Midazolam is not covered by the judicial estoppel finding above, but had been apparently abandoned by the State after the execution of Dennis McGuire in January 2014. Plaintiffs thus had no reason to believe midazolam was coming back until October 3, 2016.

19

further order of this Court.  It is the Court's intention to vacate this stay as soon as it can apply the impending decision in *Fears v. Kasich* to this case.

December 19, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge
