IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
 PROTOCOL LITIGATION,

: Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs
 Phillips, Tibbetts, and Otte

## RULINGS ON DEFENDANTS' CLAIMS OF PRIVILEGE

This capital § 1983 case is before the Court on various claims of privilege made by the State of Ohio Defendants since the Status Conference of October 3, 2016. See, e.g., Privilege Log at ECF No. 814-2, Transcript of the December 16, 2016, Deposition of Stephen Gray (ECF No. to be assigned upon filing). The Court heard oral argument on the privilege issues on December 19, 2016.

The first such invocation of privilege was in the Defendants' Motion for Protective Order filed November 4, 2016 (ECF No. 705). Made under Fed. R. Civ. P. 26(c), the Motion requested an order that

> renders confidential, and not subject to disclosure, the identities of the persons and entities who provided these drugs or who may provide execution drugs to the Defendants in the future. Defendants have reason to believe that revealing the identities of

1

> these persons or entities could substantially interfere with efforts to obtain additional quantities of the drugs or even prevent the State from obtaining the necessary drugs, and thereby harm the State's interest in the enforcement of its criminal judgment.

*Id.* at PageID 21390.  The drugs already provided that are referred to in the preceding paragraph are midazolam, rocuronium bromide, and potassium chloride which the State Defendants represent they have obtained in sufficient quantities from FDA approved manufacturers to complete the executions of the above-named three Plaintiffs.  Even though these drugs were not specified in the execution protocol at the time they were obtained and not thereafter until October 7, 2016, Defendants ask the Court to read Judge Frost's Protective Order of October 26, 2015 (ECF No. 629) as applying to them because the same rationale exists for protecting them as existed for protecting the identities of potential suppliers of thiopental sodium or pentobarbital, whether compounded or manufactured, before the Protective Order was entered.  To the extent Judge Frost's Protective Order could not be read as protecting the identity of these drug-supplying entitles, Ohio asked the Court to recognize the privilege created by Ohio Revised Code § 2949.221 and 2949.222.  *Id.*  at PageID 21398.

On November 28, 2016, the Court denied this Motion without prejudice to its renewal after decision by the Sixth Circuit of the pending interlocutory appeal in this case, captioned *Fears v. Kasich*, Sixth Circuit Case No. 16-3149 (Decision and Order, ECF No. 741).  On December 19, 2016, given that no decision has yet been made in *Fears*, this Court entered a stay of execution *pendente lite* to protect the decisional process of the Sixth Circuit (ECF No. 834).

However, the Court has not vacated the preliminary injunction hearing set for January 3-5, 2017, and therefore intensive discovery is proceeding.  On December 16, 2016, the Court presided at the deposition of Stephen Gray, legal counsel for the Ohio Department of Rehabilitation and Corrections, and was called upon to make dozens of privilege rulings.  The

Court can no longer wait for a Sixth Circuit decision, given the pendency of so much discovery. Accordingly, the Court makes the following rulings on questions of privilege which have been raised in this case, subject to revision in the event of an inconsistent ruling in *Fears*:

1. Federal law, not state law, governs the recognition of any privilege to refuse to provide discoverable information in this case. The case is a federal question action under 42 U.S.C. § 1983. Even though there are supplemental state law claims made, federal privilege law governs all privilege questions in the case. *Kelly v. San Jose,* 114 F.R.D. 653 (N.D. Cal. 1987)(Brazil, M.), citing *Kerr v. U.S. District Court for the Northern District of California,* 511F.2d 192 (9th Cir. 1975), aff'd 426 U.S. 394 (1976); Wright & Graham, Federal Practice and Procedure: Evidence § 5685, citing *Breed v. District Court,* 542 F. 2d 1114 (9th Cir. 1976).

2. Defendants are not entitled to the "state secrets" privilege as to any information discoverable in this case. That category of absolute privilege has been reserved for military and/or national security information in the possession of the United States Government since its recognition by the Supreme Court in *United States v. Reynolds*, 345 U.S. 1 (1953). However, many federal courts have recognized a qualified privilege for confidential government information, sometimes called the official information privilege. *See Kelly, supra.* A list of factors to consider in applying such a qualified privilege is found in *Kelly* at 663 quoting *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D. Pa. 1973)(Becker, D.J.). This Court has recognized a qualified privilege for police department internal affairs files. *Urseth v. City of Dayton*, 110 F.R.D. 245, 252 (S.D. Ohio 1986)(Rice, J.). The Supreme Court in *Kerr, supra,* recognized such a qualified privilege for parole board files.

        Plaintiffs' argument that such a qualified privilege must be invoked by a department head or other high executive official, while appropriate to the absolute state secrets privilege, is not appropriate for governmental information of a less sensitive nature. In this case the invocation of the asserted privilege by counsel for the ODRC Defendants is sufficient, especially in light of Attorney Madden's representation that Director Mohr has approved doing so.

3. Ohio Rev. Code §§ 2949.221 and 2949.222 create a privilege and a classification of information as confidential under Ohio law. This Court has authority in ruling on a motion for protective order under Fed. R. Civ. P. 26(c) to recognize and accommodate the interests of Ohio in obtaining the drugs necessary to carry out the death sentences imposed on Plaintiffs by lethal injection, the only method of execution presently authorized by Ohio law. However, such accommodation is a matter of comity, not compulsion. In particular, reading the provisions of Ohio Revised Code § 2949.221(A)(B)(2) and (3) as prohibiting necessary discovery in this or similar cases, would raise serious constitutional questions and the Court declines to read the statute in that way.

4. To the extent this Court recognizes, as a matter of comity, the confidentiality interests sought to be protected by §§ 2949.221 and 2949.222, it will only recognize a qualified privilege, defeasible by the needs, if any, of Plaintiffs in this case to obtain necessary discovery. This is consistent with the position taken by Judge Frost in the Protective Order: although he did not recognize a privilege, he protected the identity of suppliers and potential suppliers of execution drugs from discovery under Fed. R. Civ. P. 26(c) for what he perceived to be the same reasons that Ohio enacted H.B. 663, now codified at

      Ohio Rev. Code §§ 2949.221 and 2949.222.  See ECF No. 629, PageID 19409.  Although Judge Frost's Protective Order has been appealed on his own certification, it remains presumptively valid.

5. Judge Frost's Protective Order does not by its terms apply to any execution drugs obtained by Ohio prior to October 7, 2016, the date the Execution Protocol was last amended.  The Protective Order provides it will apply to any drugs other than thiopental sodium or pentobarbital which are amended into the Protocol, but no such amendment occurred prior to October 7, 2016.  Judge Frost wrote:

    > At this time, "the specific drugs, compounded or not, that Ohio indicates in its execution protocol it will use or will potentially seek to use to carry out executions" means pentobarbital and thiopental sodium, compounded or not. If Ohio alters its execution protocol to include or substitute other drugs, those drugs would fall under the scope of this protective order unless Plaintiffs persuade this Court that the new drug(s) present some specific necessity for the source-and identity information Plaintiffs would seek.

    The drugs Ohio has obtained for use in the executions of the three named Plaintiffs were, according to Ohio's counsel, obtained before the Protocol was amended.

6. Plaintiffs have not yet demonstrated the need for the identity of any actual supplier of execution drugs since January 1, 2015.  Defendants' representation is that the execution drugs presently in hand were procured from FDA licensed manufacturers.  The Court finds Plaintiffs' argument to the contrary, most recently on December 19, 2016, to be unpersuasive, as did Judge Frost.  Thus although Judge Frost's Protective Order does not literally cover the 2016 suppliers of midazolam, rocuronium bromide, and potassium chloride, the Court EXTENDS the Protective Order from its entry date forward to protect

from discovery as to those suppliers the same information protected by Judge Frost's Order for suppliers and potential suppliers of thiopental sodium or pentobarbital.[1]

7. The Court rejects Plaintiffs' argument that §§ 2949.221 and 2949.222 do not apply to this case because they do not include language specifically making them applicable to pending cases. Plaintiffs' authority for that position, taken from the highly contentious "tort reform" litigation before the Ohio Supreme Court, is inapposite. This case, although it is now assigned one case number, is the consolidation of many cases filed separately or which would have been filed separately had the Court not allowed intervention. Given the backlog of death-sentenced inmates and the "sunset" provisions in §§ 2949.221 and 2949.222, the act would have had no impact at all if it did not apply to persons already on death row when it was adopted.

8. The Court likewise rejects Plaintiffs' narrow reading of *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), as limited to blocking third-party discovery of settlement negotiation communications. While that was the issue squarely presented by the appeal, the language of the opinion recognizes a privilege with a broader reach and the rationale relied on by the Court is broader than the third-party situation. Apart from *Goodyear*, Judge Frost imposed an absolute confidentiality requirement for the settlement discussions among the parties in the latter half of 2014 which remains in full force. See, e.g. ECF No. 483.

December 20, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[1] The Court had previously denied Defendants' renewed post-amendment motion for protective order (ECF No. 705) with the proviso that it could be re-filed once the Sixth Circuit had decided *Fears v. Kasich*. Given the discovery needed to be accomplished before the January 3-5, 2017, preliminary injunction hearing, this Court needs to act now.