**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

In re: OHIO EXECUTION
PROTOCOL LITIGATION,

: Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs
Phillips, Tibbetts, and Otte.

---

# DECISION AND ORDER DENYING MOTION TO STAY

---

This capital § 1983 case is before the Court on Defendants' Motion (ECF No. 967) to Stay the Court's Decision and Order Granting in Part and Denying in Part Plaintiffs' Motions for Preliminary Injunction (ECF No. 948)("Preliminary Injunction Order"). Plaintiffs oppose the Motion (ECF No. 977).

The Preliminary Injunction Order was entered January 26, 2017, and appealed the same day (ECF No. 949)[1]. The Motion to Stay was filed January 31, 2017, and the Court ordered it briefed on an expedited schedule (ECF No. 969), understanding that Defendants would seek expedited consideration of their appeal.

[1] The appeal has been assigned Case No. 17-3076.

Defendants seek to be able to proceed with the executions of the above-named Plaintiffs as presently scheduled: Phillips on February 15, 2017; Otte on March 15, 2017; and Tibbetts on April 12, 2017.

As Defendants note, the factors which must be considered in granting a stay pending appeal mirror those considered in granting preliminary injunctive relief in the first place:

> "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991). All four factors are not prerequisites but are interconnected considerations that must be balanced together. *Id.*

(Motion, ECF No. 967, PageID 34519, quoting *Coalition to Defend Affirmative Action v. Granhiolm*, 473 F.3d 237, 244 (6th Cir. 2006). The considerations as stated in *Coalition* are consistent with long-standing Supreme Court precedent. *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987), and previously followed by this Court. *Gillispie v. Timmerman-Cooper*, 2011 U.S. Dist. LEXIS 147841 (S.D. Ohio Dec. 22, 2011).

While the court of appeals also has authority to stay a preliminary injunction pending appeal, an application for stay must ordinarily be made in the first instance to the issuing court. Wright, Miller & Kane: Federal Practice and Procedure: Civil § 2908 3rd ed. 2016).

**Defendants' Motion**

**Likelihood of Success on Appeal:** On the first factor to be considered, Defendants argue that they are likely to prevail on appeal, "because *Glossip [v. Gross*, 135 S. Ct. 2726 (2015),] cleared any legal obstacle to the use of the midazolam-based protocol Ohio adopted."

(ECF No. 967, citing *Glossip*, 135 S. Ct. at 2739. Defendants argue that *Glossip* "establishes a Supreme Court sanctioned 'legislative fact' (just as *Baze* [*v. Rees*, 553 U.S. 35 (2008),] did) that, regardless of the standard of review there, the lower courts must accept." (ECF No. 967, citing *Franks v. Walker*, 768 F. 3d 744, 750 (7th Cir. 2014).

Defendants further cite *Glossip* for its finding that

> [N]umerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride. See, *e.g.*, 776 F. 3d 721 (case below affirming the District Court); *Chavez* v. *Florida SP Warden*, 742 F. 3d 1267 (affirming the District Court); *Banks* v. *State*, 150 So. 3d 797 (Fla. 2014) (affirming the lower court); *Howell* v. *State*, 133 So. 3d 511 (Fla. 2014) (same); *Muhammad* v. *State*, 132 So. 3d 176 (Fla. 2013) (same).

(ECF No. 967, PageID 34522, citing *Glossip*, 135 S. Ct. at 2739-40.)

Defendants also assert that the Preliminary Injunction Order errs in finding that the alternative execution method pled by Plaintiffs is sufficiently available to satisfy the Eighth Amendment standard on that issue explicated in *Glossip* (ECF No. 967, PageID 34522-23). Finally, Defendants believe that this Court's alternative finding of judicial estoppel regarding a paralytic agent and potassium chloride will not be sustained. *Id.* at PageID 34523.

**Balance of Equities:** Conflating the last two *Coalition* factors, Defendants argue the balance of equities favors their position because they acted in good faith in adopting an execution method "approbated by the Supreme Court" in *Glossip*. (ECF No. 967, PageID 34520). They reiterate that States have a "strong" or "important" interest in the timely execution of criminal judgments. *Id.* They note, without attempting to quantify, the "administrative and

logistical burden imposed on ODRC and the Governor by the need to reschedule execution dates for these inmates." *Id.* at PageID 34521.

**Irreparable Harm:** Defendants make no comment on the irreparable harm issue.

**Plaintiffs' Response:**

**Likelihood of Success:** Plaintiffs note that the standard of review for a preliminary injunction is abuse of discretion and argue there was no abuse of discretion in granting the preliminary injunction because of the extensive evidence taken and the quality of that evidence (ECF No. 977, PageID 36314-16). They also point out that Defendants' argument that judicial estoppel does not apply to a State was never raised before the preliminary injunction issued. *Id.* at PageID 36319-20. They argue that the preliminary injunction was and is necessary to preserve the status quo pending trial, whereas a stay would moot Phillips' claims and possibly those of Otte and Tibbetts. *Id.* at PageID 36320-21.

**Balance of Equities:** Plaintiffs argue Defendants will suffer no irreparable harm from denial of a stay whereas the irreparable harm to Plaintiffs from allowing them to be executed is the most severe of irreparable harms, noting that Defendants have not argued on this factor and presumably concede it. *Id.* at PageID 36322-25. Plaintiffs then offer a point-by-point response to Defendants balance of equities argument. *Id.* at PageID 36326-30.

**The Public Interest:** Plaintiffs respond separately to that portion of Defendants balance of equities argument that discusses the public interest. *Id.* at PageID 36325-26.

# vnalysis

The parties agree that the standard to be applied in deciding the Motion for Stay is the standard set out in *Coalition for Affirmative Action, supra*.

**Likelihood of Success on Appeal**

The standard for review of a preliminary injunction is whether its entry constituted an abuse of discretion. Therefore, in seeking to stay a preliminary injunction, an appellant must show that it is likely the district court abused its discretion. *Michigan State A. Philip Randolph Institute v. Jackson*, 833 F.3d 656, 662 (6th Cir. 2016), quoting *U.S. Student Ass'n Found. V. Land*, 546 F.3d 373, 380 (6th Cir. 2008). Under the abuse of discretion standard, "[t]he injunction will seldom be disturbed unless the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Michigan State A. Philip Randolph Institute, supra*, at 662, quoting *Mascio v. Pub. Empls. Ret. Sys. Of Ohio*, 160 F. 3d 310, 312 (6th Cir. 1998).

Defendants' argument for a stay goes directly to the merits of their appeal, without giving the Preliminary Injunction Order the benefit of the abuse of discretion standard. That standard is more deferential to a district court's exercise of its equity jurisdiction than review on the merits after trial would be. See David G. Knibb, Federal Court of Appeals Manual § 31:2-4 (6th ed.); see also *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540-41 (6th Cir. 2007)(stating that "[w]e generally review a district court's denial of a request for a

preliminary injunction for abuse of discretion. . . . This standard of review is 'highly deferential' to the district court's decision.)

This Court is not persuaded that it abused its discretion in entering the Preliminary Injunction Order.

**Plaintiffs' Eighth Amendment *Baze/Glossip* Claim**

**Midazolam as an Execution Drug:**

Defendants argue that the Supreme Court has found as a matter of legislative fact that midazolam as the first drug in a three drug execution protocol satisfies the Eighth Amendment. As this Court has said before and repeatedly, that is an overbroad reading of *Glossip*. The holding in *Glossip* as stated by Justice Alito is that "[t]he District Court did not commit clear error when it found that midazolam is highly likely to render a person unable to feel pain during an execution." 135 S. Ct. 27 at 2739. To unpack this holding, it treats the question of the effect of midazolam as a question of fact. Then it applies the usual standard for appellate review of a trial court's fact finding: is it clearly erroneous?

When a trial court decides any question of fact, it must do so on the basis of the evidence it has heard, not the evidence on which some other trial court made a finding of fact. The evidence before the District Court for the Western District of Oklahoma in *Glossip* was **not** before this Court in the preliminary injunction hearing. For example, noting the evidence before the District Court, Justice Alito found it "noteworthy that one or both of the two key witnesses in this case – Dr. Lubarsky for petitioners and Dr. Evans for respondents – were witnesses in [three other lethal injection challenges]." 135 S. Ct. at 2739. Neither of those witnesses testified in this

case nor did any of the experts who testified here advert to their testimony in *Glossip* or any other case.

Defendants go so far as to claim that approval of midazolam is a Supreme Court sanctioned "legislative fact," and remind this Court of its duty to accept legislative facts established by the Supreme Court (ECF No. 967, PageID 34522, citing *Franks v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014)). In *Franks*, the Seventh Circuit held that the Supreme Court had found as a matter of legislative fact that a photo identification requirement for voting "promotes public confidence in the electoral system." *Id.* Once that had happened a district court could not find to the contrary:

> The district judge heard from one political scientist, whose view may or may not be representative of the profession's. After a majority of the Supreme Court has concluded that photo ID requirements promote confidence, a single district judge cannot say as a "fact" that they do not, even if 20 political scientists disagree with the Supreme Court.

*Id.*

Perhaps the most famous use of legislative facts is the Supreme Court's finding in *Brown v. Board of Education*, 347 U.S. 483 (1954): "To separate them [grade and high school students] from others of similar age and qualifications solely because of their race generates a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone."[2] However controversial this finding was among many Americans, no lower court, so far as this Court is aware, ever questioned that it was a binding finding of fact.

Similarly here, if the Supreme Court had found in *Glossip* as a matter of legislative fact that "use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium

[2] This finding was supported not by record evidence but by the authorities cited in the famous footnote 11.

chloride," this Court would understand it was bound by that finding.[3] But that is not what the Supreme Court concluded in *Glossip*. Rather, it held that a district court finding to that effect, on the basis of the evidence before that court, was not clearly erroneous.

This Court understands the impulse to read Supreme Court decisions beyond their holdings which is what Defendants wish to do here and what ODRC Director Gary Mohr thought was appropriate when he approved the current protocol. The Supreme Court has the ability to provide finality which no other court in our system does. Because it presently decides only about seventy-five cases per term, it necessarily leaves many important issues undecided and litigants with those issues desiring finality. But respect for Supreme Court decisions requires reading them no more broadly than they are written because the justices may be expected to choose their words carefully and after deliberation.[4]

This Court's duty is to decide the cases before it on the evidence before it in those cases. As the Preliminary Injunction Decision hopefully makes clear, a great deal of evidence, lay and expert, has accumulated about midazolam as an execution drug since its use in January 2014 to execute Dennis McGuire. That evidence is summarized at length in the Preliminary Injunction Decision. It apparently has persuaded some States to abandon the drug: Arizona did so in late 2016, and Florida did so while this Court was hearing evidence in early January. (Note that all the non-Oklahoma cases cited by Justice Alito as approving midazolam are Florida cases.) Even Ohio discarded the McGuire protocol which combined midazolam with hydromorphone.

---

[3] Indeed, there would have been no need to take evidence here because, as Judge Easterbrook clearly implies in *Franks*, a district court cannot undercut a Supreme Court finding of legislative fact by hearing different evidence.
[4] Note that *Glossip* was decided at the end of the 2014 term by a close vote with vigorous dissents by Justices Breyer and Sotomayor. The majority opinion is of course the law and the dissents are not cited in the Preliminary Injunction Decision. But the majority opinion may have been written more narrowly than Defendants read it because of the need to maintain one of the silent majority votes.

In sum, the Court is not persuaded that its findings of fact about midazolam are clearly erroneous or a failure to abide by a legislative fact found by the Supreme Court in *Glossip*.

**Alternative Method**

The Preliminary Injunction Decision found that Plaintiffs satisfied their Eighth Amendment obligation to plead "a known and available alternative method of execution that entails a lesser risk of pain." (ECF No. 948, PageID 32228-30.) Defendants argue that the method suggested by Plaintiffs – a pentobarbital injection – is not readily implemented because they have been unable, despite efforts, to acquire pentobarbital. They do not dispute the finding that using pentobarbital would be preferable from the perspective of all parties to the current protocol nor the observation that the Supreme Court did "not attempt to quantify how available the alternative method must be to qualify" under *Glossip*. They note the alternative method "cannot actually be used in Phillips' execution, so it is neither feasible nor readily implemented" on February 15, 2017. (Motion, ECF No. 967, PageID 34523).

Defendants have cited no case deciding how available the alternative must be to meet the *Glossip* standard. In the absence of any precedent, this Court is unpersuaded that it abused its discretion in deciding, as a matter of first impression, that injectable pentobarbital satisfies the standard. Ohio and other States successfully used pentobarbital (and thiopental sodium, its analogue for execution purposes), so there is no question about its feasibility in the sense that it will work. Defendants presented no evidence that their efforts to obtain pentobarbital are unlikely to be successful. Indeed, a premise of the statute protecting the identity of drug sources was that such protection was necessary to obtain execution drugs and particularly compounded pentobarbital. If injected pentobarbital is infeasible, why put so much effort into obtaining it?

The Court concludes it did not abuse its discretion in finding Plaintiffs had satisfied their obligation to plead an alternative method of execution.

**Plaintiffs' Judicial Estoppel Claim**

In addition to finding Plaintiffs were likely to be successful on their *Blaze/Glossip* claim, the Preliminary Injunction Decision concluded they were likely to succeed on their claim that Defendants were judicially estopped from using a paralytic agent and potassium chloride by their assertion to the Sixth Circuit that they would never again do so, statements that led to the dismissal and execution in *Cooey (Biros) v. Strickland,* 588 F.3d 921 (6th Cir. 2009)(ECF No. 948, PageID 32235-37).

Defendants now assert that judicial estoppel does not "ordinarily" apply to the States (Motion, ECF No. 967, PageID 34523, quoting *Illinois ex rel Gordon v. Campbell*, 329 U.S. 362, 369 (1946). *Gordon* held that the United States' claims for unemployment and Social Security taxes had priority over similar claims by Illinois as to a debtor in receivership. Justice Rutledge did write, "ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states," but he did not end the sentence at that point as is implied by Defendants' ending what they quote with a period. Instead, he wrote **in the same sentence** "in the present litigation Illinois is in the position of any lien creditor" and judicial estoppel does apply. 329 U.S. at 369. Indeed, it was Illinois that instituted the receivership proceedings "and the state admitted in its answer to the Government's intervening

petition that the debtor was insolvent," a fact it attempted to deny later in the case and on which the Supreme Court concluded it was estopped. *Id.* [5]

Defendants rely on *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009), which held in a case of first impression that judicial estoppel should not preclude a change in position based on a change in the law. *Id.* at 470. The court quoted its own prior decision "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id.* quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990), and *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), in which judicial estoppel was applied to a State. This Court disclaims any finding that Ohio has engaged in any gamesmanship, cynical or otherwise, but believes the State should be held to its word, given by the highest official in the Department of Rehabilitation and Corrections and relied on by the Sixth Circuit to dismiss the *Biros* appeal.

**Irreparable Harm**

Defendants do not suggest the Court abused its discretion in finding they would be irreparably harmed if executed before this case is tried. In upholding an injunction in *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 670 (2004), the Supreme Court noted that "the potential harms from reversing the injunction outweigh those of leaving it in place by mistake." The same is true in this case. Even if Plaintiffs were willing to "die for the cause," their deaths

[5] The authority Justice Rutledge cites for the general proposition is a student note at 59 Harv. L, Rev. 1132 (1946). The Note is largely devoted to the distinction between judicial estoppel and res judicata. It devotes a total of three sentences to the proposition that "The principle of preclusion is not usually applied against the state or federal government." *Id.* at 1136.

would render their claims moot. If the event sought to be enjoined transpires before the appeal is heard, the appeal will be dismissed as moot. Wright, Miller & Kane: Federal Practice and Procedure: Civil § 2904 (3rd ed. 2016)

**The Public Interest**

In granting preliminary injunctive relief, the Court recognized the public's interest in speedy executions after conviction, to serve both the retributive and deterrence ends of criminal justice (ECF No. 948, PageID 32240). However, all three of the above-named Plaintiffs committed the murders of which they were convicted decades ago (Phillips 1993; Otte 1992; Tibbetts 1997). The Court concluded "it is very debatable how much loss in deterrence there is from waiting until a case can be tried on the merits." *Id.* at PageID 32241.

The States' Motion does not deal with that point, but instead quotes adjectives about the government's interest in enforcing criminal judgments, calling it "essential," "strong," "important," and "powerful and legitimate," (Motion, ECF No. 967, PageID 34520-21, quoting *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009); *Nelson v. Campbell*, 541 U.S. 637 (2004); *Hill v. McDonought*, 547 U.S. 573 (2006); and *Cooey (Beuke) v. Strickland,* 604 F.3d 939 (2010). Adjectives are not analysis. Defendants nowhere argue against the competing public interest in enforcing the Constitution. Whatever adjectives the Supreme Court may have used in *Nelson* and *Hill*, those two cases gave death row inmates a whole new litigation tool for attacking their sentences, straight civil rights litigation under 42 U.S.C. § 1983 as opposed to habeas corpus.

While the public is interested in **speedy** justice, it is also interest in **legal** justice. Our Nation's shameful history of thousands of lynchings during Jim Crow helped shape the modern

writ of habeas corpus. See *Frank v. Mangum*, 237 U.S. 309 (1915). The public's interest is not solely in speed.

**Conclusion**

The Court is not persuaded it abused its discretion in entering the Preliminary Injunction Order. The Motion to Stay is therefore DENIED.

February 7, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge