# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re:  OHIO EXECUTION
  PROTOCOL LITIGATION,          :      Case No. 2:11-cv-1016

                                      Chief Judge Edmund A. Sargus, Jr.
                                      Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs
  Tibbetts and Otte

---

# DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

---

This case is before the Court on Motion of Defendants Kasich, Mohr, Erdos, Morgan, Gray, Vorhies, Theodore, Jenkins, Coleman, and the un-named and anonymous execution team members ("Moving Defendants") to dismiss in part Plaintiffs' Fourth Amended and Supplemental Complaints (ECF No. 691 as to Mr. Tibbetts; ECF No. 695 as to Mr. Otte) and the Joint Ohio Corrupt Practice Act ("OCPA") Supplement to Tibbetts' and Otte's Fourth Amended Complaints (ECF No. 954).  The Motion is filed at ECF No. 981; Plaintiffs' Memorandum in Opposition is at ECF No. 1018; Defendants Reply is at ECF No. 1033.

The Moving Defendants[1] seek dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, judgment on the pleadings under Fed. R. Civ. P. 12(c).  The Motion is

---

[1] Counsel for the Moving Defendants do not represent any of the other parties in the case, none of whom have yet been identified or served with process.  Therefore the Motion is made only on behalf of the Moving Defendants.

therefore a "dispositive" motion within the meaning of Fed. R. Civ. P. 72. However, these two Plaintiffs and the Defendants as respects these two Plaintiffs have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c)(ECF No. 734).

**Subject Matter Jurisdiction**

Defendants seek dismissal on the grounds this Court lacks subject matter jurisdiction of the controversy.

Because federal courts are courts of limited jurisdiction, they are empowered to hear only those cases which are within the judicial power of the United States as defined in the United States Constitution and as further granted to them by Act of Congress. *Finley v. United States*, 490 U.S. 545, 550 (1989); *Aldinger v. Howard*, 427 U.S. 1, 15 (1976). Therefore there is a presumption that a federal court lacks jurisdiction until it has been demonstrated. *Turner v. President, Directors and Co. of the Bank of North America*, 4 U.S. 8 (1799). Facts supporting subject matter jurisdiction must be affirmatively pleaded by the person seeking to show it. *Bingham v. Cabot*, 3 U.S. 382 (1798). The burden of proof is on the party asserting jurisdiction if it is challenged. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936). A federal court is further obliged to note lack of subject matter jurisdiction *sua sponte. Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Capron v. Van Noorden*, 6 U.S. 126 (1804); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *Clark v. United States*, 764 F.3d 653 (6th Cir. 2014).

The burden of persuasion on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442 (1942); *Moir v. Greater Cleveland Regional Transit Authority*,

895 F.2d 266 (6th Cir. 1990); 5A Wright and Miller, *Federal Practice and Procedure, Civil 2d* §1350 (1990).

A facial attack is proper under rule 12(b)(1) and requires the Court to assume the truth of all allegations made by a plaintiff. *DLX, Inc., v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *citing RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); and *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990).

"Because at issue in a factual [as opposed to facial] 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Federal Savings and Loan Ass'n.*, 549 F.2d 884, 890 (3rd Cir. 1977), quoted in *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996); *Rogers v. Stratton Industries, Inc*., 798 F.2d 913 (6th Cir. 1986).

The Court reads the Motion to Dismiss as raising a facial as opposed to a factual objection to subject matter jurisdiction. Moving Defendants argue that Plaintiffs' claims are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy." (Motion, ECF No. 981, PageID 36999-37000, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), quoting in turn *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974).) Plaintiffs do not respond to Defendants' Fed. R. Civ. P. 12(b)(1) argument.

In *Steel Co.*, the Court rejected the practice of some lower courts of assuming jurisdiction and deciding a case's merits as violating the jurisdictional limits of Article III. Although they

lacked Article III standing, the Citizens Assn. had pleaded a sufficiently substantial claim to satisfy that jurisdictional requirement. The Court held

> It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case. See generally 5A C. Wright & A. Miller, Federal Practice and Procedure § 1350, p. 196, n. 8 and cases cited (2d ed. 1990). As we stated in *Bell* v. *Hood,* 327 U.S. 678, 682, 90 L. Ed. 939, 66 S. Ct. 773 (1946), "jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Rather, the District Court has jurisdiction if "the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," *id.,* at 685, unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.,* at 682-683; see also *Bray* v. *Alexandria Women's Health Clinic,* 506 U.S. 263, 285, 122 L. Ed. 2d 34, 113 S. Ct. 753 (1993); *The Fair* v. *Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 57 L. Ed. 716, 33 S. Ct. 410 (1913). Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N. Y.* v. *County of Oneida,* 414 U.S. 661, 666, 39 L. Ed. 2d 73, 94 S. Ct. 772 (1974); see also *Romero* v. *International Terminal Operating Co.,* 358 U.S. 354, 359, 3 L. Ed. 2d 368, 79 S. Ct. 468 (1959).

523 U.S. at 89. Certainly some if not all of Plaintiffs' claims are arguable under the Constitution. There is thus federal question jurisdiction over this case – a claim, for example, that a method of execution violates the Eighth Amendment is plainly cognizable in a proceeding under 42 U.S.C. § 1983. *See Nelson v. Campbell*, 541 U.S. 637 (2004), and *Hill v. McDonough*, 547 U.S. 573 (2006). Defendants' general subject-matter jurisdiction defense is rejected. Their

Eleventh Amendment immunity defense (Motion, ECF No. 981, PageID 37000-002) is considered below with the relevant Causes of Action.

**Cognizability**

Moving Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) or judgment on the pleadings under Fed. R. Civ. P. 12(c) on the ground that many of Plaintiffs' Causes of Action do not state a claim upon which relief can be granted. The parties agree the same standard of cognizability applies under both Rules. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008); *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

"The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, Federal Practice and Procedure: Civil 2d §1356 at 294 (1990); *see also Gex v. Toys "R" Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is designed to test the sufficiency of the complaint. *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the

> complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558 (*overruling Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and specifically disapproving of the proposition from *Conley* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545 (6th Cir. 2007). In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced.

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678; *see also Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), *citing League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(stating allegations in a complaint "must do more than create speculative or suspicion of a legally cognizable cause of action; they must show entitlement to relief"); *see further Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009); *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011) (holding a plaintiff is not entitled to discovery to obtain the necessary plausible facts to plead.)

Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . . Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-630 (6th Cir. 2009).

For purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). A *pro se* litigant is entitled to liberal construction of his or her

pleadings. *Haines v. Kerner*, 404 U.S. 519 (1972); *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988); *followed Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236 (6th Cir. 1993); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995). The Court "need not accept as true legal conclusions or unwarranted factual inferences*."* *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Bare assertions of legal conclusions are not sufficient. *Rondigo L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Sogevalor, S.A. v. Penn Central Corp.*, 771 F. Supp. 890, 893 (S.D. Ohio 1991). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.*, *citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); see also Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1357 at 311-318 (1990).

A court "need not accept as true legal conclusions or unwarranted factual inferences and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010). "[A] formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

# Analysis

Moving Defendants seek dismissal only of certain claims made by Plaintiffs. Those claims are discussed seriatim below.

## First Cause of Action[2]

Withdrawn from Fourth Amended Complaint (ECF No. 691, PageID 20273-74).

## Second Cause of Action

Plaintiffs' Second Cause of Action alleges violation of the Due Process Clause of the Fourteenth Amendment as follows:

> 999. As to each of the Due Process Clause violations alleged below, Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Fourth Amended Complaint as if fully rewritten here.
>
> 1000. An execution carried out using the drugs contemplated in the Execution Protocol will not be "quick," nor will it be "painless," physically and/or mentally.
>
> 1001. Defendants are aware that an execution using the Execution Protocol will almost certainly take more than thirty minutes

---

[2] Pleading claims as "causes of action" was replaced in 1938 by "claims for relief." Fed. R. Civ. P. 8(a). Nonetheless, many plaintiffs' counsel continue to use the phrase "cause of action." It took the British Navy almost 200 years after it was learned that citrus would prevent scurvy to institute the practice of distributing limes to its sailors. The British Board of Trade took another seventy years to introduce the practice in the merchant marine. See Everett M. Rogers, DIFFUSION OF INNOVATIONS (5th ed.2003) at 7-8.

following the injection of the execution drugs until the inmate is dead in accordance with Ohio law set forth in Ohio Revised Code § 2108.40, but they willingly and knowingly disregard this risk.

1002. Defendants are aware than an execution using the Execution Protocol will produce a lingering death as the condemned inmate slowly suffocates to death or suffers a heart attack over a period that is likely to be 10-15 minutes or more, but they willingly and knowingly disregard this risk.

1003. Defendants are aware that an execution using intravenously injected paralytic drug and/or potassium chloride will subject the condemned inmate to searing, unconstitutionally painful burning sensations upon injection if the inmate has not been sufficiently rendered unaware and unable to feel and experience pain, and they are aware of the significant risk/certainty that midazolam is incapable of doing just that, but they willingly and knowingly disregard those risks.

1004. Defendants are aware that an execution using improperly compounded drug(s) will subject the condemned inmate to painful burning sensations upon injection intravenously, and they are aware of the significant risk of obtaining improperly compounded drug(s) to use in an execution, but they willingly and knowingly disregard this risk.

1005. Defendants are aware that at least a not-insignificant number of Plaintiffs, including Plaintiff here, possess individual mental/psychological conditions and characteristics which make such them substantially likely to suffer from a paradoxical effect upon injection of the Execution Protocol's drugs, but Defendants willingly and knowingly disregard this risk.

1006. DRC Defendants have created, maintained, and administered an overarching execution policy and written Execution Protocol that, if used to execute Plaintiff's death sentence, will violate his constitutionally protected liberty, life, and property interests (as arising from Ohio Rev. Code § 2949.22(A) and DRC Policy 01-COM-11) in expecting and receiving a "quick and painless death" and/or a humane and dignified execution.

1007. Ohio Revised Code § 2949.22(A) creates valid liberty, life, and property interests vested in Plaintiff in expecting a "quick and painless" death.

1008. Ohio Revised Code § 2949.22(A) also creates valid liberty, life, and property interests vested in Plaintiff in receiving a "quick and painless" death.

1009. DRC Policy 01-COM-11 is binding state law, and creates valid liberty, life, and property interests vested in Plaintiff in expecting a humane and dignified death.

1010. DRC Policy 01-COM-11 is binding state law, and creates valid liberty, life, and property interests vested in Plaintiff in receiving a humane and dignified death.

1011. These interests are rights vested in a small class of individuals that have a legitimate claim of entitlement to expect and receive a quick, painless, humane and dignified death.

1012. Plaintiff, as a death row inmate, is a member of the only group that is the intended beneficiary of these guarantees.

1013. Under the express terms of § 2949.22(A) and DRC Policy 01-COM-11, Defendants have no discretion in whether to provide a quick, painless, humane and dignified death to Plaintiff or some kind of death other than a quick, painless, humane and dignified one.

1014. These interests arising under state law are protected as rights under the substantive and procedural elements of the Due Process Clause of the Fourteenth Amendment.

1015. Having granted Plaintiff interests in expecting and receiving a quick, painless, humane and dignified execution, Defendants may not deprive him of those rights in violation of procedural and substantive due process under the Fourteenth Amendment.

1016. Defendants' denial of Plaintiff's rights to expect and receive a quick, painless, humane and dignified death is arbitrary and conscience-shocking.

1017. The pattern of deviations and/or variations from Defendants' execution policy and written Execution Protocol engaged in by many of the actors involved, intentional or otherwise, combined with the amount of discretion that Defendants claim under their overarching execution policy and under the written protocol, along with substantial evidence of incompetence or inability to perform in the execution context, cumulatively point to an unacceptable risk of violating Plaintiff's rights.

1018. DRC Defendants' most recent discretionary, and unconscionable, choice to resurrect an even worse version of the original three-drug method for use in their Execution Protocol, after renouncing that method in November 2009 and representing that it would never be used again, and after discarding midazolam after three highly publicized botched executions using that drug, is only the latest, and perhaps most egregious, of the many of deviations and/or variations they have made. In making those representations in November 2009, DRC Defendants assured the Court, the Sixth Circuit, the public, and the Plaintiffs that the paralytic drug and potassium chloride would not be used in Ohio executions going forward. They also knowingly rejected any further use of midazolam as an execution drug. Those drugs, in other words, shall no longer be among the drugs authorized by the execution policy, and their use would thus be a violation of Core Element # 2.

1019. Yet now, seven years later, and in order to expeditiously execute at least three of Plaintiffs, DRC Defendants have intentionally deviated from those binding representations, and have rewritten the policy to "authorize" the use of the very drugs DRC Defendants had previously renounced, as more fully alleged earlier throughout this Fourth Amended Complaint.

1020. Defendants manifest deliberate indifference towards, or intentional deprivation of, Plaintiff's statutorily created liberty, life, and property interests in expecting and receiving a quick,

painless, humane and dignified death, interests protected as rights by the substantive and procedural elements of the Fourteenth Amendment's Due Process Clause in the following ways:

by what DRC Defendants include and exclude from their overarching execution policy;

by their procedures and considerations for development of the written Execution Protocol;

by their discretionary and faulty administration of the execution policy and the Execution Protocol; and

by their willingness to shade or color the official record to keep secret critical details about an execution and those who acted outside the law to facilitate it.

1021. Matters that DRC Defendants include or exclude from their overarching execution policy include, but are not limited to, the following:

Defendants' contemplated use of execution drugs they had previously renounced or rejected for good cause

Defendants' contemplated use of execution drugs manufactured and/or otherwise supplied by the Drug Source Defendants using compounding or illegally imported or otherwise sourced drugs;

Defendants' intended use of the specific drugs in the Execution Protocol despite their knowledge of the risks those drugs create;

Defendants' continued refusal to adequately prepare for and provide medical assistance as necessary in the execution context, even with full notice of that necessity.

1022. Plaintiff's statutorily created liberty, life, and property interests in expecting and receiving a quick, painless, humane and dignified death that are protected as rights are separate and distinct from the rights protecting Plaintiff against cruel and unusual punishment as provided in the Eighth Amendment.

1023. In all the foregoing ways, Defendants violate 42 U.S.C. §
1983 and Plaintiff's rights protected by the Fourteenth Amendment
to the United States Constitution.

(Fourth Amended Complaint, ECF No. 691, PageID 20273-79; ECF No. 695, PageID 20959-63.)

Moving Defendants assert this Second Cause of Action is foreclosed by controlling precedent (Motion, ECF No. 981, PageID 37003-04, citing *Cooey v Strickland*, 2010 U.S. Dist. LEXIS 81841 (S.D. Ohio Aug 12, 2010)(Frost, J.)). Judge Frost in turn relied on *Reynolds (Brown) v. Strickland*, 363 Fed. Appx. 394 (6th Cir. 2010); *Reynolds v. Strickland*, 598 F.3d 300 (6th Cir. 2010); and *Cooey (Biros) v. Strickland*, 589 F.3d 210 (6th Cir. 2009). Defendants also rely on *Cooey (Beuke) v. Strickland*, 604 F.3d 939 (6th Cir. 2010).

Plaintiffs acknowledge that *Cooey (Biros)* rejected a parallel claim in that case that Ohio Revised Code § 2949.22(A) created a life, liberty, or property interest protectable under the Due Process Clause of the Fourteenth Amendment (Memo Opp., ECF No. 1018, PageID 29680). They argue that "*Cooey (Biros)* and its progeny were wrongly decided . . . ." *Id.*

Because *Cooey (Biros)* is a published decision of the Sixth Circuit, it is binding on this Court in the absence of an en banc reversal or a Supreme Court decision to the contrary. *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001); *Salmi v. Secretary of HHS*, 774 F.2d 685, 689 (6th Cir. 1985); *accord* 6th Cir. R. 206(c). There has been neither.

Plaintiffs note that the "second part of [their] Second Causes of Action alleged Due Process Clause violations related to the denial of state-created life, liberty [,] and property interests in expecting and receiving a humane and dignified execution" which they say does not depend on Ohio Revised Code § 2949.22(A)(Memo Opp., ECF No. 1018, PageID 39686). They

assert the Motion to Dismiss as to the "'humane and dignified' rights-creating language" should be denied.

Although not cited in the Memorandum in Opposition, the Fourth Amended Complaint cites Ohio's execution policy, Policy 01-COM-11, as requiring "that all execution processes must be performed in a professional, humane, sensitive, and dignified manner." (ECF No. 691, PageID 20047, ¶ 78.) It later claims that this Policy creates "constitutionally protected liberty, life, and property interests. . . ." *Id.* at PageID 20275, ¶¶ 1006, 1009-1010. Defendants reply that this amounts to a mere "artful parsing" of the claim because, under *Cooey (Biros)* "Defendants' execution policy does not create any individually enforceable rights." (Reply, ECF No. 1033, PageID 40378.)

Although *Cooey (Biros)* did not address the claim made here for constitutional protection of a right to a humane and dignified execution, it did address the parallel claim of a constitutionally protected right to a quick and painless death embodied in Ohio Revised Code § 2949.22(A). Rejecting that claim, the Sixth Circuit wrote:

> We are not persuaded by Biros's assertion that § 2949.22 creates a federal right because the statute creates "liberty and property interests in a 'quick and painless execution'" protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. R. 610 at 9. Biros is unlikely to show that the reach of any such right extends beyond the incorporation of the Eighth Amendment.

589 F.3d at 234. While the conclusion is summary, there is no reason why its logic would not extend to a claim of rights created by the Execution Protocol.

Aside from the *Cooey (Biros)* precedent, Plaintiffs' argument is unpersuasive. First of all, the notion of having a property interest in a humane and dignified execution is completely

foreign to § 1983 jurisprudence. One can have a property interest in certain government benefits which is protected by procedural due process, but it is difficult to conceptualize an execution as something in which one could have a property interest.

A liberty or life interest is easier to conceptualize under these circumstances. The logic appears to be that, since the Execution Protocol creates a duty, there must be a correlative right. Plaintiffs' cite Chief Justice Brown's reliance in his dissent in *Scott v. Houk*, 127 Ohio St. 3d 317 (2010), on Wesley Newcomb Hohfeld's Some Fundamental Legal Conceptions as Applied in Judicial Reasoning, 23 Yale L. J. 16 (1913). Influential as Hohfeld's work has been in general jurisprudence and particularly the right-duty correlation, it has never been constitutionalized. That is, so far as the undersigned is aware, neither the Sixth Circuit nor the Supreme Court has used the right-duty correlation to infer generally the existence of a state-created right protected under § 1983 from the existence of a state-created duty. Indeed, the logic of recent Supreme Court decisions cuts in the opposite direction. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005).

In sum, the Court agrees with Defendants that Ohio's Execution Protocol does not create a right to a humane and dignified execution which is enforceable in a § 1983 action. The Second Causes of Action are therefore ordered DISMISSED for failure to state a claim upon which relief can be granted.

**Third Cause of Action**

These Causes of Action were withdrawn in the Fourth Amended Omnibus Complaint (ECF No. 691, PageID 20279).

**Fourth Cause of Action**

Plaintiffs' Fourth Cause of Action pleads claims under the Equal Protection Clause (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20279-321); (Otte, ECF No. 695, PageID 20964-998).

Defendants' Motion to Dismiss the Fourth Causes of Action is DENIED on the basis of the law of the case cited in Plaintiffs' Memorandum in Opposition.

**Fifth Cause of Action**

In their Fifth Causes of Action, Plaintiffs Tibbetts and Otte seek to redress "violations of fundamental rights arising under the principles of liberty and/or natural law which are protected by the Ninth Amendment." (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20321, et seq.); (Otte, ECF No. 695, PageID 20998 et seq.).

Defendants assert the Fifth Causes of Action should be dismissed on the basis of controlling precedent (Motion, ECF No. 981, PageID 37015-16).

Plaintiffs respond that they are not claiming rights arising from the Ninth Amendment itself but

> fundamental but unenumerated rights arising from the principles of liberty and natural law, such as the right to privacy, the right to personal dignity, the right to bodily integrity, his right to not be the unwilling subject of forced, involuntary human experimentation conducted by Defendants, and others inherent in the concepts of liberty and/or natural law.

(Memo Opp., ECF No. 1018, PageID 39716.)

The Court agrees with Defendants that the Fifth Cause of Action is precluded by the Sixth Circuit's decision in *Gibson v. Matthews*, 926 F.2d 532 (6th Cir. 1991). While Plaintiffs offer a technical distinction in that the rights they assert are not claimed to arise directly from the Ninth Amendment, 42 U.S.C. § 1983 provides procedural due process protection for rights either created directly by the Constitution or for life, liberty, or property interests created by state law, not by natural law or the "concept of liberty."

The Fifth Causes of Action are DISMISSED for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

**Sixth Cause of Action**

Plaintiffs' Sixth Causes of Action assert violations of the First Amendment in the restrictions placed on the length and content of their last statements:

> 1200. As to each of the constitutional violations alleged below, Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Fourth Amended Complaint as if fully rewritten here.
>
> 1201. Defendants' written protocol places restrictions on the length and content of an inmate's last statement, and those restrictions are not necessary or the least restrictive means to achieve a governmental interest.
>
> 1202. The restrictions will have a chilling effect on an inmate's expressive speech because the written protocol gives the Warden discretionary but unguided authority to impose restrictions on the length of an inmate's last statement, and to terminate a statement based on content, i.e., to terminate a statement if the Warden subjectively believes it is intentionally offensive to others, without any further explanation on how those restrictions are to be applied.

1203. Plaintiff has a fundamental right protected by the First Amendment, the Ninth Amendment, and the Fourteenth Amendment to the federal constitution to make a final statement free of the restrictions contained in Defendants' written protocol.

1204. The restrictions in Defendants' written protocol related to an inmate's last words violate well-established First Amendment prohibitions on content-based discrimination in regulating speech.

1205. The restrictions in Defendants' written protocol related to an inmate's last words violate well-established First Amendment prohibitions related to the public forum and/or limited public forum doctrines.

1206. The restrictions in the written protocol related to an inmate's last words discriminate against an inmate's expressive speech on the basis of viewpoint, because the Warden may impose restrictions the Warden subjectively believes to be intentionally offensive.

1207. The restrictions in the written protocol related to an inmate's last words are not reasonable in light of the purpose of an execution, and Plaintiff is provided no alternative way to communicate the entirety of his last words if the Warden restricts Plaintiff's speech.

1208. There are no governmental interests to justify the restrictions on an inmate's expressive speech provided in the written protocol.

1209. The written protocol, facially and as applied to him, violates Plaintiff's freedom of speech rights protected by the First, Ninth and Fourteenth Amendments.

1210. Upon information and belief, the restrictions in Defendants' written protocol related to an inmate's last words also violate the terms of a settlement agreement to which some of the original Defendants in these lethal injection cases, and at least one former Plaintiff in this action, Frederick Treesh, were a party, in *Treesh v. Taft*, No. 99-624, S.D. Ohio.

> 1211. Upon information and belief, under the terms of the settlement agreement, Defendants' protocol would place no restrictions on the content and/or the duration of an inmate's last statement.
>
> 1212. In all the foregoing ways, Defendants violate Plaintiff's rights to free speech protected by the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

(Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20325, et seq.); (Otte, ECF No. 695, PageID 21001, et seq).)

Defendants asserts this claim should be dismissed because the Court, per Judge Frost, already considered and rejected an identical claim (Motion, ECF No. 981, PageID 37016-17, relying on *In re: Ohio Execution Protocol Litig. (Wiles)*, 868 F. Supp. 2d 625, 649 (S.D. Ohio 2012)).

Plaintiffs distinguish *Wiles* by pointing out that Judge Frost was there deciding an equal protection claim. While that is correct, the equal protection claim being made there was that the regulation of last words burdened a fundamental right, the right to freedom of speech. Judge Frost analyzed the parameters of that right in the last words context and found that the regulation in question was reasonable in the execution context and therefore not a violation of the First Amendment.

Plaintiffs also distinguish *Wiles* on the ground that Wiles did not challenge that portion of the last words regulation that allows the Warden to impose reasonable restrictions on the content and length of the last statement. Judge Frost noted that Wiles was not challenging that portion of the Protocol. *Wiles*, 868 F. Supp 2d at 651. Although Tibbetts and Otte are challenging that portion of the Protocol, the evidence they cite of likely restrictions which might be imposed by Warden Erdos (ECF No. 1018, PageID 39719) are not unreasonable regulations in this context.

The Sixth Causes of Action are therefore DISMISSED.


**Seventh Cause of Action**


In their Seventh Causes of Action, Plaintiffs assert their Fourteenth Amendment due process rights are violated by Defendants as follows:

> 1213. Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Fourth Amended Complaint as if fully rewritten here.
>
> 1214. DRC Defendants have failed to definitively inform Plaintiff about which method of execution they intend to apply to him in such a way that Plaintiff can be sure of which execution method Defendants will use on him, whether Plan 1, Plan 2 or Plan 3.
>
> 1215. DRC Defendants have not provided Plaintiff with the identification information of any of the Drug Source Defendants from whom they will obtain the execution drugs to be used at the Plaintiff's execution.
>
> 1216. Indeed, DRC Defendants were actively involved, in late 2014, in efforts to persuade the Ohio General Assembly to introduce and enact legislation, i.e., HB 663, that would cause the identification information of Drug Source Defendants and others to be: (a) classified as confidential, privileged under law, and not subject to disclosure by any person, state agency, governmental entity, board, or commission or any political subdivision as a public record under section 149.43 of the Ohio Revised Code or otherwise; (b) no longer subject to disclosure by or during any judicial proceeding, inquiry, or process, except as otherwise provided in the new law; and (c) no longer subject to discovery, subpoena, or any other means of legal compulsion for disclosure to any person or entity, except as otherwise provided in the new law.
>
> 1217. These efforts resulted in the enactment of HB 663, which became effective March 23, 2015, and the pertinent provisions

referenced here are codified at Ohio Revised Code §§ 149.43(A)(1)(cc), 2949.221, and 2949.222.

1218. Under the purported authority of the referenced provisions of HB 663, DRC Defendants have refused to provide Plaintiff with the identification information of any of the Drug Source Defendants from whom DRC Defendants will obtain the execution drugs to be used at the Plaintiff's execution.

1219. "The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending . . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted).

1220. "The right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath,* 341 U.S. 123, 168 (1951 (Frankfurter, J., concurring).

1221. The only meaningful time when Plaintiff can challenge the method of his own execution is before he is executed.

1222. "Fundamental fairness, if not due process, requires that the execution protocol that will regulate a prisoner's death be forwarded to him in prompt and timely fashion." *Oken v. Sizer*, 321 F. Supp. 2d 658, 664 (D. Md. 2004), *stay vacated*, 542 U.S. 916 (2004).

1223. The Execution Protocol purports to provide timely notice to an inmate of the manner in which he or she will be executed including the execution drugs to be used, but that assurance is merely illusory.

1224. There is no definitive deadline in the written protocol by which the Warden must inform the inmate of what the Warden has decided, and the Medical Team can make a different determination at any time— including even the morning of a scheduled execution—without any further notice to the inmate required.

1225. Plaintiff's due process rights are violated when Defendants provide information about their Execution Protocol but then carry out the execution in a manner that differs from those representations.

1226. DRC Defendants fail and refuse to provide critically relevant information concerning the identification information of the Drug Source Defendants and their experience, training, qualifications, credentials, and performance history.

1227. By failing to require and provide adequate notice of exactly which method of execution the Defendants will use, and of the identification information of the Drug Source Defendants, Defendants are depriving Plaintiff of his right to notice and an opportunity to be heard in the form of a constitutional challenge to Defendants' execution method, in violation of the Due Process Clause of the Fourteenth Amendment.

1228. Furthermore, because there is no requirement for background checks, credentialing, or anything of the sort related to which Drug Source Defendants with whom the DRC Defendants will work to manufacture execution drug(s), or Drug Source Defendants' drug manufacturing facilities, and because there is no mechanism by which any assessments or quality-control inspections, testing, analysis, or other similar procedures of any kind are done to ensure strict compliance with all relevant federal and State of Ohio laws and Core Elements ## 1, 2, and 3, Defendants are depriving Plaintiff of his right to notice and an opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment.

1229. Plaintiff will have no meaningful opportunity to challenge the involvement of Drug Source Defendants in a critical aspect of the written execution protocol if he is not informed in advance about the source of the execution drug(s) to be used for his execution, the specific involvement of each and every Drug Source Defendant, and the identification information of such Drug Source Defendants.

1230. Nor will he have a meaningful opportunity to challenge the use of execution drugs manufactured for the sole purpose of killing him which have a substantial, objectively intolerable risk of being something other than the pure, sterile, unadulterated, not expired/not past their use-by date, not-imported drugs of the proper potency, content, pH level and other relevant characteristics, as required to be used by the 2016 Execution Protocol and Defendants' execution policies.

1231. Defendants' history of their misadventures in carrying out executions and their history of making representations and then reneging on those representations, coupled with the essentially unlimited discretion the Execution Protocol purports to invest in the DRC Director, means that Defendants' ad hoc application of its Execution Protocol violates Plaintiff's right to due process.

1232. In all the foregoing ways, Defendants violate Plaintiff's rights to due process protected by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

(Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20328, et seq.); (Otte, ECF No. 695, PageID 21003 et seq.)

Defendants read the Seventh Causes of Action as attempts to privately enforce the Food, Drug, and Cosmetic Act (FDCA) and Controlled Substances Act (CSA) through the Eighth Amendment, but Plaintiffs disclaim that reading (Memo Opp., ECF No. 1018, PageID 39722). Instead, Plaintiffs claim they are raising in this Cause of Action only a pure notice and opportunity to be heard procedural due process claim under the Fourteenth Amendment. *Id.*, *citing Mathews v. Eldridge*, 424 U.S. 319 (1976). Of course, in the extensive introductory material in the Fourth Amended Complaint, Plaintiffs write at length of how the possible use of compounding pharmacies will violate both federal and state drug control laws (See, e.g., ECF No. 691 at ¶ 474, et seq.)

These two Plaintiffs have had notice since October 7, 2016, of the Execution Protocol under which Ohio plans to execute them. They have had ample opportunity to contest the constitutional validity of the Protocol in this Court. To the extent they are arguing they should have had a pre-adoption opportunity to contest the Protocol or an opportunity to contest it in some other forum, they provide no authority for that proposition.[3]

Plaintiffs also assert they have a right to know the identity of the sources of execution drugs and in particular of those entities they have named in that capacity as Defendants. Although the parties do not cite the decision, it appears this claim is barred by the Sixth Circuit's decision in *In re: Ohio Execution Protocol Litig. (Fears v. Kasich)*, 845 F.3d 231 (6th Cir. 2016).

Plaintiffs' Seventh Causes of Action are therefore DISMISSED for failure to state a claim upon which relief can be granted.

**Eighth Cause of Action**

In their Eighth Causes of Action, Plaintiffs assert a claim for unlawful bodily experimentation on them without their consent in violation of the Due Process Clause of the Fourteenth Amendment, as follows:

> 1233. Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Fourth Amended Complaint as if fully rewritten here.
>
> 1234. The Fourteenth Amendment protects the liberty and privacy right one has in the integrity of one's body. See Rochin v. California, 342 U.S. 165, 169 (1952); Hurtado v. People of California, 110 U.S. 516, 536 (1884).

---

[3] Plaintiffs cite *Wood v. Ryan*, 2016 U.S. Dist. LEXIS 66116 (D. Ariz. May 18, 2016). Running that citation in Lexis produces *Berkley v. Midfirst Bank* from Mississippi. Running *Wood v. Ryan* in the same database for decisions after May 1, 2016, produces no results.

1235. "[N]eedlessly severe intrusions of an individual's body, even if that individual [i]s a felon and stripped of most of his liberty, [are] impermissible under the Due Process Clause of the Constitution." In re Cincinnati Radiation Litig., 874 F. Supp. 796, 818 (S.D. Ohio 1995).

1236. Within the basic protections of individual liberty encapsulated in the Fourteenth Amendment are also the principles established in the Nuremberg Code. Id. at 819–22.

1237. The Nuremberg Code, developed to create universal standards for carrying out human experimentation, explicitly states that "[t]he voluntary consent of the human subject is absolutely essential. This means that the person involved should have legal capacity to give consent; should be so situated as to be able to exercise free power of choice . . . ." United States of America v. Brandt (the Medical Case), II Trials of War Criminals Before the Nuremberg Military Tribunals Under Control Council Law No. 10, at 181 (1949).

1238. Ohio state administrative law prohibits administration of experimental or investigational drugs to an inmate unless that drug is the only option to treat a medical condition and written approval has been obtained from the DRC Bureau of Medical Services State Medical Director and the DRC Human Subjects Review Committee. See ODRC Policy 68-MED-11, Protocol Number E-4, Pharmacy Distribution and Dispensing Operations, ¶ III.D, Experimental or Investigational Drugs.

1239. Ohio state administrative law also prohibits participation of offenders in medical or pharmaceutical testing purely for experimental purposes. ODRC Policy 06-RES-02, Human Subjects Research Policy, ¶ VI.C.1.

1240. Ohio state administrative law also prohibits investigational or experimental projects "that represent a risk to offenders." Id. at ¶ VI.A.5.c.

1241. Other portions of Ohio administrative law in the form of ODRC policies likewise prohibit Defendants from subjecting Plaintiff to execution using experimental or investigational drugs without Defendants' having gone through the required, non-discretionary procedures to engage in experimental or investigational processes. See, e.g., DRC Policy 06-RES-01.

1242. Upon information and belief, no written approval to administer experimental or investigational drugs to an inmate in the context of an execution has ever been sought or obtained from the DRC Bureau of Medical Services State Medical Director and the DRC Human Subjects Review Committee.

1243. The written application for approval to use experimental or investigational drugs must include the justification for use of the drug(s), as well as an informed consent statement signed by the inmate.

1244. Plaintiff has not signed an informed consent statement authorizing Defendants to use investigational or experimental drug(s) on him during a lethal-injection execution, nor is carrying out his death sentence reasonably considered a "medical condition" for which use of experimental or investigational drug(s) might be permissibly considered.

1245. Because of the lack of data, studies, physician expertise, and the variability of human response, every lethal injection that Defendants conduct is a human experiment. See In re: Ohio Execution Protocol Litig., 994 F. Supp. 2d 906, 913 (S.D. Ohio Jan. 13, 2014).

1246. The timing of scheduled executions in Ohio, when compared with the use-by date mandated under Ohio law for compounded sterile injectables, means that Defendants—if they will not be using expired drugs/drugs past their use-by date—will typically need to obtain a new order of compounded execution drugs before each execution.

1247. Each execution conducted with a new batch of compounded execution drugs will be an experimental execution, because there is

no guarantee that the drugs involved will be identical from execution to execution.

1248. Any compounded execution drugs are also unapproved investigational New Drugs prohibited by the federal FDCA and Ohio state law, and thus experimental by definition.

1249. Any imported execution drugs unapproved investigational New Drugs prohibited by the federal FDCA and Ohio state law, and thus experimental by definition.

1250. Any manufactured drugs that are ordinarily considered "approved" drugs by the federal FDA are "unapproved" for purposes of using those drugs to carry out a human execution.

1251. The experimental nature of each execution that Defendants conduct is amplified exponentially due to the element of variability added by use of compounded execution drugs, and amplified even further because those compounded execution drugs are made by pharmacists or other Drug Source Defendants who are, by definition, ethically compromised by virtue of being willing to violate their professional ethical standards to provide drugs to be used in a human execution, and amplified further still if any of said Drug Source Defendants are permitted to remain anonymous thereby preventing Plaintiff and the Court from reasonable inquiry into and verification of the Drug Source Defendants' experience, training, qualifications, credentials, performance history, and adherence to the applicable federal and state laws.

1252. Similarly, the experimental nature of each execution that Defendants conduct is amplified exponentially due to the element of variability added by use of imported and/or misbranded execution drugs, and amplified even further because those imported and/or misbranded drugs were manufactured in facilities that do not comply with U.S. manufacturing standards and exported and imported by persons who are, by definition, ethically compromised by virtue of being willing to use subterfuge and other nefarious methods to smuggle unapproved, misbranded drugs illegally into Defendants' possession, and amplified further still if any of said Drug Source Defendants are permitted to remain

anonymous thereby preventing Plaintiff and the Court from reasonable inquiry into and verification of the Drug Source Defendants' experience, training, qualifications, credentials, performance history, and adherence to the applicable federal and state laws.

1253. Prisoners cannot give voluntary consent to human experimentation because they lack the free power of choice.

1254. Plaintiff is a prisoner unable to exercise the free power of choice.

1255. Even if he could give consent, he does not: Plaintiff does not consent to being experimented on like a human guinea pig by Defendants' use of experimental lethal injection execution drugs.

1256. Defendants have no clinical basis for believing any drug combination that Defendants use to execute Plaintiff will cause death without a substantial, objectively intolerable risk of severe, unnecessary pain or suffering.

1257. Defendants have no clinical basis for believing any drug combination that Defendants use to execute Plaintiff will not cause a lingering death.

1258. Defendants have no clinical basis for believing any drug combination that Defendants use to execute Plaintiff will not cause a humiliating, degrading spectacle.

1259. Any execution of the Plaintiff conducted by Defendants under the Execution Protocol will constitute a human experiment without voluntary consent, using unapproved investigational new drugs illegally compounded and dispensed by an ethically compromised pharmacist, or unapproved, misbranded drugs manufactured in substandard facilities and exported and illegally imported by ethically compromised Drug Source Defendants, all in violation of Fourteenth Amendment. See In re Cincinnati Radiation Litig., 874 F. Supp. 796, 818 (S.D. Ohio Jan. 11, 1995).

(Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20332, et seq.); (Otte, ECF No. 695, PageID 21007 et seq.)

Defendants assert this Cause of Action does not state a claim under either the Eighth Amendment or customary international law (Motion ECF No. 981, PageID 37020-23). Plaintiffs respond that they are raising instead both procedural and substantive due process claims in this Cause of Action (Memo Opp., ECF No. 1018, PageID 39723-31). Defendants reply that this claim must be considered under the Eighth Amendment and is foreclosed by the decision in *Cooey (Biros) v. Strickland*, *supra* (Reply, ECF No. 1033, PageID 40386). The *Biros* court treated his claims as made under the Eighth Amendment alone, so it is not clear that it requires that only Eighth Amendment analysis be applied when a substantive due process claim is pleaded. 589 F.3d at 215. There is no doubt that the substantive branch of the Due Process Clause does impose limitations on bodily intrusions by government entities. *See Rochin v. California*, 342 U.S. 165 (1952).

However, the Court believes Plaintiffs have not successfully pleaded a substantive due process claim. The flaw in their argument arises from their treating "experiment" as if it meant the same thing in all the contexts from which they quote it. Our revulsion from the so-called medical "experiments" conducted by the Nazis and indeed from the notorious syphilis experiments on African-American men in this country has led to strict controls of medical experimentation, including the requirement of informed consent. But that is not what Defendants are engaged in, although they have appropriately considered the results of the use of particular drugs in planning future executions.

Rather, Defendants are engaged in carrying out executions of death sentences in the only way allowed by Ohio law – lethal injection. Judge Frost's observation that the use of a new

protocol for that process "presents an experiment" and "to pretend otherwise . . . would be disingenuous" is correct. *In re: Ohio Execution Protocol Litig.*, 994 F. Supp. 2d 906, 913 (S.D. Ohio 2014). But changing the protocol in the way that Ohio has done does not amount to a violation of Plaintiff's substantive due process rights.

The Eighth Causes of Action are DISMISSED.

**Ninth Cause of Action**

In their Ninth Causes of Action, Plaintiffs claim their executions under Ohio's execution policy and Protocol would violate their unenumerated right as American citizens not to be subjected to nonconsensual medical experimentation, allegedly protected from infringement by the Privileges or Immunities Clause of the Fourteenth Amendment:

> 1260. Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Fourth Amended Complaint as if fully rewritten here.

> 1261. Defendants' application of their execution policy and written execution protocol, as demonstrated through previous executions such as Clark, Newton, Biros, Berry, McGuire, and the failed execution of Broom, and as alleged above, along with the facts alleged above related to executions of inmates in other states using execution protocols similar or identical to Defendants' protocol and procedures and Defendants' connection to those executions, will violate Plaintiff's fundamental, unenumerated rights protected against infringement by the Privileges or Immunities Clause of the Fourteenth Amendment.

> 1262. These rights include rights such as Plaintiff's right to not be the unwilling subject of forced, involuntary human experimentation conducted by Defendants, which is a right secured for the citizens of the United States based on citizenship of the United States because it is a right secured by international treaties.

Slaughter-House Cases, 83 U.S. 36, 80 (1873); *see also McDonald v. City of Chicago*, 561 U.S. 742, 851–855 (2010) (Thomas, J., concurring).

1263. The right against being subject to involuntary human experimentation is clear, established as it is in numerous international treaties to which the United States is a party, including the Universal Declaration of Human Rights, G.A. Res. 217A, U.N. Doc A/810, at 71 (1947); the International Covenant on Civil and Political Rights, G.A. Res. 2200A, 21 U.N. GAOR, Supp. (No. 16) 49, 52, U.N. Doc. A/6316 (1966); the Geneva Convention, 6 U.S.T. 3316, T.I.A.S. 3364, 75 U.N.T.S. 135, Aug. 12, 1949; the Declaration on the Protection of all Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, Annex Art. 1 Agenda Item 74), 30 U.N.GAOR, Supp. (No. 34) 91, U.N. Doc. A/10408 (1975); and the Nuremberg Code, G.A. Res. 161, U.N. Doc. A/PV55, at 2244 (1946).

1264. Defendants' Execution Protocol constitutes a forced, involuntary human experimentation conducted by Defendants because this Court has explicitly characterized it as such: "There is absolutely no question that Ohio's current [lethal- injection] protocol presents an experiment in lethal injection processes. The science involved, the new mix of drugs employed at doses based on theory but understandably lacking actual application in studies, and the unpredictable nature of human response make today's inquiry at best a contest of probabilities." In re Ohio Execution Protocol Litig., No. 2:11-cv-1016, 2014 WL 130609, at *6 (S.D. Ohio Jan. 13, 2014).

1265. Defendants' Execution Protocol also constitutes a forced, involuntary human experimentation conducted by Defendants because Defendants intend to administer pentobarbital, or thiopental sodium, or midazolam followed by a paralytic drug and potassium chloride, to Plaintiff to cause his death. This administration falls outside any of those drugs' marketed, FDA-approved purposes and outside the course of medical practice, and therefore constitutes the use of "New Drugs" under the FDCA. See 21 U.S.C. § 321(p).

1266. The FDCA "generally prohibits access to new drugs unless and until they have been approved by the Food and Drug Administration." Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach, 495 F.3d 695, 697 (D.C. Cir. 2007) (en banc) (citing 21 U.S.C. § 355(a)).

1267. Before FDA approval, a new drug may only be used in humans through a clinical investigation. A "clinical investigation" is "any experiment in which a drug is administered or dispensed to, or used involving, one or more human subjects. For the purposes of this part, an experiment is any use of a drug except for the use of a marketed drug in the course of medical practice." 21 C.F.R. § 312.3(b).

1268. Defendants' Execution Protocol's experimental use of pentobarbital, thiopental sodium, or midazolam followed by a paralytic drug and potassium chloride, to kill inmates constitutes a "clinical investigation"—that is, an experiment.

1269. Plaintiff will be one of the involuntary, unwilling human "subjects" of Defendants' human experimentation as a recipient of the forcible application to him of the experimental execution drugs. 21 C.F.R. § 312.3(b).

1270. Plaintiff will also be an involuntary, non-consenting human experimentation subject under Ohio's binding administrative law. See ODRC Policy 68-MED-11, Protocol Number E-4, Pharmacy Distribution and Dispensing Operations, ¶ III.D, Experimental or Investigational Drugs; ODRC Policy 06-RES-01, Research Approval Process; ODRC Policy 06-RES-02, Human Subjects Research Policy.

1271. Because Plaintiff will be an involuntary, non-consenting subject of human experimentation based on (1) this Court's characterization of Defendants' Execution Protocol; (2) the federal regulatory scheme for approving investigational or experimental new drugs; and (3) Ohio's regulatory scheme for administering experimental or investigational drugs to inmates in DRC custody, and because Plaintiff's right against being the unwilling subject of

> forced, involuntary human experimentation is a fundamental
> right—a privilege or immunity— guaranteed to him by virtue of
> being a United States citizen though numerous international
> treaties to which the United States is a party, Defendants'
> application of the Execution Protocol to him will violate Plaintiff's
> rights protected by the Privileges or Immunities Clause of the
> Fourteenth Amendment even under the most restrictive reading of
> that clause.

(Fourth Amended Complaint(Tibbetts), ECF No. 691, PageID 20338, et seq.); (Otte, ECF No. 695, PageID 21012, et seq.)

The Court agrees with Defendants that this Cause of Action is precluded by the Supreme Court's decision in the *Slaughter-House Cases*, 83 U.S. 36 (1873)[4], as reaffirmed in *McDonald v. Chicago*, 561 U.S. 742 (2010). However correct Mr. Justice Field in dissent may have been in his view of the intention of the Framers of the Fourteenth Amendment, the majority opinion is still the law. The Ninth Causes of Action are DISMISSED.

**Tenth Cause of Action**

In their Tenth Causes of Action, Plaintiffs assert that the changes in Ohio's lethal injection protocol from the one effective before the October 10, 2013, amendment (to wit, those effective October 10, 2013; April 28, 2014; January 9, 2015; June 29, 2015; and October 7, 2016) violate the Ex Post Facto Clause because they are more onerous (more likely to cause pain) than the prior protocols and, conversely, less likely to provide a "quick and painless" death as required by Ohio Revised Code § 2949.22. (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20342, et seq.); (Otte, ECF No. 695, PageID 21016, et seq.)

---

[4] Incorrectly cited by Defendants as 1872. The case was decided April 14, 1873, during the December 1872 term of the Court.

Defendants argue this claim is precluded by precedent, citing *Malloy v. South Carolina*, 237 U.S. 180 (1915)(finding the change from hanging to electrocution did not violate the Ex Post Facto Clause). Plaintiffs respond that evidence from prior executions in Ohio and in other States demonstrates that use of the three-drug protocol presently intended to be used by Ohio to execute these Plaintiffs will in fact add pain and therefore will violate the Ex Post Facto Clause.

Although it was only the reversal of a preliminary injunction, the Court believes the decision in *Fears v. Morgan (In re: Ohio Execution Protocol)*, ___ F.3d ___, 2017 U.S. App. LEXIS 11491 (6th Cir. Jun 28, 2017)(en banc), precludes this claim. The Tenth Causes of Action are DISMISSED.

**Eleventh Cause of Action**

In their Eleventh Causes of Action, Plaintiffs claim their executions will violate the Bill of Attainders Clause (Fourth Amended Complaint, (Tibbetts), ECF No. 691, PageID 20346, et seq.); (Otte, ECF No. 695, PageID 21019, et seq.)

The relevant contemporary authority, cited by both parties, is *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841 (1984), which defined a bill of attainder as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Id.* at 846-47, quoting *Nixon v. Administrator of General Services*, 433 U.S. 425, 468 (1977).

Plaintiffs argue that the current Execution Protocol imposes a punishment in addition to that which has been imposed by a judge upon an "identifiable group." (Memo Opp., ECF No. 1018, PageID 39738.)

In the Court's judgment, the current Execution Protocol does not constitute a bill of attainder because it does not single out an identifiable individual for punishment as required by *Selective Service System*. Death row inmates in Ohio are there pursuant to individual criminal trials by the judiciary; that is how they become members of the class of persons subject to execution, not by individual selection by the legislature (the historic target of the Bill of Attainders Clause) or by the executive. Death row inmates are, as Plaintiffs insist at various points they must be, dealt with as a class. *Selective Service System* rejected the notion that persons dealt with as a class and subjected to a detriment thereby had a claim for relief under the Bill of Attainders Clause. Whether any identifiable group of persons could have such a claim is doubtful.

The Eleventh Causes of Action are DISMISSED for failure to state a claim upon which relief can be granted.

**Twelfth and Thirteenth Causes of Action**

In their Twelfth and Thirteenth Causes of Actions, Plaintiffs claim their executions under the current Execution Protocol will involve deliberate indifference to, and reckless disregard of, their serious medical needs, in violation of the Eighth Amendment (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20348, et seq.); (Otte, ECF No. 595, PageID 21020, et seq.)

Defendants' argument, as the Court understands it, is that these claims are implausible on their face because "[t]he lawfully-imposed sentence to be carried out is death, therefore, the intended result of Defendants' execution procedures is death." (Motion, ECF No. 981, PageID 37026.)

It appears to be common ground at this point in this case that injection of one of the paralytic agents specified as the second drug in the current three-drug protocol or injection of potassium chloride would cause an unconstitutional amount of pain even if either one of them or both together would cause death, unless they were preceded by the prior injection of a drug rendering the inmate insensate to pain. *See Fears v. Morgan*, *supra*, at *7.  If an inmate were given the first drug, then the second and third drugs, and then exhibited symptoms of severe pain, it is not clear that the Eighth Amendment would not require the executioners to do something to alleviate that pain, particularly if it continued for some time.  On the other hand, any claim that the executioners are under an Eighth Amendment duty to resuscitate any inmate who has not yet died when the first assessment of death is made is implausible, given that capital punishment is constitutional.

These Causes of Action, as the Court reads them, test the limits of the Eighth Amendment obligation to provide medical care in the execution context.  The Court cannot say that they are implausible on their face.  Defendants' Motion to Dismiss the Twelfth and Thirteenth Causes of Action are DENIED.

**Fourteenth Causes of Action**

In their Fourteenth Causes of Action, Plaintiffs rely on their substantive due process right to be free from governmental actions that shock the conscience and they alleged that the non-consensual human experimentation involved in changing the Execution Protocol and the various violations of federal and state drug laws which are or will be involved in carrying out executions

under the Protocol shock the conscience. (Fourth Amended Complaint, (Tibbetts), ECF No. 691, PageID 20354, et seq.); (Otte, ECF No. 695, PageID 21025, et seq.)

Defendants seek dismissal of the Fourteenth Cause of Action on the grounds that

(1) any claim of this sort, i.e., a challenge to a State's method of execution, must be made under the Eighth Amendment; and

(2) "[i]f a constitutional claim is covered by a specific constitutional provision, it must be analyzed under the standard appropriate to that provision and not under the "rubric of substantive due process."

(Motion, ECF No. 981, PageID 37028, citing *Glossip v. Gross*, 135 S. Ct. 2726, 2736-38 (2015), and *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)).

Plaintiffs rejoin that the Eighth Amendment does not apply because the Plaintiffs' death sentences do not include that they will be subject to non-consensual human experimentation or violation of state and federal law (Memo Opp., ECF No. 1018, PageID 39746).

In *County of Sacramento*, *supra*, the Supreme Court wrote:

> Just last Term, we explained that *Graham* [*v. Connor,* 490 U.S. 386, 394 (1989)]
>
> > "*does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States* v. *Lanier,* 520 U.S. 259, 272, n. 7, 1997 U.S. LEXIS 2079, *23, 137 L. Ed. 2d 432, 117 S. Ct. 1219, (1997) (slip op., at 13).

> Substantive due process analysis is therefore inappropriate in this case only if respondents' claim is "covered by" the Fourth Amendment. It is not.

*County of Sacramento, supra*, at 843.

*County of Sacramento* and *Lanier* appear to support Plaintiffs' position that a claim of physically abusive government conduct could be brought under the Fourteenth Amendment. Moreover, this Court has had ample reason to regret reading the *Glossip* decision too expansively, i.e., by concluding it required all method-of-execution claims to be brought in § 1983 cases rather than in habeas corpus. See *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016). Defendant's theory that the Fourteenth Causes of Action must be analyzed under the Eighth Amendment is rejected.

However, as held above, the use of a new Execution Protocol does not constitute human experimentation so as to "shock the conscience" within the legal meaning of that term.[5] That is to say, while the so-called medical experiments in Nazi concentration camps and the Tuskegee syphilis study both shock the conscience of civilized society, the use of new execution drugs when older ones become unavailable does not per se shock the conscience.

Plaintiffs cite no authority for the proposition that, in general, violations of state or federal law by state actors attempting to carry out state court judgments are substantive due process violations. In fact, violations of state laws do not ordinarily rise to the level of procedural due process violations. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.

---

[5] The Court is of course aware that capital punishment by any method offends the conscience of many. Justice Frankfurter, who provided us with the phrase as part of substantive due process analysis in *Rochin, supra*. would also have been quick to remind us of the separate roles of legal and moral analysis.

1993), *cert. denied*, 509 U.S. 907 (1993). Nor does a State have a due process obligation to follow every federal statute which would have the same effect: constitutionalizing every federal statute.

While Defendants' Eighth Amendment argument is unavailing, the Court finds the Fourteenth Causes of Action fail to state a claim upon which relief can be granted and they are DISMISSED.

**Fifteenth through Nineteenth Causes of Action**

Because the Fifteenth through Nineteenth Causes of Action purport to state claims for relief only against Defendants who are as yet unidentified and unserved, the Court declines to adjudicate the Motion to Dismiss these claims as this time.

**Twenty-First and Twenty-Third Causes of Action**

In their Twenty-First and Twenty-Third Causes of Action, Plaintiffs purport to plead Eighth Amendment claims arising out of Defendants possible use of compounded drugs or illegally imported drugs in their executions (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20400, et seq. and PageID 20408, et seq.); (Otte, ECF No. 695, PageID 21064, et seq. and PageID 21070, et seq.)

Defendants assert these claims are speculative, but rely on *Brewer v. Landrigan*, 562 U.S. 996 (2010). *Brewer* overruled a stay of execution based on speculation "that obtaining non-FDA-approved" drugs could" result in an Eighth Amendment violation. But at this juncture we

are dealing with a complaint, not a preliminary injunction. Plaintiffs' Twenty-First and Twenty-Third Causes of Action are sufficiently pleaded and the motion to dismiss them is DENIED.

**Twenty-Fourth and Twenty-Fifth Causes of Action**

In their Twenty-Fourth and Twenty-Fifth Causes of Action, Plaintiffs allege that there is a substantial risk that their executions under the current protocol will result in a lingering death or an "undignified spectacle execution" which will violate the Eighth Amendment (Fourth Amendment Complaint (Tibbetts), ECF No. 691, PageID 20409, et seq.); (Otte, ECF No. 695, PageID 21071, et seq.)

Defendants move to dismiss on the basis that the sole question under the Eighth Amendment is whether the method of execution creates "a substantial risk of severe pain" and they note that executions by firing squad and the electric chair "undoubtedly have greater observable effects on the inmate than lethal injection." Defendants further note that the Supreme Court in *Glossip* did not retreat from its precedent sanctioning those two modes of execution (Motion, ECF No. 981, PageID 37058). Plaintiffs respond that the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), held a punishment could be cruel within the meaning of the Eighth Amendment if it involved torture or "a lingering death."

The jurisprudence on "lingering death" is not well developed. It is certainly possible to imagine a painless but lingering death. Imagine, for example, a crucifixion with a fully-effective morphine drip which would presumably take hours to cause death[6] but would, I believe, violate the Eighth Amendment.

---

[6] Compare John 20:31-34. Traditionally, Jesus' crucifixion took three hours to result in death, while the two men crucified with him were still alive after three hours.

The motion to dismiss the Twenty-Fourth and Twenty-Fifth Causes of Action is DENIED.

**Twenty-Sixth Cause of Action**

In their Twenty-Sixth Causes of Action, Plaintiffs reassert their claims about human experimentation in the use of a new protocol, this time as an Eighth Amendment violation. This claim is no more viable under the Eighth Amendment than under the Fourteenth. The Twenty-Sixth Causes of Action will be DISMISSED.

**Twenty-Seventh Cause of Action**

In their Twenty-Seventh Causes of Action, Plaintiffs allege that maladministration or arbitrary administration of the Execution Protocol will present risks of suffering which violate the Eighth Amendment (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20423, et seq.); (Otte, ECF No. 695, PageID 21082, et seq.)

Defendants seek dismissal on the grounds his claim is precluded by *Cooey (Biros)*, *supra*. Plaintiffs respond that "*Biros* is largely predicated on the absence of any specific allegations in Biros's complaint" (Memo Opp., ECF No. 1018, citing 589 F.3d at 224-25).

While the Sixth Circuit in *Biros* did mention that his maladministration claims were "general" and not sufficiently distinguished from the risk of maladministration claims rejected in *Baze*, it also quoted as a holding of *Baze* that "Eighth Amendment challenges to lethal injection protocols on the grounds that the protocol could be improperly administered are insufficient to

demonstrate a violation." 589 F.3d at 223, *citing Baze*, 128 S.Ct. at 1537-38. That holding is fatal to Plaintiffs' Twenty-Seventh Causes of Action, which will be DISMISSED.

**Twenty-Eighth Cause of Action**

In their Twenty-Eighth Causes of Action, Plaintiffs assert an Eighth Amendment violation because they claim that they suffer a "substantial risk of serious harm" by being subject to an execution protocol that is facially unconstitutional because it does not preclude execution of persons categorically exempt from execution under the Constitution. The categorical exemptions to which Plaintiffs specifically refer are those for mental incompetence and intellectual disability, rather than having committed a crime other than murder or having been under eighteen at the time the crime was committed.

The absence of any allegation in the Fourth Amended Complaint that either Tibbetts or Otte is exempt from execution by reason of mental incompetence or intellectual disability is fatal to these Causes of Action. There is no constitutional right to be exempt from execution under a protocol that does not provide appropriate screening procedures to determine if an inmate is mentally incompetent to be executed or intellectually disabled unless the plaintiff is a person who claims membership in one of those categories. The Twenty-Eighth Causes of Action will be DISMISSED.

**Twenty-Ninth Cause of Action**

In their Twenty-Ninth Causes of Action, Plaintiffs assert that the existence of the present Execution Protocol causes them a present harm, to wit, "torturous mental or psychological pain, suffering, horrific anxiety, terror [,] and anguish." (Memo Opp., ECF No. 1018, PageID 39770, citing Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20439, et seq.) and ;Otte, ECF No. 695, PageID 21096, et seq.)

Plaintiffs present no authority recognizing any present compensable or enjoinable harm that flows from the existence of an execution protocol that is separate from the future harm cognizable under *Baze*, *supra*. That is to say, the Court recognizes the distinction Plaintiffs are making, but concludes the asserted present harm is not cognizable under 42 U.S.C. § 1983. Plaintiffs' Twenty-Ninth Causes of Action will be DISMISSED.

**Thirtieth Cause of Action**

In the Thirtieth Causes of Action, Plaintiffs allege they will be deprived of their life interests by being executed pursuant to an execution protocol which permits the use of execution drugs which do not meet the new drug requirements of the Federal Pure Food, Drug, and Cosmetics Act (FDCA).[7] (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20440, et seq.); (Otte, ECF No. 695, PageID 21096, et seq.)

_____

[7] While Plaintiffs reference the federal Controlled Substances Act (CSA) in their opposition, the Fourth Amended Complaint does not discuss the CSA in the Thirtieth Cause of Action.

Defendants seek dismissal of these Causes of Action because, they assert, the Sixth Circuit has held there is no private right of action to enforce the FDCA or, indeed, the CSA (Motion, ECF No. 981, citing *Durr v. Strickland*, 602 F.3d 788 (6th Cir. 2010)).

Plaintiffs respond that *Durr* was a declaratory judgment action seeking a judgment that Ohio's use of certain drugs for executions violated the FDCA and/or the CSA (Memo Opp., ECF No. 1018, PageID 39771). In contrast, Plaintiffs say, this is a § 1983 action in which they claim deprivation of due process by the State's not complying with those statutes. *Id.* They also contend Defendants' cited authority, *Jones v. Union County, Tennessee*, 296 F.3d 417 (6th Cir. 2002), supports liability here.

The Court agrees that the question whether there is a private right of action to enforce either the FDCA or the CSA is separate from the question whether the procedures required by those acts give rise to a constitutional right enforceable under 42 U.S.C. § 1983. But, as noted above, there is no constitutional due process right to have the procedures that are a part of a state or federal statute enforced through a § 1983 action. *Levine v. Torvik*, *supra.*

*Jones* is not to the contrary. There the Sixth Circuit discussed whether various county policies deprived a plaintiff of her undoubted constitutional rights to access to the courts, to equal protection, and to due process by not protecting her from the torts of her non-state-actor ex-husband. Here the question is whether § 1983 provides a right of action to enforce, through the Due Process Clause, the "rights" of Plaintiffs not to be subject to experimentation by the use of drugs which do not comply with the FDCA or the CSA. Because there is no private right of action to enforce either of those statutes, *a fortiori* there is no constitutional due process right to enforce those statutes through § 1983. That is to say, there is no constitutional right to the

statutory protections provided by the FDCA or CSA.  The Thirtieth Causes of Action will therefore be DISMISSED.

**Thirty-First Cause of Action**

In their Thirty-First Causes of Action, Plaintiffs recast their Thirtieth Causes of Action in equal protection terms (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20447, et seq.); (Otte, ECF No. 695, PageID 21103, et seq.)

Although Plaintiffs are correct that the lack of a private right of action is not determinative, they offer no authority for the proposition that violations of state or federal statutory provisions give rise to Equal Protection claims enforceable under 42 U.S.C. § 1983. The Thirty-First Causes of Action are DISMISSED on the same basis as the Thirtieth.

**Thirty-Second Cause of Action**

In their Thirty-Second Causea of Action, Plaintiffs claim that the authority the Execution Protocol gives the Warden to limit their last words statement if it contains language intentionally offensive to the witnesses violates their constitutional rights under the Free Exercise Clause and their statutory rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA)(Fourth Amended Complaint, (Tibbetts), ECF No. 691, PageID 20448, et seq.); (Otte, ECF No. 695, PageID 21104 et seq.)  Plaintiffs speculate that their "last words may include [a] prayer for atonement recounting details of his actions [and that] the witnesses might find this speech offensive either because of the content or because their religion is different from

Plaintiff[s'']." (Fourth Amended Complaint, (Tibbetts), ECF No. 691, PageID 20448, et seq.);

(Otte, ECF No. 695, PageID 21104 et seq.)

Defendants assert these Causes of Action are barred by the Court's prior decision in *In re Ohio Execution Protocol Litig. (Wiles)*, 868 F. Supp. 2d 625 (S.D. Ohio 2012)(Frost, J.) Plaintiffs respond that *Wiles* was concerned with equal protection and free speech, but did not address any claim under RLUIPA or the Free Exercise Clause.

The Court concludes that the principles enunciated by Judge Frost in *Wiles* control resolution of this claim. He wrote:

> [A]n inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974). Thus, state regulations in the prison context are subject to a "lesser standard" of review than strict scrutiny. *Turner v. Safley*, 482 U.S. 78, 81, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). Such regulations are valid if they are reasonable related to legitimate penological interests. *Id.* at 89. *See also Brown v. City of Pittsburgh*, 586 F.3d 263, 283 n.22 (3d Cir. 2009) (noting that if every regulation that burdened constitutionally protected speech were subject to strict scrutiny, the varying degrees of scrutiny that the First Amendment requires in different contexts would be "rendered obsolete").
>
> Four factors are relevant to the "lesser" reasonableness standard that applies here. *Turner*, 482 U.S. at 89-90. The governmental objective underlying the regulation must be legitimate and neutral, and the regulation must be rationally related to that objective. *Id.* at 89-90. *See also Thornburgh v. Abbott*, 490 U.S. 401, 415, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (holding that, where prison officials drew distinctions between publications "solely on the basis of their potential implications for prison security," the regulations were "neutral" despite the fact that the determination "turn[ed], to some extent, on content"). Prison officials can and should exercise their discretion in applying these objectives. *See Thornburgh*, 490 U.S. at 416 (noting that where incoming

publications could potentially "exacerbate tensions and lead indirectly to disorder . . . a regulation which gives prison authorities broad discretion is appropriate"). The *Turner* Court also considered whether alternative means of exercising the inmate's First Amendment rights remained available and whether accommodation of the asserted right would impact the guards, other inmates, or allocation of prison resources generally. *Turner*, 482 U.S. at 89-90. Finally, the *Turner* Court considered whether ready alternatives to the regulation were available, and if so, whether the challenged regulation was an "exaggerated response to prison concerns." *Id.* at 90.

Here, Ohio undoubtedly has an interest in maintaining prison security and performing executions in an orderly manner. *See, e.g., Thornburgh*, 490 U.S. at 411 (analyzing regulations in light of the proposed threat to "prison order and security"). An inmate's last words that the warden interprets as "intentionally offensive to the witness" are likely to cause disorder and disrupt the execution process. *Cf. Kirkland v. Luken*, 536 F. Supp. 2d 857, 876 (S.D. Ohio 2008) (holding that the use of an offensive term during a city council meeting, directed at the audience, "was likely to incite the members of the audience during the meeting, cause disorder, and disrupt the meeting"). Allowing the warden to turn off the inmate's microphone is rationally related to Ohio's interest in preserving order. *Cf. id.* (explaining that when a state official turned off an individual's microphone after he made offensive statements at a city council meeting, the act was "narrowly tailored to achieve the compelling interest of preventing the [individual] from inciting those in attendance at the meeting to become unruly and to prevent the meeting from becoming disorderly"). The state's action in *Kirkland* satisfied strict scrutiny, *see id.* at 874-75, and the regulation here that permits a nearly identical action satisfies the lesser standard.

The remaining *Turner* factors further suggest that the challenged section of the protocol is reasonable. The challenged regulation applies to a specific time and place—the death chamber—and does not preclude the inmate from expressing any type of communication during his tenure at the prison. Allowing the inmate to speak offensively via microphone in the death chamber

could also necessitate increased security (and a reallocation of resources) during the execution. Finally, where the state could presumably forego last words entirely, allowing the warden to terminate an inmate's last words that are intentionally offensive to witnesses is not an exaggerated response to the goal of performing orderly executions. The Court concludes that the challenged regulation is reasonable and appropriately vests necessary discretion in the warden.

*Id.* at 649-51.

While Plaintiffs state generally that the protections provided by RLUIPA are greater than those provided directly by the Free Exercise Clause, they have not pleaded a standard for judging such claims that is different from the standard suggested in *Wiles*.  In addition, neither of these Plaintiffs has pleaded that he personally has a religious belief that would compel him to say anything in a last statement that would be offensive to a witness or indeed to make a last statement at all.  While last statements have traditionally been a part of executions in the Anglo-American tradition, nothing in the Constitution compels honoring that tradition.  In the contemporary Ohio context, the means of communication between the inmate in the death chamber and witnesses in the witness room is by way of a microphone provided by the State. Even if the Constitution protects – on free speech or free exercise grounds – the right of an inmate to speak, it does not compel the State to furnish him with a means to ensure that speech is heard by certain people.  Because speech that is intentionally offensive to certain witnesses is, as Judge Frost found, likely to incite disruption of the execution, the State has a strong interest in interrupting that speech once it has begun.

Therefore the Thirty-Second Causes of Action are DISMISSED for failure to state a claim upon which relief can be granted.  The Court declines to conclude that the claims are so insubstantial that the Court lacks subject matter jurisdiction to decide it.

**Thirty-Third and Thirty-Fourth Causes of Action**

In their Thirty-Third Causes of Action, each of these Plaintiffs pleads that his unique individual physical and mental characteristics will result in a substantial risk of serious harm in the form of severe, needless physical or mental/psychological pain from application to him of the Execution Protocol (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20450, et seq.); (Otte, ECF No. 695, PageID 21105). In the Thirty-Fourth Causes of Action, Plaintiffs rely on the same unspecified unique characteristics to plead an Equal Protection violation.

Defendants seek dismissal of these Causes of Action on the ground that they plead only legal conclusions, not facts, and are therefore insufficient under *Iqbal* and *Twombly*. Plaintiffs respond that they have been specific enough to satisfy that standard, citing *Skinner v. Switzer*, 562 U.S. 521 (2011). *Skinner*, however, held that Fed. R. Civ. P. 8(a)(2) "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* at 530, citing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219. Defendants' Motion complains not about a lack of legal theory, but a lack of pleaded plausible facts. What are the "unique individual physical and mental characteristics" of each of these Plaintiffs which make the Protocol as applied to him a violation of the Eighth Amendment? At some level of granularity, evert human being has individual physical characteristics which distinguish him from every other human being. For example, one person's right forearm will be .0001 inch longer or shorter than some other person's right forearm. It seems highly unlikely, however, that this particular individual characteristic would be in any way relevant to the impact on the two different persons of Ohio's Execution Protocol. Until each of these Plaintiffs makes

some claim about which of his characteristics is relevant, there is no plausible claim on which to conduct discovery or even an opportunity for Defendants to adjust the Protocol or its administration to account for the individual characteristics.

Defendants note that this Court has held similar pleading insufficient in *Bays v. Warden*, 2016 WL 792015 (S.D. Ohio 2016). Although *Bays* was applying the stricter pleading requirements of Habeas Corpus Rule 2(c), the logic is still applicable. The Court noted that

> This claim is virtually identical to claims being made by other Ohio capital habeas petitioners. See, e.g., *Chinn v. Warden*, Case No. 3:02-cv-512, ECF No. 133, PageID 9701-3; *Raglin v. Mitchell*, Case No. 1:00-cv-767, ECF No. 247, PageID 3405-7; *Sheppard v. Robinson*, Case No. 1:12-cv-198, ECF No. 70-1, PageID 1103-5. Every human being has unique physical and mental characteristics, at least when considered in combination and when expressed in the individual person. Bays fails to allege which of his physical or mental characteristics makes it impossible to execute him by lethal injection. Is it hallucinations or heart disease or anxiety or a liver ailment, or what? The claim cannot be defended against or adjudicated without knowing what the alleged individual characteristics are.

*Id.* at *8. A pleading that claims "there is something unique to me" that makes the Protocol unconstitutional does not say enough to satisfy the *Iqbal* and *Twombly* standard. The Third-Third and Thirty-Fourth Causes of Action are DISMISSED WITHOUT PREJUDICE to a subsequent amendment that provides sufficient detail about what unique characteristics are asserted to be relevant.

**Thirty-Eighth Cause of Action**

In their Thirty-Eighth Causes of Action, Plaintiffs assert Ohio's three-drug protocol for executions is unconstitutional because it represents a devolution to a more primitive form of execution (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20467 et seq.); (Otte, ECF No. 695, PageID 21119, et seq.)

In deciding these Plaintiffs' Motions for Preliminary Injunction, the Court declined to grant relief on this theory because it did not believe either the Sixth Circuit or the Supreme Court was prepared to recognize this theory (ECF No. 948, PageID 32135-36).[8]  Plaintiffs re-state their theory in their Memorandum in Opposition:  "Ohio is categorically prohibited from adopting a lethal-injection method of execution that is a devolution away from a method of execution Ohio had previously claimed to be a more-humane method." (ECF No. 1018, PageID 39784.)  While Plaintiffs did not appeal the denial of this portion of their motion for preliminary injunction and thus the Sixth Circuit did not address it, the Sixth Circuit's express rejection of the Plaintiffs' judicial estoppel claim suggests strongly that the circuit court would not adopt the devolution claim.  The only authority for the devolution claim is Justice Sotomayor's dissent in *Glossip* and even she disclaimed a conclusion that a devolution would necessarily be unconstitutional.

Plaintiffs' Thirty-Eighth Causes of Action are DISMISSED for failure to state a claim upon which relief can be granted.

---

[8] The Court acknowledges that its preliminary injunction decision can be read as misconstruing the breadth of this devolution claim.

**Thirty-Ninth Cause of Action**

In their Thirty-Ninth Causes of Action, Plaintiffs contend that any Ohio three-drug execution method will be unconstitutional regardless of the identity of the first drug used (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20469, et seq.); (Otte, ECF No. 695, PageID 21121, et seq.)

This claim is barred by binding precedent. *Fears v. Morgan (In re:  Ohio Execution Protocol)*, ___ F.3d ___, 2017 U.S. App. LEXIS 11491 (6th Cir. 2017)(en banc).  It is accordingly dismissed.

**Forty-Second Cause of Action**

In their Forty-Second Causes of Action, Plaintiffs assert that removal from the Ohio Execution Protocol of required concentrations of execution drugs removes, in violation of the Eighth Amendment, a safeguard that obviated a substantial risk that they would experience severe pain and suffering (Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID  20493, et seq.); (Otte, ECF No. 695, PageID 21140, et seq.)

Based on prior decisions of Judge Frost cited in Plaintiffs' Memorandum in Opposition, the motion to dismiss the Forty-Second Causes of Action is DENIED.

**Forty-Fourth Cause of Action**

In their Forty-Fourth Causes of Action, Plaintiffs assert

> Ohio's Execution Protocol is unlawful because it was not promulgated as a rule and because The Ohio Department of Rehabilitation and Correction (DRC) exceeded its delegated authority in enacting it. If viewed as a departmental policy, the protocol's enactment constitutes arbitrary and capricious action because it does not comply with the Department's own Directive on enacting Policies.

(Fourth Amended Complaint (Tibbetts), ECF No. 691, PageID 20500, et seq. quoting ¶ 1904); (Otte, ECF No. 695, PageID 21147, et seq.)[9] Defendants seek dismissal of these Causes of Action because they are based entirely on state law which does not create a private right of action (Motion ECF No. 981, PageID 37071). Having captioned this claim as "Administrative Procedures Act Claims" (ECF No. 691, PageID 20500), Plaintiffs recaption it in their Memorandum in Opposition as "Equal Protection Violations Arising from Administrative Procedures Act Violations" (ECF No. 1018, PageID 39791).[10]

In defending the Forty-Fourth Causes of Action, Plaintiffs rely on the law of the case as set forth in Judge Frost's decision in *Cooey v. Kasich (Smith)*, 801 F. Supp. 2d 623 (S.D. Ohio 2011)(ECF No. 1018, PageID 39792).[11] Having read that decision, the Court finds that it does not adopt an equal protection theory that would sustain the Forty-Fourth Causes of Action. Essentially the claim is an Ohio Administrative Procedures Act claim which Plaintiffs have failed to elevate to a constitutional level. The Forty-Fourth Causes of Action are DISMISSED on this basis.

---

[9] It is emblematic of the close coordination of Plaintiffs' counsel in these two cases that Forty-Fourth is identically misspelled as "Forth-Fourth" in both ECF No. 691 and 695.

[10] Plaintiffs acknowledge that the pleading "could have been clearer." ECF No. 1018, PageID 39793.

[11] Plaintiffs mention a decision in "Lorraine," but fail to give any citation.

**Forty-Fifth Cause of Action**

In their Forty-Fifth Causes of Action, Plaintiffs assert a claim that a three-drug method of execution which starts with midazolam violates the prohibition on cruel and unusual punishment because it no longer comports with prevailing standards of decency (Fourth Amended Complaint, (Tibbetts), ECF No. 691, PageID 20525 et seq.); (Otte, ECF No. 695, PageID 21167, et seq.)

Defendants seek dismissal on the basis of authority refusing to enjoin the use of midazolam as the first drug in a three-drug execution protocol (Motion, ECF No. 981, PageID 37072-73, citing *Jordan v. Fisher*, 823 F.3d 805 (5th Cir. 2016), and *Arthur v. Alabama Dept. of Corr.*, 840 F.3d 1268 (11th Cir. 2016)). To this authority must be added the Sixth Circuit's recent decision in this case, *Fears v. Morgan*, *supra*.

However, what is before the Court at this point is a pleading question, not a proof question. The United States Supreme Court has relied on the "evolving standards of decency" interpretation of the Eighth Amendment since *Trop v. Dulles*, 356 U.S. 86 (1958). It has expressly relied on it in categorically barring the execution of the intellectually disabled (*Atkins v. Virginia*, 536 U.S. 304 (2002)) and juvenile murderers (*Roper v. Simmons*, 543 U.S. 551 (2005)). As the evidence presented at the preliminary injunction here showed, attitudes about midazolam as an execution drug in particular have evolved since Dennis McGuire's execution in January 2014. This Court based its decision in part on the abandonment of midazolam by Florida and Arizona even since October 2016 when Ohio readopted it. That evidence was insufficient to persuade the Sixth Circuit to uphold the preliminary injunction, but the en banc

court did not decide the pleading question.[12]  The relevant society whose evolving standards of decency counts for Eighth Amendment purposes is our national society.  Its standards must be evaluated by the Supreme Court which that Court cannot do if the relevant claims are dismissed at the pleading stage.

The motion to dismiss the Forty-Fifth Causes of Action is DENIED.


**Forty-Ninth Cause of Action**


In addition to seeking dismissal of various Causes of Action in the Fourth Amended Complaints, Defendants also seek dismissal of the Forty-Ninth Cause of Action which Plaintiffs Tibbetts and Otte pleaded jointly (ECF No. 981 at PageID 37073 et seq.), seeking dismissal of Joint OCPA [Ohio Corrupt Practices Act] Supplement to Tibbetts' and Otte's Fourth Amended Complaint for Injunctive and Declaratory Relief against Individual Defendants, [the "Joint Supplement"] ECF No. 954).

In the Joint Supplement Plaintiffs seek relief under the OCPA as to Defendants Richard Theodore and Execution Team members 17, 21, 31, and 32 in their individual capacities (ECF No. 954, ¶ 2135, PageID 32343).[13]  Collectively these Defendants will be referred to as the "OCPA Defendants."

---

[12] Of course, the preliminary injunction was not entered on the theory advanced in the Forty-Fifth Causes of Action, but it is obviously a closely-related matter.

[13] The Court commends Plaintiffs' counsel for using continuous numbering for both the Forty-Ninth cause of action and the paragraphs of the Joint Supplement.  In this complex litigation, this is a "best practice" which facilitates reference by the Court.

**Subject Matter Jurisdiction**

Defendants characterize this as a pendent state law claim and assert this Court does not have subject matter jurisdiction to adjudicate the claim because the Ohio Court of Claims has not yet decided whether the complained-of acts of these OCPA Defendants were "manifestly outside the scope of their employment." (Motion, ECF No. 981, PageID 37074, relying on *Haynes v. Marshall*, 887 F.2d 700 (6th Cir. 1989), and *McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012), as well as other unpublished authority.)

Plaintiffs respond that the state statute in question[14] directly conflicts with 28 U.S.C. § 1367 and is therefore unconstitutional under the Supremacy Clause (ECF No. 1018, PageID 39797). Defendants reply that the Ohio statutes in question are not attempts to limit federal court jurisdiction, but "set forth the very limited circumstances under which Ohio has agreed to waive Eleventh Amendment immunity." (ECF No. 1033, *citing Haynes*, *supra*.)

In *Haynes* the Sixth Circuit explained how federal courts are to analyze claims brought under state law but in federal court against a state employee where it is alleged that the employee's conduct is "manifestly outside the scope of employment." As to such claims, Ohio has waived its sovereign immunity, but only upon adjudication by the Ohio Court of Claims. The court held

> A federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive law. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09, 89 L. Ed. 2079, 65 S. Ct. 1464 (1945). Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in

---

[14] Plaintiffs do not cite a particular statute, but Defendants indicate they are relying on Ohio Revised Code § 2743.02(F)(ECF No. 981, PageID 37074).

Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities. In that regard, the only recognized cause of action lies, initially, against the State of Ohio in the Court of Claims. Ohio Rev.Code Ann. § 2743.02(F) (Anderson Supp. 1988). Accordingly, the district court may not assert pendent jurisdiction over plaintiff's wrongful death claim until such time as a cause of action against defendants is recognized under Ohio law.

*Id.* at 705.

*Haynes* was decided under the common law pendent jurisdiction recognized by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). That common law jurisdiction was codified in the Federal Courts Improvement Act of 1990 in 28 U.S.C. § 1367, but, contrary to Plaintiffs' position, § 1367 did not displace the analysis given in *Haynes*.

*Davet v. City of Cleveland*, 456 F.3d 549 (6th Cir. 2006), relied on by Plaintiffs, is not to the contrary. The defendants there, although state actors for purposes of direct liability under 42 U.S.C. § 1983, were not state employees arguably entitled to immunity under Ohio Revised Code § 9.86. *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012), is also distinguishable in that none of the defendants there were state employees.

Plaintiffs infer from the codification of pendent[15] jurisdiction that *Haynes* no longer applies. The codification made important changes to this jurisdictional law, most importantly by expanding the coverage to any claim within the same case or controversy as the federal question jurisdiction on which original jurisdiction was based. But it did not purport to give federal courts the authority to decide that a state-created cause of action was broader than state law allowed. Any such attempt to expand our jurisdiction would have been arguably unconstitutional under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

---

[15] According to Black's, "pendent" rather than "pendant" is the correct spelling.

Accordingly, the Forty-Ninth Cause of Action is DISMISSED WITHOUT PREJUDICE to its assertion in the Ohio Court of Claims.

**Conclusion**

Defendants' Motion to Dismiss the Fourth Amended Complaints of Plaintiffs Tibbetts and Otte is GRANTED IN PART AND DENIED IN PART as set forth above. In each case where a Cause of Action was dismissed, the Court has acted under Fed. R. Civ. P. 12(b)(6). It has not found any claim made by Plaintiffs to be so insubstantial as to deprive it of subject matter jurisdiction.

July 12, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge