# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
  PROTOCOL LITIGATION,     :     Case No. 2:11-cv-1016

                                      Chief Judge Edmund A. Sargus, Jr.
                                      Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs
  Tibbetts, Otte, Campbell,
  Van Hook, and Bonnell

## DECISION AND ORDER ON PLAINTIFFS' MOTION TO VIEW EXECUTIONS

This case, brought pursuant to 42 U.S.C. § 1983 by numerous Ohio death row inmates, is before the Court on Motion of Plaintiffs Gary Otte, Raymond Tibbetts, Alva Campbell, Robert Van Hook, and Melvin Bonnell to Witness Executions that Precede Their [Own] Executions (ECF No. 953). All of the Moving Plaintiffs have presently set execution dates which are July 26, 2017 (Ronald Phillips); September 13, 2017 (Gary Otte); October 18, 2017 (Raymond Tibbetts); November 15, 2017 (Alva Campbell, Jr.); January 3, 2018 (William Montgomery); February 13, 2018 (Robert Van Hook); March 14, 2018 (Warren K. Henness); and April 11, 2018 (Melvin Bonnell).

The specific request is to have "two appropriately trained persons from among Plaintiffs' representation teams witness preceding executions on their behalves 'to ensure that [their own] death sentence is carried out' . . . in a constitutional manner." (ECF No. 953, PageID 32333.)

1

The request is premised on the reliability objection made by Defendants to the testimony of witnesses to executions who testified at the preliminary injunction hearing in this case in January 2017. While this Court found the testimony persuasive, the Sixth Circuit did not. *Fears v. Morgan (In re: Ohio Execution Protocol)*, ___ F.3d ___, 2017 U.S. App. LEXIS 11491 (6th Cir. Jun 28, 2017)(en banc).

Plaintiffs ground their request in Fed. R. Civ. P. 34 which authorizes a party or its designated representative to enter premises to observe an operation being carried on there. Plaintiffs sought the agreement of the State to their request by letter on November 23, 2016 (ECF No. 953-1).[1] The State declined the request "because your attendance at the execution does not ensure that the death sentence is carried out, per Ohio Execution Policy 01-COM-11 pp5, VI.A.5.c."

In the predecessor litigation, Case No. 2:04-cv-1156, Judge Frost dismissed a claim that requiring an inmate to use one of his three chosen witnesses to be his attorney somehow violated his right to counsel. We are not here, however, dealing with a request by the person to be executed, but rather with those scheduled for later execution.

Defendants object that the General Assembly has prescribed who may attend an execution in Ohio Revised Code § 2949.25 and assert this is a valid exercise of the State's authority to conduct executions in a secure way (Memo Opp., ECF No. 979, PageID 36894, et seq.) They rely in the first instance on *Holden v. Minnesota*, 137 U.S. 483 (1890). There the Supreme Court upheld a capital statute which in part provided that executions, then by hanging, were to be carried out in such a way as to "exclud[e] the view of persons outside. . ." *Id.* at 492.

---

[1] The request as made in the letter was that two team members of the Tibbetts team and two team members of the Otte team be permitted to witness the Phillips' execution which was then scheduled for January 2017. Plaintiffs have now clarified that they are only requesting a total of two additional witnesses (ECF No. 953, PageID 32335, n. 3).

The Court held this provision did not affect the substantial rights of the condemned. *Id.* at 491. More recent precedent is found in *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), where the Court held that the First Amendment did not create a greater right of access to penal facilities than that accorded to the general public and "[w]hether the government should open penal institutions in the manner sought by respondents is a question of policy which a legislative body might appropriately resolve one way or the other." 438 U.S. at 12.  As a matter of public policy, the States have moved away from public executions since 1830 when Connecticut became the first State to do so; the last public execution was in Kentucky in 1936 (Banner, **THE DEATH PENALTY: AN AMERICAN HISTORY**, Harvard University Press 2002, pp. 154, 156).  The cited Supreme Court precedent supports this policy decision which is reflected in Ohio Revised Code § 2949.25.

In Reply, Plaintiffs note that the cited Supreme Court cases did not decide the question presented here and that they do not seek access to any portion of the "Death House" except the witness room (Reply, ECF No. 994, PageID 38179).  They likewise point out that Defendants have raised no valid security concerns and their vantage point from the witness room would not compromise the confidentiality of any sources of execution drugs or the anonymity of execution team members.  In sum, Plaintiffs assert that their request should be viewed as any other request to gather information in discovery that is relevant to their claims for relief.

Plaintiffs supplement their Motion with argument based on the Sixth Circuit's observation that lay witnesses who testified at the preliminary injunction hearing were not credible "because they were untrained to be able to ascertain whether body movements were a sign of consciousness or not." (Supplement, ECF No. 1080, PageID 43250), *citing Fears v. Morgan*, *supra*:

> Thus, even Dr. Bergese—the plaintiffs' principal expert as to whether Ohio's execution protocol would cause inmates to experience severe pain—admitted that the science on this issue "could go either way." R. 923 at 30844, 30909. What tipped the balance for him, rather, was "the eyewitness reports" from laymen who attended executions involving midazolam. *Id.* at 30909; *see also id.* at 30870. But that data came with a raft of problems of its own. First, the sample size was small: in his expert report, Dr. Bergese discussed only nine midazolam-based executions. *See* R. 844-1 at 24972-80. Second, most of those accounts came from witnesses who, according to the district court, were likely to be "highly biased"—such as relatives of executed inmates, capital-defense attorneys, and even the inmates' own lawyers. R. 923 at 30869. And none of these witnesses had any medical training. *See, e.g.*, R. 922 at 30644, 30713. Thus, as Dr. Bergese himself admitted, "the quality of the data is not there." R. 923 at 30910; *see also id.* at 30869.

*Id.* at *15-16. In light of this ruling, Plaintiffs have modified their request to having a nurse anesthetist witness the executions, accompanied by one of the Plaintiffs' counsel (other than for the inmate being executed)(Supplement, ECF No. 1080, PageID 42251). Defendants' Memorandum in Opposition to the Supplement essentially reiterates Ohio's concerns.

In light of the Sixth Circuit's decision, the Court concludes having a nurse anesthetist present would add little to the body of probative evidence in this case. There has been no showing that such a person's training would enable him or her to provide an evaluation of consciousness from the witness room. Add to that the fact that, having been chosen by Plaintiffs' counsel, such a witness is likely to be perceived as biased. Thus the request is not parallel to a request to have the Court designate an expert witness who would attend an execution.

On the other side is the legislature's decision about who shall be present, probably springing at least in part from a desire that the process be as dignified as possible (Compare

4

Banner's description of America's last public execution in 1936, op cit. at p. 156).  While it has made no decision directly in point, the Supreme Court's decisions at least support the authority of the legislature to decide who shall be present.

Finally, the Court considers what may be an unintended consequence of granting the Motion:  today it is made by collaborating counsel for five death row inmates.  But tomorrow a request could be made by counsel who are not collaborating.  Presuming Ohio proceeds with the use of midazolam as the first drug in a three-drug protocol, the effects of midazolam will presumably be relevant to every other midazolam-threatened death row inmate in the country who will have the same Rule 34 argument available.  Deciding which shall have access would involve this Court in precisely the micro-management which Judge Frost eschewed.

All of this said, the Director of ODRC could have no objection which the Court would be prepared to sustain if an inmate who is to be executed designated a nurse anesthetist from another inmate's "team" to attend his execution.

Plaintiffs' Motion to Permit additional witnesses is DENIED.

July 18, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge

5