# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re:  OHIO EXECUTION
  PROTOCOL LITIGATION,   :   Case No. 2:11-cv-1016

                                       Chief Judge Edmund A. Sargus, Jr.
                                       Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs
  Tibbetts and Otte

---

## DECISION AND ORDER ON SECOND RECONSIDERATION OF DECISION ON MOTION TO DISMISS AS TO FORTY-NINTH CAUSE OF ACTION

---

This case is before the Court on the oral motion of Plaintiffs Tibbetts and Otte that the Court reconsider a second time its Decision and Order (ECF No. 1088)[1] dismissing the Forty-Ninth Cause of Action pleaded in the Joint OCPA Supplement (ECF No. 954) (the "Decision"). Plaintiffs filed a memorandum in support of reconsideration (ECF No. 1110) and Defendants have responded (ECF No. 1116).

Defendants assert the request to reconsider again does not meet the standards of either Fed. R. Civ. P. 59(e) or of Fed. R. Civ. P. 60.  Those Rules do not apply because the decision is interlocutory, i.e., not post-judgment.  The Court therefore has authority to reconsider it. Prejudgment orders remain interlocutory and can be reconsidered at any time.  Moore's Federal Practice at ¶0.404.

---

[1] Reported at *In re:  Ohio Execution Protocol Litigation (Tibbetts & Otte)*, 2017 U.S. Dist. LEXIS 107468 (S.D. Ohio Jul 12, 2017)

1

In the Joint Supplement Plaintiffs seek injunctive and declaratory relief under the Ohio Corrupt Practices Act as to Defendants Richard Theodore and Execution Team Members 17, 21, 31, and 32 in their individual capacities (ECF No. 954, PageID 32343, ¶ 2135). These Defendants are referred to in the Decision and hereinafter as the "OCPA Defendants."

In their Joint Supplement, Plaintiffs allege that, in carrying out their assigned duties under Ohio's Execution Protocol, 01-COM-11, the OCPA Defendants will violate the federal Controlled Substances Act (ECF No. 954, PageID 32344, ¶ 2138). Plaintiffs allege that by doing so, the OCPA Defendants will violate the Ohio Corrupt Practices Act, Ohio Revised Code § 2923.31, et seq., which they claim provides them with a private cause of action to enjoin such violations. *Id.* This Court is asserted to have jurisdiction over the Forty-Ninth Cause of Action under 28 U.S.C. § 1367, supplemental to its jurisdiction over Plaintiffs' original claims under 42 U.S.C. § 1983. *Id.* at ¶ 2139.

The State Actor Defendants sought dismissal of the Forty-Ninth Cause of Action on the grounds that (1) "pendent state law claims cannot be maintained against state actors unless and until the Ohio Court of Claims determines that the state actor's conduct was manifestly outside the scope of their employment"; (2) the OCPA Defendants are entitled to qualified immunity; (3) the Eleventh Amendment precludes assertion of this claim; and (4) the OCPA Defendants are entitled to quasi-judicial immunity for the duties they are assigned in the Execution Protocol (ECF No. 981, PageID 37073-78).

In dismissing the Forty-Ninth Cause of Action, the Court relied on the Defendants' first argument (Decision, ECF No. 1088, PageID 42382-85, citing principally *Haynes v. Marshall*, 887 F.3d 700 (6th Cir. 1989). The other arguments were not discussed.

2

**Cognizability and the Ohio Court of Claims**

Plaintiffs' first request for reconsideration was largely based on their claim that Execution Team Members 21, 31, and 32 are not state employees, but rather contractors with the State to perform the work required of them under the Execution Protocol (Motion, ECF No. 1090, PageID 42398-99). Plaintiffs rely on *Cameron v. Children's Hosp. Med. Center,* 131 F.3d 1167 (6th Cir. 1997), in which the court held that a district court has authority, in deciding whether it has subject matter jurisdiction, to consider the threshold question of whether defendants are state employees for purposes of Ohio Revised Code § 2743.02(F). "If the defendants are state 'employees' for purposes of this case, then the plaintiffs must present their claim to the Ohio Court of Claims before proceeding in a court of general jurisdiction." *Id.* at 1170.

The *Cameron* court, however, noted that contractors can also be employees within the meaning of the Ohio Court of Claims statute. Ohio Revised Code § 109.36, cited by the *Cameron* court, provides that the term "employee" includes

> (b) A person that, at the time a cause of action against the person, partnership, or corporation arises, is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state.

The parties have presented additional argument and evidence on the question whether Team Members 21, 31, and 32 are immune from liability because they come within this statute. First Plaintiffs note that all three are undisputedly acting under personal service contracts (ECF No. 1110, PageID 42943). Noting their deposition testimony about the capacities in which they

3

perform under the Execution Protocol, Plaintiffs argue these persons cannot be performing medical services. Plaintiffs proceed to attempt to prove that what these team members do is not the provision of medical services because it is not intended for the "prevention, alleviation, [or] cure of disease," i.e., it is not therapeutic. *Id.* at 42944. Further, these team members admit that what they do during an execution does not serve a therapeutic purpose and they are not practicing their respective professions in participating in executions. *Id.* at 42945-46. They cite expert testimony from earlier in this case for what is a self-evident proposition: a lethal injection execution is not a "medical" procedure within the dictionary or professional definition of medicine.

The Court disagrees with Plaintiffs' interpretation of the statute. While no one should pretend that a lethal injection execution is in any way therapeutic, there are obvious "medical" aspects to it that are better performed by persons with skill and training that is more accurately called "medical" than anything else. Certainly the establishing and maintenance of an intravenous line and the administration of drugs through that line are processes likely to benefit from the experience and training of EMT's or paramedics. The State's obligation to administer lethal injections pursuant to 01-COM-11 as interpreted by prior orders of this Court makes the use of persons with those skills and that training prudent if not mandatory.

In interpreting a statute a court should:

> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then
> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

4

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169. "It is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir. 1945)(L. Hand, J.) The Court can discern no arguable purpose of the General Assembly to exclude persons performing services such as Team Members 21, 31, and 32 are contracted to perform from the reach of Ohio Revised Code § 109.36.

In the Decision, the Court relied on *Haynes, supra.,* to insist that Plaintiffs must first obtain a ruling from the Ohio Court of Claims before proceeding here. The Court distinguished *Davet v. City of Cleveland*, 456 F.3d 549 (6th Cir. 2006), and *Williams v. Duke Energy Int', Inc.,* 681 F.3d 788 (6th Cir. 2012), relied on by Plaintiffs, on the grounds that defendants in those cases "although state actors for purposes of direct liability under 42 U.S.C. § 1983, were not arguably entitled to immunity under Ohio Revised Code § 9.86." (Decision, ECF No. 1088, PageID 42384.)

In their Motion for Reconsideration, Plaintiffs again argued *Davet* and *Williams* were pertinent, but missed the point of the distinction the Court made: the defendants in *Davet* were the City of Cleveland, its Building & Housing Department, and a city employee. These were all "state actors" – i.e., persons acting under color of state law for § 1983 purposes, but plainly they were not even arguably employees of the State of Ohio. Similarly, none of the parties in *Williams* was allegedly an employee of the State.

*Haynes* remains controlling law and was expressly followed in *McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012).

5

> Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities.

693 F.3d at 665, quoting *Haynes*, 887 F.2d at 705. Reading *Cameron* and *Haynes* together, this Court may determine whether Team Members 21, 31, and 32 are state employees for purposes of the Ohio immunity statute. If they are so situated, the Plaintiffs must first obtain a decision from the Ohio Court of Claims before proceeding. As it is undisputed that Defendant Theodore and Team Member 17 are state employees, Plaintiffs must certainly proceed against them in the Court of Claims. This seems likely to be a futile gesture, since the acts the OCPA Defendants are expected to perform in carrying out executions under 01-COM-11 are commanded by the Protocol.

Plaintiffs also claim filing in the Court of Claims would be futile because that court cannot grant injunctive relief. *Haynes* contemplates that once a plaintiff has obtained a decision by the Court of Claims that a state employee's acts are outside the scope of employment, the plaintiff can pursue individual liability claims in a court of general jurisdiction which would have equity power.

In support of their claims, Plaintiffs cite Wright & Miller, 17A Fed. Prac. & Proc. Jurisdiction § 4211 for the proposition that "[i]f a state closes its door to a particular class of litigants or claims, a federal court, *exercising diversity jurisdiction*, cannot entertain a suit by such a litigant or such a claim." (Motion, ECF No. 1090, PageID 42401.) But when a federal court exercises supplemental jurisdiction under 28 U.S.C. § 1367, it must apply state law just as if its original jurisdiction were in diversity. And Ohio law provides a cause of action under the

6

Corrupt Practices Act against state employees only if the Court of Claims has held they are not immune.

The Court concludes that Team Members 21, 31, and 32 are employees of the State of Ohio for purposes of Ohio Revised Code § 109.36(B) who are not liable to Plaintiffs under the Ohio Corrupt Practices Act without a prior ruling from the Ohio Court of Claims. Plaintiffs concede that Defendants Theodore and Team Member 17 are state employees. They are also not liable under OCPA without a prior ruling from the Court of Claims.

**The Eleventh Amendment**

There is, however, a deeper problem with the Forty-Ninth Cause of Action, not discussed in the Decision and that is the bar of the Eleventh Amendment. The Court first made an Eleventh Amendment analysis in the Decision and Order on Reconsideration which elicited the second request for reconsideration (ECF No. 1099).

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

It was adopted to overrule the very unpopular decision in *Chisholm v. Georgia*, 2 Dall. 419 (1793). It has been construed to bar suits against a State by its own citizens. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Hans v. Louisiana*, 134 U.S. 1 (1890); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982). The Amendment also bars actions against state agencies where the State is the real party in interest. *Estate of Ritter v. University of Michigan,* 851 F.2d 846, 848 (6th Cir. 1988); *Ford Motor*

7

*Company v. Dep't of Treasury of State of Indiana*, 323 U.S. 459 (1945); *Quern v. Jordan*, 440 U.S. 332 (1979).

The Eleventh Amendment does not bar an action for injunctive relief against a state officer for violations of the United States Constitution. *Ex parte Young,* 209 U.S. 123 (1908); *Cory v. White*, 457 U.S. 85 (1982); *Thomson v. Harmony*, 65 F.3d 1314, 1320 (6th Cir. 1995). However, the Amendment does bar an action to enjoin state officials from violating state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

Plaintiffs do not avoid the Eleventh Amendment bar by suing the OCPA Defendants in their individual capacities because in carrying out their duties under 01-COM-11, they will not be acting in their individual capacities, but rather as agents of the State.

> When suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake. This commonsense observation of the State's real interest when its officers are named as individuals has not escaped notice or comment from this Court, either before or after *Young*. See, *e.g., Osborn* v. *Bank of United States,* 22 U.S. 738, 6 L. Ed. 204, 9 Wheat. 738, 846-847 (1824) (stating that the State's interest in the suit was so "direct" that "perhaps no decree ought to have been pronounced in the cause, until the State was before the court") (Marshall, C. J.); *Pennhurst State School and Hospital* v. *Halderman,* 465 U.S. 89, 114, n. 25, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984) (noting that *Young* rests on a fictional distinction between the official and the State).

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997).

Because the Forty-Ninth Cause of Action seeks to enjoin the OCPA Defendants, on the basis of state law, from carrying out executions, this Court is barred by the Eleventh Amendment from exercising jurisdiction over that claim for relief.

8

Because the Eleventh Amendment bar prevents this Court from exercising jurisdiction over the Forty-Ninth Cause of Action, the Court will not discuss the OCPA Defendants' qualified immunity and quasi-judicial immunity defenses to the Forty-Ninth Cause of Action.

In their Supplemental Briefing, Plaintiffs rely on *Hafer v. Melo,* 502 U.S. 21 (1991), and *Hardin v. Straub,* 954 F. 2d 1193 (6th Cir. 1992), for the proposition that, in deciding the Eleventh Amendment issue, the Court must focus on the capacity in which the OCPA Defendants are sued and not the capacity in which they act "when they violate the law." (ECF No. 1110, PageID 42930.) In *Hafer* the Supreme Court held that state officials sued in their individual capacities could be held liable under 42 U.S.C. § 1983 and the Eleventh Amendment did not bar such a suit. *Hardin* is to the same effect. But in the Forty-Ninth Cause of Action, Plaintiffs do not seek relief against state officials in their individual capacity for violations of the Constitution as in a § 1983 case, but for violations of the Ohio Corrupt Practices Act.

In their prior filings, Plaintiffs emphasized their need for injunctive relief on this claim; in their most recent filings, they have spoken of damages as well. Any claim they might have for damages has plainly not yet arisen because they have not yet been executed by a method they claim is criminal.[2]

Of course, Plaintiffs have not backed away from their prayer for injunctive relief. The Court held previously that injunctive relief to enforce a state statute, the OCPA, was barred by *Pennhurst, supra*. Plaintiffs assert this was error and that *Pennhurst* only bars injunctive relief against the OCPA Defendants in their official capacities (Supplemental Briefing, ECF No. 1110, PageID 42932). The distinction is not there. The *Pennhurst* Court held

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate

---

[2] The Court offers no opinion on whether a damages claim would survive the execution.

> the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106. The Court expressly refused, over Justice Stevens' dissent, to extend the legal fiction of *Ex Parte Young* to the situation where injunctive relief was sought on the basis of violation of state law. *Id.* at 107. The *Pennhurst* Court also disposes of Plaintiffs' claim that pendent or supplemental jurisdiction overcomes the bar of the Eleventh Amendment.

The Decision on Reconsideration also relied on *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997). Plaintiffs attempt to distinguish *Coeur d'Alene* on the ground that it requires a finding that a case implicates special sovereign interests (Supplemental Briefing, ECF No. 1110, PageID 42935, et seq., citing *Martin v. Taft*, 222 F. Supp. 2d 940 (S.D. Ohio 2002)(Smith, J.)). Plaintiffs conclude "[n]one of the special sovereign interests recognized by the courts and enumerated in *Martin* are implicated in this entire case . . .," and Plaintiffs . . . are *not* asking the Court to enjoin the State from carrying out executions on the basis of these claims." (ECF No. 1110, PageID 42937.)

To the contrary, it is difficult to imagine an action more directly implicating a State's sovereignty than carrying out an execution pursuant to a court's judgment. Of course none of the special sovereign state interests in real property enumerated in *Martin* are involved here. One would hardly have expected a listing of the carrying out of executions in a case involving property interests.

Plaintiffs' position would have the Court exalt form over fiction. The gravamen of Plaintiffs' claims in the Forty-Ninth Cause of Action is that the five OCPA Defendants by carrying out an execution in conformity to 01-COM-11 will have violated the OCPA by violating

10

federal law. The claim is not focused on any expected aberrant behavior of these five individuals taken as individuals. For example, there is no allegation that Team Member X always does IV lines wrong. Thus if these five Defendants were enjoined on Plaintiffs' theory, it might well be expected that exactly the same claim would be asserted against Team Member Y when he took Team Member X's place. It is thus disingenuous to assert that it is not the State which is sought to be enjoined here.

**Conclusion**

Having reconsidered the matter twice, the Court adheres to its prior conclusions:

1. Plaintiffs cannot proceed against the OCPA Defendants on their Forty-Ninth Cause of Action without first obtaining permission from the Ohio Court of Claims. Absent permission from that Court, their Forty-Ninth Cause of Action is dismissed without prejudice for failure to state a claim upon which relief can be granted.

2. Plaintiffs' Forty-Ninth Cause of Action is barred by the Eleventh Amendment and is therefore dismissed without prejudice for lack of subject matter jurisdiction.

**Entry of Judgment**

Plaintiffs request that if the Forty-Ninth Cause of Action is dismissed, "the Court enter a judgment on that claim" (Supplemental Briefing, ECF No. 1110, PageID 42950). Defendants oppose entry of judgment, relying on *Corrosioneering, Inc., v. Thyssen Environmental Systems, Inc.,* 807 F.2d 1279 (6th Cir. 1986). That court wrote:

> A nonexhaustive list of factors which a district court should consider when making a Rule 54(b) determination includes:

11

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

*Id*. at 1283.

Applying the listed factors, the Court finds that the two issues decided herein – the requirement of an Ohio Court of Claims' decision before proceeding against the OCPA Defendants and the Eleventh Amendment bar – are separate from the unadjudicated claims which are constitutional claims being litigated under 42 U.S.C. § 1983.

These two Plaintiffs are set for execution on September 13, 2017 (Otte) and October 18, 2017 (Tibbetts). They were co-movants with Plaintiff Ronald Phillips for preliminary injunctive relief from those executions, which relief was denied in *In re: Ohio Execution Protocol Litig. (Otte v. Morgan)*, ___ F. 3d ___, 2017 U.S. App. LEXIS 11491 (6th Cir. Jun. 28, 2017)(en banc).[3] The Forty-Ninth Cause of Action does not overlap with claims made in the prior preliminary injunction motion and apparently represents a major intended thrust of Plaintiffs' litigation strategy to prevent their execution. Thus the claim will become moot if they are both executed in the next three months, but it is not likely to be mooted by further action in this Court.

---

[3] As of this writing, a request for stay of execution and for a writ of certiorari is pending before the United States Supreme Court, Case No. 17-5198.

Since Plaintiffs' Forty-Ninth Cause of Action is not particular to these two Plaintiffs or to the particular persons who fill the positions in the execution team which they occupy, it is entirely possible, indeed likely since the same counsel are involved, that the same claims will be made on behalf of other plaintiffs. Thus the reviewing court may have to decide the issues again. However, a decision upholding the dismissal may dissuade other plaintiffs from pleading these claims; a decision either way will be instructive for this Court.

Defendants oppose certification because they say there is doubt whether a ruling would "necessarily bind the other Plaintiffs under the law-of-the-case doctrine." (Response, ECF No. 1116, PageID 43027.) That is because this is a consolidated case. Be that as it may, a circuit court ruling on these two issues, even if not technically binding in a law-of-the-case or res judicata sense, will nonetheless be very instructive. Defendants assert the claim is frivolous, but that has not prevented the parties from filing hundreds of pages of briefing just to resolve these two issues. A circuit court ruling would or at least could substantially reduce the burden of dealing with these claims when made on behalf of other co-plaintiffs.

Accordingly, the Clerk is directed to enter judgment dismissing the Forty-Ninth Cause of Action without prejudice for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. The Court expressly determines that there is no just reason to delay that judgment and the consequent expected appeal.[4]

July 25, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge

---

[4] Because Plaintiffs Otte and Tibbetts and the Ohio Defendants with respect to those two Plaintiffs have unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c), the undersigned has authority to order the entry of judgment.