IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
  PROTOCOL LITIGATION,      :      Case No. 2:11-cv-1016

                               Chief Judge Edmund A. Sargus, Jr.
                               Magistrate Judge Michael R. Merz

This Report relates to Plaintiffs
  Smith, Webb, and Lorraine

# REPORT AND RECOMMENDATIONS ON MOTION TO DISSOLVE TEMPORARY INJUNCTIVE RELIEF

This case is before the Court on Motion of Defendants to dissolve the temporary restraining orders, preliminary injunctions, and stays of execution entered in favor of Plaintiffs Kenneth Smith, Charles Lorraine, and Michael Webb (ECF No. 1046). Plaintiffs opposed the motion (ECF No. 1102) and Defendants have filed a Reply (ECF No. 1129)

On July 8, 2011, District Judge Frost entered an Order that "the State of Ohio, and any person acting on its behalf, is hereby STAYED from implementing an order for the execution of Kenneth Smith issued by a court of the State of Ohio until further Order from this Court." (2:04-cv-1156 ECF No. 947, PageID 25929). Smith challenged "multiple facets of the lethal injection protocol used by the State of Ohio." *Id.* at PageID 25930. The Order describes Smith's equal protection theory as follows:

> The equal protection theory upon which Plaintiff proceeded at the
> June 29, 2011 hearing is that Defendants' policy and pattern of
> deviations from the written execution protocol treat each

1

> condemned inmate differently, burdening his fundamental rights
> and constituting disparate treatment that is not rationally related in
> any way to a legitimate state interest.

*Id.* at 25962-63. Judge Frost found that the Defendants "routinely deviate from the mandated or core provisions set forth in the written protocol." *Id.* "Under rational basis scrutiny, Defendants' core deviations are revealed to be irrational. They are arbitrary and capricious. They are unconstitutional. What the foregoing analyses teach is that Plaintiff is likely to prevail on his Equal Protection claim." *Id.* at PageID 25982. The State did not appeal from the grant of injunctive relief.

Six months later, Judge Frost entered an Order as to Plaintiff Lorraine (2:11-cv-1016, ECF No. 57). He found that Lorraine was also likely to succeed on his Equal Protection claim and therefore was entitled to injunctive relief. *Id.* at PageID 3186. Lorraine focused on the September 18, 2011, version of the protocol, alleging it to be

> facially invalid because it codifies disparate treatment of similarly
> situated individuals without sufficient justification so as to be
> arbitrary, irrational, and capricious. Lorraine also asserts that he is
> a class of one subject to treatment that burdens his fundamental
> rights in a manner that is not rationally related in any way to a
> legitimate state interest.

*Id.* at PageID 3189. Judge Frost noted that Ohio had revised its execution protocol in response to the Smith Order. *Id.* at 3190. In between the two decisions, Judge Frost had refused to enjoin the execution of Reginald Brooks. But when the State executed Brooks, it deviated from the Protocol in constitutionally significant respects. Judge Frost granted a temporary restraining order and a preliminary injunction identical in terms to the relief granted to Smith. Although the State appealed, it later voluntarily dismissed the appeal with no decision on the merits. On

2

January 24, 2012, Plaintiff Webb moved to intervene and for parallel relief which the State did not oppose and Judge Frost granted (ECF No. 71).

Defendants argue that after the Lorraine and Webb preliminary injunctions, they instituted a "series of procedural and administrative reforms intended to address and rectify the concerns which prompted the Court's intervention." (Motion, ECF No. 1046, PageID 40602.) Considering those changes, Judge Frost refused preliminary injunctive relief to Plaintiffs Mark Wiles and Brett Hartman. *Id.,* citing ECF Nos. 107 and 136. Those reforms, Defendants argue, constitute a significant change in the circumstances under which the Smith, Lorraine, and Webb preliminary injunctions were entered sufficient to satisfy the standard for modifying an injunction stated in *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012).

Plaintiffs oppose the Motion. They assert that the purpose of the preliminary injunctive relief was to "permit the Plaintiffs to remain alive to take their claims to a merits trial, rather than face an execution date before trial could take place." (Response, ECF No. 1102, PageID 42447.) They argue that the balance of equities which was weighed in their favor when preliminary injunctive relief was granted has not changed. They argue in particular that there is no reason to dissolve the injunctions now. They assert they "will be subjected to immediate harm if the injunctions are dissolved, as DRC Defendants expressly assert the intent to seek and obtain execution dates." *Id.* at PageID 42452. They assert the injunctions were proper when issued and there has been no significant change in the law or the circumstances.

# Analysis

The parties agree that the relevant standard for modification of a preliminary injunction is set forth in *Gooch, supra*.

> The power to modify or dissolve injunctions springs from the court's authority "to relieve inequities that arise after the original order." *Credit Suisse [First Boston Corp. v. Grunwald]*, 400 F.3d [1119] at 1124 [(9th Cir. 2005)]. Where "significant changes in the law or circumstances" threaten to convert a previously proper injunction "into an 'instrument of wrong,'" the law recognizes that judicial intervention may be necessary to prevent inequities. *Salazar v. Buono*, 130 S. Ct. 1803, 1816, 176 L. Ed. 2d 634 (2010) (plurality opinion) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2961 (2d ed. 1996) (hereinafter Wright & Miller)). However, such judicial intervention is guarded carefully: To obtain modification or dissolution of an injunction, a movant must demonstrate significant "changes in fact, law, or circumstance since the previous ruling." *Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648-49 (2d Cir. 1989); *see also Int'l Union, UAW v. Baretz*, Nos. 97-1763, 97-1936, 1998 U.S. App. LEXIS 17116, 1998 WL 449688, at *2 (6th Cir. July 22, 1998) (unpublished opinion) (citing *Twp. of Franklin Sewerage Auth. v. Middlesex Cnty. Utils. Auth.*, 787 F.2d 117, 120 (3d Cir.), *cert. denied*, 479 U.S. 828, 107 S. Ct. 109, 93 L. Ed. 2d 57 (1986)).

*Id.* at 414. The Magistrate Judge finds that there have been significant changes in the circumstances of this case since these Plaintiffs were awarded preliminary injunctive relief.

The basis for consolidation of this case and its predecessor, Case No. 2:04-cv-1156, is that there are common questions of law and fact. Fed. R. Civ. P. 42. It would have been possible at the time the Smith execution was enjoined to also enjoin all future executions by Ohio as to which there was a probability that they would be carried out in violation of the

inmate's Equal Protection rights[1] until such time as Ohio had reformed its execution method to comply with the Constitution. The factual findings Judge Frost made in support of the Smith injunction and again with Plaintiff Lorraine were not of facts particular to either of those Plaintiffs, but instead would appear to apply to all death row inmates.

Rather, it was determined to treat each inmate's case separately on motion for preliminary injunction as his scheduled execution date approached. Because consolidated cases retain their separate identity, this was a proper way of proceeding. *See, Gelboim v. Bank of America Corp.,* ___ U.S. ___, 135 S. Ct. 897 (2015). Indeed, there may be other issues that make this appropriate, such as appellate jurisprudence related to the imminence of executions.

Because of the serial consideration of preliminary injunction motions, Judge Frost was able to assess the degree of progress toward compliance with the Constitution that Ohio was making as it went forward. Thus he found threatened noncompliance as to Smith, but no such threat to Brooks. Clearly disappointed in what happened to Brooks, he then enjoined the Lorraine execution. But he already found the changed circumstances necessary to refuse preliminary injunctive relief when it came to the Wiles and Hartman executions. As Defendants note, after Lorraine (and Webb who tagged along with Lorraine), Judge Frost never again enjoined an execution on the Equal Protection basis on which Smith, Lorraine, and Webb received relief.

The Plaintiffs' probability of success on the merits has changed dramatically since they received relief because, as Judge Frost found, the practices of Ohio in carrying out executions have changed to a way that satisfies the Constitution, at least with respect to the Equal Protection argument.

---

[1] The ODRC Defendants continue to "maintain that there is no basis for Plaintiffs' Equal Protection claims . . ." (ECF No. 1046, PageID 40607 .) The Magistrate Judge declines to reconsider that issue at this time.

Plaintiffs' claim of "immediate harm" if the injunctive relief is dissolved is hollow. In fact, these three Plaintiffs have received an unwarranted benefit from the place they formerly held in the execution schedule. Set for execution in mid-2011 to early 2012, they now have no execution dates at all. Ohio's has currently scheduled twenty-seven executions through September 2020. If the preliminary injunctions were dissolved, these three would probably, if history is any guide, be inserted at the end. This means that they would have effectively added almost ten years to their lives merely by being at the "right" place in the schedule at the right time. They are no more entitled to further stays on the basis of stale claims than were inmates Wiles and Hartman.

Plaintiffs emphasize the risk that Ohio may return to unconstitutional ways. Noting, for example, Judge Frost's express approval of Director Mohr's administration, they also note that Governor Kasich is term-limited and that there will be a new Governor of Oho in January 2019 who may appoint a new Director of the ODRC. Whatever changes there may be in ODRC personnel and indeed in the judicial personnel assigned to this case, the Equal Protection Clause and this Court's ability to enforce it with Judge Frost's precedents in place will not change. But the relevant circumstances of this case have changed since preliminary injunctive relief was granted.

It is therefore respectfully recommended that Defendants' Motion to Dissolve be GRANTED. This would be without any prejudice to any future motion for preliminary injunctive relief these Plaintiffs may seek.

August 2, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).