IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
  PROTOCOL LITIGATION,

Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs

  Otte, Tibbetts, and Campbell

Execution of Gary Otte Scheduled:
09/13/2017

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' SECOND MOTION TO PRESERVE AND PRODUCE EXECUTION EVIDENCE

This § 1983 capital case is before the Court on Plaintiffs Gary Otte, Ronald Tibbetts, and Alva Campbell's "Second Motion to Preserve and Produce Execution Evidence" (ECF No. 1231). The Motion was filed and served electronically at 7:42 P.M. EDT on September 8, 2017. It seeks a very broad expansion of the scope of evidence to be collected immediately after the execution of Garry Otte, now scheduled for September 13, 2017, compared with evidence collected immediately after the execution of Ronald Phillips on July 26, 2017, and was made at a time when it will be difficult or impossible for Defendants to respond in a considered way.

**Procedural History Regarding Preservation of Execution Materials**

The chronology of the preservation order on the Phillips' execution is relevant.

1

Plaintiffs Otte and Tibbetts moved the Court on November 23, 2016, for an order to preserve and produce execution materials from the Ronald Phillips' execution which was then scheduled for January 12, 2017, fifty days hence. Essentially, they sought a continuation for the Phillips execution of Judge Frost's Order respecting execution materials from the Dennis McGuire execution (ECF No. 392), but without continuing Judge Frost's requirement that they confer with Defendants on the method of transporting and testing the preserved materials (ECF No. 737, PageID 23154). The Motion asked the Court to set an expedited briefing schedule by requiring any opposition by November 30, 2016, and advised that Plaintiffs had not consulted with Defendants about the Motion under S. D. Ohio Civ. R. 7.3(b) because they were not expected to agree. *Id.* at PageID 23159.

The Court granted expedited briefing (ECF No. 738) and Defendants complied, only partially opposing the Motion (ECF No. 748). They noted that it had taken "several months after the January 2014 execution for the parties to agree to the terms of testing. But agreement was reached." However, Defendants noted that since the McGuire execution the General Assembly had enacted Sub. H.B. 663 "to address the confidentiality of information related to lethal injection executions.: *Id.* at PageID 23308. The constitutionality of that legislation has been upheld. *Phillips v. DeWine*, 841 F.3d 405 (6th Cir. 2016). In addition to the statute, Judge Frost, they noted, had entered a protective order. *Id.* at PageID 23309.[1]

Because the Governor reprieved Phillips's execution to July 26, 2017 (ECF No.   ), the Court did not need to decide the Motion to Preserve until July 18, 2017, eight days before the new execution date. The Court ordered Defendants to photograph the medication vials, the boxes in which they were packaged, and the syringes used in the execution (Decision and Order,

---

[1] That Order has since upheld by the Sixth Circuit on interlocutory appeal. *In re Ohio Execution Protocol Litig. (Fears v. Kasich)*, 845 F.3d 231 (6th Cir. 2016).

ECF No. 1107, PageID 42815. They were ordered to produce unredacted photographs for *in camera* inspection, to preserve the execution materials, and to confer with Plaintiffs about testing, submitting to the Court any unresolved issues. *Id.*

On August 17, 2017, the Court entered a detailed five-page order for testing of the Phillips execution materials without resolving the issues regarding the protective order and confidentiality statute because Plaintiffs had insisted that "time was of the essence" if they were to receive results from their chosen testing lab in time to use them in litigating Otte's preliminary injunction motion (ECF No. 1154). The Court was orally advised that Plaintiffs' chosen testing laboratory, NMS Labs, would have results in two to three weeks, meaning September 3, 2017, at the latest.

A flurry of filings the same day (ECF Nos 1155, 1156, 1158) resulted in modifications to the testing order (ECF No. 1159) to which the non-consenting Plaintiffs filed emergency objections to the Chief Judge (ECF No. 1160). Despite all of this furious activity, Plaintiffs reported to the Court on September 5, 2017, that their chosen laboratory was unable to provide the testing they had sought (ECF No. 1209).

**Plaintiffs' Second Motion to Preserve and Produce**

Despite all of the anxious litigation over the Phillips execution materials, Plaintiffs did not file the instant Motion until four days before the Otte execution is scheduled, depriving both the Court and Defendants' counsel of time to consider the Motion deliberately. Moreover, the scope of what they seek is much broader than has previously been ordered.

In addition to preserving and photographing the execution materials, Plaintiffs seek an order that "Defendants and any person acting pursuant to DRC Policy 01-COM-11 shall not manually alter or modify the inmate's body in any way following the Warden's announcement of death until a series of clear, high-resolution (4032 x 3024) digital photographs can be taken to comprehensively document the condition and status of the body on the death table." (ECF No. 1231, PageID 45272-73). Plaintiffs ask the Court to order Defendants to take the series of photographs but then, confusingly, ask the Court to order that Ms. Laura Depas "to take the photographs." Plaintiffs describe in great detail what they want the Court to order photographed. *Id.* at PageID 45274-75.

In Part III of their Motion, Plaintiffs seek an order which would substantially modify the prior orders regarding preservation of the execution materials. *Id.* at PageID 45276-81. In Part IV of their Motion, Plaintiffs seek an order from this Court that Defendants not interfere with Otte's wishes for disposition of his body. *Id.* at PageID 45281-82.

## Analysis

Plaintiffs' instant Motion is the functional equivalent of a motion to compel discovery under Fed. R. Civ. P. 37. That Rule provides in pertinent part

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery to obtain it without court order.

Fed. R. Civ. P. 37(a)(1). The Rule presupposes that, prior to a motion to compel, the moving party has made a proper discovery request under the Federal Rules of Procedure that has not been complied with. See Fed. R. Civ. P. 37(a)(3)(B). Long before the national Rules were amended to require consultation among counsel, the Local Rules of this Court required such consultation. See S.D. Ohio Civ. R. 37.1, which is couched in mandatory language.

The instant Motion utterly fails to comply with Rule 37. It does not advert to any prior discovery request to photograph Mr. Otte's body after the execution and in situ. It does not reflect any consultation with Defendants' counsel to resolve any disputes regarding requests made for discovery of this sort. Indeed, it expressly disclaims any consultation with Defendants' counsel at all (ECF No. 1231, PageID 45294-95).

Moreover, the Motion is made on an emergency basis, with virtually no time for Defendants to respond, the Court to consider the Motion, and Defendants to modify drastically their plans for complying with the Execution Protocol. Readers will recall Plaintiffs' theory that any deviation from the Protocol violates the Equal Protection Clause.

There was no need for the Motion to be made on an emergency basis. Plaintiffs have been seeking preservation and discovery of execution materials at least since their oral motion to preserve made two days before Dennis McGuire's execution on January 16, 2014. They could easily have expected Defendants to have concerns about what they seek (e.g., introducing an outside photographer into the execution chamber, prohibiting ODRC personnel from talking with Otte about disposition of his body without his attorney present, etc.[2]) Yet Plaintiffs did not so much as make a request for this discovery under Fed. R. Civ. P. 34 before moving to compel it, at least so far as the record shows.

---

[2] Plaintiffs ground this latter request in what happened at the Phillips execution on July 26, 2017. The Motion is the first time this concern has been brought to the Court's attention, forty-four days after it happened and only four days before it was expected to recur.

Plaintiffs have frequently reminded the Court of Judge Frost's comment in denying reconsideration of his order regarding the McGuire execution materials:

> If Ohio is going to be in the business of executing individuals and if Defendants are interested in defending themselves in this lawsuit, then the state actors involved must accept the consequent burdens that this at time [sic] entails. Any minimal inconvenience to Defendants does not outweigh Plaintiffs' right to discovery.

(ECF No. 396, PageID 11901[3].) But litigants' rights to discovery are not absolute. Instead, they are conditioned on counsels' following the procedural rules for discovery adopted by the Supreme Court, Fed. R. Civ. P. 26-37. Plaintiffs have not done so with respect to the requests made in the instant Motion.

To the extent the Motion requests the Court to compel preservation and/or discovery beyond what the Court ordered for the Phillips execution, the Motion is DENIED.

Defendants shall preserve the materials used in executing Mr. Otte to the extent and in the same manner as they did with the materials from the Phillips execution, including photographing the boxes and vials and providing those photographs in native digital format to the Court for *in camera* inspection. The parties shall consult as to any testing and provide the Court with their competing positions on this matter not later than September 18, 2017.

Regarding the request for an order that Defendants' not interfere with Otte's wishes for disposition of his body, Plaintiffs rely on Ohio Revised Code § 2108.70 or 2108.81 (ECF No. 1231, PageID 45283-84). This Court has no authority to enter such an order to require Defendants to comply with Ohio law. *In re: Ohio Execution Protocol Litig. (Gary Otte),* 2017 U.S. App. LEXIS 17436 (6th Cir. Sept. 7, 2017), citing *Pennhurst State School & Hospital v.*

---

[3] This observation was made in the context of the State's having failed to produce, on less than twenty-four hours' notice, evidence of the burdens Plaintiffs' requests would entail.

6

*Halderman*, 465 U.S. 89 (1984); *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)(*en banc*); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453 (6th Cir. 1998).

The Court notes, however, that

1. 01 COM 11 provides at § I.6 that "Disposition of the body shall be in accordance with arrangements made prior to the execution at the prisoner's request."
2. It appears that Mr. Otte has designated his parents jointly as the persons to decide on disposition of his body, with Attorney Werneke designated as successor representative.
3. The interests of Otte in his burial may, in the judgment of his parents, conflict with the interests of Messrs. Campbell and Tibbetts in Otte's body as the bearer of evidence in this case. Counsel should be cautious about conflicts of these interests; Ms. Werneke is counsel of record for a number of Plaintiffs in this case.
4. Ohio law appears to authorize the private autopsy for which Otte has expressed a desire.

September 10, 2017.

s/ *Michael R. Merz*
Michael R. Merz
United States Magistrate Judge
