# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
 PROTOCOL LITIGATION,  Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiff Otte

# MEMORANDUM MEMORIALIZING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND DECISION DENYING THE MOTION

The execution of Plaintiff Gary Otte was scheduled to commence at 10:00 A.M. on Wednesday, September 13, 2017. At 10:48 A.M., the following colloquy occurred between the Court and Attorneys Allen Bohnert and Carol Wright:

> THE COURT: We're on the record in Case Number 2-11-cv-1016. The Court is in receipt of a telephone call from Allen Bohnert, counsel for the petitioner and Plaintiff, Gary Otte[1]. The execution, Mr. Bohnert reports, is in progress. Mr. Bohnert, you're on the record.
>
> MR. BOHNERT: Yes, your Honor. I'm getting reports from Carol Wright who is witnessing that she was prevented for at least one and a half minutes from actually making the phone call to the family waiting room from the death house. I am in the family waiting room. She is witnessing in the death house. She is

---

[1] Mr, Otte was a Plaintiff in this case. The Court referred to him as a "petitioner" because he was undoubtedly a petitioner in a habeas corpus case challenging his conviction and death sentence, albeit not in this Court.

1

reporting that there were signs that Mr. Otte was conscious, crying, clenching of the hands, heaving at the stomach.

MS. WRIGHT: Heaving (inaudible) at his sides.

MR. BOHNERT: That was Ms. Wright. Things of that nature. Like I said, she was prevented from making a phone call to this room to this number for at least a minute and a half. At this point it's not known whether the paralytic has already been injected. At this point we would ask the Court enter an emergency TRO prohibiting the State from further injecting any other drugs, particularly if they've not injected the paralytic already.

MS. WRIGHT: Judge, this is Carol Wright. What I'm seeing now is no movement of the stomach, no movement of the hands, no movement at all. The left hand is unclenched and somewhat relaxed. I'm not certain whether the paralytic, I'm guessing the paralytic has been put on board. The curtain has not been closed yet though.

THE COURT: There's no one from the Ohio Department of Rehabilitation and Correction on the line, either counsel or one of the Defendants in the case, is that correct?

MR. BOHNERT: That is correct, your Honor. We are not permitted that ability. We are only provided a telephone line from the death house, a dedicated line specifically to the family waiting room where I had to call you from a different phone.

THE COURT: The motion for emergency Temporary Restraining Order is denied. Anything else for the record?

MR. BOHNERT: It's not clear to me whether the consciousness checks were in fact done.

MS. WRIGHT: I believe that they were coming in to do the consciousness checks as I was trying to get someone to let me out. We were locked in the witness room. They now are bringing someone in to check for heart and lung signs. The curtain is still open.

>MR. BOHNERT: Your Honor, if I might ask, is there a particular basis on which the Court denied the request?
>
>THE COURT: Opinion may follow.
>MS. WRIGHT: They're still checking. One man is checking for the lung sounds with a stethoscope. I'm still on the outside looking through the window. The man is just leaving. I'm going to hang up and go back in if they'll let me in. Are they going to let me? Thank you. Okay.
>
>MR. BOHNERT: Okay. At this point I don't know whether we need to remain on the line with your Honor or if your Honor would --
>
>THE COURT: I am prepared to keep a line open, Allen, if you wish or to allow you to attend to other matters without being on the line. Your choice.
>
>MR. BOHNERT: We'll hang up for the time being but if other matters present themselves, then we would be immediately in touch with your Honor, I guess.

(Unfiled transcript prepared by Official Court Reporter Debra Futrell from stenographic notes made during the telephone call.)

During a telephone conference call with counsel for both sides later on September 13, the Court advised Defendants of the above colloquy and Mr. Bohnert and Ms. Wright adopted their statements to the Court under oath. Mr. Bohnert made it clear that his statements had been hearsay, reporting to the Court what he had heard from Ms. Wright, who was actually witnessing the execution.

Fed. R. Civ. P. 65(b) provides in pertinent part:

> (b) TEMPORARY RESTRAINING ORDER.

> (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Under the exigent circumstances in which they were acting, Mr. Bohnert and Ms. Wright complied with Fed. R. Civ. P. 65(b) to the maximum extent possible. They obviously could not take the time to reduce their testimony to written form and the arrangements at SOCF precluded their bringing Defendants' counsel into the matter.

The Court denied the requested temporary restraining order for two reasons.

First of all, the facts as recited by Mr. Bohnert did not provide evidence that Mr. Otee was experiencing unconstitutionally severe pain beyond the evidence heard by the Court at the January 2017 preliminary injunction hearing in this case of what occurred in other executions since January 2014 where midazolam was used as the first drug in a three-drug execution protocol. While this Court, a panel majority at the Sixth Circuit, and Supreme Court Justices Sotomayor and Ginsburg believed that evidence was sufficient to warrant a preliminary injunction pending trial on the merits, a majority of the en banc Sixth Circuit disagreed. *Fears v. Morgan (In re: Ohio Execution Protocol),* 860 F.3d 881 (6th Cir. Jun. 28, 2017)(en banc). The law of the case is thus that the type of behavior of a person who has been injected with midazolam reported here by Ms. Wright through Mr. Bohnert is not sufficient to warrant preliminary injunctive relief.

Second, it appeared to the Court that granting Plaintiff's motion would be a vain act. From Ms. Wright report, it appeared that Mr. Otte's behavior alleged to evidence suffering had ceased and therefore either the midazolam had had its intended effect or the paralytic drug had already been injected. Assuming its accuracy, the Otte Execution Timeline confirms this timing. According to the timeline, Syringe #3, the first syringe with the paralytic drug, was started to be administered at 10:43:23 and was completed about a minute later; Syringe #4 was started at 10:44:34 and completed about a minute after that. Thus the acts sought to be enjoined had already been completed before Plaintiff sought to enjoin them. While the Court did not have the timeline until the afternoon of September 13, its content supports the inference the Court drew from Ms. Wright's report.

September 16, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge