IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
　PROTOCOL LITIGATION,

Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiffs
　Alva Campbell
　and Raymond Tibbetts

Execution Scheduled 11/15/2017
Execution Scheduled 02/13/2018

# DECISION AND ORDER DENYING LEAVE TO AMEND AND SUPPLEMENT

This method-of-execution case under 42 U.S.C. § 1983 is before the Court on Plaintiff Alva Campbell's Motion for Leave to File Amendment and Supplement to his Complaint (ECF No. 1350). The Motion was filed at 4:16 P.M. on Thursday, October 26, 2017, after the Court recessed the fourth day of a hearing on Campbell's Motion for Preliminary Injunction. Campbell is set to be executed November 15, 2017.

Campbell first sought relief from his capital conviction and sentence in this Court in a habeas corpus case filed in 2005. *Campbell v. Bradshaw*, Case No. 2:05-cv-193. This Court's denial of relief in that case was affirmed by the Sixth Circuit. *Campbell v. Bradshaw,* 674 F.3d 578 (6th Cir. 2012); cert denied, 133 S. Ct. 527 (2012).

On May 6, 2015, Campbell filed a second-in-time habeas application to plead lethal-injection-invalidity claims. *Campbell v. Jenkins*, (Case No. 2:15-cv-1702)  Concluding that case was a second-or-successive habeas application, the Court transferred it to the Sixth Circuit.

1

*Campbell v. Jenkins,* 2017 U.S. Dist. LEXIS 130803 (S.D. Ohio Aug. 16, 2017). Campbell sought remand, alleging in part that his challenge "is . . .based on his own unique, individualized circumstances," (Motion, ECF No. 7 in 6th Cir. Case No. 17-3855, citing the Petition in this Court, ECF No. 1, at PageID 42-43 and 75-76). Campbell spelled out at length his individual characteristics which he claimed made his sentence of death unconstitutional:

> Many of Campbell's serious health problems first manifested **prior to 2003,** including the beginnings of serious lung and breathing difficulties and the removal of a lung and his thyroid and the accompanying health problems those procedures created. **Since 2003**, however, Campbell's health has progressively, and acutely, worsened, with multiple severe and life-threatening ailments arising almost every year: 2003 – diagnosis of pulmonary hypertension; **2004** – diagnosis of increased scarring in the lungs and growing nodules in the upper lungs and severely worsening emphysema leading to concerns with air hunger; **2006** – diagnosis of Chronic Obstructive Pulmonary Disease (COPD) and emphysema classified as "end stage," diagnosis of collapsed lung and respiratory failure, sarcoidosis (for which there is not [sic] cure), coronary artery disease, atrial fibrillation, hypertension, deep vein thrombosis and pulmonary embolism; **2012** – hypoxemic respiratory failure (starving for oxygen), histoplasmosis, atrial fibrillation with rapid and out of rhythm heartbeats; **2014** – diagnosis of worsening COPD exacerbation, increasing nodules in lungs, emphysema increasing in lungs, discovery of an aortic aneurysm; **2015** – diagnosis of prostate cancer and surgical prostatectomy, spontaneous collapsed lung requiring a life flight to OSU Hospital; and a diagnosis of MRSA while at OSU Hospital; **2016** – hip replacement surgery after being knocked down by another inmate, while at OSU Hospital staff discovered a gangrenous colon and 2 surgeries were required to remove the colon and equip him with an external colostomy bag; **2017** – diagnosis of pneumonia after being hospitalized for coughing up blood. In addition to these physical characteristics that inhibit his ability to breathe, Campbell must take oxygen treatments four times a day in order to function, and he relies on a walker for very limited mobility.

*Id.* at PageID 18 (emphasis supplied).

On October 25, 2017, the Sixth Circuit denied Campbell's Motion to Remand his second habeas case, holding importantly that method-of-execution claims cannot be brought in habeas corpus, but must be brought in a § 1983 case. *In re Campbell*, ___ F.3d ___, 2017 U.S. App. LEXIS 21094 (6th Cir. Oct. 25, 2017). The circuit court noted that Campbell was a Plaintiff in this case[1] and that the preliminary injunction hearing was set "for this very week." *Id.* at *13. He specifically contended in the Motion to Remand "that the pain caused by the "air hunger" inherent in a lethal injection would be magnified exponentially by his new respiratory ailments. *Id.* at *18.

It appears Campbell tried to elide timeliness concerns in the Sixth Circuit by alleging his respiratory ailments arose sometime after he filed his first Petition on March 1, 2005. Many new ailments arising on various dates after that were alleged in the Motion to Remand, Campbell's theory being that if they arose after the first Petition was filed, it was not an abuse of the writ to fail to include them and therefore his new habeas case was not second or successive.

Campbell's Fourth Amended Complaint, the relevant pleading for purposes of the preliminary injunction hearing, was filed February 3, 2017 (ECF No. 978). It included claims asserting that Campbell's individual characteristics made his execution by lethal injection unconstitutional (Thirty-Third and Thirty-Fourth Causes of Action). On August 14, 2017, the Court dismissed those claims without prejudice because they were too conclusory, failing to plead particular facts of Campbell's physical condition. (Decision, ECF No. 1148, PageID 43432, relying, *inter alia*, on *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). The Court noted that there might be particular

---

[1] Campbell became a plaintiff at the time of consolidation in November 2011.

3

mental or physical characteristics of [Plaintiff Campbell] that could be pleaded by amendment so as to satisfy Fed. R. Civ. P. 12(b)(6)." *Id.*

The possibility of curing the pleading deficiencies by amendment, however, was not intended to be unlimited as to time. The Court certainly did not intend to allow Campbell to sit on particularized facts, pleaded in the Sixth Circuit on August 31, 2017, until the day after the circuit held those claims were not cognizable in a habeas case, four days after this Court began hearing the preliminary injunction motion, and twenty days before his scheduled execution. To put it another way, all the facts pleaded in the Motion to Remand were known before August 31, 2017, but were not attempted to be pleaded in this Court until October 26, 2017.

As a general matter, the Capital Habeas Unit has been urging this Court to allow lethal-injection-invalidity claims to proceed simultaneously in habeas and § 1983 litigation at least since *Adams v. Bradshaw,* 644 F.3d 481 (6th Cir. 2011). Nothing prevented Campbell's counsel from presenting the facts in the Motion to Remand at the same time they were made in the circuit court.

Campbell filed his Amended Motion for Preliminary Injunction on September 27, 2017 (ECF No. 1262). In that Motion, Campbell argued his individual medical conditions at length, including an in-prison bronchial asthma diagnosis at age 23, many years before he filed his first habeas petition. *Id.* at PageID 46265. He also includes a 1996 diagnosis of COPD, nine years before his first habeas petition. *Id.* Campbell avers his COPD and emphysema have been labeled "end stage" since 2006. *Id.* at PageID 46267. Subsequent significant worsening of lung conditions is reported through July 2017. *Id.* at PageID 46270.

Despite arguing all these conditions which would satisfy the 12(b)(6) standard, Campbell never sought to amend his Fourth Amended Complaint until October 26, 2017. In fact,

Defendants opposed the Court's considering this portion of the preliminary injunction motion because the relevant claims in the Fourth Amended Complaint had been dismissed. (ECF No. 1282, PageID 46755, citing Order Denying Stay (Awkal and Eley), ECF No. 116, PageID 5815, citing *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010).

Apart from the delay in seeking to plead these claims, Campbell offered not a scrap of evidence during the hearing to prove the existence of those conditions. Most of the medical evidence presented at the hearing related to former Plaintiff Gary Otte, who was executed September 13, 2017.

The Motion to Amend relies in part on recent vein assessments conducted by ODRC as part of preparation for the November 15, 2017, execution, showing likely difficulty in obtaining vein access, and a notation on his medical chart that an allergy to benzodiazepines had been added. However, the Court was also informed that Mr. Campbell has a long history of difficulties with vein access such that he has had to receive infusions by way of a central line catheter in the past. The same record which lists the purported benzodiazepine allergy also shows he has been treated with midazolam on several occasions in the past.

The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

As a man facing execution in about two weeks, Campbell plainly has a dilatory motive. Since he has known since August 14, 2017, that his Fourth Amended Complaint needed amendment to assert these medical issues and he has known about the relevant medical conditions for years, his Motion is presented after undue delay. There would be undoubted prejudice to the State of Ohio in allowing amendment at this time when the State prepared for and conducted the hearing without these claims being pled.

Defendants have also argued that the amendment would be futile because the alternative method of execution suggested by Campbell – death by firing squad[2] – has not been shown to be a known, feasible, readily implemented and available alternative as is required by *Baze, supra*, and *Glossip, supra*. Campbell offered no evidence on this alternative during the hearing. Indeed, because it was not then pleaded, the Court would have ruled such evidence irrelevant. Execution by firing squad would be unlawful because Ohio Revised Code § 2949.22 requires the use of lethal injection and has done so since November 2011.

Campbell dispenses with any offer of evidence on his alternative. Apparently he believes that he need not do so because the Sixth Circuit wrote, in dismissing his second-or-successive habeas application, "[t]he fact that Ohio *currently* permits execution only by lethal injection does not change that fact. The Ohio legislature could, tomorrow, enact a statute reinstating the firing squad as an alternative method of execution." *In re Campbell*, ___ F.3d ___, 2017 U.S. App. LEXIS 21094 *17 (6th Cir. Oct. 25, 2017). That statement must be regarded as dictum. It is certainly not based on any evidence: it was agreed among the parties at the preliminary injunction hearing that Ohio has never used a firing squad for executions, so that method could

---
[2] Suggested at ECF No. 1350-1, PageID 50365.

6

not be "reinstated." How feasible it would be to get the Ohio General Assembly to adopt a firing squad method is also a matter of conjecture. The Sixth Circuit cites a recent Utah statute providing the firing squad will be used if lethal injection is invalidated. But Utah has actually used the firing squad in recent history, i.e., since *Gregg v. Georgia*, 428 U.S. 153 (1976). See The Executioner's Song by Norman Mailer (1980).

In his Written Closing Argument, Campbell says the fact that hospitals have used central line catheters on him in lieu of IV access in the past did not put him on notice that ODRC would not be able to obtain vein access for the execution. (Written Closing Arguments, ECF No. 1355, PageID 50487). He just received the pre-execution assessment and allegedly only then learned of ODRC's projected vein access issues. Indeed, his "attorney David Stebbins has . . . witnessed him with IV's established in his hand in the recent past." *Id.* This is another instance of the common litigation posture of death row inmates in this Court's experience: every new piece of discovery somehow creates a newly-arising claim which entitles the litigant to a re-start. Mr. Campbell has known or had reason to know for some time about his vein access issues.

The other new issue is the appearance of a note about benzodiazapene allergy on the pre-execution assessment report. Plaintiffs' counsel have confirmed that the note did not originate with Campbell who purportedly does not know the meaning of the word. Plaintiffs also produced on very short notice testimony from Dr. Sinha that the fact that a person was not allergic to midazolam in the past does not mean that he might not have an allergic reaction now, citing his own developed allergy to rabbits (Written Closing Argument, ECF No. 1355, PageID 50489). But there was no testimony that Mr. Campbell is actually allergic to midazolam or what effect that might have if he were injected with the intended 500 mg dose at the beginning of his execution. Media reports of Mr. Campbell's clemency hearing characterized his claim as being

7

that he was too sick to be executed. Indeed, Mr. Campbell has many serious documented diagnoses which probably make management of his medical condition complex and delicate. But an execution is not a medical procedure and the Eighth Amendment is not a tool for delicately titrating from day to day the procedure to be used.

Campbell attempts to turn his delay from a fault into a virtue, claiming that a soon as the Sixth Circuit recognized on October 25th that a non-statutory alternative could be pleaded, he moved to amend to add that very alternative, the firing squad. *Id.* Lack of recognition by the circuit court has not previously been a brake on Plaintiffs' counsels' creativity, e.g., the argument across many cases that newly-arising facts make newly-pled lethal injection claims not second or successive. Given that Campbell had enough facts about his individualized medical condition to file his Motion to Remand August 31, 2017, and to plead for mercy on that basis in his clemency hearing, his failure to move to amend until October 26, 2017, was unjustified.

For all of the foregoing reasons, Campbell's Motion to Amend and Supplement is DENIED.

October 31, 2017.

s/ *Michael R. Merz*<br>
United States Magistrate Judge