# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re:  OHIO EXECUTION
  PROTOCOL LITIGATION,

Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiff
  Alva Campbell

Execution Scheduled 11/15/2017

## DECISION AND ORDER DENYING PLAINTIFF CAMPBELL'S MOTION FOR LEAVE TO FILE AMENDMENT AND SUPPLEMENT TO HIS FOURTH AMENDED COMPLAINT

This method-of-execution case, brought pursuant to 42 U.S.C. § 1983, is before the Court on Plaintiff Campbell's Motion for Leave to File Amendment and Supplement to his Fourth Amended Complaint (ECF No. 1369).  The Motion was filed at 12:55 a.m. on Tuesday, November 14, 2017, and first came to the Court's attention at the opening of court business on that date.  The Defendants filed a Memorandum in Opposition at 3:14 p.m. on November 14, 2017 (ECF No. 1371) and the Court heard oral argument at 3:30 p.m. the same day.  Mr. Campbell's execution is set for 10:00 A.M. on Wednesday, November 15, 2017.

The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason -- such as undue delay, bad faith or

1

> dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989). *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

The Court finds that Campbell has not unduly delayed in presenting this Motion to Amend or Supplement in that the facts of which he complains were only made known to his counsel on the afternoon of November 13, 2017.

The Motion seeks to add a Third Cause of Action for violations of First, Sixth, Eighth and Fourteenth Amendment Rights of Access to Counsel, Access to Courts, Ability to Petition for Redress of Grievances, Due Process, and Privileges or Immunities of United States Citizenship. Campbell relates that his prior Third Cause of Action as pleaded in the Second Amended Omnibus Complaint was withdrawn when the Third Amended Omnibus Complaint

was filed (ECF No. 1369-1, PageID 51705). No right of access claim was pleaded in the Fourth Amended Omnibus Complaint (ECF No. 1252) or in Campbell's individual Fourth Amended Complaint (ECF No. 978).

Campbell complains that Defendants have announced

> their intention to (a) limit access to the Death House phone to one attorney at a time; (b) shorten the length of cord connecting the Death House vestibule phone and receiver, thereby removing the ability of an inmate's counsel to simultaneously use the phone and look through the window in the nearby door into the witness room to view the Death Chamber; and (c) prevent any other counsel in the witness room from leaving their seats at any point during the execution while one attorney is out of the room to use the vestibule phone.

(Motion, ECF No. 1369, PageID 51697.) As evidence of these restrictions, Campbell cites an email from Jocelyn K. Lowe to Allen Bohnert at 1:04 p.m. on November 13, 2017, which reads in pertinent part:

> In preparation for Wednesday's execution, please be advised of the following security protocols in place at SOCF and in the death house:
>
> 1) All witnesses who are provided a chair must remain seated in that chair throughout the execution when in the witness room;
>
> 2) Each attorney witnessing the execution will be provided a security badge identifying them as an attorney that [sic] may use the phone in the vestibule near the entrance door of the death house; you have identified the following attorneys who will be witnessing the execution: David Stebbins, Adam Rusnak, Joseph Wilhelm, and Kimberly Rigby;
>
> 3) Only one attorney at a time will be permitted to leave the witness room and enter the vestibule area to use the phone. In other words, if one attorney leaves the witness room to use the phone,

3

> the three remaining attorneys must remain in the witness room, and;
>
> 4) The length of the death house vestibule phone cord is no longer long enough to stretch back to the witness room door window to permit the attorney on the phone to provide the Court with a running description of events in the death house. This change was made to address DRC's concerns that the security of the witness rooms and vestibule area during an execution would be compromised by having a distraction in the witness room, which in turn would distract the activities in the execution chamber, caused by having a person visibly, and potentially audibly, on the phone directly outside the witness room, which person may also be trying to talk to other persons in the witness room. If permitted, all of those activities would take place in the presence of all of the media witnesses and all of the victims representative witnesses, causing further distraction and disruption of this solemn process.

(Quoted at ECF No. 1369-1, PageID 51722).

Campbell accuses Defendants of "pretextual invocation of undefined 'concerns' regarding 'security'." He asserts "there is no legitimate interest in depriving Campbell of access to the courts to assert a claim of cruel and unusual punishment . . ." and Defendants concerns "cannot be enough to defeat Campbell's constitutional rights, and effectively hamstring any protections that his counsel's use of the emergency phone might provide." (ECF No. 1369, PageID 51697).

During the last Ohio execution, that of Gary Otte on September 13, 2017, two of his designated witnesses, attorney Carol Wright and nurse anesthetist Laura Depas, were assigned seats in the inmate witness room from which they arose to view the video monitor during the time the curtain was drawn between that room and the execution chamber. They were told by ODRC officials to sit down. After she observed behavior by Mr. Otte which she characterized as obstructing, Nurse Depas urged Attorney Wright to leave the room to contact the Court and seek

a temporary restraining order to prevent injection of the second and third drugs.  Ms. Wright, who was not known to be an attorney to the person controlling the exit from the witness room, was not permitted to leave the room and call her cooperating counsel until a deputy warden who knew her had been summoned and allowed her exit.  She was able to describe Mr. Otte's condition to the Court by use of the vestibule telephone whose cord was then long enough to allow her to observed and talk at the same time.

All of the changes in procedure that ODRC has adopted thus appear to be based on occurrences at the Otte execution.  The directive to remain seats is converted from a one-off order to a general rule.  To cure they delay caused by not identifying Ms. Wright as an attorney, all of the attorneys will be issued identifying insignia, a change which should facilitate access to the Court if needed.  While there was no issue about more than one attorney leaving to use the phone during the Otte execution,  Campbell has identified four attorneys as witnesses instead of two, and apparently the possibility that more than one attorney would want to leave at a time is not fanciful on Defendants' part because Plaintiffs oppose it as an unwarranted restriction. Finally, shortening the vestibule phone cord will prevent what happened at the Otte executuion with Ms. Wright reporting to the Court contemporaneously what she observed in the execution chamber.

Plaintiff characterizes Defendants' reasons for these changes as "pretextual" security concerns.  Keeping the door locked between the witness room and the vestibule was testified in the October 23rd preliminary injunction hearing as being consistent with a security practice followed throughout the Southern Ohio Correctional Facility, a maximum security prison, of keeping all doors locked when not in actual use.  Campbell did not attack that rule during the five-day hearing, but instead insisted that prison officials in general knew who Carol Wright was

5

and not letting her out immediately was inconsistent with the Execution Protocol's provision for free access. ODRC's provision of identifying badges to all four of the attorneys who will witness the Campbell execution is therefore not based on any security concern shown to be pretextual, but instead apparently designed to facilitate access to the Court.

Defendants concerns related to witnesses standing and an attorney on the vestibule phone providing simultaneous description of what is happening in the execution chamber are not purportedly justified by any security concern, but fear of distraction of witnesses, including media witnesses, and detraction from the solemnity of the occasion. Neither of these two concerns is shown to be evidence-based: there was no testimony at the October 23rd hearing that any other witness was distracted by Ms. Wright and Ms. Depas standing or by hearing Ms. Wright's side of her conversation with the Court. On the other hand, the justifications are at least plausible and have not been shown to be a pretext for some ulterior motive. The questions is whether, regardless of their motivation, Defendants are constitutionally entitled to make these changes.

Mr. Campbell has not questioned the authority on which Ms. Lowe, Defendants' counsel, announced these changes. Unlike the previous attacks on changes in execution practice as "deviations" from the Execution Protocol requiring written advance approval by ODRC Director Mohr on penalty of an Equal Protection violation, these changes are attacked directly as violations of Campbell's rights of access to the court and to counsel.

To establish his rights of access in the day-of-execution context, Campbell relies heavily on the opinion of Judge Gregory Frost of this District in *Cooey v. Strickland*, Case No. 2:04-cv-1156, reported at 2011 U.S. Dist. LEXIS 8336 (S.D. Ohio, Jan. 28, 2011). Upon careful reading, however, all of Judge Frost's language quoted in support of Campbell's claim is made in the

portion of the decision denying the State's motion for summary judgment on the issue of client access to his lawyer during an execution, an issue not raised by the present Motion. But Judge Frost did deal with the issue of telephonic access to the courts by counsel during an execution. He wrote:

> This leaves for disposition the third component of Plaintiffs' counsel/access claims, or the argument that Defendants are violating the Constitution by failing to afford counsel telephonic access to the governor or the courts while counsel is in the building in which Ohio's executions occur. Currently, Ohio provides an inmate's counsel only with access to an office containing a telephone located in a separate building from the execution building. Counsel may bring cell phones and computers into that office. Defendants' rationale to exclude cell phones or computers inside the actual execution building is purported security concerns. Plaintiffs contest the obvious inference, and the parties' debate erodes in the briefing to whether Defendants are "attempt[ing] to paint all counsel as potential smugglers." (ECF No. 861, at 15.) Hurt feelings do not equate to constitutional analysis that can subvert prophylactic policy judgments, and even remote security concerns can nonetheless pass muster as constitutionally reasonable justifications necessitating alternative reasonable accommodations. It may be less than clear how security concerns might reach counsel's use of an institution phone located in the execution building itself, but what might constitute a more convenient or even best practice is not what is important. What the Constitution minimally compels is what matters.
>
> Plaintiffs fail to direct this Court to any controlling authority supporting the propositions that the Constitution compels that counsel be permitted to bring a cell phone or personal computer into the building in which the execution takes place or that counsel be afforded the use of a telephone located in that specific building. The record in turn supports Defendants' contentions that counsel have reasonable access to a telephone and that use of that telephone or counsel's personal cell phone affords an inmate, via counsel, means of accessing a court and/or the state's governor. Former counsel for Broom was able to contact this Court effectively during the attempted execution of that client, and there

7

> is no evidence in the record before this Court that any counsel was ever unable to implement their clients' right to access during the execution process.

*Id.* at *37-39. Thus when dealing with the precise issue now before the Court – counsels' telephonic access to the Court – Judge Frost found that the access then provided – a telephone in a separate building to which counsel would have to be escorted – was sufficiently within constitutional bounds that there was no genuine issue of fact and Defendants were entitled to judgment as a matter of law. *A fortiori* the access being provided under the current version of the Protocol, even with the changes imposed on November 13, 2017, is constitutional.

Plaintiff argued that this conclusion of Judge Frost was no longer in point because the Defendants at that time had announced they would never again use a three-drug protocol, but have now returned to that method such that facts occurring during the administration and effect of the first drug may be material to whether use of the second and third drugs should be enjoined. Presented with facts from executions using midazolam in various parts of the country, this Court was sufficiently concerned to issue a preliminary injunction against using the current Protocol. *In re: Ohio Execution Protocol Litig (Phillips, Tibbetts, & Otte)*, 235 F. Supp. 3d 892 (S.D. Ohio 2017). Those facts were found insufficient to sustain the preliminary injunction. *Fears v. Morgan (In re: Ohio Execution Protocol),* 860 F.3d 881 (6th Cir. Jun 28, 2017)(en banc). Based in part on that controlling authority, the Court denied preliminary injunctive relief to Gary Otte (ECF No. 1226, reported at *In re Ohio Execution Protocol Litig (Otte),* 2017 U.S. Dist. LEXIS 145432) and to Messrs. Campbell and Tibbetts (ECF No. 1362). Thos Plaintiffs have chosen not to appeal from those decisions. Thus it is difficult to anticipate what evidence regarding the effect of midazolam they might present to the Court in a mid-execution motion for temporary restraining order that would overcome the effect of the Sixth Circuit's rejection of the prior

8

evidence. To the extent Campbell anticipates making an Eighth Amendment claim based on the pain involved in repeated attempts to achieve venous access, such as occurred in the Rommell Broom case, Plaintiffs' counsel refused to take a position in the November 9, 2017, status conference as to how many attempts would violate the Eighth Amendment. Because IV access is necessary to complete the execution, the pain associated with attempting to obtain that access must be, to some extent, "needful suffering," to paraphrase *Baze v. Rees,* 553 U.S. 35 (2008). How much? Thus far Campbell has refused to take a position on that issue, so it is difficult to say where in the process Plaintiff might be able to persuade the Court that further suffering from vein access attempts would be "needless." Which is to say that the underlying Eighth Amendment claim supposed to be presentable during Campbell's execution is either precluded by precedent or speculative.

Plaintiff's counsel have cited to no authority finding access to the courts violated by the restrictions now imposed by the ODRC. Authority found by the Court, although from other circuits and therefore not controlling, also does not support Campbell's position. See *Whitaker v. Livingston*, No. CV H-13-2901, 2016 WL 3199532 (S.D. Tex. June 6, 2016), *aff'd Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017).

Accordingly, the Motion to Amend or Supplement is DENIED.

Plaintiff Campbell's oral motion to certify this decision for interlocutory appeal is DENIED on the same basis at the Court's denial of a similar motion regarding its denial of Campbell's last motion to amend.

This Decision is written in the haste required by Campbell's imminently execution. It is without prejudice to right of access claims that may be made by other Plaintiffs in this action.

November 14, 2017.

s/ *Michael R. Merz*
Michael R. Merz
United States Magistrate Judge
