# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
 PROTOCOL LITIGATION,

:      Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Report relates to Plaintiff
 Robert Van Hook

---

# DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS THE FOURTH AMENDED OMNIBUS COMPLAINT AS IT RELATES TO PLAINTIFF ROBERT VAN HOOK

---

This method-of-execution case, brought pursuant to 42 U.S.C. § 1983, is before the Court on Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Omnibus Complaint ("Motion," ECF No. 1379). Plaintiffs oppose the Motion ("Memo in Opp.," ECF No. 1406) and Defendants have filed a Reply in Support ("Reply," ECF No. 1408). The moving Defendants are Ohio Governor John Kasich; Gary C. Mohr, Director of the Ohio Department of Rehabilitation and Correction (ODRC); Ronald Erdos, Donald Morgan, Stephen Gray, Edwin Voorhies, Richard Theodore, Charlotte Jenkins, and John Coleman, employees of the ODRC; and un-named and anonymous "execution team members (the "Moving" or "State" Defendants).

1

On February 22, 2018, the Magistrate Judge filed a Report and Recommendations recommending the Motion be granted in part and denied in part as to all Plaintiffs except Alva Campbell, Raymond Tibbetts, and Robert Van Hook (the "Report," ECF No. 1429). That Report is now pending on objections. Campbell has died and been dismissed as a party (ECF No. 1443). Tibbetts is not a party to the Fourth Amended Omnibus Complaint. Van Hook has consented to plenary magistrate judge jurisdiction and Chief Judge Sargus has referred his portion of the case on that basis (ECF No. 951). Therefore as to Van Hook the instant Motion is before the Magistrate Judge for decision rather than report and recommendations.

Dismissal is sought (1) under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction of the subject matter or based on sovereign immunity under the Eleventh Amendment, or (2) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted or on the basis of the affirmative defense of qualified immunity (Motion, ECF No. 1379, PageID 51913). Because qualified immunity applies only to claims against state actor Defendants in their individual capacities and no such claims are at issue in the instant Motion, there is no discussion of qualified immunity in what follows.

Ordinarily, a motion under Fed. R. Civ. P. 12 must be made before an answer is filed. Nevertheless, a new motion to dismiss is proper in response to a new amended complaint. Plaintiff does not question the appropriateness of Defendants' filing a motion to dismiss at this stage of the case.

**Generally Applicable Law**

**Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1))**

Fed. R. Civ. P. 12(b)(1) authorizes motions to dismiss for lack of subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, the burden of persuasion on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442 (1942); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir. 1990); 5A Wright and Miller, Federal Practice and Procedure, Civil 2d §1350 (1990).

Plaintiff asserts Defendants are raising a "facial" as opposed to a "factual" subject matter jurisdiction claim (Memo in Opp., ECF No. 1406, PageID 52316). Defendants do not disagree in their Reply and the Magistrate Judge agrees with Plaintiff on this point.[1]

The Supreme Court has held that district courts lack subject matter jurisdiction of claims that are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998), quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974). At the same place in *Steel Co.*, however, the Court noted that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional *power* to adjudicate the case." *Id.* citing Wright and Miller, *supra.* Given that the Fourth Amended Omnibus Complaint purports to plead claims for violation of federal constitutional rights and arising under 42 U.S.C. § 1983, this Court concludes it has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

---

[1] A "factual" challenge to subject matter jurisdiction usually involves a challenge to diversity jurisdiction under 28 U.S.C. § 1332, challenging, for example, whether diversity is complete or whether the relevant party has met the amount in controversy requirement.

Jurisdiction under either of those statutes can be defeated by the bar of the Eleventh Amendment to the United States Constitution which provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

The Amendment has been construed to bar suits against a State by its own citizens. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Hans v. Louisiana*, 134 U.S. 1 (1890); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Florida Dep't. of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982).

The Eleventh Amendment does not bar an action for injunctive relief against a state officer for violations of the United States Constitution. *Ex parte Young*, 209 U.S. 123 (1908); *Cory v. White*, 457 U.S. 85 (1982); *Thomson v. Harmony*, 65 F.3d 1314, 1320 (6th Cir. 1995). However, the Amendment does bar an action to enjoin state officials from violating state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984); *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)(*en banc*); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453 (6th Cir. 1998); *In re: Ohio Execution Protocol Litig. (Otte),* 2017 U.S. App. LEXIS 17436 (6th Cir. Sept. 7, 2017), affirming *In re: Ohio Execution Protocol Litig. (Tibbetts & Otte),* 2017 U.S. Dist. LEXIS 107468 (S.D. Ohio July 12, 2017)(Merz, M.J.).

Sovereign immunity bars a plaintiff from using state law to enjoin state officials from carrying out their official responsibilities even when the officials are sued in their individual capacities. *In re: Ohio Execution Protocol Litig. (Otte),* 2017 U.S. App. LEXIS 17436 (6th Cir. Sept. 7, 2017), citing *Williams v. Kentucky*, 24 F.3d 1526, 1531, 1543 (6th Cir. 1994).

The Eleventh Amendment is a jurisdictional bar which federal courts are required to raise *sua sponte* if the parties fail to do so. *Fairport Int'l Exploration, Inc., v. Shipwrecked Vessel*

*Known as the Captain Lawrence,* 105 F.3d 1078, 1082 (6th Cir. 1997); *Wilson-Jones v. Caviness*, 99 F.3d 203 (6th Cir. 1996).


**Claims Upon Which Relief May Be Granted (Fed. R. Civ. P. 12(b)(6))**


"The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990); *see also Gex v. Toys "R" Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is designed to test only the sufficiency of the complaint. *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) was significantly restated by the Supreme Court in 2007:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may

> proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atl. Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558 (*overruling Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and specifically disapproving of the proposition from *Conley* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact,'" *Doe v. Miami University*, ___ F.3d ___, 2018 U.S. App. LEXIS 3075, *12-13 (6th Cir. Feb. 9, 2018), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Twombly*, 550 U.S. at 570.

## The Impact of Precedent

Defendants' Motion relies heavily on precedent of various types (See, e.g., Motion, ECF No. 1379, Table of Contents, PageID 51915-17). In response, Plaintiff makes the strong and

broad claim "[h]owever defined and applied by the Court and Defendants, the doctrine of *stare decisis* provides no basis to dismiss any of Plaintiff's claims." (Memo in Opp., ECF No. 1406, PageID 52310.)  In support of this broad claim, Plaintiff recites various maxims from the law of precedent which must each be evaluated.

First of all, Plaintiff asserts one District Judge's decision is not binding on any other District Judge, even in the same district.  The Magistrate Judge agrees.  See *Chinn v. Jenkins*, 2018 U.S. Dist. LEXIS 8548 (S.D. Ohio Jan. 19, 2018), citing, *inter alia*, *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3rd Cir. 1991); *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987); *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987); *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977 (same).  An exception would be where a judgment bars relitigation of a claim or issue under the doctrines of res judicata or collateral estoppel.

Second, Plaintiff asserts that the district courts in this circuit are bound by the published decisions of the Sixth Circuit Court of Appeals.  The Magistrate Judge also agrees with this proposition of law.  A prior decision of the Sixth Circuit remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or the Sixth Circuit *en banc* overrules the prior decision.  *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *Darrah v. City of Oak Park,* 255 F.3d 301, 309 (6th Cir. 2001); *Salmi v. Secretary of HHS*, 774 F.2d 685, 689 (6th Cir. 1985); *accord* 6th Cir. R. 206(c).  A panel of the Sixth Circuit may not overrule the published decision of another panel.  *Hinchman v. Moore,* 312 F.3d 198, 203 (6th Cir. 2002); *Neuman v. Rivers,* 125 F.3d 315 (6th Cir. 1997).

However, what is binding in a prior published circuit court decision is the holding of the case, and not dicta included in the opinion.  A panel of the Sixth Circuit is not bound by dicta in

a previously published panel opinion. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 643 (6th Cir. 2001); *United States v. Burroughs*, 5 F.3d 192, 194 (6th Cir. 1993). "Dicta is the '[o]pinion[] of a judge which do[es] not embody the resolution or determination of the specific case before the court.'" *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002)(quoting Black's Law Dictionary 454 (6th ed.1990).

> [I]t is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia,* 19 U.S. 264, 399-400 (1821)(Marshall, C. J.). *See also United States v. Rubin*, 609 F.2d 51, 69 n.2 (2nd Cir. 1979) (Friendly, J., concurring).

The doctrine of precedent or *stare decisis*, however, is much broader than the question of which prior decisions by which courts are binding on subsequent courts. Part of the doctrine of precedent is the law of the case. Under that doctrine, findings made at one point in the litigation become the "law of the case" for subsequent stages of that same litigation. *United States v. Moored*, 38 F 3d 1419, 1421 (6th Cir. 1994), *citing United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993). "As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *citing* 1B Moore's Federal Practice ¶0.404 (1982); *Patterson v. Haskins*, 470 F.3d 645, 660-61 (6th Cir. 2006); *United States v. City of Detroit*, 401 F.3d 448, 452 (6th Cir. 2005). "If it is important for

courts to treat like matters alike in different cases, it is indispensable that they 'treat the same litigants in the same case the same way throughout the same dispute.'" *United States v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016)(Sutton, J.), quoting Bryan A. Garner, et al., The Law of Judicial Precedent 441 (2016).

Law of the case is persuasive, not binding. "Law of the case directs a court's discretion, it does not limit the tribunal's power." *Id.*, *citing Southern R. Co. v. Clift*, 260 U.S. 316, 319 (1922); *Messenger v. Anderson*, 225 U.S. 436 (1912); *see also Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F.3d 586, 589-90 (6th Cir. 1995). "While the 'law of the case' doctrine is not an inexorable command, a decision of a legal issue establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *White v. Murtha*, 377 F.2d 428 (5th Cir. 1967), quoted approvingly in *Association of Frigidaire Model Makers v. General Motors Corp.*, 51 F.3d 271 (6th Cir. 1995). The purpose of the doctrine is twofold: (1) to prevent the continued litigation of settled issues; and (2) to assure compliance by inferior courts with the decisions of superior courts. *United States v. Todd*, 920 F.2d 399 (6th Cir. 1990), *citing* Moore's Federal Practice.

> The doctrine of law of the case provides that the courts should not "reconsider a matter once resolved in a continuing proceeding." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 4478 (4th ed. 2015). "The purpose of the law-of-the-case doctrine is to ensure that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" *Sherley v. Sebelius*, 689 F.3d 776, 780, 402 U.S. App. D.C. 178 (D.C. Cir. 2012) (quoting *LaShawn A. v.*

> *Barry*, 87 F.3d 1389, 1393, 318 U.S. App. D.C. 380 (D.C. Cir.
> 1996)). For a prior decision to control, the prior tribunal must have
> actually decided the issue. WRIGHT ET AL., *supra*, § 4478. "A
> position that has been assumed without decision for purposes of
> resolving another issue is not the law of the case." *Id.* "An alternate
> holding, however, does establish the law of the case." *Id.* Unlike
> claim preclusion, the law of the case does not apply to issues that a
> party could have raised, but did not. *Id.* The law-of-the-case
> doctrine is a prudential practice; a court may revisit earlier issues,
> but should decline to do so to encourage efficient litigation and
> deter "indefatigable diehards." *Id.*

*Howe v. City of Akron,* 801 F.3d 718, 739-740 (6th Cir. 2015).

The law of the case doctrine is not an appropriate basis for denying relief when the statement of the law in an appellate opinion is both dictum and in error. *Landrum v. Anderson*, 813 F.3d 330 n.1 (6th Cir. 2016), citing *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011).

In sum, only the holdings of published Sixth Circuit decisions or the unpublished mandates of that Court in this case are binding on this Court. However, judges have an ethical duty to decide like cases alike which is strong rights-based support for *stare decisis* and a compelling judicial economy rationale for not re-deciding every issue *de novo*.

# Analysis

## First Cause of Action:  Eighth and Fourteenth Amendment Violations

With regard to this claim for relief, the Fourth Amended Complaint reads:

> 1269. The First Cause of Action was previously moved from the
> Third Amended Omnibus Complaint to be, as applicable, re-

> alleged in parts or in whole in the various Plaintiffs' Amended Individual Supplemental Complaints. Claims alleging violations of the Eighth Amendment as incorporated against the states by the Fourteenth Amendment will be alleged in the Plaintiffs' Amended Individual Supplemental Complaints to be filed in this case in accordance with the court's scheduling order.

(ECF No. 1252, PageID 45721-22.) This Decision accordingly does not address the First Cause of Action.

**Second Cause of Action: Fourteenth Amendment Due Process Violations**

In the Second Cause of Action, Plaintiff asserts he has state-created life, liberty, and property interests protected from deprivation without due process by the Due Process Clause of the Fourteenth Amendment (Fourth Amended Complaint, ECF No. 1252, PageID 45722-28, ¶¶ 1270-94). Specifically, Plaintiff asserts that Ohio Revised Code § 2949.22(A) creates their right to a quick and painless execution and ODRC Policy 01-COM-11 (the "Execution Protocol") creates their right to a humane and dignified execution, *id.*, see also Memo in Opp. ECF No. 1406, PageID 52334.

Defendants assert the Second Cause should be dismissed on the basis of precedent. (Motion, ECF No. 1379, PageID 51932, citing *In re Ohio Execution Protocol Litig. (Wiles)*, 868 F.Supp. 2d 625 (S.D. Ohio 2012)(Frost, D.J.); *In re: Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 2017 U.S.Dist. LEXIS 107468 (S.D. Ohio, July 12, 2017)(Merz, M.J.); *In re: Ohio Execution Protocol Litig. (Campbell)*, 2017 WL 3479589 (Aug. 14, 2017)(Merz, M.J.); and *Cooey v. Strickland (Henderson)*, 2010 U.S. Dist. LEXIS 81841 (S.D. Ohio Aug. 12, 2010)(Frost D.J.).

In his *Henderson* decision, Judge Frost relied in part on *Cooey (Biros) v. Strickland*, 589 F.3d 210, 234 (6th Cir. 2009). Plaintiff acknowledges that that case rejected a claim by death row inmate Biros that Ohio Revised Code § 2949.22(A) created a right to a quick and painless execution, but argue that "*Cooey (Biros)* and its progeny were wrongly decided. . ." (Memo in Opp., ECF No. 1406, PageID 52335). The Sixth Circuit considered this claim on appeal from a decision of Judge Frost denying Biros a stay of execution. As to this particular claim, Judge Gibbons wrote:

> Biros also claims that the planned execution will violate his right to a "quick and painless death." R. 610 at 9. He cites Ohio Revised Code § 2949.22(A), the statute that provides for a death caused by "a lethal injection of a drug . . . of sufficient dosage to quickly and painlessly cause death." But § 2949.22 creates no cause of action to enforce any right to a quick and painless death. *See State v. Rivera*, 2009 Ohio 1428, 2009 WL 806819, at *7 (Ohio Ct. App. 2009) ("There is no 'action' for a quick and painless death" under Ohio Reg. Code Ann. § 2949.22(A).). We are not persuaded by Biros's assertion that § 2949.22 creates a federal right because the statute creates "liberty and property interests in a 'quick and painless execution'" protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. R. 610 at 9. Biros is unlikely to show that the reach of any such right extends beyond the incorporation of the Eighth Amendment. *Cf. Furman v. Georgia*, 408 U.S. 238, 359 n.141, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (Marshall, J., concurring).

589 F.3d at 234.

Plaintiff correctly argues that States can create liberty and property interests which are then protected from deprivation without due process by the Fourteenth Amendment, as enforceable through 42 U.S.C. § 1983 (Memo in Opp. ECF No. 1406, PageID 52336, citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)). Plaintiff also correctly reads *Cooey (Biros)* as concluding that Ohio Revised Code § 2949.22(A) does not create the right Biros asserted

because Ohio law does not create a private cause of action for enforcing that right.  *Id.* at PageID 52337.

Plaintiff argues the *Cooey (Biros)* court wrongly conflated creation of rights with creation of private causes of action to enforce rights.  *Id.,* relying on *Neal v. Dist. Of Columbia,* 131 F.3d 172, 174-75 (D.C. Cir. 1997).  Plaintiff also argues that the mandatory duty-creating language of Ohio Revised Code § 2949.22(A) must create a correlative right, relying on the dissenting opinion of Ohio Chief Justice Brown in *Scott v. Houk*, 127 Ohio St. 3d 317, 325 n.1(2010), who in turn relied on Wesley Newcomb Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L. J. 16, 33 (1913).  Whatever the precise reasoning behind *Biros*, it is clear that the holding is that Ohio Revised Code § 2949.22(A) does not create a right in inmates who are to be executed.  And whatever the attractiveness of Professor Hohfeld's analysis, Chief Justice Brown wrote in dissent.  While Hohfeld's analysis has been widely influential in discussions of general jurisprudence, it has not been adopted by the courts as a basis for inferring that a State has created a protectable liberty or property interest by creating a correlative duty.

The *Cooey (Biros)* court did not expressly consider whether the Execution Protocol created enforceable rights, and Plaintiff argues separately that it does, largely reprising the argument as to the statute (Memo in Opp., ECF No. 1406, PageID 52430-45).  Plaintiff particularly critiques the manner in which this Court analyzed the assertion that the Execution Protocol creates property rights.  *Id.* at PageID 42432, criticizing the analysis in *In re Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 1027 U.S. Dist. LEXIS 107468 (S.D. Ohio July 12, 2017), where the Court wrote:

> Aside from the *Cooey (Biros)* precedent, Plaintiffs' argument is
> unpersuasive. First of all, the notion of having a property interest

in a humane and dignified execution is completely foreign to §
1983 jurisprudence. One can have a property interest in certain
government benefits which is protected by procedural due process,
but it is difficult to conceptualize an execution as something in
which one could have a property interest.

A liberty or life interest is easier to conceptualize under these
circumstances. The logic appears to be that, since the Execution
Protocol creates a duty, there must be a correlative right. Plaintiffs'
cite Chief Justice Brown's reliance in his dissent in *Scott v. Houk*,
127 Ohio St. 3d 317, 2010 Ohio 5805, 939 N.E.2d 835 (2010), on
Wesley Newcomb Hohfeld's Some Fundamental Legal
Conceptions as Applied in Judicial Reasoning, 23 Yale L. J. 16
(1913). Influential as Hohfeld's work has been in general
jurisprudence and particularly the right-duty correlation, it has
never been constitutionalized. That is, so far as the undersigned is
aware, neither the Sixth Circuit nor the Supreme Court has used
the right-duty correlation to infer generally the existence of a state-
created right protected under § 1983 from the existence of a state-
created duty. Indeed, the logic of recent Supreme Court decisions
cuts in the opposite direction. *See Town of Castle Rock v.
Gonzales*, 545 U.S. 748, 125 S. Ct. 2796, 162 L. Ed. 2d 658
(2005).

*Id.* at *36-37.

Plaintiffs respond that they have

substantive property rights in the performance of non-discretionary
duties that provide to Plaintiff[s] those tangible benefits. Notably,
these are not property interests in an execution itself, contrary to
this Court's previous observation [in *Tibbetts & Otte*]. Rather,
these are property rights in expectations and receiving certain
government benefits in the *type* of execution that Plaintiff will
receive. And for the same reasons, the same also applies to liberty
or life interests created by the same state laws.

(Memo in Opp., ECF No. 1406, PageID 52342.)

In *Tibbetts & Otte*, this Court characterized the claimed right as one to a "humane and

dignified execution" and questioned how that could be a property right, but Plaintiff attempts to

cover that conceptual gap by throwing in "life and liberty" interests as well. *Id.* He also asserts that *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), is not to the contrary.

The Magistrate Judge believes Plaintiff reads *Castle Rock* too narrowly. There the plaintiff claimed a property interest in having the police arrest her estranged husband who had taken her children in violation of a protection order. Because police typically have discretion in whether or not to make an arrest, even with proof of probable cause, the Supreme Court held plaintiff's interest in the arrest did not rise to the level of an entitlement because Colorado law did not make enforcement mandatory. The Supreme Court also questioned how the plaintiff's interest in question could be a property interest since it had no ascertainable monetary value.

The same logic applies here. A "humane and dignified" execution, although undoubtedly valuable, has no ascertainable monetary value. More importantly, the mandatory language in the Execution Protocol on which Plaintiff relies does not mandate that an inmate be given a humane and dignified execution. Rather, it provides "[a]ll execution processes shall be performed in a professional, humane, sensitive, and dignified manner." (Execution Protocol, ECF No. 711-1, §V, PageID 21453.) That language does not create a life, liberty, or property interest under Ohio law that is protectable under 42 U.S.C. § 1983.

The undersigned dismissed Plaintiff Alva Campbell's parallel claims under Ohio Revised Code § 2949.22(A) and the Execution Protocol "on the authority of *Cooey (Biros)* and *stare decisis*," noting that he had previously dismissed parallel claims of Plaintiffs Raymond Tibbetts and Gary Otte. *Campbell, supra*, at *5. Having reconsidered the claims in the Second Cause of Action in light of Plaintiff's argument, the Magistrate Judge orders that as to Van Hook they be dismissed with prejudice on the authority of *Cooey (Biros)* and the rationale offered in *Campbell* and *Tibbetts & Otte*. The argument made by Plaintiff does not persuade the Magistrate Judge that those decisions were in error.

**Third Cause of Action:  Violations of Rights of Access**


In his Third Cause of Action, Plaintiff complains of limitations on his ability to consult with counsel and counsel's ability to communicate with the courts or other relevant authorities, particularly the Governor, during the course of an execution (Fourth Amended Complaint, ECF No. 1252, PageID 45728-35, ¶¶ 1295-1328).

Defendants argue for dismissal on the basis of Judge Frost's prior decision in this case, *Cooey v. Strickland*, 2011 U.S. Dist. LEXIS 8336 (S.D. Ohio Jan. 28, 2011).  Examination of that decision on a portion of Defendants' motion for summary judgment shows Judge Frost did not find that Plaintiffs had not stated a constitutional claim, but that

> the unwritten custom and practices surrounding the protocol again salvage a portion of Ohio's execution process.  The practice of providing counsel with access to a telephone through which counsel can contact a court or the governor proves dispositive of this last aspect of Plaintiffs' counsel/access claims.  There is no basis on this record to conclude that the existing access is insufficient or that greater access . . . is constitutionally compelled.

*Id.* at *39.  The record now is different from the record before Judge Frost in January 2011.  During the preliminary injunction hearing in October 2017 the Court heard evidence about difficulties of access during the Otte execution.  ODRC made some changes in advance of the interrupted execution of Alva Campbell which have not yet been the subject of testimony.  On the basis of the current record, the Magistrate Judge cannot say that the Third Cause of Action fails to state a claim upon which relief can be granted.  The Motion is denied as to Van Hook's Third Cause of Action.

**Fourth Cause of Action:  Equal Protection Violations**


In his Fourth Cause of Action, Plaintiff alleges that he has been or will be treated differently from other similarly situated individuals in violation of the Equal Protection Clause of the Fourteenth Amendment (Fourth Amended Complaint, ECF No. 1252, PageID 45735-78, ¶¶ 1329-1495).  This Cause of Action comprises eighteen sub-claims:


**A.**     **Violations of Equal Protection by Burdening Fundamental Rights**

1. Equal Protection violation based on burdening of Plaintiff's fundamental rights by Defendants' deviations from the Execution Protocol.

2. Equal Protection violation based on burdening of Plaintiff's fundamental rights by Defendants' deviations from Ohio's execution statute.

3. Equal Protection violation based on burdening of Plaintiff's fundamental rights by Defendants' deviations from Ohio's Constitution.

4. Equal Protection violation based on burdening of Plaintiff's fundamental rights by Defendants' failing to follow federal and Ohio state laws related to imported drugs, unapproved drugs, misbranded drugs, adulterated drugs, controlled substances, and compounded drugs, including compounding sterile injectable controlled substances to be used as execution drugs.

5. Equal Protection violation based on burdening of Plaintiff's fundamental rights by Defendants' deviations from Ohio's definition-of-death law.

6. Equal Protection violation based on burdening of Plaintiff's fundamental rights by Defendants' deviations from federal and Ohio state laws prohibiting non-consenting human experimentation.

7. Equal Protection violation based on burdening of Plaintiff's fundamental rights by Defendants' use of an Execution Protocol and policies by which Defendants deny necessary medical and resuscitative care and permit a lingering death.

8. Equal Protection violation based on burdening Plaintiff's fundamental rights by Defendants' use of midazolam and the unavoidable variation inherent in midazolam's efficacy on individual people.

9. Equal Protection violation based on burdening Plaintiff's fundamental rights by Defendants' use of compounded execution drugs and the unavoidable variation inherent in compounded drugs.

10. Equal Protection violation based on burdening Plaintiff's fundamental rights by Defendants' intentional removal of the drug concentrations from the Execution Protocol which creates a great likelihood that Defendants will inject Plaintiff with lesser or greater than the required amount of execution drugs.

**B. Equal Protection—"Class of One" Disparate Treatment**

1. Equal Protection violation based on Defendants' unequal application of the Execution Protocol to Plaintiff as a class of one.

2. Equal Protection violation based on Defendants' unequal application of Ohio's execution statute to Plaintiff as a class of one.

3. Equal Protection violation based on Defendants' unequal application to Plaintiff, as a class of one, of federal and Ohio state laws related to imported drugs, unapproved drugs, misbranded drugs, adulterated drugs, controlled substances, or compounded drugs, including compounding sterile injectable controlled substances to be used as execution drugs.

4. Equal Protection violation based on Defendants' unequal application of Ohio's definition-of-death law to Plaintiff as a class of one.

5. Equal Protection violation based on Defendants' unequal application of federal and Ohio state laws prohibiting non-consenting human experimentation to Plaintiff as a class of one.

6. Equal Protection violation based on Defendants' disparate denial of necessary medical care and permitting a lingering death.

7. Equal Protection violation based on Defendants' use of midazolam and the unavoidable variation inherent in midazolam's efficacy on individuals, which treats Plaintiff unequally as a class of one.

8. Equal Protection violation based on Defendants' removal of any required concentration of the execution drugs which treats Plaintiff unequally as a class of one.

(ECF No. 1252, *passim.*)

The parties have extensively briefed this portion of the Motion (Motion, ECF No. 1379, PageID 51934-49; Memo in Opp., ECF No. 1406, PageID 52350-97; Reply, ECF No. 53036-37). Having considered that briefing, the Magistrate Judge believes the following analysis correctly states the law applicable to this Cause of Action.

**The Equal Protection Standard**

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The States cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one person differently from others similarly situated without

any rational basis for the difference. *Id.; Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). When the disparate treatment burdens a fundamental right, strict scrutiny applies. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1 (1973); *Bible Believers v. Wayne County*, 805 F.3d 228, 256 (6th Cir. 2015)(*en banc)*; *Miller v. City of Cincinnati,* 622 F.3d 524, 538 (6th Cir. 2010).


**Burden on Fundamental Rights**


Plaintiff's first ten Equal Protection sub-claims at issue here assert that the State Defendants impose a burden on their fundamental rights when they deviate from the Execution Protocol (Sub-claim A.1), deviate from Ohio's execution statute (Sub-claim A.2), deviate from the Ohio Constitution (Sub-claim A.3), fail to follow federal and Ohio laws related to drugs (Sub-claim A.4), deviate from Ohio's definition of death law (Sub-claim A.5), deviate from federal and Ohio laws prohibiting experimentation on non-consenting humans (Sub-claim A.6), deny necessary medical and resuscitative care to inmates being executed (Sub-claim A.7), use midazolam (Sub-claim A.8), use compounded execution drugs (Sub-claim A.9), and removed required drug concentrations from the Execution Protocol (Sub-claim A.10).

The fundamental rights protected from state-imposed burdening by the Equal Protection Clause are those rights from the Bill of Rights incorporated into the Fourteenth Amendment Due Process Clause as "inherent in the concept of liberty." Rotunda & Nowak, Treatise on Constitutional Law (4th ed.) § 18.39. Although not all of the Bill of Rights has been thus incorporated, the Eighth Amendment protection against cruel and unusual punishment has.

*McDonald v. Chicago*, 561 U.S. 742 (2010), *citing Robinson v. California*, 370 U.S. 660 (1962). Thus the right to be free from cruel and unusual punishment is a fundamental right protected from state-imposed burdens that treat similarly situated persons differently without proper justification.

A requisite for an Equal Protection claim is that a plaintiff show that he or she has been treated disparately from someone who is similarly situated. *Richland Bookmart, Inc., v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002). Defendants assert that Plaintiff cannot show that he is similarly situated with all other Ohio capital inmates because they will be alleging, in individual supplemental complaints, that they have specific physical and mental characteristics that differ from other death row inmates (Motion, ECF No. 1379, PageID 51938). This is said to be fatal to the Equal Protection claims because "Plaintiffs cannot have it both ways." *Id.* at PageID 51939.

The Magistrate Judge disagrees. All Plaintiffs are subject to a sentence of death imposed by an Ohio court and all are subject to being executed under the Execution Protocol. While this Court has not found any Equal Protection violations since 2012, it is at least imaginable that one might be threatened, e.g., this particular inmate gets only thirty seconds for his last statement or that inmate's lawyer gets no telephone access.

**The Law of this Case on Equal Protection**

In defending against the instant Motion, Plaintiff relies heavily on the law of the case doctrine,[2] including the mandate rule (Memo in Opp., ECF No. 1406, PageID 52354-80). Therefore it is important to determine what prior treatment has been given to Equal Protection claims in prior decisions in this case.

---

[2] This seems strikingly inconsistent with his general assertion that stare decisis should not be applied in this case.

Earlier in this litigation, Judge Gregory Frost, to whom this case and its predecessors were assigned from 2004[3] to 2016, recognized the distinction Plaintiffs make between a pure Eighth Amendment claim and an Equal Protection burden-on-fundamental-rights claim where the asserted underlying fundamental right is the Eighth Amendment right to be free from cruel and unusual punishment. In *Cooey (Smith) v. Kasich*, 801 F. Supp. 2d 623 (S.D. Ohio July 8, 2011), in granting preliminary injunctive relief, Judge Frost wrote that

> The equal protection theory upon which Plaintiff proceeded at the June 29, 2011, hearing is that Defendants' policy and pattern of deviations from the written execution protocol treat each condemned inmate differently, burdening his fundamental rights and constituting disparate treatment that is not rationally related in any way to a legitimate state interest. The threshold question is therefore whether Plaintiff is correct that Defendants routinely deviate from mandated or core provisions set forth in the written protocol. The brief answer is yes.

*Id.* at 642-43. "Although everything in the written protocol is important, not everything in that protocol is of equal importance for purposes of scrutiny in light of the Constitution." *Id.* at 644. Judge Frost then proceeded to find "at least four deviations from the core components of the written protocol" *Id.*

In *In re: Ohio Execution Protocol Litig. (Brooks),* 2011 WL 5316141 (S.D. Ohio Nov. 4, 2011), Judge Frost denied preliminary injunctive relief on the same two Equal Protection claims which had been successful in *Smith*, but adhered to the same Equal Protection analysis: deviations from Core Elements of the Execution Protocol would be found to be constitutional violations, but Brooks had not proven such deviations were likely to happen at his execution.

---

[3] It was in 2004 that the Supreme Court recognized that method of execution claims were properly brought in cases under 42 U.S.C. § 1983. *Nelson v. Campbell,* 541 U.S. 637 (2004). This consolidated case includes prior actions that have been pending since shortly after *Nelson* was decided.

In *In re:  Ohio Execution Protocol Litig. (Lorraine),* 840 F. Supp. 2d 1044 (S.D. Ohio 2012), Judge Frost again employed the same Equal Protection analysis, noting that the Equal Protection claim made by Lorraine sufficiently targets that sweeping core deviations[4] would at least burden Plaintiff's fundamental right by negating some of the precise procedural safeguards that this Court and the Sixth Circuit heralded in prior discussions of Eighth Amendment claims in this same litigation.  *Id.* at 1054, *quoting Cooey v. Strickland (Smith)*, 801 F. Supp. 2d 623, 653 (S.D. Ohio 2011).   Judge Frost granted Lorraine preliminary injunctive relief on finding constitutionally significant deviations from the protocol had happened during the Brooks execution:  "Defendants have failed to present this Court with any evidence that the non-core deviations were presented to [ODRC Director] Mohr," as required by the protocol.  840 F. Supp. 2d at 1058.

In *In re:  Ohio Execution Protocol Litig. (Wiles)*, 868 F. Supp. 2d 625 (S.D. Ohio Apr. 4, 2012), Judge Frost reiterated the same Equal Protection framework, but added a nuance, derived from *Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012), that the deviations on which various plaintiffs had focused "were more likely to create a risk of cruel and unusual punishment than executions without the deviations.  *Id.* at 638-39.  He read this as reinforcing the distinction he had been drawing between full-blown Eighth Amendment violations and state actions which increased the risk of an Eighth Amendment violation by removing a protection against one.  He found Wiles was unlikely to prevail on his Equal Protection claims and denied injunctive relief. Wiles did not appeal and was executed.

In *In re:  Ohio Execution Protocol Litig. (Hartman)*, 906 F. Supp. 759 (S.D. Ohio Nov. 5, 2012), Judge Frost employed the same Equal Protection analysis as in *Wiles*, but concluded that "the asserted deviations of which Hartman complains . . . fail to constitute

---

[4] In Judge Frost's usage, "core deviation" means deviation from a core element of the Execution Protocol.

problems that present a strong likelihood of his succeeding on the merits." Hartman did not appeal and was executed.

In *In re: Ohio Execution Protocol Litig. (Phillips)*, 2013 U.S. Dist. LEXIS 159680 (S.D. Ohio Nov. 7, 2013), Judge Frost again maintained the distinction between Eighth Amendment violations and state actions which burden the fundamental right to be free from cruel and unusual punishment. Again, however, Judge Frost found no equal protection violations and denied Phillips[5] injunctive relief. Phillips did not appeal.

Three preliminary injunction hearings have been held in this case since Judge Frost's retirement, all for Plaintiffs who unanimously consented to plenary Magistrate Judge jurisdiction. In *In re Ohio Execution Protocol Litig. (Phillips, Tibbetts, & Otte)*, 235 F. Supp. 2d 892 (S.D. Jan. 26, 2017), the Plaintiffs raised four Equal Protection claims. The Court found they were unlikely to prevail on those claims and refused relief. *Id.* at 954-56.[6] The Plaintiffs did not appeal.

In *In re Ohio Execution Protocol Litig. (Otte)*, 2017 U.S. Dist. LEXIS 145432 (S.D. Ohio Sept. 8, 2017), Otte did not seek to litigate any Equal Protection claims.

In *In re Ohio Execution Protocol Litig. (Campbell & Tibbetts)*, 2017 U.S. Dist. LEXIS 182406, 2017 WL 5020138 (S.D. Ohio Nov. 3, 2017), the Plaintiffs sought relief, *inter alia*, on Equal Protection sub-claims that alleged they would be "treated disparately due to Defendants' deviations from their Execution Protocol, . . . sub-claim A.1" *Id.* at *71-72.

This Court then treated at length Campbell and Tibbetts' Equal Protection claims

---

[5] This is the same Ronald Phillips to whom this Court granted preliminary injunctive relief in January 2017. That order was later vacated by the *en banc* Sixth Circuit. *Fears v. Morgan (In re: Ohio Execution Protocol)*, 860 F.3d 881 (6th Cir. Jun 28, 2017)(*en banc*). Phillips was executed July 26, 2017, the day after the Supreme Court denied certiorari to review the Sixth Circuit decision.
[6] This Court granted relief on other grounds and was reversed by the Sixth Circuit. *Fears v. Morgan, supra.* The Sixth Circuit did not comment on the Equal Protection claims.

Plaintiffs thus have a very strong view of what the law of this case is on their equal protection claims. In their Written Closing Arguments they claim:

> Under the law of this case, any deviation from any of the five Core Elements [of the Execution Protocol] is a per se Equal Protection Clause violation. If a deviation from any of the other provisions is not authorized in advance in writing by the Director, it constitutes a deviation from Core Element #5.

(ECF No. 1355, PageID 50474).

This Court disagrees with this very broad reading of the law of this case as applied to the Equal Protection claims.

Plaintiffs first characterize as a "deviation" any failure to comply with any provision of the Execution Protocol which they say incorporates informal execution policies including "admissions and representations the ODRC Defendants have made in response to discovery requests, . . . representations that the ODRC Defendants have made in various pleadings, motions and proceedings throughout the course of this litigation, including testimony presented in hearings before the Court." (Plaintiffs' Written Closing Arguments, ECF No. 1355, PageID 50473).

That cannot be the law. Judge Frost himself refused to "constitutionalize" every provision of the Protocol, much less add to it everything any ODRC staff person had said in discovery or testimony. Even the most solemn of representations by the State to this Court and to the Sixth Circuit, to wit, that a paralytic drug and potassium chloride would never be used again, were held by the Sixth Circuit insufficient to support a judicial estoppel finding. *Fears, supra*, at 891-92. If a State representation sufficiently solemn to induce dismissal of an appeal is not somehow "added" to the Protocol, no more can other execution "policies" become binding as a matter of constitutional law.

Applying the general law of the case principles outlined above to its asserted application here, the Court deals first with *In re: Ohio*

*Execution Protocol Litig. (Lorraine),* 671 F.3d 601 (6th Cir. 2012). That published decision of the Sixth Circuit is a three-paragraph order denying the State of Ohio's emergency motion to vacate Lorraine's stay of execution. The Order is not a full decision on appeal from Judge Frost's decision. Nor does it discuss any of Plaintiffs' equal protection claims or their various theories of the Equal Protection Clause. All it does is refuse to interfere, on an emergency basis,[7] with the District Court's grant of preliminary injunctive relief. Of course it is binding on this Court, but it should not be read for propositions broader than that for which it stands, to wit, that it was not error for Judge Frost to grant preliminary injunctive relief on the basis of the equal protection claims made by Lorraine. That is the only appellate decision that supports Plaintiffs' equal protection theory.

Turning to law of the case on equal protection at the district court level, two points must be observed. First of all, every injunctive relief order that Judge Frost entered was for preliminary relief. "An order granting or denying a preliminary injunction . . . rests on tentative findings that are subject to reconsideration, either at trial or during later stages of pretrial proceedings." 18B Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478.1. In every one of his decisions, Judge Frost noted that the findings were not final.

Second, this is a consolidated case. Cases consolidated under Fed. R. Civ. P. 42(a) retain their separate identity. *Patton v. Aerojeet Ordnance Co.*, 765 F.2d 604 (6th Cir. 1985); 9 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2382. "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933); *Lewis v. ACB Business Servs., Inc.,* 135 F.3d 389 (6th Cir. 1998). Law of the case doctrine speaks principally to consistency in the treatment of one party to one case; its application is appropriately attenuated when dealing with the separate cases that have been consolidated here.

---

[7] The Order was entered January 13, 2012, two days after Judge Frost entered the injunction and five days before Lorraine's scheduled execution.

With those strictures in place, this Court believes that, consistent with law of the case doctrine, its rulings here should be consistent with Judge Frost's decisions in *Wiles*, *Hartman*, and *Phillips*, to wit, (1) Eighth Amendment and Equal Protection analyses are analytically distinct; (2) intentional state action in connection with an execution which burdens an inmate's fundamental Eighth Amendment right by increasing the risk that he will suffer severe pain and needless suffering is actionable under the Equal Protection Clause but (3) not every "deviation" from the Execution Protocol increases that risk.

Therefore, to prove an Equal Protection violation, Plaintiffs must show an intentional state action (action properly attributable to the State under *Monell, supra*,) which treats one death row inmate disparately from others and burdens that inmate's Eighth Amendment right by increasing the risk he will suffer severe pain and needless suffering.

To meet the *Monell* branch of this test, Plaintiffs must show unconstitutional policy, not just past unconstitutional acts. Judge Frost wrote the "Constitution [does] not require perfect adherence to every single provision of Ohio's execution protocol without deviation[.]" *In re Ohio Execution Prot. Lit. (Wiles),* 868 F. Supp. 2d 625, 626 (S.D. Ohio 2012). In fact, Judge Frost explained that "[m]istakes happen" and "random misadventures that can result when Ohio errs by not following its protocol may be regrettable but constitutional[.]" *Id.*

> "[E]vidence of prior accidents in the administration of an execution protocol does not render the protocol itself *per se* unconstitutional." *Cooey (Biros)*, 589 F.3d at 224. The deviations upon which the Court granted the relief in years past "often were 'more likely to create a risk of cruel and unusual punishment' than an execution without the deviations and 'did affect the *risk* of pain to which they would be subjected, and therefore the *risk* of being subjected to cruel and unusual punishment.'"

*Id.* at 638-39. Campbell and Tibbetts cannot show a continuing violation which is likely to recur during their executions because "this Court has not found a single deviation establishing an equal protection violation and granted a stay since 2012." ECF No. 1282, PageID 46764, citing *In re: Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044 (S.D. Ohio 2012). In a portion of the January decision which Plaintiffs did not appeal the Court ruled against them on the four equal protection claims they made in those proceedings.

Plaintiffs must do more than merely establish that the Defendants have erred in the past (assuming *arguendo* that they did so), they must establish that the error is likely to reoccur and will affect the risk of pain. "Permitting constitutional challenges to lethal injection protocols based on speculative injuries and the possibility of negligent administration is not only unsupported by Supreme Court precedent but is also beyond the scope of . . . judicial authority." *Cooey (Biros), supra* at 225.

If Plaintiff can show state action and disparate treatment, the State can attempt to justify the differential treatment by showing it is narrowly tailored to serve a compelling governmental interest. *Vacco, supra; Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010).

When strict scrutiny applies, the state actors must justify disparate treatment by showing a compelling governmental interest. *Citizens United v. Federal Election Comm*., 558 U.S. 310, 340 (2010)(speech); *Johnson v. California*, 543 U.S. 499 (2005)(race); *Plyler v. Doe,* 457 U.S. 202, 216-17 (1982).

Plaintiffs assert that "[a]ny deviations from the Core Elements can *never* be said to be tailored to a compelling *governmental interest,* because Ohio's desire to execute its death-sentenced prisoners is not a compelling state interest. (Motion, ECF No. 1261, PageID 46170-71). They cite the characterization of that interest in *Baze, supra,* and *Nelson, supra*., as "legitimate," rather than compelling.

The State's interest in these cases is not in execution per se, but in enforcement of the judgments of its courts. Each Plaintiff in this

case will be executed, if at all, pursuant to a warrant issued by the Ohio Supreme Court on a conviction which has received the most thorough judicial review known to American jurisprudence. Ohio's compelling state interest is in having the judgments of its courts carried out. Absolutely core to the rule of law is that courts' judgments be executed, whether or not those judgments evince good public policy. To put it another way, whether or not executing those guilty of murdering others is desirable or important or even vitally necessary is beside the point in deciding whether there is a compelling governmental interest in carrying out court judgments.

Applying an extra protection for one prisoner (re-testing compounded pentobarbital) does not create an equal protection class-of-one right in other prisoners to obtain re-testing. *Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016), relying on discretion discussion in *Engquist v. Oregon De't* [sic] *of Agric.*, 533 U.S. 591 (2008). To the same effect is *In re: Ohio Execution Protocol Litigation (Hartman),* 2012 U.S. Dist. LEXIS 158199 (S.D. Ohio Nov. 5, 2012), *quoting Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012). That rationale would apply to any extra accommodation given to one Ohio prisoner that was not made to others, e.g. the extra visitation time with his brother that the Warden accorded to Ronald Phillips on the day of his execution.

*Id.* at *77-84. The Court then analyzed at length Campbell and Tibbetts' evidence for the asserted deviations from the Protocol and denied preliminary injunctive relief on their Equal Protection claims. *Id.* at *84-98.

Despite how vigorously Plaintiffs' counsel have litigated this consolidated case (over thirty thousand pages of filings since October 3, 2016), they did not appeal the holding on their Equal Protection claims. If they disagreed with this Magistrate Judge's view of what the Equal Protection law of this case is, they had a perfect opportunity to test their view of it on appeal in *Campbell & Tibbetts* and declined to do so. Nor have they anywhere in their Memorandum in

Opposition on the instant Motion discussed this decision.[8]  This Court's *Campbell & Tibbetts* decision has now been affirmed without any mention of the Equal Protection Clause.  *In re Ohio Execution Protocol Litig. (Campbell & Tibbetts)*, 881 F.3d 447 (6th Cir. 2018).  Thus this Court's equal protection analysis in *Campbell & Tibbetts, supra*, has now become part of the law of this case without disturbance by the Sixth Circuit.

In his briefing on the instant Motion, Plaintiff has not wavered from his very broad view of what the law of the case requires as to his Equal Protection claims.

First of all, he claims the Sixth Circuit's decision in *Lorraine, supra*, is binding precedent and controlling under the mandate rule as well (Memo in Opp., ECF No. 1406, PageID 52355).  As noted above, the Magistrate Judge agrees that *Lorraine* is binding precedent for what it decides, to wit, that Judge Frost did not err in preliminarily enjoining Lorraine's execution on the basis of the proof that the State was likely, based on what happened during the Brooks execution, to deviate from the then-operative protocol in ways that would violate Lorraine's Equal Protection rights by burdening his fundamental right to be free from cruel and unusual punishment.

Plaintiff, however, attempts to expand the *Lorraine* holding in a number of ways.

First, he asserts, "*Lorraine* establishes, as a matter of law, that Plaintiff's Equal Protection claims are distinct, legally and analytically, from Eighth Amendment claims, because that was the core issue before the appellate court on Defendants' motion to vacate the preliminary junction [sic] order."  (Memo in Opp., ECF No. 1406, PageID 52356.)  In his motion for preliminary injunctive relief, Lorraine had claimed the then-operative execution protocol was facially invalid under the Equal Protection Clause and a claim that conflated the class-of-one and

_____
[8] The Memorandum in Opposition (ECF No. 1406) was filed almost two months after *Campbell & Tibbetts* and while counsel were very actively litigating the appeal from the Eighth Amendment portion of that decision.

burden on fundamental rights claims. *In re Ohio Execution Protocol Litig. (Lorraine)*, 840 F. Supp. 2d 1044, 1049 (S.D. Ohio Jan. 11, 2012). Whatever the Equal Protection claims as pleaded were, however, Judge Frost's analysis was of claimed deviations from the protocol, claims of the type now made in Sub-claim A.1, *infra*, and not any of Plaintiff's other Equal Protection claims.

Second, Plaintiff asserts the Sixth Circuit "adopted [Judge Frost's] analysis and reasoning from the orders granting injunctive relief to Plaintiffs Smith and Lorraine" and therefore "the analysis and reasoning in those *Smith* and *Lorraine* district court orders is likewise binding circuit authority, controlling under the mandate rule," . . . (Memo in Opp., ECF No. 1406, PageID 52356-57). The Sixth Circuit did not say it was adopting Judge Frost's analysis. Rather it said, "[w]e agree with the district court that the State should do what it agreed to do in other words, it should adhere to the execution protocol it adopted.[9]" *In re Ohio Execution Protocol Litig.,* 671 F.3d 601, 602 (6th Cir. 2012).

The mandate rule is a specific application of the law-of-the-case doctrine. The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals. *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir. 1999). The mandate rule is a distinct concept which preserves the hierarchy of the court system. *Scott v. Churchill,* 377 F.3d 565, 570 (6th Cir. 2004). But what was the scope of the remand in *Lorraine*? Examination of the Sixth Circuit docket in Case No. 12-3035 shows that no mandate ever issued.

---

[9] This is the only use of the word "adopt" in the *Lorraine* Order.

**A. Equal Protection Claims of Imposing Burdens on Fundamental Rights**

Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules, for example, does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

Faced with these precedents, Plaintiff has attempted to do with the Equal Protection Clause what the case law holds cannot be done with the Due Process Clause, to wit, to constitutionalize state procedural law, e.g., by arguing it is a violation of Equal Protection to deviate from the Protocol, the state execution statute, Ohio's definition of death, etc. But the Equal Protection Clause no more constitutionalizes state procedural law than the Due Process Clause does. As Judge Frost held in *Wiles, supra,* to plead an Equal Protection claim that is distinct from a straight Eighth Amendment claim, Plaintiff must plead a deviation from or violation of a state law or regulation that increases the risk of an Eighth Amendment violation where the state law itself was created to protect Eighth Amendment interests, e.g., the Execution Protocol.

Each of Plaintiff's ten burden-on-fundamental-rights sub-claims must be reviewed with this standard in mind.

**Sub-claim A.1**

Although Plaintiff could theoretically and has in the past pleaded deviations from the Execution Protocol that, if proved, would violate his Equal Protection rights, the present Fourth Amended Omnibus Complaint in sub-claim A.1 does not do so.  For example, in ¶¶ 1360-62, he complains of the return of midazolam, a paralytic drug, and potassium chloride to the Execution Protocol, but amending the Protocol is not deviating from it.[10]

Nevertheless, sub-claim A.1 pleads in general terms an equal protection theory which has been accepted by this Court in the past and resulted in the issuance of preliminary injunctive relief, to wit, that deviations from at least some provisions of the Execution Protocol burden an inmate's right to be free of cruel and unusual punishment.  There are many dozens of Plaintiffs in this case, some with execution dates as far in the future as April 21, 2022, some with no execution date at all.  If Defendants should threaten deviations from the five core principles of the Execution Protocol in the future, Plaintiffs will be required to specify what those threats are sufficiently in advance of an execution to permit adjudication of the claim(s).  Therefore, Defendants' Motion to Dismiss as to sub-claim 4.A.1 as it applies to Van Hook is denied.

**Sub-claim A.2**

In his second sub-claim, Plaintiff asserts his Equal Protection rights will be violated by Ohio's deviation from its execution statute, Ohio Revised Code § 2949.22(A)(Fourth Amended

---

[10] Plaintiffs' previously presented claim of judicial estoppel following the DRC's solemn promise to no longer use those two drugs in its execution protocol has been resolved against Plaintiffs.  See *In re Ohio Execution Protocol Litig. (Phillips, Otte, & Tibbetts)*, 860 F.3d 881, 891-92 (6th Cir. 2017).

Omnibus Complaint, ECF No. 1252, PageID 45747-49, ¶¶ 1372-80).  He then list various hypothetical ways in which Defendants might fail to comply with that statute.

The theory under which the Equal Protection Clause is said to apply here is that there are one or more provisions of Ohio Revised Code § 2949.22(A) which protect Plaintiff's rights to be free from Eighth Amendment harm.  Under that theory, ¶¶ 1375 and 1376 do not state a claim under 42 U.S.C. § 1983 because there is no federal constitutional right to a "quick" or "painless" execution.  Paragraphs 1377 and 1378 fail because there is no threat of Defendants "failing to continue application of the lethal injection drug(s) until a Plaintiff is dead" or of "failing to administer a sufficient dosage of the lethal injection drug(s)."  That is to say, the Defendants have not expressly threatened either of these courses of conduct, nor have they engaged in these practices in the past so as to have made an implicit threat of repeating them.

Paragraph 1379 in its first phrase speaks of the use of illegally sourced drugs, but does not plead that Ohio has acquired execution drugs from illegal sources or has threatened to do so.  Paragraph 1379 in its second phrase complains Ohio will use "drugs that are inappropriate and incapable of sufficiently protecting Plaintiff from experiencing the horrific pain and suffering of the paralytic and potassium chloride in the revised three-drug method."  However, Ohio's use of a 500 milligram dose of midazolam as the initiatory drug has now survived two tests on appeal and there is no threat of use of any other drug as the first drug.

Under *Twombly* and *Iqbal, supra*, a plaintiff must plead a claim which is at least factually plausible; merely pleading legal conclusions will not suffice.  Under this standard, sub-claim A.2 as it applied to Van Hook is dismissed.

**Sub-claim A.3.**

In sub-claim A.3, Plaintiff speculates that the Ohio constitution's prohibition on cruel and unusual punishments "may accord greater civil liberties and protections to individuals and groups than its federal counterpart." (ECF No. 1252, PageID 45749, ¶ 1383.) But nowhere in their Memorandum in Opposition do they so much as mention the Ohio Constitution, much less any decisions by Ohio courts that indicate it is more protective than the Eighth Amendment. Sub-claim A.3 is purely speculative and does not meet the *Twombly/Iqbal* pleading standard; as it applies to Van Hook it is dismissed.

**Sub-claim A.4.**

In their fourth Equal Protection fundamental rights sub-claim, Plaintiff asserts Defendants will violate his Equal Protection rights by using execution drugs that do not comply with "various federal and Ohio state laws . . . ." (ECF No. 1252, PageID 45750, ¶ 1388.)

This is evidently an effort by Plaintiff to constitutionalize – i.e., enforce through the Equal Protection Clause – various laws related to the importation and/or compounding of various drugs which might be used for executions. The theoretical difficulty with this claim is that Plaintiff does not plead and cannot show that any of these drug laws were adopted, even in part, to protect those to be executed from cruel and unusual punishment, unlike the Execution Protocol on which they rely for sub-claim A.1. Sub-claim A.4 is therefore dismissed as it applies to Van Hook.

**Sub-claim A.5.**

In his fifth Equal Protection sub-claim, Plaintiff claims that his Equal Protection rights are violated by Defendants' unspecified "deviations" from Ohio's definition of death statute, Ohio Revised Code § 2108.40 (ECF No. 1252, PageID 45752-53, ¶¶ 1393-97). That statute provides:

> An individual is dead if the individual has sustained either irreversible cessation of circulatory and respiratory functions or irreversible cessation of all functions of the brain, including the brain stem, as determined in accordance with accepted medical standards. If the respiratory and circulatory functions of a person are being artificially sustained, under accepted medical standards a determination that death has occurred is made by a physician by observing and conducting a test to determine that the irreversible cessation of all functions of the brain has occurred.

Plaintiff has not pleaded that Defendants have ever declared an inmate dead when he was not dead by this definition. In fact, none of the Defendants pronounce an inmate dead; the Execution Protocol requires that this be done by "an appropriate medical professional." (Protocol, ECF No. 711-1, PageID 21469.) Nor does Plaintiff plead that Defendants have threatened to adopt a process of declaration of death not specified in the Execution Protocol.

More to the point, Plaintiff does not suggest that Ohio Revised Code § 2108.40 was adopted to protect inmates from invasion of their right to be free from cruel and unusual punishment, a required first step in their Equal Protection argument. Therefore sub-claim A.5 is dismissed as it applies to Van Hook.

**Sub-claim A.6.**

In his sixth Equal Protection burden on fundamental rights sub-claim, Plaintiff asserts that there exist state and federal laws as well as several ODRC policies prohibiting experimentation on non-consenting humans, and that Defendants will use drugs for execution experimentally.

Plaintiff does not define what he means by "experiment." The scientific meaning of the term requires beginning with some type of hypothesis that can be experimentally tested, devising a test, applying that test to a number of subjects, then collecting and analyzing the results to come to a conclusion about the truth or falsity of the hypothesis. Out of horror over the concentration camp "medical" experiments carried out by doctors during the Nazi regime in Germany and some similar incidents in this country, the law now prohibits such experiments on non-consenting humans. Research institutions usually have institutional review boards to approve the design of experiments beforehand.

Ohio executions are certainly not experiments of that sort. Each time a new drug or combination of drugs is used in a lethal injection, it may be that the results are unexpected. Certainly the January 2014 execution of Dennis McGuire by Defendants appears to have produced sufficiently problematic and unexpected results that the lethal injection protocol used on that occasion was abandoned. McGuire's execution was the first time that particular combination of drugs was used, but the result was not a decision by Defendants to try the same combination on a number of other inmates to see if a different reaction would be obtained.

Not every use of a new method of execution can properly be called an "experiment" within the meaning of the prohibition on experimenting on non-consenting humans. If Ohio, for

example, would adopt the firing squad as a method of execution, the first use of that method could not properly be called an experiment. It is a fact of human physiology, known to a reasonable degree of medical certainty, that if a number of bullets are fired into a human heart at short range,[11] the result will inevitably be death.

Neither Ohio nor the federal government adopted laws against experimenting on non-consenting humans as a protection against cruel and unusual punishment in executions. Therefore the Equal Protection Clause does not prohibit "deviations" from the laws referenced in this sub-claim, which is dismissed as to Van Hook for failure to state a claim upon which relief can be granted.

**Sub-claim A.7.**

In his seventh Equal Protection sub-claim, Plaintiff alleges Defendants will treat him disparately from other persons in ODRC custody who require medical care by failing to provide that care after a Plaintiff has been injected with lethal drugs and declared dead, but when he is in fact not dead under Ohio Revised Code § 2108.40.

The difficulty with this claim is that Defendants have a completely rational basis for distinguishing between inmates who have been lethally injected pursuant to a death warrant but are not yet dead within the meaning of Ohio Revised Code § 2108.40 and other inmates: the Defendants are obliged as a matter of law to carry out a death warrant by lethally injecting a death-sentenced inmate whereas they are prohibited by the Ohio criminal code from lethally

---

[11] The most recent execution by firing squad was that of Ronnie Gardner on June 18, 2010, in Utah. https://deathpenaltyinfo.org/views-executions?exec_name_1=&sex=All&sex_1=All&method%5B%5D= Firing+Squad&federal=All&foreigner=All&juvenile=All&volunteer=All. A news report of the execution indicates the firing squad was positioned approximately 24.5 feet from its intended target. https://www.theguardian.com/ world/ 2010/jun/18/firing-squad-executes-death-row-inmate.

injecting anyone else.  To put it another way, a death-sentenced inmate who has been injected with sufficient drugs to cause his death has no right to resuscitative medical treatment.  If, of course, it is determined that the execution cannot be completed, as was the case with Defendants' inability to achieve IV access with Mr. Campbell, the inmate would be entitled to medical care necessary to restore or maintain his health, as is any inmate.  But that does not imply a duty to start an execution and then stop it at some point and "resuscitate" the inmate.

Sub-claim A.7 is dismissed as to Van Hook for failure to state a claim on which relief can be granted.

**Sub-claim A.8.**

In his eighth Equal Protection sub-claim, Plaintiff asserts Defendants will violate his Equal Protection rights by using midazolam at the initiatory drug because of its different effects on different people.  This claim is precluded by precedent.  *Fears v. Morgan (In re:  Ohio Execution Protocol),* 860 F.3d 881 (6th Cir. Jun 28, 2017)(*en banc*); *In re Ohio Execution Protocol Litig. (Campbell & Tibbetts)*, 881 F.3d 447 (6th Cir. 2018).  Sub-claim 8 is dismissed as to Van Hook on this basis.

**Sub-claim A.9.**

In his ninth Equal Protection sub-claim, Plaintiff alleges that variations in compounded drugs make them unconstitutional to use in executions because the regulatory mechanisms

involved with manufactured drugs will not be applied and the unwillingness of reputable pharmacies to compound drugs for execution purposes increases the risks of an unconstitutional execution, indeed creates "a substantial, objectively intolerable risk." (ECF No. 1252, PageID 45759, ¶ 1424.)

Plaintiff does not plead and cannot show that regulations on compounded drugs were adopted to prevent violations of the Eighth Amendment. It may be that the risks with use of compounded drugs are sufficiently high that using them for executions, at least in the absence of adequate testing in advance, would violate the Eighth Amendment. But Plaintiff has not pleaded an adequate basis for an Equal Protection claim regarding compounded drugs. That is to say, there is no demonstrated threat of disparate treatment with the use of such drugs. Sub-claim A.9 is dismissed as to Van Hook for failure to state a claim upon which relief can be granted.

**Sub-claim A.10.**

In his tenth Equal Protection sub-claim, Plaintiff contends that the removal of required drug concentrations from the Execution Protocol violates his Equal Protection rights.

Although that amendment to the Protocol precedes the last three preliminary injunction hearings in this case, the Court has not yet heard any evidence in support of this claim. It is not unconstitutional to amend the Execution Protocol, but it is at least conceivable that this particular amendment might be shown to have reduced the safeguards of Plaintiffs' Eighth Amendment rights. The Motion to Dismiss sub-claim 10 as to Van Hook is denied.

**B. Equal Protection – "Class of One" Disparate Treatment**

The Supreme Court has recognized that an equal protection claim can be brought on behalf of a class of one "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *citing Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989).

The class-of-one doctrine does not apply to forms of state action that "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008).

> In such cases, the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.*

Judge Frost previously analyzed class-of-one claims in this case:

> Absent any pattern of generally exercising the discretion in a particular manner while treating one individual differently and detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory. In other words, the existence of discretion, standing alone, cannot be an Equal Protection violation. At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are.

*In re: Ohio Execution Protocol Litigation (Hartman),* 2012 U.S. Dist. LEXIS 158199 (S.D. Ohio Nov. 5, 2012), *quoting Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012).

In evaluating Equal Protection class-of-one claims, the courts apply rational basis review to disparate treatment situations, rather than strict scrutiny. *Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010).

Defendants assert that a class-of-one claim requires an allegation of intentional discrimination (Motion, ECF No. 1379, PageID 51948). Plaintiff responds that he has alleged intentional discrimination, citing the Fourth Amended Omnibus Complaint, ECF No. 1252, at ¶¶ 1441, 1446, 1463, 1466, 1468, 1469, 1471, 1473, 1476, 1479, 1483, 1486, 1490, 1491, and 1494.

Nevertheless, although he has alleged intentional conduct, Plaintiff asserts there is no scienter requirement for an Equal Protection violation (Memo in Opp., ECF No. 1406, PageID 52382, relying on *Davis v. Prison Health Serv's*., 670 F.3d 433, 441 (6th Cir. 2012); *Bible Believers v. Wayne County*, 805 F.3d 228, 256 (6th Cir. 2015)(*en banc*); and *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).) Relying on *Engquist, supra*, Plaintiff argues that the core concern of the Equal Protection Clause is protection against arbitrary classifications, measured against a clear standard. They conclude

> Notably, the class-of-one equal protection violations alleged in Plaintiff's Fourth Cause of Action benefit from the very kind of "clear standards" against which to assess deviations or variations the Supreme Court found so important to class-of-one equal protection claims in *Engquist*; the written execution protocol. . . . The entire protocol constitutes binding state law, and arbitrarily failing to follow it treats the particular inmate disparately, creating an arbitrary classification of one and without justification.

(Memo in Opp., ECF No. 1406, PageID 52385.)

Plaintiff correctly posits that recent Equal Protection jurisprudence undercuts prior case law which required showing an improper motive on the part of a government actor. Rather, it is sufficient to show that the disparate treatment burdens a fundamental right, targets a suspect

class, or has no rational basis. *Club Italia Soccer & Sports Org. v. Shelby*, 470 F.3d 286, 297 (6th Cir. 2006).

**Sub-claim B.1**

In sub-claim B.1 of his class-of-one Equal Protection claims, Plaintiff asserts that he has been or will be singled out arbitrarily and irrationally for deprivation of some of the protections provided by the Execution Protocol (Fourth Amended Complaint, ECF No. 1252, ¶ 1446, PageID 45766-67). This claim is made now on behalf of the dozens of death row inmates who are Plaintiffs in this action. Sub-claim B.1 does not aver any particular present or threatened future arbitrary classification of any one or more of the Plaintiffs and this Court has not found a deviation from the Protocol Equal Protection violation since 2012. At this point the *Twombly/Iqbal* plausibility requirement comes up against the time horizon of a case which, if history demonstrates anything, will continue to be litigated into the indefinite future.

This sub-claim is sufficiently parallel to that made in sub-claim A.1 as to come within the law of the case cited above. Sub-claim B.1 will not be dismissed as to Van Hook, subject to the requirement that he will need to amend or supplement his individual complaint if he is threatened with particular deviations from the Execution Protocol at the time his execution becomes imminent.

**Sub-claim B.2**

Sub-claim B.2 is dismissed as to Van Hook on the same basis as sub-claim A.2.

**Sub-claim B.3**

Sub-claim B.3 is dismissed as to Van Hook on the same basis as sub-claim A.2.

**Sub-claim B.4.**

Sub-claim B.4 is dismissed as to Van Hook on the same basis as sub-claim A.2.

**Sub-claim B.5.**

Sub-claim B.5 is dismissed as to Van Hook on the same basis as sub-claim A.2.

**Sub-claim B.6.**

Sub-claim B.6 is dismissed as to Van Hook on the same basis as sub-claim A.2.

**Sub-claim B.7.**

Sub-claim B.7 is dismissed as to Van Hook on the same basis as sub-claim A.2.

**Sub-claim B.8.**

The Motion to Dismiss sub-claim B.8 is denied as to Van Hook on the same basis as sub-claim A.10.

**Fifth Cause of Action: Ninth Amendment Violations**

In his Fifth Cause of Action, Plaintiff alleges that his execution will violate his "fundamental, unenumerated rights arising under the principles of liberty and/or natural law that are secured by the Ninth Amendment," including his right to privacy, personal dignity, bodily integrity, and not to be the subject of forced involuntary human experimentation (ECF No. 1252, PageID 45778-79, ¶¶ 1497-98).

In *In re Ohio Execution Protocol Litig. (Tibbetts & Otte)*, the Magistrate Judge dismissed a parallel claim made by those two Plaintiffs. On the basis of the authority relied on there, the Fifth Cause of Action is dismissed as to Van Hook.

**Sixth Cause of Action: First Amendment Freedom of Speech Violation**

In their Sixth Cause of Action, Plaintiff claims that the restrictions placed on his "last words" violate his rights under the First, Ninth, and Fourteenth Amendments (ECF No. 1252, PageID 45782-84, ¶¶ 1506-19). Defendants seek dismissal of these claims on the basis of precedent, citing *In re Ohio Execution Protocol Litig. (Wiles),* 868 F.Supp. 2d 625, 649-50 (S.D. Ohio 2012); *In re: Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 2017 U.S.Dist. LEXIS

107468 (S.D. Ohio, July 12, 2017); and *In re: Ohio Execution Protocol Litig. (Campbell)*, 2017 WL 3479589 (Aug. 14, 2017).

In *Wiles* Judge Frost confronted an Equal Protection challenge to the portion of the Execution Protocol which empowered the Warden to turn off the inmate's microphone if a portion of his last words became offensive. Judge Frost concluded the underlying First Amendment claim did not provide a basis for preliminary injunctive relief because it imposed a reasonable restriction. 868 F. Supp. 2d at 649-50, relying on *Turner v. Saffley*, 482 U.S. 78 (1987). Judge Frost did not reach the other portions of the "last words" regulation – the length and content portions -- because it did not appear Wiles was challenging them. *Id.*

In *Tibbetts & Otte, supra*, and in *Campbell, supra*, Plaintiffs did attack the length and content portions of the Execution Protocol. This Court dismissed the parallel First Amendment claims in those cases upon finding that "the evidence they cite of likely restrictions which might be imposed by Warden Erdos (ECF No. 1018, PageID 39179) are not unreasonable regulations in this context." (*Tibbetts & Otte*, 2-17 U.S. Dist. LEXIS 107468 at *42; *Campbell*, 2017 WL 3479589 at *6). The evidence in question was deposition testimony of Warden Erdos about length and content restrictions he would be prepared to impose. Plaintiff cites no other evidence beyond what was cited in these prior cases.

As with the two prior decisions, the question is here before the Court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Thus the *Twombly/Iqbal* plausibility standard applies. It is possible to imagine content and length restrictions on a last statement which would offend the Constitution, e.g., if an inmate were not permitted to say anything unless he first confessed to the crime or if he were limited to ten words. But Plaintiff

does not claim he is threatened with anything like a plausibly unconstitutional limitation on his last words. Therefore the Sixth Cause of Action is dismissed as to Van Hook.

**Seventh Cause of Action – Fourteenth Amendment Due Process Violation**

In his Seventh Cause of Action, Plaintiff claims he has a due process right to notice of the method of execution Defendants intend to employ as to each Plaintiff in turn, including identification of the source of any execution drugs (Fourth Amended Omnibus Complaint, ECF No. 1252, PageID 45784-89, ¶¶ 1520-40).

Defendants assert this claim should be dismissed on the basis of the Court's dismissal of the parallel claims by Tibbetts and Otte (Motion, ECF No. 1379, PageID 51952). Plaintiff divides his defense of this Cause of Action into two parts.

First, he discusses a right to have notice of the manner of execution including the execution drugs. The Court dismissed this claim in *Tibbetts & Otte*, finding there was no authority to support the claim because the citation Plaintiffs gave did not produce the case for which it was given. Plaintiff now concedes a citation error and direct the Court to *First Amendment Coal. Of Ariz., Inc. v. Ryan,* 188 F. Supp. 3d 940 (D. Ariz. May 18, 2016).

In *Ryan*, the court recognized that death row inmates have an interest in predictability of method of execution which "must be weighed against the State's interest in flexibility." *Id.* at 953. "In some cases, the State's change to an inmate's execution method may be so significant, so near the date of execution, and so unsupported by state interests, that it denies the inmate the process he is due in order to raise an Eighth Amendment challenge." *Id.* On its face the current Execution Protocol provides Defendants with discretion to make some changes in method close

to the executions in question. In practice, however, the ODRC Defendants have given Plaintiffs ample notice of changes to permit Eighth Amendment challenges. The most recent protocol change on October 7, 2016, coupled with reprieves in January 2017 allowed a five-day evidentiary hearing in January, a one-day hearing in September 2017, and another five-day hearing in October 2017. The Defendants' history of deviations from Core Principles of the Execution Protocol, which led to injunctive relief in the past, has not been the occasion for any injunctive relief in this Court since 2012.

This Court agrees with the *Ryan* court that Plaintiff is entitled to sufficient notice of changes in Ohio's method of execution to permit him to litigate such changes as threaten his Eighth Amendment rights, but his assertion that the Execution Protocol is unconstitutional because it does not provide a firm deadline for any variations on the Protocol does not state a claim for relief under the Fourteenth Amendment.

The second portion of this claim about the identity of drug sources is precluded by *Fears v. Kasich*, 845 F.3d 231 (6th Cir. 2016).

The Seventh Cause of Action is dismissed as to Van Hook for failure to state a claim upon which relief can be granted.


**Eighth Cause of Action: Fourteenth Amendment Due Process Violations for Experimenting on Non-Consenting Prisoners**

In this Eighth Cause of Action, Plaintiff asserts that his execution pursuant to the Execution Protocol will constitute an unconstitutional human experiment in violation of the substantive portion of the Due Process Clause of the Fourteenth Amendment (ECF No. 1252, PageID 45789-95, ¶¶ 1541-69). He asserts "[b]ecause of the lack of data, studies, physician

expertise, and the variability of human response, every lethal injection that Defendants conduct is a human experiment." *Id.* at ¶ 1553.

Defendants seek dismissal on the basis of this Court's prior decision dismissing the same claims as made by Raymond Tibbetts and Gary Otte. (Motion, ECF No. 1379, PageID 51954.) See *In re: Ohio Execution Protocol Litig. (Tibbetts & Otte),* 2017 U.S. Dist. LEXIS 107468 *49 (S.D. Ohio July 12, 2017)(Merz, M.J.).

Plaintiff acknowledges this prior dismissal, but claims it is inconsistent with Judge Frost's description of the impending execution of Dennis McGuire as an "experiment" (*In re: Ohio Execution Protocol Litig. (McGuire)*, 994 F. Supp. 2d 906, 913 (S.D. Ohio Jan. 13, 2014)), and the Sixth Circuit's affirmance of this Court's conclusion that paramedics and EMT's provide "medical" services in the execution context. *Otte v. Kasich (In re Ohio Execution Protocol Litig.)*, 2017 U.S. App. LEXIS 17436 (6th Cir. Sept. 17, 2017), affirming *In re Ohio Execution Protocol Litig.*, 2017 U.S. Dist. LEXIS 115583 (S.D. Ohio July 25, 2017).

Plaintiff's counsel's reliance on these two citations is symptomatic of their repeated proof-texting[12] in this case: treating words as if they were unequivocal in meaning, ripping them from the context in which they were used, and inserting them in completely different contexts. Judge Frost did indeed refer to the protocol about to be used on Dennis McGuire in January 2014 as an "experiment," but reading even the small portion of that opinion in which the word is used makes it plain he was not writing about experiments in the sense in which Plaintiffs now use that word. The two-drug method used on McGuire had never been used before. But its use in McGuire's execution was not an experiment in the sense in which the Due Process Clause prohibits medical experiments on non-consenting human subjects. Similarly, in *Otte v. Kasich, supra*, the Sixth Circuit upheld this

---

[12] Proof-texting is the practice of using isolated out-of-context quotations to establish a proposition in eisegesis. The Court has cautioned counsel about this violation of logic before. See *In re: Ohio Execution Protocol Litig. (Campbell)*, 2017 U.S. Dist. LEXIS 182406 (S.D. Ohio Nov. 3, 2017), aff'd, *In re Ohio Execution Protocol Litig. (Campbell & Tibbetts)*, 881 F.3d 447 (6th Cir. 2018).

Court's reading of Ohio Revised Code § 109.36(b) as meaning that persons such as paramedics and EMT's providing services under contract are "employees" of the State of Ohio for immunity purposes.

Equivocation, or the tendency to assume the same word means the same thing in different contexts "has all the tenacity of original sin," but nevertheless it "must constantly be guarded against." Walter Wheeler Cook, The Logical and Legal Basis of the Conflict of Laws at 159 (1942). It is a semantic or informal logical fallacy which should be outside the practice of anyone trained in the law. Perhaps the turn to computer assisted legal research, which treats a word as a string of letters rather than as standing for a concept, has caused this fallacy to proliferate. Whatever the cause, the fallacy does not persuade this Court and should not persuade anyone. Counsel are strongly urged to avoid this fallacy in future argument in this case.

Because the conduct of executions in the various ways permitted by 01-COM-11 do not constitute experiments on non-consenting human subject of the sort condemned by the laws cited by Plaintiff or by the Due Process Clause of the Fourteenth Amendment, the Eighth Cause of Action is dismissed as to Van Hook for failure to state a claim for relief.

**Ninth Cause of Action: Violations of the Privileges or Immunities Clause by Experimenting on Non-Consenting Prisoners**

In his Ninth Cause of Action, Plaintiff alleges that his execution pursuant to the Execution Protocol will violate his rights under the Privileges or Immunities Clause of the Fourteenth Amendment (Fourth Amended Omnibus Complaint, ECF No. 1252, PageID 45795-45799, ¶¶ 1570-83). Acknowledging the narrow scope of that Clause after the decision in *Slaughter-House Cases,* 83

U.S. 36 (1873), Plaintiff asserts the Clause still protects the rights of an American citizen secured by treaties with foreign nations. *Id.* at ¶ 1574. He then lists the treaties which protect American citizens from being the unconsenting subject of medical experimentation. *Id.* at ¶ 1575.

Defendants seek dismissal on the basis of this Court's dismissal of a parallel claim made by Plaintiffs Tibbetts and Otte (Motion, ECF No. 1379, PageID 51955), citing *In re Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 2017 U.S. Dist. LEXIS 107468 (S.D. Ohio July 12, 2017). They also rely on *Buell v. Mitchell*, 274 F.3d 337, 370-76 (6th Cir. 2001), for the proposition that Ohio's imposition of the death penalty does not violate any international agreements the United States has made.

Plaintiff points out that his claim is made under the Privileges **or** Immunities Clause of the Fourteenth Amendment and not the Privileges **and** Immunities Clause of Article IV, § 2 of the Constitution. He also correctly notes that *Buell, supra,* is inapposite.

Plaintiff correctly asserts that *Slaughter-House Cases* did recognize that a right accruing to national citizenship protected by the Privileges or Immunities Clause is any right secured to an American citizen by international treaty. However, none of the treaties cited in ¶ 1575 purports to prevent an American State from executing an American citizen by using lethal drugs "experimentally" in the way alleged by Plaintiff. In other words, the Ninth Cause of Action represents another equivocal use of the word "experiment" that was rejected as to the First Cause of Action, Sub-claim A.6, and the Eighth Cause of Action. On that basis, the Ninth Cause of Action is dismissed as to Van Hook.

**Tenth Cause of Action:  Violation of the Ex Post Facto Clause**

In his Tenth Cause of Action, Plaintiff claims the Execution Protocol violates the Ex Post Facto Clause, Art I, §§ 9 & 10 of the Constitution (Fourth Amended Omnibus Complaint, ECF No. 1252, PageID 45800-04, ¶¶ 1584-1606).

Defendants seek dismissal on the basis of *In re Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 2017 U.S. Dist. LEXIS 107468 *63 (S.D. Ohio July 12, 2017), which found the claim precluded by *Fears v. Morgan (In re: Ohio Execution Protocol)*, 860 F.3d 881 (6th Cir. 2017)(*en banc*).  Defendants also rely on *Malloy v. South Carolina*, 237 U.S. 180, 185 (1915).

Plaintiff is correct that *Fears v. Morgan, supra*, had no discussion of the Ex Post Facto Clause.  Plaintiffs Phillips, Tibbetts, and Otte did not seek preliminary injunctive relief on the basis of their Ex Post Facto claim (Third Amended Complaint, ECF No. 546, PageID 14939-42) and thus this Court had no occasion to discuss that issue in its opinion that was on appeal.

The gravamen of the Tenth Cause is that the "DRC Defendants have changed the law by adopting new and greater punishment than that which first applied to Plaintiff."  (ECF 1252, PageID 45802, v¶ 1597.)  This is so, Plaintiff says, because the October 7, 2016, version of 01-COM-11 as applied will not cause a quick and painless death, as provided in Ohio Revised Code § 2949.22(A), because of the use of midazolam as the initiatory drug.  That will cause an inmate's death to be "significantly more than quick and painless, a substantially greater punishment than that imposed by the statute that first adopted lethal-injection as a manner of execution."  *Id*. at PageID 45804, ¶ 1604.

In *Malloy*, *supra*, the Supreme Court held South Carolina's switch from hanging to electrocution as a method of execution did not violate the Ex Post Facto Clause (Motion, ECF No. 1379, PageID 51956-57).  The change in the law complained of was as follows:

> Under the South Carolina laws effective when the crime was committed the punishment for one found guilty of murder without recommendation to mercy was death by hanging within the county jail, or its enclosure, in the presence of specified witnesses. The subsequent act prescribed electrocution as the method of producing death instead of hanging, fixed the place therefor within the penitentiary, and permitted the presence of more invited witnesses than had theretofore been allowed.

*Id.* at 183. Citing prior case law back to Justice Chase's opinion in *Calder v. Bull*, 3 U.S. 386 (1798), the Court upheld the South Carolina law because it did not increase the penalty – death – for the crime of murder, "but only the mode of producing this . . . ." *Id.* at 185. In *In re Medley,* 134 U.S. 160 (1890), the Court found a requirement that condemned inmates be kept in solitary confinement increased the punishment for murder violated the Ex Post Facto Clause because it increased the punishment for the crime. In the opinion Justice Miller recites the history of solitary confinement, beginning largely with the Walnut Street Penitentiary in Philadelphia which confined all inmates in solitary on the model of monasteries and drove many inmates mad.

Plaintiff also relies on two out-of-circuit decisions. In *Poland v. Stewart*, 117 F.3d 1094 (9th Cir. 1997), the court noted that the Ex Post Facto Clause applies only to the legislative branch of government, but it has "a due process counterpart which prevents retroactive enlargement of the reach of criminal statutes." *Id.* at 1099, citing *Bouie v. Columbia*, 378 U.S. 347 (1964). In *In re Lombardi*, 741 F.3d 888 (8th Cir. 2014), following *Malloy, supra,* the court held that a change in method of execution did not violate the Ex Post Facto Clause: "That a former method of execution is no longer available does not mean that adoption of the next best method is an unconstitutional increase in punishment." *Id.* at 897.

Plaintiff's Tenth Cause of Action is not directed at any legislative change applied retroactively. Instead, it posits that midazolam is less likely to prevent an inmate from

experiencing severe pain and needless suffering than the sodium thiopental or pentobarbital previously used but no longer available to Ohio. It is here that *Fears v. Morgan, supra*, has its impact, for the *en banc* court plainly held Plaintiffs Phillips, Otte, and Tibbetts had not proved that point. In the later case of ***In re Ohio Execution Protocol Litig. (Campbell & Tibbetts)***, 881 F.3d 447 (6th Cir. 2018), decided after briefing was complete on the instant Motion, the court held the additional evidence from the Otte execution, including tearing, also was insufficient to show an Eighth Amendment violation. It is in this sense that *Fears v. Morgan* is preclusive: it cuts the factual premise from under Plaintiff's midazolam claim.

More fundamentally, Plaintiff presents no authority for the proposition that a particular mode of lethal injection which on its face does not increase the punishment for murder can be found to operate ex post facto because of changes in the drugs used. That is, Plaintiff cannot eventually prevail on his Ex Post Facto claim by producing increased evidence of midazolam's deleterious effects, however successful they may eventually be in an Eighth Amendment attack on the drug.

The Execution Protocol does not increase the punishment for aggravated murder in Ohio as compared with its predecessor protocols. The Tenth Cause of Action is therefore dismissed as to Van Hook.

**Eleventh Cause of Action: Violation of the Bill of Attainder Clause**

This cause of action has been withdrawn.

**Twelfth Cause of Action:  Eighth Amendment Violation**

To be pleaded in individual complaints.

**Thirteenth Cause of Action:  Eighth Amendment Violation**

To be pleaded in individual complaints.

**Fourteenth Cause of Action:  Substantive Due Process Violation**

In his Fourteenth Cause of Action, Plaintiff claims his execution under the Execution Protocol will violate his substantive right under the Fourteenth Amendment to be free from government actions that shock the conscience or are arbitrary and capricious, particularly government actions that violate federal or state drug law and human experimentation law. (Fourth Amended Omnibus Complaint, ECF No. 1252, PageID 45805-09, ¶¶1610-33).

Violations of state and federal law do not per se rise to the level of Due Process violations.  *Campbell & Tibbetts, supra,* citing *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir. 1993).  On this basis the Fourteenth Cause of Action is dismissed as to Van Hook for failure to state a claim upon which relief can be granted.

**Fifteenth Cause of Action: Violation of RICO**

The Fifteenth Cause of Action is pleaded only against the Drug Source Defendants and is not the subject of the instant Motion.

**Sixteenth Cause of Action:  Violation of the Ohio Corrupt Practices Act**

The Sixteenth Cause of Action is pleaded only against the Drug Source Defendants and is not the subject of the instant Motion.

**Seventeenth Cause of Action: Claims for Declaratory Judgment Under Ohio Law Against All Defendants, and for Injunctive Relief Under Ohio Law Against Drug Source Defendants For Violations of Ohio Law.**

The Seventeenth Cause of Action is pleaded only against the Drug Source Defendants[13] and is not the subject of the instant Motion.

**Eighteenth Cause of Action: Violation of Ohio Product Liability Act (Ohio Revised Code § 2307.71 et seq.)**

The Eighteenth Cause of Action is pleaded only against the Drug Source Defendants and is not the subject of the instant Motion.

---

[13] On its face the Seventeenth Cause of Action seeks declaratory relief against all Defendants, but Plaintiff's Memorandum in Opposition belies that reading (ECF No. 1406, PageID 52440).  The same is true for Plaintiff's Eighteenth and Nineteenth Causes of Action.

**Nineteenth Cause of Action: Violation of Ohio Consumer Sales Practices Act (Ohio Revised Code § 1345.01 et seq.) Against Drug Source Defendants**

The Nineteenth Cause of Action is pleaded only against the Drug Source Defendants and is not the subject of the instant Motion.

**Twentieth through Twenty-Ninth Causes of Action**

These Causes of Action will be pleaded separately in Plaintiffs' Amended Individual Supplemental Complaints.

**Thirtieth Cause of Action: Fourteenth Amendment Due Process Violation For Failure To Comply With Federal Investigational New Drug Application Regulations With Respect To The Method And Choice Of Drug To Be Used In Plaintiff's Execution.**

In his Thirtieth Cause of Action, Plaintiff alleged Defendants violated Plaintiff's due process rights under the Fourteenth Amendment when they failed to comply with federal investigational new drug application regulations in choosing drugs for use in executions. (Fourth Amended Omnibus Complaint, ECF No. 1252, PageID 45852-59, ¶¶ 1827-1868.)

Moving Defendants assert this cause of action is barred by the Court's prior decisions (Motion, ECF No. 1379, PageID 51965, citing *In re: Ohio Execution Protocol Litig. (Tibbetts & Otte),* 2017 U.S. Dist. LEXIS 107468 (S.D. Ohio July 12, 2017), and *In re: Ohio Execution Protocol Litig. (Campbell),* 2017 WL 3479589 (S.D. Ohio Aug. 14, 2017).

On the basis of the analysis in those two decisions, the Thirtieth Cause of Action is dismissed as to Van Hook for failure to state a claim upon which relief can be granted.

**Thirty-First Cause of Action: Equal Protection Violations Related To Defendants' Failures To Comply With The IND Application Laws.**

The Thirty-First Cause of Action is dismissed as to Van Hook on the same basis as the Thirtieth.

**Thirty-Second Cause of Action: First Amendment Free Exercise Clause and RLUIPA Violation.**

To be pleaded in the individual supplemental complaints.

**Thirty-Third Cause of Action: Eighth Amendment Violations Based On Sure Or Very Likely Exposure To Severe Needless Physical Or Mental/Psychological Pain And Suffering Due To Plaintiff's Unique, Individual Characteristics And Application Of The Execution Protocol.**

To be pleaded in the individual supplemental complaints.

**Thirty-Fourth Cause of Action: Equal Protection Violations Related To Plaintiff's Unique, Individual Characteristics And Application Of The Law, Including DRC Defendants' Execution Protocol and Ohio's Execution Statute.**

To be pleaded in the individual supplemental complaints.

**Thirty-Fifth Cause of Action: Eighth Amendment Violation Based On Purposeful or Knowing Adoption of a Lethal Injection Protocol Using A Three-Drug Method With Midazolam As The First Drug That Will Cause Severe Physical Pain and Torturous Mental Anguish and Suffering.**

To be pleaded in the individual supplemental complaints.

**Thirty-Sixth Cause of Action: Eighth Amendment Violation Based On Purposeful or Knowing Adoption of a Lethal Injection Protocol Using Midazolam That Will Cause Severe Physical Pain and Torturous Mental Anguish and Suffering.**

To be pleaded in the individual supplemental complaints.

**Thirty-Seventh Cause of Action: Eighth Amendment Violations Based on DRC Defendants Resurrecting Their Abandoned Three-Drug Method Even Though They Know It Causes Needless Pain And Suffering, And Had Abandoned It, At Least In Part, For That Reason.**

To be pleaded in the individual supplemental complaints.


**Thirty-Eighth Cause of Action: Eighth Amendment Violation Based On Devolving Standards of Decency**

To be pleaded in the individual supplemental complaints.


**Thirty-Ninth Cause of Action: Eighth Amendment Violation Based On DRC Defendants' Use Of A Three-Drug Execution Method, Regardless Of The Identity Of The First Drug.**

To be pleaded in the individual supplemental complaints.


**Fortieth Cause of Action: Eighth Amendment Violation Based On DRC Defendants' Use Of A Three-Drug Execution Method With Midazolam As The First Of The Three Drugs.**

To be pleaded in the individual supplemental complaints.


**Forty-First Cause of Action: Eighth Amendment Violation Based On DRC Defendants' Use Of Midazolam In The Execution Protocol.**

To be pleaded in the individual supplemental complaints.


**Forty-Second Cause of Action: Eighth Amendment Violation Based On DRC Defendants [sic] Removal Of Any Required Concentration Of The Execution Drugs Which Is Removal Of A Safeguard That Makes It Sure Or Very Likely That Plaintiff Will Experience Severe Pain And Suffering.**

To be pleaded in the individual supplemental complaints.

**Forty-Third Cause of Action: The Doctrines Of Judicial Estoppel And/Or Judicial Admission Bar DRC Defendants From Using The Three-Drug Method Against Plaintiff.**

Plaintiff does not plead a Forty-Third Cause of Action. Prior Plaintiffs' judicial estoppel claim was found to be without merit by the Sixth Circuit. *Fears v. Morgan (In re: Ohio Execution Protocol)*, 860 F.3d 881 (6th Cir. Jun 28, 2017)(*en banc*).

**Forty-Fourth Cause of Action: Administrative Procedures Act Claims**

Plaintiff does not plead a Forty-Fourth Cause of Action.

**Forty-Fifth Cause of Action: Eighth and Fourteenth Amendment Violations—A three-drug midazolam method of execution violates the Eighth Amendment's prohibition against cruel and unusual punishment because it no longer comports with prevailing standards of decency, and thus its use as a method of execution must be categorically barred.**

To be pleaded in the individual supplemental complaints.

**Forty-Sixth Cause of Action: Ohio Corrupt Practices Act Claims Against Individual Defendants in Their Individual Capacity**

Plaintiff does not allege a Forty-Sixth Cause of Action.

**Forty-Seventh Cause of Action: Equal Protection Clause Violation based on violations of Administrative Procedures Act**

Plaintiff does not allege a Forty-Seventh Cause of Action.

**Conclusion**

As to Plaintiff Van Hook, the Motion to Dismiss is granted in part and denied in part as set forth above.

March 6, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge