# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: OHIO EXECUTION PROTOCOL LITIGATION**<br><br>**This document relates to: ALL PLAINTIFFS** | Case No. 2:11-cv-1016<br><br>**CHIEF JUDGE EDMUND A. SARGUS, JR.**<br>Magistrate Judge Michael R. Merz<br><br>**DEATH PENALTY CASE** |

**Plaintiffs' Response to the Court's Order to Show Cause (ECF No. 1561)**

On April 16, 2018, this Court ordered Plaintiffs to show cause, not later than May 1, 2018, why certain unidentified and unserved Defendants, including Unknown Pharmacies #1–100, Unknown Pharmacists #1–100, Unknown Drug Suppliers #1–15, and John Does #1–25 (collectively, the "Drug Source Defendants"), should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m). (ECF No. 1561, PageID 69432–33.)

Plaintiffs hereby submit the following Response.

## I.   Legal Standard

Under Fed. R. Civ. P. 4(m), if a defendant is not served within 90 days after a complaint is filed, the court must dismiss without prejudice the action against that defendant, or order that service be made within a specified time. If, however, the plaintiff shows good cause for that failure, then the court "must extend the time for service for an appropriate period." Rule 4(m) thus contemplates a two-part analysis: first, the Court must determine whether

Plaintiffs have shown good cause for their failure to effect timely service; if so, the time for service "must" be extended. Second, if Plaintiffs have not shown good cause, the Court must either dismiss the action without prejudice as to those Defendants, or direct that service be effected within a specified time. *Henderson v. United States*, 517 U.S. 654, 662–63 (1996).

The burden of establishing "good cause" rests with Plaintiffs. Such a showing "necessitates a demonstration of why service was not made within the time constraints [of the Rule.]" *Habib v. General Motors Corp.*, 15 F.3d 72, 73 (6th Cir.1994). Rule 4(m) does not define "good cause," but instead commits that determination to the discretion of the District Court. *Id.* In determining whether a plaintiff has demonstrated good cause, courts have considered whether a plaintiff has made a reasonable and diligent effort to effect service, *see Electrical Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 312 (9th Cir. 1992); but "inadvertence on the part of counsel or 'half-hearted efforts' to serve a defendant" cannot suffice. *Stafford v. Franklin Cty., Ohio*, No. 2:04-CV-178, 2005 WL 1523369, at *3 (S.D. Ohio June 28, 2005) (quoting *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991)).

Moreover, the Rule and its commentary make clear that the Court has discretion to allow untimely service of process even in the absence of good

2

cause. In determining whether to exercise that discretion, the Court should consider the following factors:

> (1) whether a significant extension of time was required; (2) whether an extension of time would prejudice the defendant other than the inherent 'prejudice' in having to defend the suit; (3) whether the defendant had actual notice of the lawsuit; (4) whether a dismissal without prejudice would substantially prejudice the plaintiff ... and (5) whether the plaintiff had made any good faith efforts at effecting proper service of process.

*Stafford*, 2005 WL 1523369, at *3 (citation omitted); *see also Warrior Imports, Inc. v. 2 Crave*, 317 F.R.D. 66, 70 (N.D. Ohio 2016).

## II.     Argument

Good cause exists to justify Plaintiffs' failure to effect service; and, furthermore, should the Court find good cause lacking, the factors that guide this Court's discretion weigh in favor of allowing Plaintiffs an additional 90 days to effect service on the Drug Source Defendants.

Plaintiffs' failure of service is not due to neglect, mistake, or incompetence. Rather, two factors have combined to prevent Plaintiffs from identifying and serving the Drug Source Defendants, which provide reasonable justification for the failure. The first is the Ohio Execution Secrecy Bill, H.B. 663, codified at Ohio Rev. Code. §§ 2949.221–.222. And the second is this Court's own Protective Order. (*See* ECF No. 629, modified to extend to suppliers of midazolam, rocuronium bromide, and potassium chloride per ECF No. 838.) These two sources of protection have completely shielded the identities of the Drug Source Defendants from Plaintiffs' investigations and,

3

short of serving *all* pharmacies, pharmacists, and drug manufacturers with contacts in Ohio, Plaintiffs remain unable to identify or serve these parties.

As this Court is aware, Ohio H.B. 663 was enacted in 2014, and went into effect on March 23, 2015. These provisions, codified at Ohio Rev. Code §§ 2949.221 & 2949.222, as well as § 149.43(A)(1)(cc), "preclude[], among other things, the release of information that would identify the manufacturer or supplier of drugs for use in Ohio's lethal-injection protocol." *Fears v. Kasich*, 845 F.3d 231, 234 (6th Cir. 2016). In particular, the statute protects, as "confidential," "privileged under law," and "not subject disclosure," "any information or record in the possession of any public office that identifies or reasonably leads to the identification of" any person or entity who "manufactures, compounds, imports, transports, distributes, supplies, prescribes, prepares, administers, uses, or tests" any equipment, components, active pharmaceutical ingredients, drugs, combination of drugs, medical supplies, or medical equipment used in Ohio's lethal-injection executions." Ohio Rev. Code §§ 2949.221(B)(1)–(3). With respect to a "person," such protections apply automatically. *See id.* at § 2949.221(D)(1). With respect to non-individuals such as a corporation, partnership, or association, such rights exist only if the entity "requests to have the rights recognized by applying in writing to the director of rehabilitation and correction." *Id.* at § 2949.221(D)(2).

To be sure, H.B. 663's application is limited in temporal scope: it shields only activities, such as the manufacturing, distributing, or administering of lethal-injection drugs, commencing "at any time prior to the day that is twenty-

4

four months after the effective date" of the bill; that is, activities beginning prior to March 23, 2017. Ohio Rev. Code § 2949.221(B). Yet those non-individual entities that have sought protection under this provision during the twenty-four month period are "entitled to the[se] rights for twenty years after the person ceases the qualifying activity" described in subsection (B). *See id.* at § 2949.221(D)(2). In sum, as long as a covered activity began, and an entity applied, within the two-year period opened by H.B. 663, information about those activities will remain protected for at least 20 years, and possibly longer, depending on how long the activity continues before it "ceases" within the meaning of § 2949.221(D)(2).

At the same time, this Court's protective order mirrors the language of H.B. 663, and prevents not only Plaintiffs, but also Plaintiffs' counsel, from reviewing any discovery that

> identifies or reasonably would lead to the identification of any person or entity who participates in the acquisition or use of the specific drugs, compounded or not, that Ohio indicates in its execution protocol it will use or will potentially seek to use to carry out executions.

(ECF No. 629, PageID 19409.) This protection extends to

> those persons who or entities that have not waived or forfeited its protection and who manufacture, compound, import, transport, distribute, supply, prescribe, prepare, administer, use, or test the compounding equipment or components, the active pharmaceutical ingredients, the execution protocol drugs or combination of drugs, the medical supplies, or the medical equipment used in carrying out any execution under Ohio Revised Code § 2949.22.

(*Id.* at PageID 19410.)

5

Furthermore, on December 20, 2016, this Court modified the Protective Order, which by its terms applied only to the drugs used by Ohio in its prior Execution Protocol, to extend also to the revised Execution Protocol effective October 7, 2016, thus including within the sweep of the Order any manufacturers, suppliers, distributors, or compounders of midazolam, rocuronium bromide, and potassium chloride as well. (*See* ECF No. 838, PageID 29415–16.)

The effect of these restrictions has been a profound blow to the ability of Plaintiffs to prosecute their claims against the Drug Source Defendants. Although Plaintiffs recognize that the Sixth Circuit has refused to find that the Court abused its discretion in entering the Protective Order, *see Fears*, 845 F.3d at 238–40, Plaintiffs also note that the court further made clear that protective orders should not be used to completely foreclose the ability of a plaintiff to pursue his case, *id.* at 240 (emphasizing that "the protective order does not stonewall Plaintiffs' efforts to obtain relief"). Yet this is precisely what has occurred.

Plaintiffs brought their claims against the unknown Drug Source Defendants on the reasonable belief that discovery would allow for ultimate identification, and service, of those parties. *See Martinez–Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) ("As a general matter a plaintiff may bring suit against a fictitious or unnamed party where a good faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information.") But Plaintiffs' every

avenue for determining the identity of those parties has been impeded. The powerful limitations placed on Plaintiffs' ability to identify, and thus to serve, the Drug Source Defendants provides good cause for their failure to serve process within the time limits set by Rule 4(m). As other courts have found, Plaintiffs' good faith investigation and efforts to obtain the identity of unknown defendants, and the limitations placed thereon by outside forces, should be considered in determining whether good cause exists. *See, e.g., Serrano v. Figueroa-Sancha*, 878 F. Supp. 2d 301, 314–15 (D. Puerto Rico 2012); *Cuebas v. Davila*, 618 F. Supp. 2d 124, 132–33 (D. Puerto Rico 2009).

Plaintiffs' good faith efforts include serving approximately twenty Rule 45 third-party subpoenas on different pharmacies to obtain the necessary identifying information. Several pharmacies who had been identified as compounders of sterile controlled substances were required to produce communications, contracts, purchase orders, invoices, receipts, or other similar documents related to compounding or otherwise supplying execution drugs to the Ohio Department of Rehabilitation and Correction or the Ohio Department of Mental Health and Addiction Services (through which the Ohio Pharmacy Service Center—the entity that is used to purchase execution drugs for the State—is operated). Each of the pharmacies that received a Rule 45 subpoena responded that they had no responsive documents.

Plaintiffs also served a Rule 45 subpoena on the Ohio State Board of Pharmacy seeking specific information. Responsive to that subpoena, the Board produced a list of entities with an active Terminal Distributor of

7

Dangerous Drugs license, the type of license required for any person or entity "who is engaged in the sale of dangerous drugs at retail, or any person, other than a wholesale distributor or a pharmacist, who has possession, custody, or control of dangerous drugs for any purpose other than for that person's own use and consumption."[1]  It is believed that a Drug Source Defendant would need to operate with a TDDD license.  That list contained approximately 16,800 entries.

Likewise, Plaintiffs obtained from the Board a list of those entities with an Ohio Pharmacist's license, but that list contains over 13,000 names. Similarly, Plaintiffs obtained from the Board a list of those entities which are identified as having the capacity to perform sterile compounding (necessary to compound any injectable execution drugs).  That list is not believed to be exhaustive, because any entity with a valid Ohio pharmacy license may engage in compounding.  Even so, that list contains more than 1,600 entries, even after removing national chain pharmacies.  It is believed that the Board is now compiling a list of those pharmacies that engage in sterile compounding of controlled substances—a narrower subset of those 1,600 entries.  But that list has not been provided to Plaintiffs, and it is likely that even that narrowed subset will contain a large number of entries.

Accordingly, to the extent that the Protective Order has prevented Plaintiffs from identifying and serving the Drug Source Defendants so as to

---

[1] *See* State of Ohio Board of Pharmacy, Terminal Distributor (TDDD) Licenses, https://pharmacy.ohio.gov/Licensing/TDDD.aspx.

proceed with their claims against those parties, Plaintiffs again respectfully submit that this Court should modify the Protective Order to allow for "attorneys' eyes only" discovery in order to obtain the information necessary to perfect service. A protective order is always subject to modification or termination for good cause. *Stavro v. Upjohn Co. (In re Upjohn Co.)*, 664 F.2d 114, 118 (6th Cir. 1981). Such modification is also committed to the sound discretion of the district court. *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 161–64 (6th Cir. 1987); *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782–83 (1st Cir. 1988). In deciding whether to modify, courts "balance the potential harm to the party seeking protection against the requesting party's need for the information and the public interest served by its release." Manual for Complex Litigation (4th) § 11.432.

A modification to allow for "attorneys' eyes only" discovery would not only minimize any potential harm to Defendants from public disclosure, but is also fully consistent with the Sixth Circuit's ruling, *see Fears*, 845 F.3d at 235 n.2 ("[T]he district court maintains discretion to modify the protective order as circumstances dictate"), and justified by the record before the Court now.[2]

---

[2] To the extent that service of the Drug Source Defendants would publically reveal their identities, regardless of any "attorneys' eyes only" protection placed on the relevant evidence, this Court has discretion to allow those Defendants to proceed pseudonymously in this litigation. *See generally Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *see also Malibu Media, LLC v. Doe*, No. 2:15-CV-2519, 2015 WL 12698036, at *1–2 (S.D. Ohio Aug. 26, 2015). Such a procedure is not unheard of in the context of litigation involving lethal injection drug suppliers. *See, e.g., Bray v. Lombardi*, 516 S.W.3d 839, 845 (Mo.

Moreover, as this Court itself has recognized, the protections embodied in the Protective Order are only a "qualified privilege, defeasible by the needs, if any, of Plaintiffs in this case to obtain necessary discovery." (ECF No. 838, PageID 24914.) In its December 2016 Order, the Court concluded that "Plaintiffs have not yet demonstrated the need for the identity of any actual supplier of execution drugs since January 1, 2015." (*Id.* at PageID 24915.) That may have been true at that time. But the Protective Order, by its own terms, extends beyond mere suppliers to any persons or entities who "manufacture, compound, import, transport, distribute, supply, prescribe, prepare, administer, use, or test the compounding equipment or components, the active pharmaceutical ingredients, the execution protocol drugs or combination of drugs, the medical supplies, or the medical equipment used in carrying out any execution" under Ohio's Execution Protocol. (ECF No. 629, PageID 19410.)

The expansive reach of the Protective Order thus by definition applies to the identities of the Drug Source Defendants, which has prevented Plaintiffs from obtaining service of process on these same parties. Plaintiffs have accordingly demonstrated a clear need for the information shielded by the Protective Order, or, at minimum, a modification of that order to allow Plaintiffs' counsel to access some minimal details that might allow Plaintiffs, after further reasonable investigation and effort, to effect service on some subset of the currently unknown and unserved Defendants.

---

Ct. App. 2017) (protecting the identities of pharmacists under Missouri's execution secrecy law).

Furthermore, the full import of H.B. 663 is also being tested even now before the Ohio Supreme Court. *See State of Ohio, ex rel. Hogan Lovells US LLP and Elizabeth A. Och v. Ohio Department of Rehabilitation and Correction*, No. 2016-1776 (Ohio). That case concerns whether H.B. 663's protections block a public records request related to drugs manufactured by entities which claim *not* to have applied for protection under the law. This matter is fully briefed, and a decision from the court is expected in the near future. To the extent that H.B. 663 also thwarts Plaintiffs' effort to identify and serve the Drug Source Defendants, this Court should grant Plaintiffs additional time until the Ohio Supreme Court renders its decision, at which time Plaintiffs may, as a result of the decision, be able to discover at least the identity of the drug manufacturers, and thus, if those drug manufacturers fall within the definition of Drug Source Defendants, effect service on some of the unserved parties.

Finally, as explained above, even if this Court should conclude that Plaintiffs have failed to show good cause for their delay, the Court retains discretion to allow Plaintiffs to serve process on the unserved Defendants within a reasonable time. Such an extension is warranted here, as indicated by a review of the relevant factors. *See Stafford*, 2005 WL 1523369, at *3. An extension of time would not prejudice any Defendants, current or future, since no trial on the merits has yet occurred or been scheduled, and since the Court has recently indicated that even the deadline for motions for summary judgment will likely be extended. (*See* ECF No. 1564, PageID 69460 (granting Motion to Voluntary Dismiss without Prejudice of Plaintiff Hasan, "[i]n light of

11

the possible re-scheduling of summary judgment practice in the case").)
Further, the Drug Source Defendants have undoubtedly had actual notice of this lawsuit, given its extensive coverage in the news, including reports of the multiple evidentiary hearings held in this Court, and several appeals to the Sixth Circuit. Dismissal would greatly prejudice Plaintiffs, as it would prevent them from ever obtaining any information, however minimal, that might lead to more specific identification among the hundreds of potential drug manufacturers, suppliers, distributors, and/or compounders. And Plaintiffs have indeed made good faith efforts to obtain the information necessary to serve the Drug Source Defendants.

Despite the Sixth Circuit's proclamation that the Protective Order "does not prevent Plaintiffs from prosecuting their claims," *Fears*, 845 F.3d at 239, with regard to the Drug Source Defendants, at least, it surely does so. Plaintiffs' best efforts at winnowing the list of potential defendants to a reasonable number have been stymied by their inability to obtain any discovery related to the identity of these parties. This Court should recognize the effect that H.B. 663 and its own Protective Order have had on Plaintiffs' ability to pursue claims against these Defendants, and allow them further time to serve process under Fed. R. Civ. P. 4.

Respectfully submitted,

**Deborah L. Williams**
Federal Public Defender

by

*/s/ Allen L. Bohnert*
**Allen L. Bohnert (OH 0081544)**
Assistant Federal Public Defender

Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, Ohio 43215
614-469-2999
614-469-5999 (fax)
Email: Allen_Bohnert@fd.org

**Plaintiffs' Liaison Counsel and
Trial Counsel for Plaintiff Van Hook
and Other Multiple Plaintiffs**

**Also filed on behalf of all other
Plaintiffs, per authorization from the
Trial Attorney for each Plaintiff.**

13

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2018, I electronically filed the foregoing **Plaintiffs' Response to the Court's Order to Show Cause (ECF No. 1561)** with the Clerk of the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to the e-mail addresses of opposing counsel that are on file with the Court.

*/s/ Allen L. Bohnert*
Assistant Federal Public Defender
Plaintiffs' Liaison Counsel and
Trial Counsel for Plaintiff Van Hook
and Other Multiple Plaintiffs