# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
  PROTOCOL LITIGATION,

:  Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Report relates to all Plaintiffs
  Except Raymond Tibbetts and
  Robert Van Hook

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS THE FOURTH AMENDED OMNIBUS COMPLAINT

---

This capital § 1983 case is before the Court on Objections by Defendants (ECF No. 1450) and by Plaintiffs (ECF No. 1459) to the Magistrate Judge's Report and Recommendations ("Report," ECF No. 1429) recommending a disposition of Defendants' Motion to Dismiss the Fourth Amended Omnibus Complaint (ECF No. 1379). Plaintiffs have responded to Defendants' Objections (ECF No. 1457), Defendants have responded to Plaintiffs' Objections (ECF No. 1562), and Chief Judge Sargus has recommitted the matter for reconsideration in light of the Objections (ECF No. 1452).

The parties do not object to the Report's statement of the standard of review for motions to dismiss under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6), although at several points Plaintiffs' object to how the *Twombly/Iqbal* standard is applied. The parties also correctly state that review

of a Magistrate Judge's recommendation on a dispositive motion, such as the instant Motion to Dismiss, is for clear error as to facts and *de novo* as to the law.

**Defendants' Objections**

### Third Cause of Action:[1]  Access to Court

In their Third Cause of Action, Plaintiffs complain of limitations on their ability to consult with counsel and counsel's ability to communicate with the courts or other relevant authorities, particularly the Governor, during the course of an execution (Fourth Amended Omnibus Complaint ("4AOC"), ECF No. 1252, PageID 45728-35, ¶¶ 1295-1328).  Defendants sought dismissal on the basis of Judge Frost's decision in *Cooey v. Strickland*, 2011 U.S. Dist. LEXIS 8336, *39 (S.D. Ohio Jan. 29, 2011).  The Report concluded that Judge Frost's decision was based on the then-existing record on access and that telephone access had been changed since then, but without development of an adequate record as yet.  (ECF No. 1429, PageID 55227.)

In their Objections, Defendants again rely on Judge Frost's January 2011 decision cited above and the Magistrate Judge's Decision of November 14, 2017, denying leave to amend to add a new access claim to the claims of then-Plaintiff Alva Campbell, who was set to be executed the next day (ECF No. 1375).  The proposed amendment would have addressed changes in access implemented after the Gary Otte execution, but before the attempted Campbell execution.  The Magistrate Judge denied the amendment because the access being provided after the changes was

---

[1] The Magistrate Judge's use of the term "cause of action" is purely a matter of quoting the archaism used by Plaintiffs' counsel.  The Magistrate Judge has made the point frequently in this case that the Federal Rules of Civil Procedure adopted the label "claim for relief" in 1938.

still more than the access Judge Frost found to be constitutional. Defendants rely on the logic of this decision.

As Plaintiffs point out in response, Judge Frost's January 2011 summary judgment decision on the basis of the record then before him is not inconsistent with his prior decision that Plaintiffs' access claims did state a claim upon which relief could be granted, that is, that they survived the Rule 12(b)(6) test even if ultimately they could not pass the Rule 56 test. Plaintiffs also note that the Magistrate Judge's November 14, 2017, decision was, as it states on its face, issued in the haste necessary when a motion is made within twenty-four hours of a scheduled execution.

It is therefore again respectfully recommended that the Motion to Dismiss be denied as to the Third Cause of Action.


**Fourth Cause of Action:  Equal Protection Violations**


In their Fourth Cause of Action, Plaintiffs allege that they have been or will be treated differently from other similarly situated individuals in violation of the Equal Protection Clause of the Fourteenth Amendment (4AOC, ECF No. 1252, PageID 45735-78, ¶¶ 1329-1495). This Cause of Action comprises eighteen sub-claims, set out verbatim in the Report (ECF No. 1429, PageID 55228-30) which recommends dismissing all of the sub-claims except sub-claims A.1, A.10, B.1, and B.8.

**Sub-claim A.1.**

The Report concluded that while Sub-claim A.1 does not currently plead a threatened deviation from the Execution Protocol, it pleads "an equal protection theory which has been accepted by this Court in the past and resulted in the issuance of preliminary injunctive relief, to

wit, that deviations from at least some provisions of the Execution Protocol burden an inmate's right to be free of cruel and unusual punishment." (Report, ECF No. 1429, PageID 55244.) Defendants object that the pleading is too speculative and the Court has not found an equal protection violation on this theory since 2012 (Objections, ECF No. 1450, PageID 55398). Plaintiffs respond that they obtained relief on this theory in this case in the past (Response, ECF No. 1457, PageID 55427-31).

The current standard for evaluating whether a complaint states a claim turns on plausibility. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Doe v. Miami University,* 882 F.3d 579 (6th Cir. 2018), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Given that some Plaintiffs have obtained injunctive relief from this Court under this theory but on the facts that existed at the time of their imminent executions, it is not implausible that similar circumstances might be presented with future executions. In this sense, plausibility is about possible future facts. The Court could, therefore, dismiss Sub-claim A-1 for lack of present facts and then allow amendment if the facts change. The Magistrate Judge believes the better course is to leave Sub-claim A-1 stand as pleading an appropriate legal theory without appearing to repudiate it by dismissal at this stage.


**Sub-claim A-10.**


As to this sub-claim, the Report reads:

> In their tenth Equal Protection [burden on fundamental rights] sub-claim, Plaintiffs contend that the removal of required drug concentrations from the Execution Protocol violates their Equal Protection rights.

> Although that amendment to the Protocol precedes the last three preliminary injunction hearings in this case, the Court has not yet heard any evidence in support of this claim. It is not unconstitutional to amend the Execution Protocol, but it is at least conceivable that this particular amendment might be shown to have reduced the safeguards of Plaintiffs' Eighth Amendment rights. The Motion to Dismiss sub-claim 10 should be denied.

(Report, ECF No. 1429, PageID 55251.)

Defendants object essentially on the same basis as they objected on sub-claim A-1, to wit, that the sub-claim is "premised on [a] mere possibility of speculative intentional action and injury." (ECF No. 1450, PageID 55399.)  Not so.  Removal of the required drug concentrations from the Execution Protocol is undoubtedly an intentional action by Defendants:  the Protocol did not amend itself.  The question is the effect of that amendment.  Defendants emphasize what the Report noted, to wit, that there has been no evidence on this claim presented in the three preliminary injunction hearings held since the amendment.  But a preliminary injunction hearing is not a trial on all issues.  If at the time of summary judgment practice the Plaintiffs have no evidence to support this claim, it will be time enough for dismissal.

**Sub-claim B-1.**

This is the first of eight equal protection sub- claims grounded in the class-of-one theory. The Report found that, as of yet, Defendants have not made or threatened any arbitrary classification of any one of the Plaintiffs that would support relief on that theory (ECF No. 1429, PageID 55253).  Nonetheless, the Magistrate Judge recommended keeping this sub-claim in the Fourth Amended Omnibus Complaint on the same theory as sub-claim A-1 with the caveat "that

any particular Plaintiff will need to amend or supplement his individual complaint if he is threatened with particular deviations from the Execution Protocol at the time his execution becomes imminent." *Id.* at PageID 55254.

Defendants object that Plaintiffs have not in fact pleaded any actionable arbitrary classification. While that is true, it is the law of the case and consistent with equal protection theory generally that a class-of-one claim is cognizable in a § 1983 case. Plaintiffs' position on this sub-claim is less tenable than their position on sub-claim A-1 because there has been relief granted on that theory ("deviation from the Protocol") in the past, whereas no relief has been granted in this case on the class-of-one theory. Nevertheless, the Magistrate Judge adheres to his prior recommendation because the theory is sound if facts are eventually pleaded to support such a claim for relief.

**Sub-claim B-8**.

The Report recommended allowing sub-claim B-8 (removal of required drug concentrations) to stand on the same basis as sub-claim A-10 (ECF No. 1429, PageID 55255). Here again there has been no evidence yet presented to suggest that the removal of the concentrations was arbitrarily directed at any one Plaintiff and the generality of the amendment to remove the concentrations cuts strongly against that claim. Therefore, sub-claim B-8 is less plausible than sub-claim A-10. However, there is no prejudice to Defendants in allowing this claim to be tested in summary judgment rather than on a motion to dismiss.

**Plaintiffs' Objections[2]**

**Second Cause of Action: Deprivation of State-Created Rights Without Due Process**

In their Second Cause of Action Plaintiffs assert they have state-created life, liberty, and property interests created by the Ohio execution statute (Ohio Revised Code § 2949.22(A)) and the Ohio Execution Protocol (ODRC Policy 01-COM-11) which are protected by the Fourteenth Amendment Due Process Clause. (4AOC, ECF No. 1252, PageID 45722-28, ¶¶ 1270-94.)

The Report (ECF No. 1429, PageID 55226) recommended dismissing the Second Cause of Action on the basis of *Cooey (Biros) v. Strickland*, 589 F.3d 210, 234 (6th Cir. 2009), followed by Judge Frost in *Cooey (Henderson) v. Strickland*, 2010 U.S. Dist. LEXIS 81841 (S.D. Ohio Aug. 12, 2010), as well as the rationale given by the undersigned in *In re: Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 2017 U.S. Dist. LEXIS 107468 (S.D. Ohio July 12, 2017), and *In re: Ohio Execution Protocol Litig. (Campbell)*, 2017 WL 3479589 (S.D. Ohio Aug. 14, 2017).

Plaintiffs concede *Cooey (Biros)* is binding precedent as to the execution statute, but object to preserve their right to appeal because they believe it was wrongly decided (Objections, ECF No. 1459, PageID 55448).

As to Plaintiffs' claim of Due Process rights protected by the Execution Protocol, the Magistrate Judge also relied on *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), to hold that the right to a "humane and dignified execution" was not a state-created property right protected by the Fourteenth Amendment because it had no "ascertainable monetary value." Plaintiffs object

---

[2] To preserve continuity, Plaintiffs have included references to the causes of action not at issue on the instant Motion. This Supplemental Report will discuss only the claims actually at issue on the instant Motion. For example, the First Cause of Action, which is pleaded in the individual supplemental complaints (ECF No. 1478-1556), is not referenced herein.

that this "ascertainable monetary value" criterion for a state-created property interest is just a "passing reference," and not a "holding." (Objections, ECF No. 1459, PageID 55449).

In *Castle Rock*, the Supreme Court granted certiorari to review a Tenth Circuit decision which had (1) found a mother had a state-created property interest in the enforcement of a restraining order against the father of her children which (2) was protected by the Due Process Clause and therefore actionable under 42 U.S.C. § 1983. Justice Scalia's opinion makes clear that only a property interest, not a life or liberty interest, was in issue. 545 U.S. at 756. The Court held that the provisions of Colorado law relied on by the plaintiff did not "truly [make] enforcement of restraining orders *mandatory*" because police officer discretion often coexists with statutory language that is apparently mandatory. E.g. by use of the word "shall". *Id.* at 760.

Apart from plaintiff's lack of entitlement to enforcement, the Court also held that such an entitlement, if it existed, would not be a property interest:

> Even if we were to think otherwise concerning the creation of an entitlement by Colorado, it is by no means clear that an individual entitlement to enforcement of a restraining order could constitute a "property" interest for purposes of the Due Process Clause. Such a right would not, of course, resemble any traditional conception of property. Although that alone does not disqualify it from due process protection, as [*Board of Regents of State Colleges v.*] *Roth,* [408 U.S. 565 (1972)] and its progeny show, the right to have a restraining order enforced does not "have some ascertainable monetary value," as even our *"Roth*-type property-as-entitlement" cases have implicitly required. Merrill, The Landscape of Constitutional Property, 86 Va. L. Rev. 885, 964 (2000). Perhaps most radically, the alleged property interest here arises *incidentally,* not out of some new species of government benefit or service, but out of a function that government actors have always performed--to wit, arresting people who they have probable cause to believe have committed a criminal offense.

*Id.* at 766-67.

To this judicial officer, the language in the quoted paragraph reads like an alternative holding, and not "dictum" or a "passing reference."

Having argued that the Magistrate Judge read *Castle Rock* too broadly, Plaintiffs then assert two ways in which they say *Castle Rock* supports their position. First, they say, the Supreme Court found that the benefit at issue there – enforcement of a restraining order – was not a property interest because it was subject to police officer discretion. Here, however, the obligation to perform executions in a "professional, humane, sensitive, and dignified" manner is made mandatory by the use of the word "shall" in the Execution Protocol.[3] But the same was true of the statute at issue in *Castle Rock* and the Supreme Court found that was not controlling. 545 U.S. at 761. As Defendants note, the Ohio courts have held that the use of "shall" in prison regulations does not confer rights on inmates. *State ex rel. Larkins v. Wilkinson*, 79 Ohio St. 3d 477, 479 (1997); *State ex rel. Shepherd v. Croft*, 2010-Ohio-258 (10th Dist. Jan. 28, 2010).

Second, Plaintiffs argue that in *Castle Rock* "the alleged interest was not a direct benefit to the individual but rather an indirect benefit arising out of governmental action directed at a third party." (Objections, ECF No. 1459, PageID 55450.) Here, they say, the requirement of conducting an execution in a professional, humane, sensitive, and dignified manner "has only one direct beneficiary: the condemned prisoner himself." *Id.* at PageID 55450-51. Not so. All persons involved with an execution benefit from having it performed in the described manner. Just as there is a benefit to the general public in having the law enforced as in the *Castle Rock* situation, so to

_____

[3] Plaintiffs contend that the Execution Protocol is "binding state administrative law" (ECF No. 1459, PageID 55450). The State's characterization of the Protocol requirements has varied over time. *See Cooey (Brooks) v. Kasich*, 2011 WL 5326141 (S.D. Ohio 2011), in which Judge Frost described how the Protocol's requirements "went from binding administrative law to advisory to binding again," according to testimony from various ODRC witnesses in hearings taking place between 2009 and 2011. In *In re Ohio Execution Protocol Litig. (Lorraine)*, 840 F. Supp. 2d 1044 (S.D. Ohio 2012), Judge Frost again recognized that "as a result of state action, the written protocol is now binding." *Id.* at 1055. Both of those opinions were on motions for preliminary injunctive relief, so that the findings of fact and conclusions of law are not binding at a future trial.

there is a benefit to the public in having executions performed in a professional, humane, sensitive, and dignified manner.

Plaintiffs object that the Magistrate Judge made a distinction between "execution processes" and the execution itself. The Magistrate Judge is unaware of having suggested such a distinction.

Having reconsidered the matter in light of the Objections, the Magistrate Judge again concludes the Second Cause of Action should be dismissed for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

**Fourth Cause of Action: Equal Protection Violations**

In their Fourth Cause of Action, Plaintiffs claim Defendants have violated or will violate their Fourteenth Amendment right to equal protection of the laws in eighteen different ways, pleaded in eighteen sub-claims. Plaintiffs make ten claims that their fundamental rights under the Eighth Amendment are being or will be burdened (Claims A.1 through A.10) and eight class-of-one claims (Claims B.1 through B.8). The Report's failure to recommend dismissal of four of those sub-claims is dealt with above under Defendants' Objections; the remainder are dealt with here.

**Plaintiffs' General Objections to the Report's Equal Protection Analysis**

The Report contains a lengthy section analyzing the equal protection law of this case, incorporating the parallel analysis in *In re: Ohio Execution Protocol Litig. (Campbell & Tibbetts)*,

2017 U.S. Dist. LEXIS 182406, 2017 WL 5020138 (S.D. Ohio Nov. 3, 2017) (ECF No. 1429, PageID 55232-42). Although Campbell and Tibbetts appealed, they raised no argument about this Court's denial of their equal protection claims, and the Sixth Circuit affirmed this Court's decision. *In re: Ohio Execution Protocol Litig. (Campbell & Tibbetts)*, 881 F.3d 447 (6th Cir. 2018). The Report concluded: "[t]hus this Court's equal protection analysis in *Campbell & Tibbetts, supra,* has now become part of the law of this case without disturbance by the Sixth Circuit." (ECF No. 1429, PageID 55241.)

Plaintiffs' Objections to this analysis comprise fifteen pages of their Objections (ECF No. 1459, PageID 55454-68). Of their failure to appeal from the dismissal of these claims in *Campbell & Tibbetts*, they say nothing.

Having considered these general objections, the Magistrate Judge remains persuaded that rulings on the instant Motion should be

> consistent with Judge Frost's decisions in *Wiles, Hartman,* and *Phillips,* to wit, (1) Eighth Amendment and Equal Protection analyses are analytically distinct; (2) intentional state action in connection with an execution which burdens an inmate's fundamental Eighth Amendment right by increasing the risk that he will suffer severe pain and needless suffering is actionable under the Equal Protection Clause but (3) not every "deviation" from the Execution Protocol increases that risk.

> Therefore, to prove an Equal Protection violation, Plaintiffs must show an intentional state action (action properly attributable to the State under *Monell* [*v. New York City Dept. of Social Services*, 436 U.S. 658 (1978),] which treats one death row inmate disparately from others and burdens that inmate's Eighth Amendment right by increasing the risk he will suffer severe pain and needless suffering.

*In re: Ohio Execution Protocol Litig. (Campbell & Tibbetts)*, 2017 WL 5020138 at *27 (S.D. Ohio Nov. 3, 2017).

As Plaintiffs have amply proven, an almost endless stream of words can be put on paper arguing the content of the law of this case as garnered from prior opinions. However, discerning the law of the case is only part of our duty. Judge Frost always reminded the parties that decisions on preliminary injunction motions were not final. Ultimately we must apply our best present understanding what the Equal Protection Clause requires. That said, the Magistrate Judge adheres to the analysis of equal protection law in general given in the Report.

**Sub-claim A.2: Deviations from Ohio's Execution Statute**

In their second burden-on-fundamental-rights sub-claim, Plaintiffs assert that Ohio's expected deviations from its execution statute, Ohio Revised Code § 2949.22(A), will burden their fundamental Eighth Amendment right to be free from cruel and unusual punishment. The Report recommends dismissal of sub-claim A.2 because it attempts to constitutionalize the statute and because it hypothesizes various ways in which Ohio might violate the statute without plausibly alleging facts in support of those claims.

The Report notes the long-standing principle that "[f]ailure to abide by state law is not itself a constitutional violation." (ECF No. 1429, PageID 55242, citing *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985), and other cases). Plaintiffs offer no objection to that general proposition.

Based on that principle, the Report concluded the Equal Protection Clause did not constitutionalize Ohio Revised Code § 2949.22(A)'s prescription of a quick and painless execution. Plaintiffs object that "the statute itself implicates Plaintiffs' Eighth Amendment fundamental rights by setting out the requirements for how they are to be executed; accordingly,

applying the statute disparately burdens those fundamental rights by removing the protections that are included in the statute to make it Eighth Amendment compliant."  (ECF No. 1459, PageID 55469.)  This is nothing more than an argument that the Equal Protection Clause constitutionalizes the Ohio execution statute.  But there is no Eighth Amendment right to a painless execution. *Glossip v. Gross,* 576 U.S. ___,  135 S.Ct. 2726, 192 L. Ed. 2d 761 (2015); *Fears v. Morgan (In re:  Ohio Execution Protocol),* 860 F.3d 881 (6th Cir. 2017)(en banc).

The Report concluded ¶¶ 1377 and 1378 did not state a claim

> because there is no threat of Defendants "failing to continue application of the lethal injection drug(s) until a Plaintiff is dead" or of "failing to administer a sufficient dosage of the lethal injection drug(s)."  That is to say, the Defendants have not expressly threatened either of these courses of conduct, nor have they engaged in these practices in the past so as to have made an implicit threat of repeating them.

(ECF No. 1429, PageID 55245.)

Plaintiffs' Objections note they alleged the "Defendants failed to administer the required dosages of drugs during the execution of Joseph Clark" and the drugs administered to Dennis McGuire (10 mg.of midazolam and 40 mg of hydromorphone) did not quickly and painlessly cause death (Objections, ECF No. 1459).

While the Fourth Amended Omnibus Complaint does make these allegations, it is not plausible that they will be repeated.  The drug not administered in sufficient dosage in the Clark case was sodium thiopental which is no longer available to be used in executions.  A major part of the problem with the Clark execution was the failure to establish and maintain two intravenous lines and Director Mohr has testified he would not permit an execution to proceed in the future without two lines.  The protocol involved in the McGuire execution has been abandoned.

The Fourth Amended Omnibus Complaint is replete with accounts of difficulties with prior executions, both in Ohio and in other states (ECF No. 1252, PageID 45667-45721). This appears to be in support of something like a Murphy's Law argument: if something can go wrong, it will.[4] But Murphy's Law is also not part of the Constitution. An Equal Protection violation requires an intentional act by a state actor; as Judge Frost noted earlier in this case, mistakes will happen and they are not constitutional violations. *In re: Ohio Execution Protocol Litigation*, 868 F.Supp.2d 625, 626 (S.D. Ohio 2012). For the reasons given, the two cited past failures are not plausibly likely to reoccur. The Plaintiffs' Objections do not quarrel with the Report's conclusion that no state actor has expressly threatened to repeat what occurred in the Clark or McGuire execution. And this Court has not found an equal protection violation since 2012.

Plaintiffs allege Defendants will not "continue application of the lethal drug(s) until Plaintiff is dead." (4AOC, ECF No. 1252, PageID 45748, ¶ 1377.) In their Objections, Plaintiffs complain that the Protocol calls for bolus injections of the three execution drugs, instead of "an initial injection followed by a continuous infusion." (ECF No. 1459, PageID 55470.) This amounts to an argument that the Fourteenth Amendment constitutionalizes Plaintiffs' interpretation of the word "continuous."

### Sub-claim A.3: Deviations from the Ohio Constitution

In sub-claim A.3, Plaintiffs speculate that the Ohio Constitution's prohibition on cruel and unusual punishments "may accord greater civil liberties and protections to individuals and groups

---

[4] As social science this portion of the Fourth Amended Omnibus Complaint fails, because it does not tell the reader how many executions were completed without these difficulties. Of course, no one expects court pleadings to be social science.

than its federal counterpart." (ECF No. 1252, PageID 45749, ¶ 1383.) The Report recommended dismissal because Plaintiffs' Memorandum in Opposition to the Motion to Dismiss did not mention the Ohio Constitution or any case law supporting their argument (ECF No. 1429, PageID 55245-46).

Plaintiffs object that the Defendants' argument for dismissal of this claim "solely on the bases of Eleventh Amendment sovereign immunity and that the Eighth Amendment, not the Equal Protection Clause, controls the claim." (Objections, ECF No. 1459, PageID 55472.) Thus the Magistrate Judge is said to have raised the recommended basis for dismissal – insufficient pleading under *Twombly/Iqbal -- sua sponte. Id.* at PageID 55473.

The Magistrate Judge agrees the Report on this sub-claim is too cursory.

Defendants asserted in the Motion that this sub-claim did not state a claim upon which relief could be granted under § 1983 because it raised only a speculative claim under Ohio law (ECF No. 1379, PageID 51940). Upon the authority cited above, the Equal Protection Clause does not constitutionalize Ohio law and therefore the citation of *Twombly/Iqbal* was appropriate and the lack of sufficient pleading was not raised *sua sponte*.

In addition, however, Defendants did assert Eleventh Amendment immunity from liability on this Ohio law claim. As they noted, the Eleventh Amendment does not bar an action for injunctive relief against a state officer for violations of the United States Constitution. *Ex parte Young*, 209 U.S. 123 (1908); *Cory v. White*, 457 U.S. 85 (1982); *Thomson v. Harmony*, 65 F.3d 1314, 1320 (6th Cir. 1995). However, the Amendment does bar an action to enjoin state officials from violating state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984); *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005)(*en banc*); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453 (6th Cir. 1998). The Sixth Circuit has applied that doctrine in this very case. *In re:*

*Ohio Execution Protocol Litig. (Gary Otte),* 2017 U.S. App. LEXIS 17436 (6th Cir. Sept. 7, 2017),

affirming *In re: Ohio Execution Protocol Litig. (Tibbetts & Otte),* 2017 U.S. Dist. LEXIS 115583

(S.D. Ohio July 25, 2017).

The Report noted that the claim was also speculative because Plaintiffs' Memorandum in

Opposition lacked any citation to Ohio law holding the Ohio Constitution created greater

protection against cruel and unusual punishment. Plaintiffs object, now citing for the first time[5]

*In re C.P.*, 131 Ohio St. 3d 513 (2012). In that case the Ohio Supreme Court held that Ohio

Revised Code § 2152.86, which required lifelong sex offender registration for juveniles convicted

of rape, was unconstitutional under both the Eighth Amendment and Article I, § 9 of the Ohio

Constitution. *Id.* at ¶¶ 58, 69. In discussing the Ohio law, Justice Pfeiffer noted that § 9 "provides

protection **independent** of the protection provided by the Eighth Amendment." *Id* at ¶ 59

(emphasis supplied). That finding, of course, shields the judgment in the case from reversal by

the United States Supreme Court under 28 U.S.C. § 1257. *In re C.P.* does not hold that the Ohio

cruel and unusual punishment protections are greater than those provided by the Eighth

Amendment.

Upon this additional analysis, the Magistrate Judge again recommends Sub-claim A.3 be

dismissed.


**Sub-claim A.4**


In sub-claim A.4, Plaintiffs assert the Defendants will violate their Equal Protection rights

by using execution drugs in violation of various federal and state drug control laws (4AOC, ECF

---

[5] That is, Plaintiffs do not claim they previously cited this case and the Magistrate Judge ignored it.

No. 1252, PageID 45750, ¶ 1388).  The Report recommends dismissing this claim as another effort to constitutionalize state and federal statutes (ECF No. 1429, PageID 55246).

Plaintiffs object that Defendants sought dismissal only under the Eleventh and Eighth Amendments (ECF No. 1459, PageID 55473).  In response, the Magistrate Judge incorporates by reference the same analysis applied to this argument on sub-claim A.3.

Plaintiffs also object that they have "fundamental rights" (1) "to rely on the guarantee of safe and effective drugs that is enshrined[6] in those federal and state drug laws"; (2) "to be free from governmental activity that shocks the conscience"; and (3) "to not be an unwilling, non-consenting subject of human experimentation."  (ECF No. 1459, PageID 55474.)

"The substantive component of the Due Process Clause protects fundamental rights that are 'so implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'"  *Doe v. Mich  Dept. of State Police*, 490 F.3d 491(6th Cir. 2007), *quoting Palko v. Connecticut,* 302 U.S. 319, 325 (1937).  No federal court has ever held that there is a fundamental right to safe and effective drugs.  Government conduct that shocks the conscience violates the substantive Due Process Clause, not the Equal Protection Clause.  And for reasons given in the Report (ECF No. 1429, PageID 55247-49), Plaintiffs are not being or threatened with being subjected to human experimentation.

Sub-claim A.4 should therefore be dismissed.


**Sub-claim A.5:  Ohio's Definition of Death Statute**


In their fifth Equal Protection sub-claim, Plaintiffs claim that their Equal Protection rights

---

[6] See footnote 11 *infra* on use of this word.

are violated by Defendants' unspecified "deviations" from Ohio's definition of death statute, Ohio Revised Code § 2108.40 (ECF No. 1252, PageID 45752-53, ¶¶ 1393-97).

The Report recommended dismissal of sub-claim A.5 because (1) Plaintiffs gave no examples of executed inmates being declared dead in a way that did not comply with the statute; (2) none of the Defendants actually makes the pronouncement of death of an executed inmate; and (3) the Ohio definition of death statute was not adopted to protect inmates' Eighth Amendment rights and therefore deviating from it would not violate the Equal Protection Clause (ECF No. 1429, PageID 55247).

Plaintiffs object that Defendants sought dismissal only under the Eleventh Amendment. In response, the Magistrate Judge incorporates the analysis of this argument made as to sub-claim A.3.

Plaintiffs object further that they have pleaded circumstances in which an inmate might be declared dead under the Protocol, but would not be dead by the statutory definition (Objections, ECF No. 1459, PageID 55475, citing ¶¶ 302-07, 327-32, and 419-24 of the Fourth Amended Omnibus Complaint). They still cite no instances where this has happened in the past.

Third, Plaintiffs assert the Magistrate Judge misreads the Protocol by finding that the declaration of death is by an "appropriate medical professional." Instead, they say "the coroner does not, in fact, formally declare death. That task is delegated to the Warden, who announces the time of death."

The relevant text reads:

> At the completion of the process and after a sufficient time for death to have occurred, the curtain shall be closed and an appropriate medical professional shall evaluate the prisoner to confirm death. The curtain shall then be re-opened and the Warden shall announce the time of death. In the event that the appropriate medical professional cannot confirm that death has occurred, the curtain

> shall be reopened until an appropriate time has passed to reevaluate
> the prisoner.

(Ohio Execution Protocol, 01-COM-11, ECF No. 667-1, PageID 19829.)

The Magistrate Judge believes the proper interpretation of the text is that a medical professional "confirms death," which is to say applies appropriate medical criteria to determine whether death has occurred. When the coroner makes that determination, the Warden announces the time. In other words, the coroner reads the bodily signs and the Warden reads a clock.

Plaintiffs further object that not only is the Eighth Amendment right to be free from severe pain and needless suffering involved, but also a declaration that a person is dead when he is not violates his right to be treated with the dignity appropriate to a human being (Objections, ECF No. 1459, PageID 55476, citing *State v. Broom*, 146 Ohio St. 3d 60, 70 (2016); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *Trop v. Dulles*, 356 U.S. 86, 100 (1958) (lead opinion); and *Wilkerson v. State of Utah*, 99 U.S. 130, 134–35 (1878). The Magistrate Judge agrees. But none of these cases suggests that this Court should constitutionalize the Ohio definition of death statute. There is no showing that statute was enacted to protect any Eighth Amendment right and that deviation from it would be prohibited by the Equal Protection Clause.

### Sub-claim A.6:  Human Experimentation

In their sixth Equal Protection burden on fundamental rights sub-claim, Plaintiffs assert that there exist state and federal laws as well as several ODRC policies prohibiting experimentation on non-consenting humans, and that Defendants will use drugs for execution experimentally (4AOC, ECF No. 1252, ¶¶ 1329, 1398-1402). The Report recommended dismissal. Having

reviewed Plaintiffs' objections to the Report, the Magistrate Judge concludes the analysis set forth there does not need amplification.

**Sub-claim A.7:  Disparate Medical Treatment**

In their seventh Equal Protection fundamental rights sub-claim, Plaintiffs allege Defendants will treat them disparately from other persons in ODRC custody who require medical care by failing to provide that care after a Plaintiff has been injected with lethal drugs and declared dead, but when he is in fact not dead under Ohio Revised Code § 2108.40.

The Report recommended dismissal because the Defendants have a rational basis for not providing Plaintiffs with the same medical treatment as other inmates:  Defendants are under court order to kill a person set for execution (Report, ECF No. 1429, PageID 55249).

Plaintiffs object that when an inmate has been declared dead by the coroner, the sentence of death is complete, but that such an inmate will not be dead under the Ohio definition of death statute and will therefore be entitled to resuscitative medical care, just like any other inmate who suffers a near-death medical emergency.  This argument again attempts to constitutionalize the Ohio statute which was not adopted to protect persons from cruel and unusual punishment.  On that basis, sub-claim A.7 should be dismissed.

**Sub-claim A.8:  Use of Midazolam as the Initiatory Drug**

In their eighth Equal Protection fundamental rights sub-claim, Plaintiffs assert Defendants will violate their Equal Protection rights by using midazolam at the initiatory drug because of its different effects on different people.

The Report recommended dismissal of this claim as follows:

> This claim is precluded by precedent. *Fears v. Morgan (In re: Ohio Execution Protocol),* 860 F.3d 881 (6th Cir. Jun 28, 2017)(*en banc*); *In re Ohio Execution Protocol Litig. (Campbell & Tibbetts),* ___ F.3d ___,[7] 2018 U.S. App. LEXIS 2464 (6th Cir. Feb. 1, 2018).  Sub-claim 8 should be dismissed on this basis.

(ECF No. 1429, PageID 55250.)

Plaintiffs correctly object that the Sixth Circuit did not hold that midazolam as the initiatory drug is constitutional as a matter of law, but the evidence can change.  That observation is correct but not dispositive.  As Plaintiffs have repeatedly reminded the Court, the Eleventh Amendment and Equal Protections analyses are analytically distinct and the legal question at issue in both of the cited appeals was an Eighth Amendment claim about midazolam.  However, Sub-claim A.8 does not state a claim for relief which meets the standard of *Twombly/Iqbal* because it is not plausible and indeed Plaintiffs do not plead that the Defendants chose midazolam because it has different effects on different people.

**Sub-claim A.9:  Compounded Execution Drugs**

In their ninth Equal Protection sub-claim, Plaintiffs allege that variations in compounded

---

[7] Now reported at 881 F.3d 447.

drugs make them unconstitutional to use in executions because the regulatory mechanisms involved with manufactured drugs will not be applied and the unwillingness of reputable pharmacies to compound drugs for execution purposes increases the risks of an unconstitutional execution, indeed creates "a substantial, objectively intolerable risk." (ECF No. 1252, PageID 45759, ¶ 1424.)

The Report recommended dismissing this claim because "Plaintiffs do not plead and cannot show that regulations on compounded drugs were adopted to prevent violations of the Eighth Amendment."

Plaintiffs object that there are other fundamental rights involved as well "including the rights affected or protected by the various drug laws." (ECF No. 1459, PageID 55483.) For the reasons given above, those are not fundamental rights "implicit in the concept or ordered liberty."

**Sub-claim B.2: Equal Protection Class-of-One Violation in Application of the Ohio Execution Statute.**

In sub-claim B.2, Plaintiffs assert that each of them will, as a class-of-one, be subjected to unconstitutional application of the Ohio execution statute, Ohio Revised Code § 2949.22 (4AOC, ¶¶ 1465-66). The Report recommended dismissing this claim on the same basis as sub-claim A.2, to wit, that the Fourteenth Amendment does not constitutionalize the Ohio execution statute and therefore this sub-claim does not state a claim upon which relief can be granted under 42 U.S.C. § 1983 per the *Twombly/Iqbal* standard (ECF No. 1429, PageID 55254).

Plaintiffs object that class-of-one analysis does not require an allegation of infringement on a fundamental right, but only that a particular body of law, here the Ohio execution statute, will be applied to a particular plaintiff "and alleging arbitrary, irrational, intentional, and/or reckless disparate application of that body of law" (ECF No. 1459, PageID 55486). No authority is cited

in the Objections, but in their Memorandum in Opposition, they argued this issue at some length (ECF No. 1406, PageID 52380-90).  That argument requires additional analysis here.

> To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. *Id.; see also TriHealth, Inc.* [*v. Board of Comm'rs*], 430 F.3d [783,] 788 [(6th Cir. 2005)].

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 298 (6th Cir. 2006).

The Supreme Court has recognized that an equal protection claim can be brought on behalf of a class of one "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *citing Sioux City Bridge Co. v. Dakota Cty.,* 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989).  Plaintiffs assert that intentional discrimination is not required for a class-of-one claim (Memo in Opp., ECF No. 1406, PageID 52381), but that assertion is plainly belied by the language just quoted from *Olech*, a principal case on which the Plaintiffs rely, *id.* at PageID 52382-83. Putting it a different way, they assert there is "no *scienter* requirement for alleging an equal protection claim."  *Id.*  Intentionality, however, is a scienter requirement.  In *Olech*, the Court pretermitted any discussion of whether a plaintiff had to plead and prove subjective ill will.  It wrote, in language emphasized by Plaintiffs:

> The complaint also alleged that the Village's demand was "irrational and wholly arbitrary" and that the Village ultimately connected her property [to the municipal water supply] after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. We therefore

affirm the judgment of the Court of Appeals, but do not reach the
alternative theory of "subjective ill will" relied on by that court.

528 U.S. at 565.

Plaintiffs also rely on *Davis v. Prison Health Services*, 679 F.3d 433 (6th Cir. 2012), as

supporting lack of a *scienter* requirement in class-of-one cases, but it does not. Rather, the *Davis*

court quoted the language from *Olech*: a class-of-one plaintiff must allege she was intentionally

treated differently from other similarly situated persons. *Id.* at 441.

Plaintiffs rely further on *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015).

Nothing in that opinion suggests that there is no scienter requirement for a class-of-one claim; in

fact, *Bible Believers* was a burden on fundamental rights (speech) case. *Id.* at 257.

With this background, it is necessary to evaluate sub-claim B.2 under the *Twombly/Iqbal*

standard. It fails that test. Plaintiffs are all similarly situated in that they are all subject to death

sentences imposed by Ohio courts and they are all subject to execution under Ohio Revised Code

§ 2949.22. But the Fourth Amended Omnibus Complaint does not allege a plausible violation of

Plaintiffs Equal Protection rights in the application of that statute. Plaintiffs do not allege that any

one of them has already received disparate treatment under that statute or that any one of them has

been threatened with being treated differently from the others.

To the extent that the Fourth Amended Omnibus Complaint is intended to allege that

Defendants may "deviate" from the statute by providing a particular Plaintiff with a less quick or

more painful execution than another Plaintiff, negligent deviation from the statutory requirements

is not actionable under the Equal Protection Clause. Rather, as held by *Olech*, the disparate

treatment must be intentional.

Because sub-claim B.2 does not plausibly allege that any one of the Plaintiffs will be

intentionally treated differently from any of the others, it fails to state a claim on which relief can

be granted under 42 U.S.C. § 1983. The analysis provided in the Report that the Equal Protection Clause does not constitutionalize Ohio Revised Code § 2949.22 remains applicable here as well.

### Sub-claim B.3: Equal Protection Class-of-One Violation in Application of the Federal and State Drug Control Laws

In their third class-of-one sub-claim, Plaintiffs allege Defendants will violate their equal protection rights on a class-of-one basis by "intentionally and/or recklessly" treating any one of them differently from others similarly situated by violating federal or state drug control laws in their executions (4AOC, ECF No. 1252, ¶¶ 1467-1474). The Report recommended dismissing sub-claim B.3 "on the same basis as sub-claim A.4." (ECF No. 1429, PageID 55254).

Plaintiffs object by incorporating the objections they made with respect to sub-claim B.2 ((ECF No. 1459, PageID 55488). The analysis offered above as to sub-claim B.2 is therefore also applicable here.

### Sub-claim B.4: Equal Protection Class-of-One Violation in Application of Ohio's Definition of Death Statute

In their fourth class-of-one equal protection sub-claim, Plaintiffs alleged Defendants will violate their equal protection rights on a class-of-one basis by "intentionally and/or recklessly" applying to him Ohio's definition of death statute. That is, they will declare him dead and dispose of his body when he will still be statutorily and medically alive (4AOC, ECF No. 1252, ¶¶ 1475-77). The Report recommended dismissing this sub-claim on the same basis as sub-claim A.5 (ECF No. 1429, PageID 55254).

Plaintiffs incorporate by reference the objections made as to sub-claims B.2 and B.3. The analysis offered above as to sub-claims B.2 and B.3 is therefore also applicable here.

**Sub-claim B.5:  Equal Protection Class-of-One Violation in Application of Federal and State Laws Prohibiting Non-Consenting Human Experimentation**

In their fifth class-of-one equal protection sub-claim, Plaintiffs allege Defendants will violate their equal protection rights on a class-of-one basis by "intentionally and/or recklessly" subjecting him to human experimentation without his consent on a disparate basis from those similarly situated (4AOC, ECF No. ¶¶ 1478-80).  The Report recommended dismissing this sub-claim on the same basis as sub-claim A.6 (ECF No. 1429, PageID 52555)

Plaintiffs object on the same basis as their objections to sub-claims B.2 and B.3 (ECF No. 1459, PageID 55848-89).  The analysis offered above as to sub-claims B.2 and B.3 is therefore also applicable here.

**Sub-claim B.6:  Equal Protection Class-of-One Violation in Disparate Denial of Necessary Medical Care and Permitting a Lingering Death**

In their sixth class-of-one sub-claim, Plaintiffs allege Defendants will treat one or more of them disparately in violation of their equal protections rights by "intentionally and/or recklessly, . . failing to provide the necessary medical care and permitting a lingering death instead."  (4AOUC, ECF No. 1252, ¶¶ 1481-84.)  The Report recommended dismissing this sub-claim on the same basis as sub-claim A.7 (ECF No. 1429, PageID 52555).

Plaintiffs object on the same basis as their objections to sub-claims B.2 and B.3 (ECF No. 1459, PageID 55489).  The analysis offered above as to sub-claims B.2 and B.3 is therefore also applicable here.

**Sub-claim B.7: Equal Protection Class-of-One Violation By Using Midazolam as the Initiatory Drug Because of its Variable Effects on Different Individuals**

In their seventh class-of-one sub-claim, Plaintiffs allege that, because midazolam has "unavoidable variation" in its effects on individuals, its use as the initiatory drug in the present Execution Protocol constitutes an intentional disparate treatment of any one of them as compared with others similarly situated (4AOC, ECF No. 1253, ¶¶ 1485-88). The Report recommended dismissing this sub-claim on the same basis as sub-claim A.8 (ECF No. 1429, PageID 52555).

Plaintiffs object on the same basis as their objections to sub-claims B.2 and B.3 (ECF No. 1459, PageID 55489). The analysis offered above as to sub-claims B.2 and B.3 is therefore also applicable here.

**Fifth Cause of Action: Ninth Amendment Violations**

In their Fifth Cause of Action, Plaintiffs allege that their executions will violate their "fundamental, unenumerated rights arising under the principles of liberty and/or natural law that are secured by the Ninth Amendment," including their right to privacy, personal dignity, bodily integrity, and not to be the subject of forced involuntary human experimentation (4AOC, ECF No. 1252, PageID 45778-79, ¶¶ 1497-98).

The Report recommended dismissal of this Fifth Cause of Action on the basis of the authority cited for dismissing a parallel claim made by Plaintiffs Raymond Tibbetts and Gary Otte (ECF No. 1429, PageID 55256). See *In re Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 2017 U.S. Dist. LEXIS 107468, 2017 WL 2964901 (S.D. Ohio Jul 12, 2017).

Plaintiffs object that in the cited decision, the Magistrate Judge "misstated the nature of Plaintiffs' claims" (Objections, ECF No. 1459, PageID 55491).  The Magistrate Judge had relied on circuit precedent, *Gibson v. Matthews*, 926 F.2d 532 (6th Cir. 1991).  Plaintiffs object that *Gibson* is not controlling because the circuit court was only deciding in that case whether certain rights were "clearly established" for purposes of qualified immunity.  Instead, Plaintiffs say they are relying on "other portions of our governing law" and "[t]he fact that certain unenumerated, but nevertheless enforceable, rights exist is not a controversial one.  See *Griswold v. Connecticut*, 381 U.S. 479, 493 (1965) (Goldberg, J., concurring); *McDonald v. City of Chicago*, [561 U.S. 742, 863,]130 S. Ct. 3020, 3091 (2010) (Stevens, J., dissenting)." (Objections, ECF No. 1459, PageID 55491).  Plaintiffs also incorporate the reasons previously stated in their Memorandum in Opposition. *Id.*, citing ECF No. 1406, PageID 52397-402.

*Gibson* was brought under 42 U.S.C. § 1983 to obtain redress for the actions of various federal officials whom she claimed violated her Fifth, Eighth, and Ninth Amendment rights when they did not assist Gibson, a federal prisoner, in obtaining an abortion.  The case was before the Sixth Circuit on appeal from summary judgment granted to the defendants.  In affirming, the Sixth Circuit, per Judge Boggs, held "we agree with the district court that Gibson's complaint does not state a constitutional violation, and we also hold that the defendants are entitled to qualified immunity."  926 F.2d at 533.  "We would uphold the district court even if qualified immunity was [sic] not available."  *Id.* at 536.  As to the Ninth Amendment claim, the court held

> We agree with the district court that the ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law. The ninth amendment "was added to the Bill of Rights to ensure that the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution." *Charles v. Brown*, 495 F. Supp.

862, 863-64 (N.D. Ala. 1980). Accordingly, Gibson's ninth amendment claim holds no merit.

*Id.* at 537. Thus Plaintiffs' claim that *Gibson* merely deals with qualified immunity is wrong and *Gibson* is dispositive.

Plaintiffs criticize the Report for not analyzing their Fifth Cause of Action as presented and again rely on *Griswold v. Connecticut, supra. Griswold* involved an appeal by the executive and medical directors of Planned Parenthood of their convictions for being accessories to violation of the Connecticut prohibition on use of contraceptives by married persons. The claim of unconstitutionality was grounded in the Fourteenth Amendment with the suggestion that *Lochner v. New York*, 198 U.S. 45 (1905), should guide the decision, but the Court rejected that suggestion. Instead, Justice Douglas noted that there were a number of rights not mentioned in the Constitution which had nonetheless been held to be protected: the right of association of people, the right to educate a child in a school of the parents' choice, and the right to study a foreign language. 381 U.S. at 482. Justice Douglas found the right of privacy invaded by the offending statute to be protected by "penumbras" from the First, Third, Fourth, and Fifth Amendments. *Id.* at 485.

Although Justice Douglas mentioned the Ninth Amendment, the majority did not rely on that amendment as generating the right to marital privacy. In concurrence, Justice Goldberg noted Madison's explanation of his draft of the Ninth Amendment which is consistent with Judge Boggs' statement in *Gibson*: it avoids any implication, potentially fostered by the *expressio unius* maxim, that there are no other rights protected from federal invasion besides those enumerated in the Constitution. *Id.* at 488. Goldberg also cites Justice Story to the same effect. II Story, Commentaries on the Constitution of the United States 626-27 (5ᵗʰ edition 1891). Goldberg emphasized he was not endorsing Justice Black's "incorporation" position in *Adamson v. California*, 332 U.S. 46, 69 (1947), implying that the Ninth Amendment is applicable to the States

through the Fourteenth, nor stating that the Ninth Amendment "constitutes an independent source of rights protected from infringement by either the States or the Federal Government." *Griswold*, 381 U.S. at 492. He did not suggest that recognition of fundamental rights was to be left to judges "in light of their personal and private notions."

> Rather, they must look to the "traditions and (collective) conscience of our people" to determine whether a principle is "so rooted (there) . . . as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105. The inquiry is whether a right involved "is of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions' . . . ." *Powell v. Alabama,* 287 U.S. 45, 67.

*Griswold*, 381 U.S. at 493 (parallel citations omitted). He concluded that the right to marital privacy was such a right.

In their Memorandum in Opposition, Plaintiffs point to no indicia in the traditions or collective conscience of the American people that recognize rights to personal dignity, bodily integrity, and not to be the subject of forced involuntary human experimentation which would be violated by execution pursuant to the Execution Protocol. And they fail to note that those unenumerated rights which have been held to be constitutionally protected are in fact protected under the substantive branch of the Due Process Clause, not the Ninth Amendment.

On the basis of this analysis, the Magistrate Judge again concludes the Fifth Cause of Action should be dismissed.

**Sixth Cause of Action: First Amendment Free Speech Violations**

In their Sixth Cause of Action, Plaintiffs claim that the restrictions placed on their "last words" violate their rights under the First, Ninth, and Fourteenth Amendments (ECF No. 1252, PageID 45782-84, ¶¶ 1506-19). The Report recommended dismissal of this claim because "Plaintiffs do not claim they are threatened with anything like a plausibly unconstitutional limitation on their last words." (ECF No. 1429, PageID 55257.)

Plaintiffs object that the Magistrate Judge "erroneously imposed a heightened standard." (ECF No. 1459, PageID 55492.) That is, "the Magistrate Judge made the same fundamental error here as in those previous opinions [*In re: Ohio Execution Protocol Litig. (Tibbetts & Otte)*, 2017 U.S. Dist. LEXIS 107468 (S.D. Ohio July 12, 2017); and *In re: Ohio Execution Protocol Litig. (Campbell),* 2017 WL 3479589 (S.D. Ohio Aug. 14, 2017)]: he assessed the merits of the claim rather than its sufficiency to survive a motion to dismiss." (Objections, ECF No. 1459, PageID 55492 and 55495.) "Rather," Plaintiffs object, "at this stage the Magistrate Judge was required to accept as true Plaintiffs' factual allegations, and assess only the legal sufficiency of the claim as pleaded." *Id.* at PageID 55495-96.

Plaintiffs' Sixth Cause of Action comprises ¶¶ 1506-19 of the Fourth Amended Omnibus Complaint. The only statement of historical fact in these paragraphs is that the Execution Protocol "places restrictions on the length and content of an inmate's last statement." (ECF No.1252, PageID 45782, ¶ 1507.) Actually, the Protocol provides:

### 10. Last Words

The Warden shall ask the prisoner if he or she has any last words. It the prisoner has a last statement, he or she will be allowed to make it while the witnesses are present in the adjacent viewing rooms, are able to see him or her and hear him or her via microphone.

> a.     There shall generally be no restriction on the content of the prisoner's statement and no unreasonable restriction on the duration of the prisoner's last statement.
>
> b.     The Warden may impose reasonable restrictions on the length of the statement.  The Warden may also terminate a statement that he or she believes is intentionally offensive to the witnesses.

(Ohio Execution Protocol, 01-COM-11, ECF 667-1, PageID 19827.)

Thus the Protocol is appropriately read as conferring discretionary authority on the SOCF Warden to impose reasonable restrictions.

Judge Frost dealt with a challenge to this provision and held granting authority to the Warden to terminate the last statement by turning off the microphone if the statement became offensive was a reasonable restriction on the prisoner's speech.  *In re Ohio Execution Protocol Litig. (Wiles)*, 868 F.Supp. 2d 625 (S.D. Ohio 2012).  Plaintiffs' distinguish *Wiles* as an equal protection decision and note that they are here making a direct First Amendment claim (Memo. In Opp., ECF No. 1406, PageID 52401).  The Report recognized that distinction, but noted that Judge Frost has also held the underlying First Amendment claim was without merit because the restriction was reasonable.  (Report, ECF No. 1429, PageID 55256, citing *Wiles*, 868 F. Supp 2d at 649-50.)  Wiles did not appeal.

In the two decisions of the undersigned on this claim, the First Amendment was plainly at issue.  In *Tibbetts & Otte, supra*, the Court dismissed the Sixth Cause of Action which was precisely parallel to the claim raised here in the Fourth Amended Omnibus Complaint.  Those two Plaintiffs cited the same deposition testimony of Warden Erdos about how he might exercise his discretion under the Protocol; the Court concluded those were "not unreasonable regulations in

this context." 2017 U.S. Dist. LEXIS 107468 at *42. Alva Campbell's parallel Sixth Cause of Action was dismissed on the same basis. *Campbell, supra*, at *6.

The Report recommended dismissing the Sixth Cause of Action as follows:

> As with the two prior decisions, the question is here before the Court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Thus the *Twombly/Iqbal* plausibility standard applies. It is possible to imagine content and length restrictions on a last statement which would offend the Constitution, e.g., if an inmate were not permitted to say anything unless he first confessed to the crime or if he were limited to ten words. But Plaintiffs do not claim they are threatened with anything like a plausibly unconstitutional limitation on their last words. Therefore the Sixth Cause of Action should be dismissed.

(ECF No. 1429, PageID 55257.)

Plaintiffs argue that the Report improperly reaches the merits of their claim and that the Court must instead accept as true all of the facts that are pleaded (Objections, ECF No. 1459, PageID 55492). But the only factual allegation that the Fourth Amended Omnibus Complaint makes is as to the content of the Protocol on this topic and both Judge Frost and the undersigned have already found that content to be constitutional, even with the hypothetical additional restrictions from Warden Erdos's testimony.

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)

(a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Doe v. Miami University*, 882 F.3d 579, 588 (6th Cir. 2018), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Twombly*, 550 U.S. at 570.

Plaintiffs argue that the existence of the authority to restrict will have a chilling effect on their speech, will cause them to "self-censor." (Objections, ECF No. 1459, PageID 55493). This is not plausible. The notion that a man whose execution is so imminent that he is already strapped to the gurney and has established IV sites would self-censor any more than not saying things offensive to the witnesses is not plausible and in any event is desirable self-censorship. The fact that one might be arrested for causing panic by falsely yelling "fire" in a crowded theater hopefully deters people from doing just that. The State does nothing to prevent a death row inmate from saying whatever he wants up until the time when the execution is set to take place. It is not obliged

by the First Amendment to continue to supply him with a microphone with which to harass a captive audience.

The restrictions which the SOCF Warden is authorized to impose are reasonable time, manner, and place limitations on an inmate's speech. Plaintiffs have not pleaded any facts which, if proved, would make those restrictions unconstitutional. The Plaintiffs point to the Magistrate Judge's imagining possible unconstitutional restrictions as if that were the end of the analysis, but those hypotheticals are not facts pleaded by the Plaintiffs.

Because the "last words" section of the Protocol permits reasonable regulation of an inmate's speech, the Sixth Cause of Action should be dismissed.

**Seventh Cause of Action: Fourteenth Amendment Due Process Violation**

In their Seventh Cause of Action, Plaintiffs claim they have a due process right to notice of the method of execution Defendants intend to employ as to each Plaintiff in turn, including identification of the source of any execution drugs (4AOC, ECF No. 1252, PageID 45784-89, ¶¶ 1520-40).

The Report recommended dismissing the notice-of-method claim because there is no constitutional right to a firm deadline on changes in method and the drug source claim on the basis of *Fears v. Kasich*, 845 F.3d 231 (6th Cir. 2016)(Report, ECF No. 1429, PageID 55257-59).

The Report recognized a right to timely notice of method, following *First Amendment Coal. Of Ariz., Inc. v. Ryan,* 188 F. Supp. 3d 940 (D. Ariz. 2016). The Protocol promises timely notice, but Plaintiffs say this is illusory without a firm deadline. However, they point to no constitutional authority for a requiring a firm deadline, either in the execution context or any other.

Moreover, Plaintiffs cite no past instance where they have not actually received notice in time to challenge the manner of execution. Given this Court's practice of being available to the parties on execution dates and the authority of the Court to enjoin an execution if an unconstitutionally short amount of notice of a change has been given, their claim that the Fourteenth Amendment requires a firm date should be rejected.

As to the drug source claim, Plaintiffs assert it is not precluded by *Fears v. Kasich, supra.*, because that case involved an assertion that Judge Frost has abused his discretion in entering a protective order to prevent discovery of drug source identities (Objections, ECF No. 1459, PageID 55499). In *Phillips v. Dewine*, 841 F.3d 505 (6th Cir. 2016), the court upheld Judge Frost's dismissal of a constitutional challenge to Sub. H.B. 663. Judge Frost had held "that the Plaintiffs had no constitutional right to the information they claimed they were being deprived of and that their First, Fifth, and Fourteenth Amendments claims failed because they were premised on such a right." *Id.* at 413, citing *Phillips v. Dewine*, 92 F. Supp. 3d 702, 714-16 (S.D. Ohio 2015). The Sixth Circuit affirmed, holding

> On appeal, the Plaintiffs contend that the district court erred in dismissing their Equal–Protection, Due–Process, and Right–of–Court–Access Claims. As the basis for these claims, the Plaintiffs argue that HB 663 prevents them from bringing an effective challenge to Ohio's execution procedures. Specifically, they maintain that HB 663 "denies [them] an opportunity to discover and litigate non-frivolous claims." But no constitutional right exists to discover grievances or to litigate effectively once in court. *Lewis v. Casey*, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Hill v. Dailey,* 557 F.3d 437, 439 (6th Cir. 2009). The Plaintiffs have not pointed to any decision recognizing claims similar to the ones they propose. In fact, federal courts have repeatedly rejected such theories. *See Zink*, 783 F.3d at 1108–09; *Wellons*, 754 F.3d at 1267; *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013); *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011); *Giarratano v. Johnson*, 521 F.3d 298, 306 (4th Cir. 2008); see also *Jones v. Comm'r,*

> *Georgia Dep't of Corr.*, 812 F.3d 923 (11th Cir. 2016) (Marcus, J.,
> concurring in the denial of rehearing en banc) (rejecting an "abstract
> and inchoate due process right to discover the identity of the source
> of the drugs and the name of the executioner so that [an inmate] may
> challenge [a state's] execution protocol"). Therefore, the district
> court did not err in dismissing these claims.

841 F.3d at 420.  *Fears, supra*, cited *Phillips v. DeWine* approvingly.  Based on this authority, the

drug source prong of the Seventh Cause of Action should be dismissed.


## Eighth Cause of Action: Fourteenth Amendment Due Process Violations for Experimenting on Non-Consenting Prisoners


In their Eighth Cause of Action, Plaintiffs assert that their executions pursuant to the

Execution Protocol will constitute unconstitutional human experiments in violation of the

substantive portion of the Due Process Clause of the Fourteenth Amendment (ECF No. 1252,

PageID 45789-95, ¶¶ 1541-69). They assert "[b]ecause of the lack of data, studies, physician

expertise, and the variability of human response, every lethal injection that Defendants conduct is a

human experiment."  *Id.* at ¶ 1553.

The Report recommended dismissal of the Eighth Cause of Action "because the conduct of

executions in the various ways permitted by 01-COM-11 do [sic] not constitute experiments on non-

consenting human subject of the sort condemned by the laws cited by Plaintiffs or by the Due Process

Clause of the Fourteenth Amendment."  (ECF No. 1429, PageID 55261.)

Plaintiffs object that the Magistrate Judge improperly limited the analysis to "medical"

experimentation, whereas they challenged the Execution Protocol for "pharmaceutical"

experimentation as well.  But the same analysis applies:  the State of Ohio is not engaged in

"experimentation" when it carries out the execution process.

Plaintiffs cite no case in which a court has held that the execution process involves human experimentation, medical or pharmaceutical, of the sort prohibited by the Fourteenth Amendment. Instead, they cite "State Departments of Corrections Are Violating FDA's Investigational New Drug Regulations By Experimenting with Lethal Injection Drugs (2014)."[8] No single author produced this paper. Instead, the reader is informed that the paper is the collective work of the Clinic for Public Health Law and Policy of the Johns Hopkins Bloomberg School of Public Health. *Id.*, cover page. The research was suggested by Jonathan Zenilman, a professor of medicine at Johns Hopkins, who hypothesized that "lethal injections might constitute human research subject to federal regulation." *Id.* The paper begins with Judge Frost's description of the use of the two-drug protocol in the McGuire execution as an "experiment." *Id.* at p. 1. For reasons explained in the Report and in other decisions in this case, the Magistrate Judge believes it is the fallacy of equivocation to take that word from Judge Frost's decision and apply it in other contexts where the word "experiment" is used.

The authors note that a direct challenge to Department of Corrections' policies under the federal statutes involved have generally been unsuccessful. *Id.* at pp. 3-4. While disclaiming any effort to offer litigation strategy, the authors argue that the jurisdictional problems under the statutes could be avoided by bringing claims directly under the Fourteenth Amendment, as Plaintiffs have done here. Offering no court authority for the proposition, the authors then assert that the duties imposed by these federal statutes are subsumed within the Eighth and Fourteenth Amendments. *Id.* at p. 5. But the Fourteenth Amendment no more constitutionalizes federal statutory processes than it does state procedural requirements.

---

[8] Available at https://www.jhsph.edu/research/centers-and-institutes/center-for-law-and-the-publics-health/Lethal%20Injection%20Policy%20Paper%20Final.pdf (visited May 1, 2018).

The authors cite *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272 (1998), for the proposition that "a condemned prisoner maintains a constitutionally protected residual life interest" until death and the State's efforts to deprive him of that interest "must comply with the requirements of due process." While the general proposition is of course correct, it says nothing of the content of that due process requirement and particularly nothing about constitutionalizing the procedures prescribed in the drug control statutes.

Based on this analysis, the Magistrate Judge again recommends the Eighth Cause of Action be dismissed.

**Ninth Cause of Action: Violations of the Privileges or Immunities Clause by Experimenting on Non-Consenting Prisoners**

In their Ninth Cause of Action, Plaintiffs assert that the Privileges or Immunities Clause of the Fourteenth Amendment is violated when they, as American citizens, are subjected to execution by the "experimental" use of drugs. The Report recommended dismissal of this claim because

> none of the treaties cited in ¶ 1575 purports to prevent an American State from executing an American citizen by using lethal drugs "experimentally" in the way alleged by Plaintiffs. In other words, the Ninth Cause of Action represents another equivocal use of the word "experiment" that was rejected as to the First Cause of Action, Sub-claim A.6, and the Eighth Cause of Action.

(Report, ECF No. 1429, PageID 55262.)

Because the Report depends on the Magistrate Judge's interpretation of the word "experiment" in various contexts, Plaintiffs assert that violates the standard for review of a complaint under Fed. R. Civ. P. 12(b)(6). They claim they "are entitled to define their claim at the pleading stage; the Magistrate Judge is not permitted to redefine the terms of the claim, especially to defeat an otherwise well-pleaded claim." (Objections, ECF No. 1459, PageID 55508-09, citing

*Neitzke v. Williams,* 490 U.S. 319, 327 (1989), which held Rule 12(b)(6) does not countenance . . . dismissal based on a judge's disbelief of a complaint's factual allegations."

What is involved here is not disbelief of any factual allegations, but interpretation of terms as they are used in the law. To allow a plaintiff to assert that "the law prohibits human experimentation" and then avoid 12(b)(6) analysis by saying "and experimentation means what I define it to mean," would be to turn 12(b)(6) motions into Alice in Wonderland exercises.[9] *Neitzke* was decided while the governing standard for a 12(b)(6) motion was provided by *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." But *Conley* was expressly overruled by *Twombly* and the test since then has been whether the complaint pleads plausible facts on which the law would grant relief. It is not the facts that are the problem with the two "experiment" claims, but the law.

It is therefore again recommended that the Ninth Cause of Action be dismissed.

**Tenth Cause of Action: Violation of the Ex Post Facto Clause**

In their Tenth Cause of Action, Plaintiffs claim the present version of the Execution Protocol violates the Ex Post Facto Clause because elimination of the barbiturates formerly used and their replacement with midazolam, a paralytic, and potassium chloride increases the

---

9 "When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean— neither more nor less." "The question is," said Alice, "whether you can make words mean so many different things." "The question is," said Humpty Dumpty, "which is to be master—that's all." Lewis Carroll (Charles L. Dodgson), Through the Looking-Glass, chapter 6, p. 205 (1934). First published in 1872.

punishment for their crimes (4AOC, ECF No. 1252, ¶¶ 1584-1606). The Report recommended dismissing this cause of action because, based on the precedent cited, changing a method of execution does not violate the Ex Post Facto Clause or its Due Process analogue (ECF No. 1429, PageID 55262-65).

Although Plaintiffs object, the Magistrate Judge does not believe further analysis is needed.


## Fourteenth Cause of Action: Substantive Due Process Violation


In their Fourteenth Cause of Action, Plaintiffs claim their executions under the Execution Protocol will violate their substantive right under the Fourteenth Amendment to be free from government actions that shock the conscience or are arbitrary and capricious, particularly government actions that violate federal or state drug law and human experimentation law. (4AOC, ECF No. 1252, PageID 45805-09, ¶¶1610-33.) The Report recommended dismissal on the basis that "[v]iolations of state and federal law do not *per se* rise to the level of Due Process violations." (ECF No. 1429, PageID 55266, citing *Campbell & Tibbetts, supra, citing Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993), abrogated on other grounds by *Thompson v Keohane*, 516 U.S. 99, 111 (1995) as recognized by *Slaughter v. Parker*, 450 F.3d 224 (6th Cir. 2006).

Plaintiffs object that this analysis fails "to substantively engage" with the "pertinent question," to wit, "whether, taking all the factual allegations as true, Plaintiffs have sufficiently pleaded that Defendants' actions are adequately conscious-shocking [sic[10]] to be a substantive due process violation." (Objections, ECF No. 1459, PageID 55516.)

---

[10] Plaintiff use the word "conscious" three times in one paragraph of their Objections. Surely they mean "conscience." See *Rochin v. California,* 342 U.S. 165, 175-76 (1952).

In neither their Memorandum in Opposition (ECF No. 1406) nor their Objections (ECF No. 1459) do Plaintiffs offer any examples of conduct which has been held to shock the conscience and compare them with the conduct of Defendants. They claim adoption of midazolam as the initiatory drug and the breaking of federal and state laws in the process of executions shocks the conscience. *Id.* at 55516. But the Sixth Circuit held the use of midazolam as Defendants use it did not violate the Eighth Amendment and it is difficult to see how the Fourteenth Amendment test could be more exacting. Of course, it is possible that evidence will accumulate to the point that a different result would be required, but that would only be if the evidence were so persuasive that it would constitute willful ignorance to fail to consider it. The Magistrate Judge has refused to credit Plaintiffs' claims that Defendants are breaking state and federal laws in their conduct of executions, but even if they were, not every act by a government actor later found to violate the law is so extreme as to shock the conscience.

The Court should conclude that the conduct asserted by Plaintiffs to shock the conscience does not do so, at least not to the degree necessary to violate substantive due process requirements.

**Thirtieth Cause of Action: Fourteenth Amendment Due Process Violation For Failure To Comply With Federal Investigational New Drug Application Regulations With Respect To The Method And Choice Of Drug To Be Used In Plaintiff's Execution.**

In their Thirtieth Cause of Action, Plaintiffs alleged Defendants violated Plaintiffs' due process rights under the Fourteenth Amendment when they failed to comply with federal investigational new drug application regulations in choosing drugs for use in executions. (4AOC, ECF No. 1252, PageID 45852-59, ¶¶ 1827-1868.) The Report recommended dismissing this claim on the basis of the analysis of parallel claims in *Tibbetts & Otte, supra*, and *Campbell, supra*.

Plaintiffs correctly object that, to the extent the Report recommends dismissing this claim as to the Drug Source Defendants, it is premature because none of them have been served (ECF No. 1459, PageID 55518-19). The Report does not distinguish among Defendants in its recommendation, but to the extent it can be read as recommending dismissal of this claim against the Drug Source Defendants, it is WITHDRAWN.

Next Plaintiffs contend the Report misconstrues this claim: it is not about how the ODRC Defendants chose execution drugs (Objections, ECF No. 1459, PageID 55519). Rather, they say, "the issue in this claim is whether Defendants, in carrying out lethal injection execution of Plaintiffs, have followed the mandatory procedures that are contained in that statute [the FDCA – the Food, Drug, and Cosmetic Act] to protect the fundamental rights to safe and effective drugs enshrined in the statute." (Objections, ECF No. 1459, PageID 55520.)

This cause of action comprises ¶¶ 1827-68 of the Fourth Amended Omnibus Complaint. Paragraph 1828 asserts that no drug may be marketed or distributed in interstate commerce until the FDA has received and approved a new drug application ("NDA") that "demonstrates the drug is safe and effective for a specific use or uses." Succeeding paragraphs assert that Ohio has not received an approved NDA for any of the drugs listed in the Execution Protocol. Because using any of these drugs in an execution is not a use in the course of medical practice, Plaintiffs allege Ohio must submit an Investigational New Drug ("IND") application for them, but it has not done so. Paragraph 1864 alleges that Plaintiffs have a due process right to have the IND regulations complied with.

In the Report, in this Supplemental Report, and in analyzing parallel claims in other decisions, the Magistrate Judge had several times argued that the Due Process Clause does not constitutionalize procedures embodied in state or federal statutes, often citing *Levine v. Torvik*,

986 F.2d 1506 (6th Cir. 1993). Plaintiffs previously objected that *Levine* deals only with state statutes (Memo in Opp., ECF No. 1406, PageID 52448). While that is correct, Plaintiffs cite no authority for the proposition that federal statutory procedures are different for this purpose. In fact, there is abundant authority for the proposition that violations of procedures in federal statutes do not per se rise to the level due process violations. *United States v. Caceres*, 440 U.S. 741 (1979); *United States v. Powell*, 847 F.3d 760, 771 (6th Cir. 2017); *United States v. Thompson*, 936 F.2d 1249, 1251 (9th Cir. 1991).

Instead, Plaintiffs argue that "the guarantees of safe and effective drugs, enshrined[11] in the FDCA, are so fundamental as to warrant Fourteenth Amendment Due Process protections." (Objections, ECF No. 1459, PageID 55521.) They then catalogue various chapters in the nation's history of drug regulation to the end of proving that having safe and effective drugs for the purpose of curing illness has been a national effort for many years (ECF No. 1406, PageID 52442-47). That argument is beside the point; executions are not about curing illness. Plaintiffs present no evidence that the FDCA or other federal drug laws were passed for the purpose of regulating drugs used for executions. There is no suggestion that any of these statutes or associated regulations are so deeply rooted in the traditions and mores of the American people as to be part of the concept of ordered liberty. The Fourteenth Amendment Due Process Clause does not incorporate the statutes and regulations relied on in the Thirtieth Cause of Action which should be dismissed.

---

[11] The use of religious language here is puzzling. Provisions of statutes are "enacted," not "enshrined." The word "enshrined" must be intentional, however, because it is used to describe the statutory language in both the Memo in Opposition and the Objections (PageID 52442, PageID 55521).

**Thirty-First Cause of Action: Equal Protection Violations Related To Defendants' Failures To Comply With The IND Application Laws.**


In their Thirty-first Cause of Action, Plaintiffs allege their Equal Protection rights are violated when Defendants treat them differently from persons who are protected by the IND Application Laws. (4AOC, ¶¶ 1869-75.) The Report recommended dismissing this claim on the same basis as the Thirtieth Cause of Action (ECF No. 1429, PageID 55268).

Plaintiffs object that the Magistrate Judge "erred as a matter of fundamental constitutional law by conflating Plaintiffs' Due Process claims and their Equal Protection claims." (Objections, ECF No. 1459, PageID 55523.) Plaintiffs then characterize their Thirty-First Cause of Action as a class-of-one claim by relying on *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Plaintiffs are correct that a separate analysis must be provided for their equal protection class-of-one theory.[12]

Paragraphs 1874 and 1875 of the Fourth Amended Omnibus Complaint read:

> 1874. Plaintiff is also a class of one, similarly situated with those protected from harm as subjects of human experimentation and clinical investigations by the federal IND application regulations.
>
> 1875. Defendants intentionally treat Plaintiff differently than similarly situated individuals by their arbitrary and irrational failure to follow the mandatory IND application regulations, thus irrationally subjecting Plaintiff to a heightened risk that he will suffer deprivations of his fundamental rights identified above without legitimate or rational reason.

(ECF No. 1252.) Certainly the claim that the ODRC Defendants have not and will not follow the IND application process as to Plaintiffs is plausible. But Plaintiffs, at least as of the time they come to be executed, are not similarly situated to non-capitally-sentenced persons in Director Mohr's custody.

---

[12] The analysis provided for the Thirtieth Cause of Action is applicable to the Thirty-First to the extent Plaintiffs are claiming they have a fundamental right to the protections of the IND application process which is protected under the Equal Protection Clause, to wit, there is no such fundamental right.

With respect to other prisoners and with respect to Plaintiffs until their time for execution comes, the ODRC Defendants have whatever obligations accrue under the IND application laws to anyone who is responsible for arranging the medical care of someone else. But when the time for execution comes, the legal duty of the ODRC Defendants is to kill the Plaintiff in question. It is certainly not irrational, arbitrary, or capricious to discriminate between those for whom one has a duty of medical care and those for whom one has a duty to execute.

The Fourth Amended Omnibus Complaint fails to state a claim for relief in the Thirty-First Cause of Action in another way: it does not allege that the ODRC Defendants have irrationally, arbitrarily, capriciously, or indeed at all, chosen to comply with the IND application laws for some of the Plaintiffs and not for others.

Based on this analysis, the Thirty-First Cause of Action should be dismissed.

**Conclusion**

For the reasons given, the Magistrate Judge adheres to the recommendations made in the original Report and recommends that the Objections of both Plaintiffs and Defendants be OVERRULED.

May 8, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).