# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: OHIO EXECUTION PROTOCOL LITIGATION**<br><br>**This document relates to: ALL PLAINTIFFS** | Case No. 2:11-cv-1016<br><br>**CHIEF JUDGE EDMUND A. SARGUS, JR.**<br>Magistrate Judge Michael R. Merz<br><br>**DEATH PENALTY CASE** |

**Motion to Stay Pleading, Briefing, Consideration, and Adjudication**

Plaintiffs respectfully request that the Court stay pleading, briefing, consideration, and adjudication of pending and forthcoming dispositive motions in this litigation in light of the recent decision of the Supreme Court of the United States to grant a writ of certiorari in *Bucklew v. Precythe*, No. 17-8151 (cert. granted Apr. 30, 2018).

The questions presented by the petitioner in that case, as well as the additional question added *sua sponte* by the Court, promise to seriously impact and clarify the relevant standards that this Court must apply in the adjudication of Plaintiffs' Eighth Amendment claims.  To reduce the risk of wasteful duplication of this litigation, as well as to avoid the possibility that this case may be adjudicated under what the Supreme Court may soon clarify to be the incorrect standards of proof, this Court should stay pleading, briefing, consideration, and adjudication of the pending and forthcoming dispositive motions in this case.  It should also further forebear to order or consider

further briefing on any dispositive motions, until such time as the Supreme Court has rendered its decision.

Numerous claims raised by Plaintiffs in this case argue that Ohio's Execution Protocol violates the Eighth Amendment based on the framework established in *Baze v. Rees*, 553 U.S. 35 (2008), and further clarified in *Glossip v. Gross*, 135 S. Ct. 2726 (2015). That is: those challenging a method of execution must show that the method "presents a risk that is sure or very likely to cause serious illness and needless suffering"; and further they must show "[not] merely . . . a slightly or marginally safer alternative," but rather "must identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (internal quotation marks omitted). As the Sixth Circuit has further explained, *Glossip*'s test requires not only that Plaintiffs must "establish that the method presents a risk that is sure or very likely to cause serious pain and needless suffering," but also that the alternative identified by Plaintiffs must be "available, feasible, and can be readily implemented," meaning that the State "should be able to obtain the [alternative] with ordinary transactional effort." *In re Ohio Execution Protocol*, 860 F.3d 881, 886, 890–91 (6th Cir. 2017) (en banc) (internal quotation marks and citations omitted).

The Petition accepted for review in *Bucklew* speaks precisely to what Plaintiffs must prove in order to succeed in these requirements, and as such the Supreme Court's forthcoming merits determination on the questions contained in that Petition will bear directly on Plaintiffs' ability to succeed here.

2

Bucklew's Petition for Writ of Certiorari asks the Court to answer, among others, the following questions that relate directly to Plaintiffs' claims:

> [2] Must evidence comparing a state's proposed method of execution with an alternative proposed by an inmate be offered via a single witness, or should a court at summary judgment look to the record as a whole to determine whether a factfinder could conclude that the two methods significantly differ in the risks they pose to the inmate?
>
> [3] Does the Eighth Amendment require an inmate to prove an adequate alternative method of execution when raising an as-applied challenge to the state's proposed method of execution based on his rare and severe medical condition?

Petition for Writ of Certiorari, *Bucklew v. Precythe*, No. 17-8151, at i (Mar. 15, 2018). As explained in the Petition, the Eighth Circuit concluded that inmates challenging an execution protocol must "present a single witness who compares the risks posed by the two methods of execution and who concludes that the inmate's proposal substantially reduces the risks posed by the state's method." *Id.* at 26. This holding was in error, Bucklew has argued, since, although "*Glossip* requires a comparison between the state's method and a petitioner's alternative method," it "nowhere requires that a single witness compare the two." *Id.* at 27. In addition, Bucklew's Petition asks the Court to find that as-applied method-of-execution challenges, "rooted in [an inmate's] idiosyncratic medical condition and the risks posed specifically to him," do not require that the petitioner plead and prove an alternative method of execution at all, since such a claim "implicates the lawfulness of the state's method [of

3

execution] for no other inmate," nor questions the lawfulness of capital punishment in general.  *Id.* at 29–30.

These questions affect Plaintiffs' claims in this case for two reasons.  First, the manner of proof of the availability and effectiveness of an alternative method or manner of execution is a central part of Plaintiffs' claims.  In the last year, this Court has heard extensive evidence regarding possible alternative methods of execution, whether those alternatives would be effective, and whether they would reduce the risk of an inmate experiencing severe pain.  In addition, the recently-filed Individual Supplemental Complaints have raised further allegations of a number of other alternative methods or manners of execution, the feasibility and effectiveness of which Plaintiffs must ultimately prove.  It would be premature, and needlessly wasteful, to proceed to adjudicate these claims—whether on the merits or, as in *Bucklew*, via summary judgment—when the Supreme Court has indicated that it will render its opinion on precisely how such claims are to be proved.

Second, some Plaintiffs in this litigation have themselves raised as-applied challenges specific to their unique medical conditions.  (*See, e.g.*, Kenneth Smith's Second Am. Individual Supp. Compl., ECF No. 1491, PageID 59609–22, 59733–41.)  If Bucklew is correct, then the Supreme Court may soon rule that inmates raising these sorts of method-of-execution challenges need not plead or prove any alternative method or manner whatsoever.  A stay in proceedings and adjudication is therefore appropriate, to ensure that these claims are not improperly assessed and adjudicated.

4

Finally, the Court in *Bucklew* added, of its own accord, an additional question presented. This question also speaks to Plaintiffs' claims, and provides further support for delaying adjudication of this case until the Supreme Court resolves this issue.

In granting Bucklew's Petition, the Court issued the following directive:

> In addition to the questions presented in the petition, the parties are directed to brief and argue the following Question: Whether petitioner met his burden under *Glossip v. Gross*, 576 U. S. ___ (2015), to prove what procedures would be used to administer his proposed alternative method of execution, the severity and duration of pain likely to be produced, and how they compare to the State's method of execution.

*Bucklew v. Precythe*, No. 17-8151, 2018 WL 1400413, at *1 (Apr. 30, 2018). The wording of the Court's question makes clear several facets of a *Glossip* claim that should inform this Court's assessment of similar claims in this case: that whatever proofs are offered should address the procedures to be used to administer a proposed alternative; that a court should consider not just the severity, but the "duration of pain likely to be produced"; and that the two "prongs" of a *Glossip* claim should not be assessed purely independently, but rather that the effectiveness of the proposed alternative—that is, the severity and duration of pain it is likely to produce—must be viewed *in comparison to* the current method of execution, not in a vacuum.

The Supreme Court's ultimate merits opinion can be expected to shed further light on how this Court should properly implement that analysis, since the reasoning and structure of the Court's analysis—not just its conclusions—

5

dictate the rules of law by which this Court is bound. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *see also Allegheny v. Am. Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law") (Kennedy, J., concurring and dissenting).

In such situations, courts, including the Sixth Circuit and this Court, have issued stays when another case on appeal or pending certiorari may substantially impact the outcome of an issue before it. Notably, in *Cooey (Biros) v. Strickland*, No. 06-4660, the Sixth Circuit, *sua sponte*, stayed its consideration of Plaintiff Biros's appeal in light of the grant of certiorari in *Baze v. Rees*, issuing a show cause order only two days after the Supreme Court agreed to review that case. *See id.*, Dkt. 70 (Sept. 27, 2007) (Order directing the parties to show cause why the matter ought not be held in abeyance in light of the U.S. Supreme Court's grant of a writ of certiorari in *Baze v. Rees*); *id.*, Dkt. 77 (Order holding case in abeyance pending the Supreme Court's decision in *Baze*).

This Court, too, has not hesitated to stay a case when the adjudication of another case is likely to provide controlling guidance. In *Hill v. Mitchell*, the Court concluded that a stay was appropriate, where the outcome of a *Miranda* issue raised on appeal in another case, *Garner v. Mitchell*, had significant

6

bearing on a similar claim raised by the petitioner in *Hill*.  *See* Opinion & Order, *Hill v. Mitchell*, No. 1:98-cv-452, ECF No. 174, PageID 1104–06 (S.D. Ohio Apr. 4, 2009) (Kemp, M.J.).  The Court extended a previously-entered stay, to allow for the resolution of Garner's petition for certiorari.

In the same way, where the outcome of a case currently under review by the Supreme Court will substantively impact the resolution of issues pending before this Court, a stay of matters is appropriate.  Accordingly, in light of the questions that will be answered by the Supreme Court in its upcoming term, and the important way those issues bear on the central issues in this case, this Court should stay its hand until the Supreme Court has handed down its decision.  This Court should stay all pleading, briefing, consideration, and adjudication of pending and forthcoming dispositive motions, pending the Supreme Court's decision in *Bucklew v. Precythe*.

Because Plaintiffs do not reasonably expect that Defendants would give their consent to this Motion, Local Rule 7.3(b) does not apply here, and Defendants have not been consulted before filing this Motion.

Respectfully submitted,

**Deborah L. Williams**
Federal Public Defender

by

*/s/ Allen L. Bohnert*
**Allen L. Bohnert (OH 0081544)**

Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, Ohio 43215
614-469-2999
614-469-5999 (fax)
Email: Allen_Bohnert@fd.org

**Trial Attorney for several Plaintiffs, and Plaintiffs' Liaison Counsel.**

**Also filed on behalf of all other Plaintiffs, per authorization from the Trial Attorney for each Plaintiff.**

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2018, I electronically filed the foregoing **Motion to Stay Pleading, Briefing, Consideration, and Adjudication** with the Clerk of the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system.

*/s/ Allen L. Bohnert*
Assistant Federal Public Defender
Trial Attorney for several Plaintiffs
and Plaintiffs' Liaison Counsel