# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
 PROTOCOL LITIGATION,

                                   :       Case No. 2:11-cv-1016

                                          Chief Judge Edmund A. Sargus, Jr.
                                          Magistrate Judge Michael R. Merz

This Report relates to All Plaintiffs

---

# REPORT AND RECOMMENDATIONS

Proceeding *sua sponte* under Fed. R. Civ. P. 4(m), the Magistrate Judge issued on April 16, 2018, an Order to Plaintiffs to Show Cause why Defendants referred to as UNKNOWN PHARMACIES #1-100, UNKNOWN PHARMACISTS #1-100, UNKNOWN DRUG SUPPLIERS #1-25; and JOHN DOES #1-25 (collectively "Drug Source Defendants") should not be dismissed as parties without prejudice because they had never been served with process (ECF No. 1561). Plaintiffs have responded (ECF No. 1576), the named and served Defendants have replied to that Response (ECF No. 1767), and Plaintiffs have filed a further Reply in support of their position (ECF No. 1783). The question of whether the Drug Source Defendants should be dismissed for lack of service is thus ripe for decision.

Involuntary dismissal for lack of service of process is a dispositive matter, on which an assigned Magistrate Judge must recommend a disposition, rather than decide the question. Fed. R. Civ. P. 72(b).

1

**The Parties' Positions**

   **Plaintiffs**

   Plaintiffs assert they have good cause for their failure to make service on any of the unserved Defendants because they do not know who those entities are.  They assert

> [T]wo factors have combined to prevent Plaintiffs from identifying and serving the Drug Source Defendants, . . .the Ohio Execution Secrecy Bill . . . and this Court's own Protective Order. . . .These two sources of protection have completely shielded the identities of the Drug Source Defendants from Plaintiffs' investigation and, short of serving all pharmacies, pharmacists, and drug manufacturers with contacts in Ohio, Plaintiffs remain unable to identify or serve these parties.

(ECF No. 1576, PageID 69513-14.)

   Plaintiffs assert they "brought their claims against the unknown Drug Source Defendants on the reasonable belief that discovery would allow for ultimate identification, and service, of those parties." *Id.* at PageID 69516.  As part of that discovery, they have "serv[ed] approximately twenty Rule 45 third-party subpoenas on different pharmacies . . . .  Each of the pharmacies that received a Rule 45 subpoena responded that they had no responsive documents." *Id.* at PageID 69517.  A subpoena to the Ohio State Board of Pharmacy "produced a list of entities with an active Terminal Distributor of Dangerous Drugs License . . . contain[ing] approximately 16,800 entries." *Id.* at PageID 69517-18.  A request for a list of licensed pharmacists produced over 13,000 names. *Id.* at PageID 69518.  Plaintiffs expect the Pharmacy Board to create and produce a list of "those pharmacies engaged in sterile compounding of controlled substances" which is expected to be numerous but fewer than 1600. *Id.*

2

Since their investigations to date have not produced the identity of the Drug Source Defendants, they use the occasion of their Response to argue at some length for a modification of the Protective Order.  *Id.* at PageID 69518-20.

**Defendants**

The State[1] Defendants argue that the conditions which led to the adoption of H.B. 663 and the Protective Order have not changed and that the Protective Order should not therefore be modified.  If Plaintiffs cannot identify and serve the Drug Source Defendants without the requested modification, Defendants argue that it follows that identification and service will not be possible, which counts in favor of dismissal (ECF No. 1768, PageID 72228-32).  In addition, Defendants argue against allowing pseudonymous "placeholder" Drug Source Defendants to continue to prevent final judgment in the case.  *Id*. at PageID 72232.

**Plaintiffs' Reply**

Plaintiffs argue the purpose of the Protective Order was not to immunize the Drug Source Defendants from suit and allowing the unserved Defendants "to proceed under a pseudonym" would "address[ ] the concerns raised by Defendants."  (ECF No. 1783, PageID 72274.)  Second, they note the secrecy bill has expired, and the Ohio Supreme Court "is poised to rule regarding the

---

[1] All Defendants currently served and litigating the case are referred to collectively as the "State Defendants."  This implies no position by the Court on Plaintiffs' position that the unserved Drug Source Defendants are state actors for purposes of the Fourteenth Amendment and 42 U.S.C. § 1983.

breadth of the secrecy bill's applicability." *Id.* at PageID 72275, citing *State, ex rel Hogan Lovells US LLP v. ODRC*, Ohio Supreme Court Case No. 2016-1776.

Plaintiffs also note that the considerations which supported the Protective Order in 2015 do not necessarily persist and the litigation need not "remain fossilized in the same posture in perpetuity." (ECF No. 1783, PageID 72275.) Proceeding by suing all the potentially relevant parties "would require Plaintiffs to serve *hundreds* of parties. . . ." *Id.* at PageID 72277 (emphasis in original). Plaintiffs reject the Magistrate Judge's suggestion that "the identity of manufacturers of injectable midazolam is easily publicly available from the FDA Orange Book." *Id.*, citing Order, ECF No. 1722, PageID 72098. This will not work, Plaintiffs say, because the Orange Book changes from year to year, only identifies manufacturers, and "does not contain the identity of all distributors, dealers, pharmacies, and other middle men that are assisting DRC, either directly or through intermediaries, with obtaining drugs for the purposes of carrying out executions by lethal injection." *Id.* at PageID 72278 (internal quotation marks omitted), citing the Fourth Amended Omnibus Complaint, ECF No. 1252, ¶¶ 116, 118, 119, and 121, PageID 45464-67.

**Relevant Procedural History**

The Drug Source Defendants were first included in the Third Amended Complaint (ECF No. 546). A month earlier the State Defendants had moved for a protective order to preclude from disclosure the identities of "the persons and entities needed to acquire execution drugs, by rendering their identities anonymous." (ECF No. 530, PageID 14197.) On October 26, 2015, District Judge Frost granted a protective order, concluding that such an order was

> [N]ecessary in this case to protect Defendants from being unduly
> burdened and unfairly prejudiced by Plaintiffs['] obtaining via

> discovery the identities of those individuals and entities necessary
> to Ohio's securing the drugs or materials necessary to fulfill the
> lawful implementation of the death sentences imposed on Plaintiffs
> and other non-party inmates.

(Opinion and Order, ECF No. 629, PageID 19406.)  Judge Frost also denied a motion to modify the protective order to allow attorneys-eyes-only discovery (ECF No. 632).

At Plaintiffs' request, Judge Frost certified the protective order question for interlocutory appeal under 28 U.S.C. § 1292(b).  *Id.* at 19410-11.  Fourteen months later, the Sixth Circuit affirmed the grant of protective order.  *In re: Ohio Execution Protocol Litig. (Fears v. Kasich)*, 845 F.3d 231 (6th Cir. 2016).  In separate litigation, some of the Plaintiffs also challenged the constitutionality of the secrecy bill.  *Phillips v. DeWine,* Case No. 2:14-cv-2730.  Judge Frost dismissed that challenge and the Sixth Circuit affirmed.  *Phillips v. DeWine,* 841 F.3d 405 (6th Cir. 2016), *cert den. sub nom. Tibbetts v. DeWine*, 138 S.Ct. 301, 199 L.Ed.2d 53 (2017).

After the undersigned assumed management of the case in October 2016, the protective order was extended "to protect from discovery as to those suppliers [of midazolam, rocuronium bromide, and potassium chloride in 2016] the same information protected by Judge Frost's Order for suppliers and potential suppliers of thiopental sodium or pentobarbital."  (Rulings on Defendants' Claims of Privilege, ECF No. 838, PageID 24915-16.)

Despite several intervening appeals to the Sixth Circuit, the protective orders have remained as set forth here.  Indeed, Plaintiffs have not moved to modify them.

# Analysis

As Plaintiffs acknowledge, absent a showing of good cause by a plaintiff to excuse failure of timely service, Fed. R. Civ. P. 4 compels dismissal. *Habib v. General Motors Corp*., 15 F.3d 72, 73 (6th Cir. 1994), citing *Moncrief v. Stone*, 961 F.2d 595, 596 (6th Cir. 1992); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991); and *United States v. Gluklick*, 801 F.2d 834, 837 (6th Cir. 1986). The decision is committed to the sound discretion of the District Court and is reviewed for abuse. *Id.* Abuse was found in *Habib* where the plaintiff, a quadriplegic,was proceeding *pro se*, albeit against a known Defendant that had been participating in the case despite lack of service.

Applying the standard here, the Court finds that Plaintiffs have acted diligently in their efforts to discover the identity of the Drug Source Defendants by seeking to set aside the secrecy bill and opposing the protective order. The litigation recounted above demonstrates that diligence.

However, the evidence is equivocal regarding efforts to learn the identities of the Drug Source Defendants by means other than discovery from the State Defendants. While Plaintiffs recount service of subpoenas on "approximately twenty . . . different pharmacies . . .who had been identified as compounders of sterile controlled substances. . . ;" each responded that it had no responsive documents (ECF No. 1576, PageID 69517). The subpoenaed entities are not identified. It appears this discovery has been entirely extrajudicial[2], as no returns of service have been filed and none of the subpoenaed entities resisted the subpoena. No entity known to manufacture or

---

[2] At least no reference is made in the current motions papers as to where any of these documents might have been filed.

distribute any of the non-compounded drugs which were used for the Phillips and Otte executions[3] appears to have been on the list of subpoenaed entities, since those drugs were not compounded.

Plaintiffs' subpoena to the Ohio State Board of Pharmacy was not a fruitful approach, since suing all the entities listed in that response would involve massive complication of the case without promising a true focusing.

Plaintiffs request an additional ninety days to effect service or, in the alternative, delay until decision of the Ohio Supreme Court in the *Hogen Lovell* case referenced above. Without a modification of the protective order, however, there is no reason to believe the next ninety days would be any more fruitful in identifying the Drug Source Defendants than the last three years have been.

Nor have Plaintiffs demonstrated how a decision by the Ohio Supreme Court in *Hogen Lovell* would solve their dilemma. They assert "[t]hat case concerns whether H.B. 663's protections block a public records request related to drugs manufactured by entities which claim *not* to have applied for protection under the law," presumably Fresenius Kabi USA LLC, and Sandoz, Inc., the two entities who have filed an amicus brief in the *Hogen Lovell* case (ECF No. 1783, PageID 72279; citing ECF No. 1576, PageID 69521). As this Court reads that case, these two entities make one or more of the drugs specified for lethal injections under the Execution Protocol (01-COM-11 as amended October 7, 2016), and fear that their products may be among those presently in the hands of the ODRC. They want to know for certain so that they can attempt to enforce their "supply chain controls to prevent the sale of their medicines for use in capital punishment . . . ." (*Amicus* Brief on file with the Ohio Supreme Court in Case No. 2016-1776, filed on July 10, 2017, at pages 1-2.) The *Amici* say they are "among over two dozen U.S. and

---

[3] And would have been used for the Alva Campbell execution had it proceeded.

international pharmaceutical companies" that have taken such steps. Plaintiffs offer no explanation why the two *Amici* or the two dozen firms with similar interests have not been named as defendants and offered the opportunity to litigate their issues in this case, especially since they seem to be willing to incur litigation costs in support of their position.

In light of the above, and in the absence of an actual motion by Plaintiffs to do so, the Magistrate Judge declines to modify the protective orders in this case.

Plaintiffs have shown no prejudice that would result to them from dismissal of the Drug Source Defendants without prejudice. Since they do not yet know the identity of the Drug Source Defendants, the statute of limitations has not yet begun to run on Plaintiffs' claims against them. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003). Federal law determines when the statute of limitations for a civil rights action begins to run. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The standard rule is that the right accrues when a "plaintiff has 'a complete and present cause of action.'" *Id*., quoting *Bay Area Laundry & Dry Cleaning Pension Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed. 2d 553 (1997). That is when "the plaintiff can file suit and obtain relief." *Id*., quoting *Bay Area Laundry*, 522 U.S. at 201. It is not possible to obtain relief from an unidentified defensant.

Defendants on the other hand, note that they cannot obtain a final appealable judgment as long as unnamed and unserved Defendants are parties to the case. Although the case is not set for trial, and summary judgment practice is delayed until after a ruling on the pending Motion to Dismiss the Fourth Amended Omnibus Complaint, the unresolved status of the Drug Source Defendants would prevent a final judgment even if summary judgment were granted. It is not a reasonable interpretation of Fed. R. Civ. P. 4(m) to allow a case to continue to pend against defendants as to whom there is not, at present, reasonable prospect of identification and service.

Accordingly, it is respectfully recommended that the unserved Drug Source Defendants be dismissed as parties without prejudice.

June 14, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).