IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
PROTOCOL LITIGATION,

Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to:
All Plaintiffs.

## OPINION AND ORDER DISMISSING UNKNOWN DRUG SOURCE DEFENDANTS

This consolidated § 1983 case raising multiple Constitutional challenges to the manner in

which Ohio carries out executions is before the Court on the following:

▶ The Magistrate Judge's Show Cause Order of April 16, 2018 (ECF No. 1561);

▶ Plaintiffs' Response (ECF No. 1576);

▶ Defendants' Response (ECF No. 1768);

▶ Plaintiffs' Reply (ECF No. 1783);

▶ The Magistrate Judge's Report and Recommendations of June 14, 2018 (ECF No. 1798);

▶ Plaintiffs' Objections (ECF No. 1814);

▶ Recommittal Order (ECF No. 1821);

▶ Defendants' Response (ECF No. 1858);

▶ The Magistrate Judge's Supplemental Report and Recommendations of August 15, 2018 (ECF No. 1907);

▶ Plaintiffs' Objections (ECF No. 1913); and

▶ Defendants' Response in Opposition to Plaintiffs' Objections (ECF No. 1919).

On June 14, 2018, the Magistrate Judge *sua sponte* directed the parties to show cause why UNKNOWN PHARMACIES #1-100, UNKNOWN PHARMACISTS #1-100, UNKNOWN DRUG SUPPLIERS #1-25, and JOHN DOES #1-25 ("Drug Source Defendants") should not be dismissed as parties without prejudice, since they had never been served with process. (ECF No. 1561.) Plaintiffs responded on May 1, 2018 (ECF No. 1576); State Actor Defendants responded on May 22, 2018 (ECF No. 1768); and Plaintiffs replied on June 1, 2018 (ECF No. 1783). In a Report and Recommendations dated June 14, 2018 (ECF No. 1798) and a Supplemental Report and Recommendations dated August 15, 2018 (ECF No. 1907), the Magistrate Judge recommended that the Drug Source Defendants be dismissed as parties without prejudice pursuant to Federal Rules of Civil Procedure Rule 4(m) because they have never been served with process.

"Any dispositive report and recommendation by a magistrate judge is subject to *de novo* review 'of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Render v. Warden, S. Ohio Correctional Facility*, 889 F. Supp. 2d 1014, 1019 (S.D. Ohio 2012) (citing *Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986); 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3)). The *de novo* review of a magistrate judge's report and recommendation is non-deferential and requires the district court to "give fresh consideration to those issues to which specific objection has been made." *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (citation omitted).

Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part:

If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

2

> specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. \*\*\*

Fed. R. Civ. P. 4(m). Under a plain reading of Rule 4(m), a plaintiff's failure to effectuate service on a defendant necessitates dismissal without prejudice, absent a showing of good cause. *See, e.g., Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 521 (6th Cir. 2006) ("Dismissal of the action 'shall' follow unless the 'plaintiff shows good cause' for failure to meet the [90]-day deadline." (quoting Fed. R. Civ. P. 4(m));[1] *see also Moncrief v. Stone*, 961 F.2d 595, 596 (6th Cir. 1992). If a plaintiff shows good cause for the failure to comply with Rule 4(m), the district court must extend the time for effectuating service for an appropriate time. *Moncrief v. Stone*, 961 F.2d 595, 596 (6th Cir. 1992).

It is undisputed that the unknown Drug Source Defendants have never been served in the more than two-and-a-half years since Plaintiffs first named them as defendants in the Third Amended Complaint (ECF No. 546). The next question for the Court to resolve, therefore, is whether the Plaintiffs have demonstrated good cause for their failure to effectuate timely service.

According to the Sixth Circuit, one step toward establishing good cause is for the plaintiff to "show he/she made a reasonable and diligent effort to effect service." *Habib v. General Motors Corp.*, 15 F.3d 72, 74 (6th Cir. 1994) (citing *Electrical Specialty Co. v. Road & Ranch Supply, Inc.*, 967 F.2d 309, 312 (9th Cir. 1992)). To that point, courts have held that "half-hearted efforts" do not constitute good cause. *See, e.g., Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) (citing *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 84, (3rd Cir. 1987); *Hart v. United States*, 817 F.2d 78, 81 (9th Cir. 1987); *Braxton v. United States*, 817 F.2d

---

[1] The 2015 Amendment to Rule 4 reduced the time for service from 120 days to 90 days.

238, 240 (3rd Cir. 1987); *Gregor v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988)).

Plaintiffs argue that they had good cause for their failure to serve the unknown Drug Source Defendants because both Ohio's Execution Secrecy Bill, Ohio Rev. Code § 2949.221-.222 ("secrecy bill") and this Court's protective orders (ECF Nos. 629 and 838) prevented Plaintiffs from learning the identities of the Drug Source Defendants.[2] (ECF No. 1576, at PageID 69513-16.) Plaintiffs insist that despite every avenue for discovering the identities of the Drug Source Defendants being impeded, Plaintiffs have made good faith efforts to learn those identities. (*Id.*, at PageID 69517-18.) Plaintiffs point to the fact that they served twenty Rule 45 third-party subpoenas on different compounding pharmacies required to produce documents to the Ohio Depart of Rehabilitation and Correction ("ODRC"), and a Rule 45 subpoena on the Ohio State Board of Pharmacy, to obtain the identities of possible Drug Source Defendants, only to learn that the compounding facilities had no responsive documents and to receive from the Ohio State Board of Pharmacy a list of tens of thousands of possible entities. Plaintiffs thus renew their requests for the Court to modify its protective orders, and also implore the Court to await the Ohio Supreme Court's decision in a case involving challenges to Ohio's Execution Secrecy Law, to wit: *State ex rel. Hogan Lovells U.S., L.L.P. v. Department of Rehab. & Corr.*, No. 2016-1776. (ECF No. 1576, at PageID 69518-21.)

The Magistrate Judge found "that Plaintiffs have acted diligently in their efforts to discover the identity of the Drug Source Defendants by seeking to set aside the secrecy bill and

---

[2] As the Magistrate Judge noted, the Court of Appeals for the Sixth Circuit affirmed this Court's grant of a protective order in *In re: Ohio Execution Protocol Litig. (Fears v. Kasich)*, 845 F.3d 231 (6th Cir. 2016). In separate litigation, the Sixth Circuit affirmed this Court's dismissal of challenges to Ohio's Execution Secrecy Bill in *Phillips v. DeWine*, 841 F.3d 405

4

opposing the protective order[,]" but that Plaintiffs had not demonstrated good cause for their failure to effect timely service because "the evidence is equivocal regarding efforts to learn the identities of the Drug Source Defendants by means other than discovery from the State Defendants." (ECF No. 1798, at PageID 73347.) The Magistrate Judge noted that the service of Rule 45 subpoenas was not fruitful and questioned how a decision by the Ohio Supreme Court in *Hogan Lovells* would solve Plaintiff's dilemma. (*Id.* at PageID 73347-48.) The Magistrate Judge thus found no good cause and no reason to modify the protective orders in this case. (*Id.* at PageID 73349.)

Plaintiffs object first to what they characterize as the Magistrate Judge's legal error in failing to begin his analysis by determining whether there was good cause for the Plaintiffs' failure to effect timely service. (ECF No. 1814, at PageID 74146-47.) In his Supplemental Report and Recommendations, the Magistrate Judge noted, "[a]ctually, the first finding Rule 4(m) requires is whether service has been made within ninety days of filing the complaint. If not, the Court 'must dismiss the action without prejudice' against the unserved defendant." (ECF No. 1907, at PageID 74764.)

Upon *de novo* review, the Court agrees with the Magistrate Judge and OVERRULES Plaintiff's objection. As the Court noted above, under a plain reading of Rule 4(m), a plaintiff's failure to effectuate service on a defendant necessitates dismissal without prejudice, absent a showing of good cause. *See, e.g., Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 521 (6th Cir. 2006) ("Dismissal of the action 'shall' follow unless the 'plaintiff shows good cause' for failure to meet the [90]-day deadline." (quoting Fed. R. Civ. P. 4(m)); *see also Moncrief v. Stone*,

(6th Cir. 2016), *cert. den. Sub nom. Tibbetts v. DeWine*, 138 S.Ct. 301 (2017).

961 F.2d 595, 596 (6th Cir. 1992). Whether a plaintiff can demonstrate good cause is not the first determination that Rule 4(m) requires.

Next, Plaintiffs agree with the Magistrate Judge's conclusion that they were diligent in their efforts to identify the Drug Source Defendants by challenging Ohio's secrecy bill and the Court's protective orders, but object to the Magistrate Judge's characterization of the evidence of Plaintiffs' efforts to identify the Drug Source Defendants going forward as "equivocal." (ECF No. 1814, at PageID 74147-48.) As the Court noted above, the Magistrate Judge stated that the service of Rule 45 subpoenas was not fruitful and questioned how a decision by the Ohio Supreme Court in *Hogan Lovells* would solve Plaintiff's dilemma. (*Id.* at PageID 73347-48.) Ultimately, the Magistrate Judge concluded that "there is not, at present, reasonable prospect of identification and service[]" upon the unknown Drug Source Defendants. (*Id.* at PageID 73349.) In their objections to the Magistrate Judge's failure to find good cause, Plaintiffs construe the Magistrate Judge to have "found at least some evidence in Plaintiffs' favor[]" as to their efforts to identify the Drug Source Defendants. (ECF No. 1814, at PageID 74147.) "[D]espite the paucity of the Magistrate Judge's conclusions respecting good cause," Plaintiffs continue, "there is no other finding that would otherwise undermine at least *the implicit finding of good cause arising from the finding that Plaintiffs have been diligent in their efforts.*" (*Id.* at PageID 74148 (emphasis added).)[3] Plaintiffs object to the Magistrate Judge's finding that evidence of their

---

[3] Plaintiffs also object to the Magistrate Judge's characterization of their discovery efforts as "extrajudicial," if that characterization "suggests or implies that Plaintiffs improperly issued Rule 45 third-party subpoenas…." (ECF No. 1814, at PageID 74149-50.) But the Magistrate Judge in his Supplemental Report expressly disavowed that he had intended any such implication and agreed that Plaintiffs are authorized by Fed. R. Civ. P. 45 to issue subpoenas without involving the Court. (ECF No. 1907, at PageID 74765.) The Magistrate Judge having made that clarification, the Court OVERRULES Plaintiff's objection (ECF No. 1814, at PageID

efforts was "equivocal," and proceed to recount the efforts they have taken to identify and serve the Drug Source Defendants. (ECF No. 1814, at PageID 74149-51.)

In his Supplemental Report and Recommendations, the Magistrate Judge referenced the Advisory Note to the 2015 amendment of Rule 4(m) that shortened the time for service from 120 days to 90 days, remarking that the Note "expresses the hope that this will 'reduce delay at the beginning of litigation.'" (ECF No. 1907, at PageID 74764 (citing 2015 Advisory Committee Comment).) "That and the permission to raise the service issue *sua sponte*," the Magistrate Judge continued, "speaks to the obligation of district courts to actively manage cases." (*Id.*)

The Magistrate Judge proceeded to reiterate why he found that Plaintiffs failed to show good cause. Specifically, the Magistrate Judge stated:

> In two and one-half years, [Plaintiffs] have not identified a single one of the Drug Source Defendants. They have issued subpoenas attempting to discover names of compounding pharmacies, even though all executions scheduled, attempted, or complete[d] since October 7, 2016, have used manufactured drugs. They resisted the suggestion of the Court that they sue entities named in the FDA Orange Book as manufacturing the drugs Ohio has been using with the excuse that the Orange Book changes every year and only includes manufacturers. They have, without any explanation, failed to name the two prominent manufacturers of drugs used in Ohio executions who are *amici curiae* in the mandamus case in the Supreme Court of Ohio seeking to learn whether they are manufacturers of execution drugs presently in possession of the ODRC.

(ECF No. 1907, at PageID 74764-65.)

In his Supplemental Report and Recommendations, the Magistrate Judge also expressly disavowed that he had made any implicit finding of good cause stemming from his finding that Plaintiffs had been diligent. (ECF No. 1907, at PageID 74765.) The Magistrate Judge explained, "[w]hat the Report concluded was that Plaintiffs had been diligent in their efforts to

74149-50.)

7

have the Secrecy Bill and the Court's Protective Orders set aside[,] [b]ut that finding was followed by a description of the insufficient efforts to learn Drug Source Defendant identity by means other than discovery from the State." (*Id.*)

Plaintiffs object to the Magistrate Judge's Supplemental Report, arguing first that the Magistrate Judge erred in relying on policy considerations underlying the 2015 amendment to Rule 4(m). Plaintiffs explain that the since the inception of this case was in 2004, "any reduction in delay between filing and service was realized long ago and no longer applies." (ECF No. 1913, at PageID 74783.) Upon *de novo* review, the Court disagrees with and OVERRULES that objection. As State Defendants argue and this Court's own reading of the Magistrate Judge's Supplemental Report confirms, it is clear that the Magistrate Judge's reliance on the Advisory Note to the 2015 amendment was simply a recognition of the ongoing obligation that district courts have to actively manage cases from their inception and throughout.

In their objections to the Magistrate Judge's conclusion that they failed to demonstrate good cause, Plaintiffs also criticize the Magistrate Judge's reliance on the failure of their efforts to produce results rather than on the efforts themselves. (ECF No. 1913, at PageID 74783-84.) Plaintiffs argue that "success is not the barometer of whether Plaintiffs' efforts were sufficient to find good cause for not yet serving Drug Source Defendants[,]" where, as here, circumstances have prevented Plaintiffs from obtaining information they need to identify and serve certain defendants. (*Id.*)

Upon *de novo* review, the Court agrees with the Magistrate Judge's reasoning and OVERRULES Plaintiffs' objection. In arguing that they have demonstrated good cause for their failure to timely serve the Drug Source Defendants sufficient to warrant an additional

8

appropriate amount of time to effect service, Plaintiffs have failed in more than two and a half years to identify a single Drug Source Defendant. They reject suggestions the Magistrate Judge made for identification and, even if they had legitimate bases for rejecting those suggestions (ECF No. 1913, at PageID 74784-87), Plaintiffs have not offered a single prospect of their own for how they intend to identify any Drug Source Defendants. They defend their service of Rule 45 subpoenas to discover the identity of compounding pharmacies on the ground that "Defendants have expressly included in recent revisions of the Ohio execution protocol language stating that compounding pharmacies are a potential source of execution drugs." (*Id.* at PageID 74788.) Even if efforts to learn the identity of compounding pharmacies that Ohio might use in the future to produce execution drugs are not unwarranted, that fact alone does not bolster a showing of good cause for Plaintiffs' failure to identify any Drug Source Defendants or the prospect of identifying Drug Source Defendants with more time.

Difficulty obtaining information about defendants can constitute good cause for failure to effectuate service. In *Clemons v. Soeltner*, 62 Fed. App'x 81, 83, 2003 WL 1795698, at *2 (6th Cir. Mar. 26, 2003), the Sixth Circuit found good cause where the district court had failed to enforce orders compelling the Attorney General to provide addresses and had placed blame for the failure to effect service a plaintiff who was incarcerated and had repeatedly sought assistance to effect service). *See also Del Raine v. Carlson*, Nos. 94-2595/94-3101, 1996 WL 47451 (7th Cir. Feb. 1, 1996) (finding that the district court abused its discretion in failing to find good cause for failure to effect service where the plaintiff repeatedly sought but never obtained from the director of the bureau of prisons addressed for several defendants); *Graham v. Satkowski*, 51 F.3d 710, 713 (7th Cir. 1995) (remanding matter to the district court for examination of Marshals

Service's efforts to obtain addresses for defendants no longer employed by prison that the plaintiff was suing); *Krieger v. Doe*, No. 98-6144, 1998 WL 717286, at *3 (10th Cir. Oct. 14, 1998) (excusing 264 of the 470 days that had elapsed without service while waiting for Marshals Service to respond to a court order compelling it to provide known defendants' full names and addresses). However, courts have been clear that Rule 4(m) applies equally to unknown or pseudonymous defendants. *See e.g., Searcy v. County of Oakland*, 735 F. Supp. 2d 759, 771 (E.D. Mich. 2010) (citing *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 345-46 (6th Cir. 2007)).

The Court recognizes the breadth and effect of Ohio's secrecy bill and the Court's protective orders. But those provisions were promulgated for a reason and have been upheld by the Sixth Circuit. Plaintiffs' difficulty in identifying the Drug Source Defendants, even if caused by government-created impediments, cannot serve as a basis for permitting the Drug Source Defendants to remain named and unserved in perpetuity – which is functionally what Plaintiffs are seeking. The request is not in accord with Rule 4(m).

In their final objection to the Magistrate Judge's finding that they had not shown good cause, Plaintiffs assert that "the Magistrate Judge's Order all but 'stonewalls Plaintiffs' efforts to obtain relief' against the Drug Source Defendants because the 'issues pleaded by Plaintiffs against the Drug Source Defendants cannot be litigated until at least one such Defendant has been identified and served.'" (ECF No. 1913, at PageID 74789 (quoting Supplemental Report, ECF No. 1907, at PageID 74767).).

Upon *de novo* review, the Court disagrees with and OVERRULES Plaintiffs' objection. The Court is in full agreement with the Magistrate Judge's determination that the statute of

limitations as to Plaintiffs' claims against the Drug Source Defendants has not begun to run, and will not begin to run until Plaintiffs identify those Defendants. That being so, it cannot be said that dismissing the unknown, unserved Drug Source Defendants without prejudice "completely foreclose[s]" Plaintiffs' ability to pursue their case against the Drug Source Defendants. To that point, it bears noting that courts have condoned the dismissal of unserved defendants *even when* doing so might render the plaintiffs' claims against the dismissed defendants time-barred. *See e.g., Friedman*, 929 F.2d at 1158 (citing *Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 879 & n.6 (3 rd Cir. 1987); *Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077 (5 th Cir. 1985); *Deloss v. Kenner*, 764 F.2d 207, 711 n.5 (5 th Cir. 1985)); *see also Sheffey v. City of Covington*, Case No. 08-cv-238, 2012 WL 28056, at *8-9 (E.D. Kentucky Jan. 5, 2012). That is not the case here.

Upon *de novo* review, the Court agrees with the Magistrate Judge's finding of no good cause and OVERRULES Plaintiffs' objections and arguments going to the good cause showing (ECF No. 1814, at PageID 74147-48, 74149-51; ECF No. 1913, at PageID 74783-89.).

Even in the absence of a showing of good cause, a district court has the discretion to either dismiss without prejudice or extend the time for effectuating service. *Henderson v. United States*, 517 U.S. 654, 662-63 (1996). In determining whether to exercise that discretion, a district court should balance the following factors: (1) the length of the additional time required to effect service; (2) any prejudice to the defendant from the delay in service; (3) whether the defendant had actual notice of the suit; (4) whether dismissal without prejudice would substantially prejudice the plaintiff; and (5) whether the plaintiff made a good faith effort to effect service within the prescribed time. *See Slenzker v. Landstar Ranger, Inc.*, 204 F.R.D. 322,

326 (E.D. Mich. 2001) (discussing *Wise v. Dep't of Defense*, 196 F.R.D. 52, 55 (S.D. Ohio 1999)).

The Magistrate Judge found that Plaintiffs have shown no prejudice that would result to them from dismissal of the Drug Source Defendants without prejudice since, as discussed above, "the statute of limitations has not yet begun to run on Plaintiffs' claims against them." (ECF No. 1798, at PageID 73349 (citing *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6 th Cir. 2003).). The Magistrate Judge further determined that, "Defendants on the other hand, note that they cannot obtain a final appealable judgment as long as unnamed and unserved Defendants are parties to the case." (ECF No. 1798, at PageID 73349.) Ultimately, the Magistrate Judge concluded, as noted above, "[i]t is not a reasonable interpretation of Fed. R. Civ. P. 4(m) to allow a case to continue to pend against defendants as to whom there is not, at present, reasonable prospect of identification and service." (*Id.*)

Plaintiffs first "object to the extent that the R&R does not provide [the opportunity to serve the complain 'within a specified time'], or make any explicit finding as to the exercise of the Court's discretion, in the absence of a good-cause finding." (ECF No. 1814, at PageID 74148.) The Court disagrees with and OVERRULES Plaintiffs' objection. The Magistrate Judge made findings as to the absence of prejudice to Plaintiffs from dismissal of the Drug Source Defendants without prejudice, as well as to the prejudice Defendants would suffer if the unserved Drug Source Defendants remained as parties. More importantly, the Magistrate Judge's determination that there existed no reasonable prospect of Plaintiffs identifying and serving the Drug Source Defendants was tantamount to a finding that Plaintiffs had not demonstrated that they were deserving of additional time to serve the Drug Source Defendants—

12

the very showing they complain they were not given an opportunity to make. As discussed more fully above, the Court agrees upon its own review of the Reports and objections that Plaintiffs have offered no reasonable basis for believing that, with additional appropriate time, they are likely or even possibly likely of effectuating service on the Drug Source Defendants.

Plaintiffs also object that "because they would be greatly prejudiced by dismissal, whereas the DRC Defendants are not prejudiced at all by permitting the Drug Source Defendants to remain[]," Plaintiffs should be afforded additional appropriate time to identify and serve the Drug Source Defendants, or be permitted to proceed against the Drug Source Defendants pseudonymously as suggested in Plaintiffs' earlier responses." (ECF No. 1814, at PageID 74152-53.) Plaintiffs explain that while filing a separate suit later upon identification of Drug Source Defendants would be logical in "ordinary" civil litigation, that is not the case here because of "significant procedural hurdles or practical impediments imposed by the Prison Litigation Reform Act that Plaintiffs have already satisfied in this case but which would be resurrected in a new case, including matters such as full payment of filing fees for a new case even with *in forma pauperis* status." (*Id.*)

Plaintiffs dispute that Defendants would suffer prejudice in the form of being unable to obtain a final appealable judgment while unnamed and unserved Drug Source Defendants remain on the case, arguing on the basis of *Smith v. Bd. Of Cty. Comm'rs*, No. 97-3107, 1998 U.S. App. LEXIS 11766, at *5 (6 th Cir. Jun. 2, 1998), that unserved defendants do not defeat the finality of any reasoned judgment against the named defendants for purposes of 28 U.S.C. § 1291. Plaintiffs also argue that, "[a]lternatively, this Court could enter a final judgment as to all claims against the DRC Defendants by complying with Rule 54(b) of the Federal Rules of Civil

13

Procedure—that is, by entering an 'express determination that there is no just reason for delay' and making 'an express direction for the entry of judgment.'" (ECF No. 1814, at PageID 74153-54.)

In the Supplemental Report and Recommendations, the Magistrate Judge noted that Plaintiffs raised no objection to his finding that they would suffer no prejudice from a dismissal of the Drug Source Defendants without prejudice with respect to the statute of limitations, but that Plaintiffs instead object that they would suffer "great prejudice" because of hurdles created by the Prison Litigation Reform Act, to wit: full payment of filing fees. The Magistrate Judge was unpersuaded by that objection, stating that the current filing fee is $400, that no separate fee is charged for intervenors, and that if this case were still pending when Plaintiffs identified one or more Drug Source Defendants, there would be no filing fee at all for an amended complaint adding a party. (ECF No. 1907, at PageID 74766.) Plaintiffs raised no objections to these findings in their response to the Supplemental Report. In any event, the Court upon *de novo* review cannot find that Plaintiffs have articulated any material prejudice they would suffer from dismissal of the drug source defendants without prejudice.

In the Supplemental Report, the Magistrate Judge rejected Plaintiffs' assertion that allowing the Drug Source Defendants to remain on the case would not defeat State Actor Defendants' ability to obtain a final appealable judgment, noting Defendants' argument that the *Smith* decision relied upon by Plaintiffs is both unpublished and therefore not binding on later panels and contrary to the position taken on this issue by the Seventh, Ninth, and Tenth Circuits. (ECF No. 1907, at PageID 74766 (citing Response, ECF No. 1858, at PageID 74584-86).) The Magistrate Judge concluded that it cannot be said with certainty whether the Sixth Circuit would

treat as final and appealable any judgment including unserved Drug Source Defendants.

Plaintiffs object at length. (ECF No. 1913, at PageID 74792-95.) Plaintiffs insist that "under *Smith*, any unserved Drug Source Defendants would not be considered parties at the time of a hypothetical judgment, and thus such judgment would be considered final for purposes of Rule 54(b)." (*Id.* at PageID 74792.) Plaintiffs also reiterate their argument that this Court could "certify an immediate appeal under Rule 54(b) in the event it dismisses all the claims against the DRC Defendants even if the claims remain pending against the unserved Drug Source Defendants[,]" and fault the Magistrate Judge for not addressing this solution. (*Id.* at PageID 74792-93.) Plaintiffs continue by objecting to the Magistrate Judge's determination that the unpublished *Smith* decision cannot be relied on to guarantee that the Sixth Circuit would treat a judgment as final and appealable despite the inclusion of unserved Drug Source Defendant. Plaintiffs argue that that this determination "overlooks the highly persuasive nature of the *Smith* decision, particularly when considered in the context of the other (published) decisions from sister circuits with which the court grouped it in *Cambridge Holdings Group, Inc. v. Fed. Ins. Co.*, 489 F.3d 1356 (D.C. Cir. 2007)." (ECF No. 1913, at PageID 74793-94.) To this point, Plaintiffs also object as incorrect the Magistrate Judge's agreement with Defendants that *Smith* is contrary to published decisions on the same issue by the Seventh, Ninth, and Tenth Circuits. (*Id.* at PageID 74794-95.)

The Court disagrees with and OVERRULES Plaintiffs' objections. The Court has read the *Smith* decision and understands its holding to be an that appeal from a judgment dismissing a suit against all served defendants was sufficient for purposes of a final decision under 28 U.S.C. § 1291, and that any remaining unserved defendants were not parties to the case. *Smith*, No. 97-

15

3107, 1998 U.S. App. LEXIS 11766, at *5 (6th Cir. Jun. 2. 1998) (citing *Nagle v. Lee*, 807 F.2d 435, 438 (5th Cir. 1987)). But the bottom line is that the perceived persuasiveness of the unpublished *Smith* decision, which does not appear to have been cited by a single court within the Sixth Circuit in the eleven years since it was issued, and other published decisions by sister circuits cannot guarantee certainty, plausibility, or likelihood that the Sixth Circuit would treat as final any judgment in this case that included unserved Drug Source Defendants sufficient to find that State Actor Defendants will not suffer prejudice by allowing unserved Drug Source Defendants to remain on this case—especially where the relief Plaintiffs seek, additional time to effectuate service, remains unlikely to result in Plaintiffs ability to identify and serve the Drug Source Defendants.

Another set of objections raised by Plaintiffs with respect to the relative prejudice the parties might sustain concern the Magistrate Judge's rejection of Plaintiffs' proposal to proceed against the unnamed Drug Source Defendants pseudonymously. In their Objections to the Magistrate Judge's original Report and Recommendations, Plaintiffs argued that State Actor Defendants would not be prejudiced if Plaintiffs were permitted to proceed against the Drug Source Defendants pseudonymously in the same manner as they have proceeded against execution team members pseudonymously. (ECF No. 1814, at PageID 74152-53.) In the Supplemental Report and Recommendations, the Magistrate Judge rejected the viability of that suggestion, explaining that the situations are completely different because "[t]he execution team members are known identified people who have either been served with or waived process and who are vigorously litigating this case." (ECF No. 1907, at PageID 74766.) The Magistrate Judge continued, "[n]o Drug Source Defendant fits any of those criteria." (*Id.*)

16

Plaintiffs object, insisting that the two situations are "precisely alike for all relevant purposes." (ECF No. 1913, at PageID 74790.) "Indeed," Plaintiffs continue, "the Drug Source Defendants are more favorably positioned than the Execution Team Members were at the analogous stage of the case because they already possess the benefit of secret identity." (*Id.*) Plaintiffs dispute that at the time Judge Frost created the pseudonymous framework under which Execution Team Members' identities were kept secret but Plaintiffs' claims against them were allowed to proceed, the team members were actually known identified people or were vigorously litigating this case, (*Id.*) Plaintiffs continue their reasoning as follows:

> [T]he same rules should apply to the Drug Source Defendants. Like the Anonymous Execution Team Members, their identities have been cloaked in secrecy at least as to Plaintiffs. But also like the Anonymous Execution Team Members in 2008, other Defendants know the actual identities of the Drug Source Defendants. Thus, they are "known" and "identified" in the same way that the Anonymous Execution Team Members were "known" and "identified" before being given pseudonyms for purposes of this litigation and subsequently named and served as Defendants. And in the same way that the Anonymous Execution Team Members either accepted service via counsel in the Ohio Attorney General's office or waived process and then vigorously litigated this case, service of the Drug Source Defendants can easily be facilitated through counsel in the Attorney General's office that know the specific identities of the relevant persons or entities. At that point, a pseudonym can be assigned to each Drug Source Defendant, thus permitting that person or entity to vigorously litigate this case just like the Anonymous Execution Team Members

(*Id.* at PageID 74791.)

Defendants respond that the Magistrate Judge correctly dismissed this suggestion. (ECF No. 1919, at PageID 74825-26.) Defendants first assert that while the Execution Team Members' interests are closely aligned with the named State Actor Defendants who can and do appear in court to represent ODRC, the Drug Source Defendants' interests are not so aligned. Defendants dispute that it would be possible for a Drug Source Defendant to remain anonymous

17

while simultaneously sending leadership of its entity to court. "And even if the drug entities or involved individuals were anonymous in court," Defendants continue, "their legal counsel would not be; thus the source of that counsels' employment could be traced and used to 'out' the entities' true identity." (*Id.* at PageID 74825.) Defendants next assert that "even a pseudonymous appearance in court could jeopardize Ohio's ability to obtain execution drugs from the Drug Source Defendants." (*Id.* at PageID 74826.) Finally, Defendant dispute any suggestion that the Ohio Attorney General's Office, which represents many State Actor Defendants, could represent Drug Source Defendants or facilitate service to, or waiver service on behalf of, any Drug Source Defendants. (*Id.*)

Upon *de novo* review, the Court agrees with Defendants and OVERRULES Plaintiffs' objections. In view of the obvious reality that the Ohio Attorney General cannot be expected to represent the Drug Source Defendants or even necessarily facilitate service to them, Drug Source Defendants proceeding pseudonymously would still have to be represented in court by an agent of the entity or individual and counsel. It seems impossible to this Court that any Drug Source Defendants proceeding pseudonymously but not absently could shield their identities as the Execution Team Members appear to have been able to do. The risks associated with a Drug Source Defendant's identity being revealed have been litigated and upheld, and demonstrate that the need for Drug Source Defendants to maintain their secrecy different in nature and scope than that of the Execution Team Members. The Court is aware of no evidence or suggestion that the pseudonymous framework has been insufficient to maintain secrecy of the Execution Team Members' identities, but the Court is not persuaded that the same framework would be sufficient to shield the Drug Source Defendants' identities in view of the need for them to have in court a

18

representative and/or counsel through whom their identities could surely be learned.

Upon *de novo* review, the Court OVERRULES Plaintiffs' objections going to the Court's discretion to allow extra time to effectuate service in the absence of a showing of good cause for not achieving timely service. (ECF No. 1814, at PageID 74152-54; ECF No. 1913, at PageID 74792-95.) Balancing the amount of time already elapsed and lack of prospects that additional appropriate time is likely to lead to identification of the Drug Source Defendants; the uncertainty of State Actor Defendants obtaining final appealable judgment while unserved Drug Source Defendants remain on the case (even if recent developments in this litigation make it unlikely that there will be any final appealable judgment in the near future); the absence of evidence establishing one way or the other whether the unserved Drug Source Defendants have actual notice of Plaintiffs' claims against them (even if it is likely that the Drug Source Defendants are aware of Plaintiffs' claims against them); and that there exists no risk of Plaintiffs' claims against the unknown Drug Source Defendants being time-barred—the Court cannot find that additional time to effectuate service is warranted. Although the Court is satisfied that Plaintiffs exercised diligence in challenging the secrecy bill and the Court's protective orders in an effort to identify the Drug Source Defendants, their efforts since then do not warrant the grant of additional time to effectuate service on the Drug Source Defendants. Plaintiffs issued a handful of Rule 45 subpoenas that bore no fruit or leads, they have done nothing since the issuance of those subpoenas to identify the Drug Source Defendants, and they have proposed no prospects for identifying the Drug Source Defendants. Rule 4(m) favors dismissal without prejudice of the Drug Source Defendants under these circumstances.

A final set of objections raised by Plaintiffs concerns their request that this Court wait

19

until after the Ohio Supreme Court issues a decision in the case of *State ex rel. Hogan Lovells U.S. L.L.P/, et al., v. Dep't of Rehab. & Corr.*, No. 2016-1776—a mandamus action filed by records requesters seeking to compel ODRC to release record related to ODRC's acquisition and supply of lethal injection drugs. In the original Report and Recommendations, the Magistrate Judge stated that Plaintiffs had failed to demonstrate how a decision in *Hogan Lovell* would solve their dilemma of not being able to identify Drug Source Defendants. (ECF No. 1798, at PageID 73348.) In their objections, Plaintiffs assert that the decision "may well be the disclosure of the identities of Drug Source Defendants if they did not expressly follow the statutory requirements to invoke anonymity protection under Ohio's now-expired execution secrecy law, Ohio Rev. Code § 2949.221." (ECF No. 1814, at PageID 74152.) "If any Drug Source Defendants are identified as a result of the Supreme Court's decision," Plaintiffs continue, "that would at least partially solve Plaintiffs' service dilemma." (*Id.*) It does not appear that the Magistrate Judge addressed that objection in his Supplemental Report, and Plaintiffs' only reference to the *Hogan Lovells* case in their objections to the Supplemental Report is an explanation for why they do *not* wish to pursue claims against any Drug Source that seeks *not* to have drugs they manufacture or distribute be used in lethal-injection executions (ECF No. 1913, at PageID 74784-87).

The Ohio Supreme Court has since issued a decision in *Hogan Lovells*, to wit: No. 2016-1776, 2018-Ohio-5133, 2018 WL 6786148 (Ohio Dec. 21, 2018). Specifically, that Court held that certain documents in DRC's possession were responsive to Hogan Lovells and had to be disclosed, albeit with information protected under Ohio Rev. Code § 2949.221 (Ohio's Secrecy Loaw) redacted, to wit: "the names, contact information, signatures, seals, and any other

20

information in the records that identifies or could reasonably lead to the identification of an entity requesting confidentiality under R.C. 2949.221." *Hogan Lovells*, 2018 WL 6786148, at *4. The Court also held that one document "contains protected information that is inextricably intertwined with nonprotected information ... that is exempt from public disclosure...." (*Id.*) This Court does not read the Ohio Supreme Court's decision in *Hogan Lovells* as likely to assist Plaintiffs in identifying any Drug Source Defendants. And Plaintiffs have not indicated whether they have pursued or plan to pursue any additional means of identifying the Drug Source Defendants in view of the Ohio Supreme Court's *Hogan Lovells* decision. Based on the forgoing, the Court OVERRULES any objection (ECF No. 1814, at PageID 74152) concerning the import of *Hogan Lovells*.

For the foregoing reasons, the Court upon *de novo* review **OVERRULES** Plaintiffs' Objections (ECF Nos. 1814 and 1913), and **AGREES WITH** and **ADOPTS** the Magistrate Judge's Report and Recommendations (ECF No. 1798) and Supplemental Report and Recommendations (ECF No. 1907). The Court **ORDERS** that the Drug Source Defendants, to wit: UNKNOWN PHARMACIES #1-100, UNKNOWN PHARACISTS #1-100, UNKNOWN DRUG SUPPLIERS #1-25, and JOHN DOES #1-25, be **DISMISSED** as parties without prejudice.

**IT IS SO ORDERED.**

3- 26-2019

**EDMUND A. SARGUS, JR.**
**Chief United States District Judge**