# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
 PROTOCOL LITIGATION,

:     Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiff Cleveland Jackson

## OPINION AND ORDER ON MOTION TO QUASH SUBPOENA

This consolidated capital § 1983 litigation is before the Court on Motion of the Ohio Board of Pharmacy (the "Board") to Quash a Subpoena ("Subpoena") issued to it by Plaintiff Cleveland Jackson (ECF No. 2203). Jackson opposes the Motion (ECF No. 2207) and the Board has filed a Reply in support (ECF No. 2208 & 2209).

The Subpoena in question requires the Board to produce a witness or witnesses to testify pursuant to Fed.R.Civ.P. 30(b)(6) on May 16, 2019, at 10:00 a.m. at the Office of the Federal Public Defender for the Southern District of Ohio (ECF No. 2198, PageID 106883) on the following subject matters:

> Please note that for the following deposition topics and requests for production of documents, the drugs that Ohio has used or could use to carry out human executions by lethal injection include, but are not limited to, sodium thiopental, pentobarbital, secobarbital, or other barbiturates; hydromorphone, morphine, or other opioids; fentanyl or any of its analogs such as sufentanyl, carfentanyl, or others; midazolam, diazepam, or other benzodiazepines; and

1

etomidate, propofol, or other general anesthetic drugs; rocuronium bromide, pancuronium bromide, vecuronium bromide, or any other paralytic drug; and potassium chloride.

1. Information regarding the application processes to obtain a license from the OSBP to distribute dangerous drugs. This includes, for example, a wholesale distributor of dangerous drugs license, and a Terminal Distributor of Dangerous Drugs (TDDD) license. This also includes the application process for an Ohio resident or non-resident. This would include matters such as, for example, the procedures for seeking such a license; OSBP's assessment and characterization of the level of difficulty and time required for an applicant to submit such an application; the percentage rate at which such applications are typically granted; the typical amount of time between application submission and decision on the application by OSBP; the procedures and factors by which OSBP assesses an application; and all other facets of the decision-making process by which OSBP processes such applications and grants or denies such an application.

2. Information regarding OSBP's monitoring and enforcement of diversion controls of controlled substances that Ohio has used or could use to carry out a human execution by lethal injection (defined above), for the time period of January 1, 2011 to present. This applies to drugs whether compounded or manufactured. Those controls are created by Ohio state and federal laws that require distributors and manufacturers of controlled substances to maintain effective controls against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels. See, e.g., 21 U.S.C. § 823(a)(1), (b)(1); Ohio Admin. Code § 4729:6-5-01(I); Ohio Admin. Code § 4729:6-8-01(I); see also Complaint, *State of Ohio ex rel. Mike DeWine v. McKesson et al.*, No. CV-20180055, at 15–23 (Feb. 28, 2018, Madison Cnty Ct. of Common Pleas) (citing analogous provisions in Ohio law moved to OAC § 4729:6-5-01 as of March 1, 2019);1 see also Ohio Admin. Code 4729:6-7-01(C), (H); Ohio Admin. Code § 4729:6-2-01(D); Ohio Admin. Code § 4729:5-2-01(B)(3), (E)(4)).

This would include matters such as, for example, any reports of

suspicious orders, any "zero reports," and any other reports or information required to be submitted to the OSBP under Ohio Admin. Code § 4729:6-3-05 or its predecessor rules, received by the OSBP regarding drugs that Ohio has used or could use to carry out human executions by lethal injection; any acquisition and/or distribution transaction reports required by federal law that OSBP has received relating to drugs that Ohio has used or could use to carry out human executions by lethal injection; and any other reports similarly required by State or federal law concerning controlled substances that Ohio has used or could use to carry out human executions by lethal injection.

This would also include information about any investigation by the OSBP of a dangerous drug distributor, and violations of law identified, the results of such an investigation, and any enforcement action that OSBP has taken, concerning a drug distributor's actions supplying drugs to the State of Ohio or its agents that Ohio has used or could use to carry out a human execution by lethal injection. Those recipients of drugs provided by any such drug distributor include, for example, the Ohio Department of Mental Health and Addiction Services (ODMHAS) (or its predecessor agency or agencies); the Ohio Pharmacy Service Center; Central Pharmacy Inpatient; Mary Denise Dean; Dr. Tracie Taylor; Gretchen Weaver; Joell Buchanan; Sokkhar Muon; Denise Nauman; Justin Clark; Denise Hanscel; or any other person employed by, acting at the direction of, or on behalf of, ODMHAS, Ohio Pharmacy Service Center, or Central Pharmacy Inpatient; Richard Theodore; Steven Gray; Ron Erdos; Donald Morgan; Edwin Voorhies, Jr.; Gary Mohr; Phil Kerns; Roseann Clagg; or any other person employed by, acting at the direction of, or on behalf of, the Ohio Department of Rehabilitation and Correction. The relevant drugs include the following: sodium thiopental; pentobarbital; hydromorphone; midazolam; rocuronium bromide, pancuronium bromide, vecuronium bromide; and potassium chloride.

Please note, however, that Plaintiff Jackson is not seeking patient specific documents from the OARRS system.

3. That OSBP, in responding to the subpoena issued by Plaintiff Jackson, has conducted a diligent and thorough search of all documents and records in its possession, custody and/or control.

4. That the documents and records produced by OSBP in response to the subpoena issued by Plaintiff Jackson are authentic records maintained by OSBP in the ordinary course of its business.

5. That OSBP has produced all of the documents and records that are responsive to the subpoena issued by Plaintiff Jackson, and that no responsive documents/records are being withheld from production.

*Id.* at PageID 106885-88.

The Subpoena is also a subpoena duces tecum and commands the production of the following documents:

**DOCUMENTS TO BE PRODUCED**

In complying with these requests, responsive materials are those materials that are in your possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). That is not merely such documents or information in your actual physical possession. Documents and information that are in your "possession, custody or control" include all documents and information to which you have the legal right, authority, or ability to obtain upon demand. See Wright & Miller, Fed. Prac. & Proc. Civ. § 2210 (3d ed.). Before responding to these requests, you must make a thorough and diligent search of all your books, records, files and other papers and materials in your possession, custody or control in an effort to obtain and produce all responsive information and documents.

The Ohio State Board of Pharmacy is directed to produce the following documents, communications, Electronically Stored Information (ESI) and tangible things that are in its possession, custody, or control as defined above.

> To the extent that documents have already been produced that might be responsive, please identify those documents and provide as to each specific document produced the further documentation necessary to confirm the matters identified above in # 3 and # 5.
>
> 1. All documents, communications, or other materials relating to the above-listed Deposition Topics.
>
> 2. OSBP's electronic lists of all resident and non-resident persons and entities currently licensed as a distributor of dangerous drugs by the OSBP, similar to the Excel spreadsheet that was produced in this litigation pursuant to a previous subpoena to OSBP.
>
> 3. OSBP's electronic list of all pharmacies and/or pharmacists who engage in compounding sterile controlled substances.

*Id.* at PageID 106889-90. By agreement with counsel for the Board, the Subpoena was served by email on April 29, 2019 (ECF No. 2198, PageID 106880.)

The Board seeks to quash the Subpoena as unduly burdensome, unlikely to lead to the discovery of admissible evidence, and seeking information that is confidential or privileged from disclosure under state and federal law (Motion, ECF No. 2203, PageID 106909).

In *Bucklew v. Precythe,* 139 S. Ct. 1112, (2019), the Supreme Court recently reiterated the requirement first recognized in *Baze v. Rees,* 553 U.S. 35 (2008), that a State's refusal to alter its lethal injection protocol could violate the Eighth Amendment only if an inmate first identified a "feasible, readily implemented" alternative procedure that would "significantly reduce a substantial risk of severe pain." *Id*., at 52. Plaintiff reads *Bucklew* as clearly holding "that a prisoner raising a *Glossip* claim must be permitted to obtain discovery – particularly from a State agency – necessary to satisfy his burden." There is no such holding in *Bucklew*. Indeed, there was no discovery issue at all before the Supreme Court in that case. Nevertheless, a state agency with relevant information on drugs that could feasibly be used for executions is an appropriate target

5

for discovery on such issues, and the Board does not contend to the contrary. The question, instead, is the appropriate scope of such discovery.

Plaintiff notes that the Board probably has information that would have enabled Warren Henness to respond to the defense raised in bis preliminary injunction hearing that his out-of-state expert witness was not competent to testify about procedures for obtaining a Terminal Dangerous Drug Distributor (TDDD) license (Response, ECF No. 2207, PageID 106951). That information may likewise be relevant to Plaintiff Cleveland Jackson's case.

Given the position taken by the State Defendants in the Warren Henness preliminary injunction proceeding on the competence of a doctor reviewing the Board's website to testify about the process for obtaining a TDDD or WDDD license and the ease of doing so, the Board is the appropriate source from which Plaintiff needs to obtain that relevant evidence and a 30(b)(6) deposition is an appropriate way to do so. In its Reply the Board insists this is a purely legal issue, but the questions of the amount of time and other factors relevant to "relative ease" of obtaining a TDDD license are factual.

During a telephonic hearing on the Motion on May 14, 2019, the Board of Pharmacy identified Ms. Carrie Southard as the person from its staff who would testify on the licensing process if the Motion to Quash were not granted (Draft Transcript at p.2, 6). The Court gave a tentative oral ruling and now confirms that the Motion to Quash as to the expected testimony from Carrie Southard is DENIED because it appears likely she would have testimony to give as to the actual process (as opposed to the legal and regulatory descriptions of that process) for obtaining a TDDD or WDDD license. *Id.* at 6-7.

Plaintiff also seeks "discovery into whether, or to what extent, the Board in fact enforces the drug laws of Ohio as they relate to execution drugs."(Response, ECF No. 2207, at PageID 106952). This appears to be in support of his claim, made in common with the other Plaintiffs, that Ohio may not lawfully use "controlled substances to carry out a human execution." *Id.* That claim has been dismissed. *In re Ohio Execution Protocol Litig.*, 2018 U.S. Dist. LEXIS 28282 and 77126 (S.D. Ohio 2018; adopted, 2018 U.S. Dist. LEXIS 209769, 2018 WL 6529145 (S.D. Ohio Dec. 12, 2018)(Sargus, C.J.). Discovery relevant to that claim would therefore not produce admissible evidence and the Subpoena for a Rule 30(b)(6) deposition on that question is QUASHED.

In an attempt to avoid this ruling and giving Plaintiff the benefit of the doubt as to some possible relevance to remaining claims in the case, the Court accepted the proposal of the Board's counsel that the parties negotiate a stipulation that would satisfy Plaintiff's concerns (Draft Transcript at p. 15). That effort apparently broke down as the Court was advised by email at 4:09 p.m. this date:

> Mr. Appel and Cleveland Jackson's counsel have been unable to reach a satisfactory agreement on the language of a sworn affidavit/declaration regarding the diversion-related deposition topics. Per Your Honor's instructions during the oral argument on the motion to quash, we are reaching out to request the Court's involvement. Specifically, we are wondering whether Your Honor would be able to teleconference with counsel on Wednesday, May 22, 2019, at 10:00 a.m.?

The Court is not available at the time and on the date suggested. If counsel wish the Court's assistance in a further attempt at negotiating a resolution of this issue, they need to provide the Court with a draft affidavit showing areas of disagreement.

The Court agrees with Plaintiff that it is not unduly burdensome for the Board to authenticate the documents it has already produced to Plaintiff, certify that those documents are maintained by the Board in the ordinary course of its business, certify the efforts made to comply with the Subpoena, and certify that no responsive documents are being withheld (or if any are being withheld, making an appropriate claim of privilege and producing the documents with a privilege log for in camera inspection). During the hearing the Board's counsel agreed that this was not unduly burdensome and indicated that a certificate of authenticity of documents already produced had been provided. In the absence of a request from Plaintiff for something further, the Court understands this need has been met.

At the conclusion of the hearing, it was agreed that the date set in the Subpoena of May 16 would be changed to May 22, 2019 (Draft Transcript at p. 25). On May 21, 2019, Plaintiff's counsel purported to modify that date unilaterally to May 31, 2019:

> We are now less than 24 hours before the scheduled deposition, leaving insufficient time to prepare. As we stated previously, we prefer to take the deposition of both identified representatives on the same day. To accommodate for the time to prepare in light of these recent developments, we will shift the time for both depositions, of Ms. Southard and of Mr. Griffin, from Wednesday, May 22, 2019 [,] at 10:00 a.m. to Friday, May 31, 2019, at 10:00 a.m. Thus there will not be a deposition taken on Wednesday, May 22, 2019 [,] as previously planned.

(Email from Allen Bohnert to Henry Appel, May 21, 2019, 11:41 a.m.)

Although Fed.R.Civ.P. 45 authorizes attorneys to issue subpoenas, they are court process and the Court is the entity authorized to modify them. Plaintiff should long since have been prepared to take Ms. Southard's deposition and the Board has advised that she and counsel are available on May 22, 2019, the date approved by the Court as a modification of the Subpoena. Ms.

Southard's deposition will therefore proceed at 10:00 a.m. on Wednesday, May 22, 2019, at the Office of the Federal Defender for this District.

May 21, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge