# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re: OHIO EXECUTION
 PROTOCOL LITIGATION,

:     Case No. 2:11-cv-1016

Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiff Cleveland Jackson

---

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DR. CHARLES KOKES

---

This capital § 1983 case is before the Court on Plaintiff Cleveland Jackson's Motion to Strike Expert Report and Any Testimony of Dr. Charles Kokes or, in the Alternative, Motion *in Limine* to Exclude Some or All Testimony of Dr. Kokes (ECF No. 2322). Defendants oppose the Motion (ECF No. 2341). Dr. Kokes has been designated as an expert witness to be presented by Defendants at the hearing on Plaintiff Jackson's Motion for Preliminary Injunction (Witness List, ECF No. 2295).

As required by the Court's Scheduling Order (ECF No. 2206), Defendants have filed an expert report from Dr. Kokes in the form of a declaration under penalty of perjury under 28 U.S.C. § 1746 ("Kokes Report," ECF Nos. 2289, 2290, 2107). The Kokes Report reveals that Charles Kokes is a medical doctor (M.D.) who is board certified in anatomic and forensic pathology (Report, ECF No. 2289, PageID 110981). He is employed by the Arkansas State Crime Laboratory

1

as the Arkansas State Medical Examiner. He also serves as laboratory director for Pinpoint Testing, LLC, a private forensic toxicology laboratory which specializes in laboratory consulting and lists the provision of expert testimony as an offered service.[1] In the course of his thirty-four year career in forensic pathology, he has performed over 10,000 full autopsies including those on seven inmates executed by lethal injection. *Id.*

In the immediately preceding preliminary injunction matter in this consolidated case, the Court made the following findings of fact

> [I]t is certain or very likely that a 500 mg IV-injected dose of midazolam cannot reduce consciousness to the level at which a condemned inmate will not experience the severe pain associated with the injection of the paralytic drug or potassium chloride or the severe pain and needless suffering that is certain or very likely to be caused by the pulmonary edema which is very likely to be caused directly by the midazolam. This finding of fact is independent of the hypothesis that it is the acidic state of injected midazolam that causes pulmonary edema.

*In re Ohio Execution Protocol Litig. (Henness),* 2019 U.S. Dist. LEXIS 8200, *230-31, 2019 WL244488 (S.D. Ohio Jan. 14, 2019), on appeal at 6th Cir. Case No. 19-3064. In his Report, Dr. Kokes offers the opinion that these findings "were based on medical testimony and evidence that was incomplete and/or misinformed." (Kokes Report, ECF No. 2289, PageID 110982, ¶ 4.) He explains that the purpose of his report is to "present [ ] the following information and opinions so as to provide the Court with a more complete understanding of the medical facts which are relevant to the issues in this case." *Id.*

Kokes believes that, within the meaning of Fed. R.Evid. 702 and 703 he is "an expert in

---

[1] Pinpoint's website is at www.pinpointtesting.com, visited August 14, 2019.

2

the field of forensic pathology and such fields as are necessarily related to forensic pathology, including physiology, pharmacology, general medicine and scientific research." *Id.* PageID 110983 at ¶ 7.

In preparing his report, Kokes avers that he has, at the request of Ohio Assistant Attorney General Anne Berry Strait, examined reports "filed in these proceedings by pathologist Mark Edgar, anesthesiologist Dr. David Lubarsky, pulmonologist Dr. Matthew Exline, and pharmacologists Dr. Craig Stevens and Dr. David Greenblatt." *Id.* at ¶ 8, PageID 110983-84. Because he does not reference the dates of these reports and because some of those named have not been listed as witnesses for the Cleveland Jackson hearing and the date for disclosing expert witnesses has passed, the Court infers that Dr. Kokes is referring to the reports of these witnesses filed in the *Henness* matter.

> Although Kokes agrees these experts
>
>> are eminently qualified in their respective fields, . . . none of them have [sic] an educational background or work experience which indicates routine analysis of how and why individuals die. In my analysis, the plaintiff's experts demonstrate a lack of professional familiarity with fatal drug toxicity and its terminal effects on core body functions. As result, they have made erroneous assumptions which undermine their arguments regarding the toxic effects of midazolam solution.

*Id.* at ¶ 11, PageID 110985.

Plaintiff offers three bases for excluding Kokes as an expert witness. First Jackson says Kokes is "essentially a proxy for the Defendants in this case" because his own employer, the State of Arkansas, uses an execution protocol materially indistinguishable from Ohio's which he has a strong interest in defending. Second, Kokes's conclusions are unsupported by relevant facts and

data and are thus not reliable science. Third, Kokes offers opinion well beyond his area of expertise, which should therefore be excluded (ECF No. 2322, PageID 113139).

Defendants respond that Kokes is not a "partisan" and has no financial stake in the outcome of this litigation because, after all "this case is not about money." (ECF No. 2341). As to the foundations for Kokes's opinions, Defendants claim they are based on "actual real world experience" as "a board-certified *forensic* pathologist who has performed hundreds of autopsies on persons who have died of drug overdoses or other toxic insults." They are claimed to be far more scientific than those of Plaintiff's expert forensic pathologist, Dr. Mark Edgar.[2] *Id.* at PageID 114323 (emphasis in original).

## Applicable Legal Standards

Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and

---

[2] Defendants have a pending motion *in limine* with respect to Dr. Edgar's expected testimony (ECF No. 2314) which Plaintiff opposes (ECF No. 2346). Dr. Edgar first provided expert testimony in this consolidated lethal injection litigation in the preliminary injunction hearing of Warren Henness. Defendants made no motion in limine with respect to Dr. Edgar in the *Henness* matter.

> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

*Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), which had provided the common law "general acceptance" rule on admission of expert testimony in federal courts, was displaced by the Rules of Evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Under the Federal Rules of Evidence as interpreted in *Daubert*, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. To qualify as scientific knowledge, an inference or assertion must be derived by the scientific method. *Id.* at 590. In a case involving scientific evidence, evidentiary reliability will be based on scientific validity. *Id.* at n. 9. Factors bearing on whether reasoning is scientifically valid include: can the theory or technique be tested; has it been subjected to peer review and publication, what is the known or potential rate of error, has it been generally accepted? *Id*. at 593-594.

Expert testimony based on scientific research done solely for litigation and neither subjected to peer review nor published in scientific journals and not accompanied by showing of methodology on which it is based is not admissible under Fed. R. Evid. 702. *Johnson v. Manitowoc Boom Trucks, Inc.,* 484 F.3d 426 (6th Cir. 2007), accord *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 43 F.3d 1311 (9th Cir. 1995)(on remand from the Supreme Court). Numerous courts have held *Daubert* applies to medical evidence. *See United States v. Hall*, 93 F.3d 1337, 1342-43 (7th Cir. 1996).

The gatekeeper language of *Daubert* is applicable to all expert testimony, regardless of whether it is "scientific" or not. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999); *United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997); *see also United States v. Thomas*, 74 F.3d 676, 681 (6th Cir. 1996), and *Berry v. Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994). If the witness is relying solely or primarily on experience, then the witness must explain how that experience

leads to the conclusion reached . . . and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005), citing Advisory Committee note to Fed. R. Evid. 702.

# Analysis

**1.    Dr. Kokes is Not Excludeable as a "Proxy Defendant"**

Dr. Kokes is an executive-level employee of the State of Arkansas, dependent for his appointment as State Medical Examiner on a political appointee of the Governor of the State. Plaintiff implies that Kokes would be subject to unfavorable treatment if he testified contrary to the interests of Arkansas in defending its own use of an execution protocol materially indistinguishable from Ohio's.

Like Ohio, Arkansas has actively engaged in executing its death row inmates[3], including four men in one week in 2017 out of a planned eight. However, it has executed no one since April 2017, perhaps because its supply of midazolam became outdated at the end of that month and it has not found a replacement[4]. Despite that expiration, the State of Arkansas is presently defending the constitutionality of midazolam-initiated lethal injection executions. Indeed, it has filed an

---

[3] In contrast, for example, to California which has hundreds of death row inmates and has not executed anyone since Clarence Ray Allen on January 17, 2006.
[4] The impending expiration of the midazolam in possession of the Arkansas Department of Corrections was reported in the media to have been the reason for Governor Hutchinson's tight scheduling.

amicus curiae brief in *Henness v. Dewine*, Sixth Circuit Case No. 19-3064, in which it criticizes this Court's analysis of the scientific evidence in much the same way as Kokes' expert report does. Thus it appears Dr. Kokes' expert opinion here is congruent with the official policy of his employer, the State of Arkansas.

This does not make him a "proxy defendant." That concept originates in a *Daubert* decision, *In re Commercial Money Ctr., Inc.*, 737 F.Supp. 2d 815 (N.D. Ohio 2010), where Judge O'Malley incorporated her prior finding that proposed expert witness Daniel Cadle was so identified with a party, CadleRock, that he was not entitled to be paid expert witness fees.[5] Nothing of the sort is involved here. Dr. Kokes is certainly not an alter ego of the State of Arkansas.

This is not to say that Dr. Kokes' opinions may not be influenced, perhaps strongly influenced, by his employment and public identification with the State of Arkansas. But bias in an expert is a credibility issue for the finder of fact, not a basis for exclusion. *Peters v. DCL Med Labs, LLC,* 305 F. Supp. 3d 799, 812 (S.D. Ohio 2018)(Sargus, C.J.), citing *Adams v. Lab. Corp. of Am.,* 760 F.3d 1322, 1332-33 (11th Cir. 2014); accord, *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000).

Plaintiff asserts Dr. Kokes has a financial interest in the outcome of this case. He lists his fees as an expert in his Report (ECF No. 2289, PageID 110984, ¶ 9). The Court assumes from that that he is being compensated by the State of Ohio for his work as an expert in this case.[6] But that is no more financial interest than any expert witness has.

Plaintiff's "proxy defendant" argument is unavailing as a basis for excluding Dr. Kokes.

---

[5] Apparently Cadle was the owner of numerous business enterprises, a number of which used "CadleRock" as part of their names. See *Pilalas v. Cadle,* Case No. 09-11972 (D. Mass. May 17, 2010), aff'd, 695 F.3d 13 (1st Cir. 2012).

[6] If Dr. Kokes were appearing at the direction of his superiors, that would cast an entirely different light on his independence.

## 2. Dr. Kokes Does Not Provide a Basis for Many of his Opinions

Plaintiff complains that Dr. Kokes does not provide a basis in data or relevant facts for his opinions.

Plaintiff first asserts that Dr. Kokes "takes his cue from Dr. Antognini's unique theories about sensation, consciousness, analgesia, and midazolam such that his report is suffused with the same imprecise, scientifically flawed discussion and conclusions that are found in Dr. Antgonini's report." (ECF No. 2322, PageID 113147). If so, Dr. Kokes relies on Dr. Antognini without citing him anywhere in his report. The admissibility of Dr. Antognini's opinions will be the subject of a separate decision after a *Daubert* hearing and the Court will not comment on them further in this context.

Jackson next proceed to list a series of opinions from the Kokes Report which are said to be unsupported by data. For example, Dr. Kokes offers the opinion that

> [B]y the time of the injection of the second and third drugs in the Ohio protocol the inmate has been rendered unconscious to the point of being unable to consciously experience pain. . . ." [The mechanism for this effect is said to be midazolam's causing of] cerebral hypoxia which would then combine with the sedative effect of midazolam to produce deep unconsciousness.

Kokes Report at ¶ 23, PageID 110992. No data are offered to support this conclusion. As another example, Dr. Kokes opines that the massive overdose[7] of midazolam "would almost immediately exert its maximum sedative-hypnotic effects on the inmate." *Id.* But the questions of dose dependence and speed of effect have been the subjects of intense controversy in this consolidated

---
[7] As compared to the amounts of midazolam used clinically.

8

litigation and Dr. Kokes cites no data, either generated by himself or reported in the scientific or medical literature that supports this conclusion.

Defendants response to these objections is that

> Dr. Kokes's opinions are based on his education, scientific principles, and his 34 years of experience in performing forensic autopsies. As a practicing forensic pathologist who has performed hundreds of autopsies on overdose victims and executed inmates, Dr. Kokes has the specialized knowledge to help the Court understand the effect of the execution drugs on the human body – that is, what happens to the body when the drugs are injected.

(ECF No. 2341, PageID 114326.) Dr. Kokes is educated and certified as a forensic pathologist. His Report does not advert to or explain any "scientific principles" on which he is relying. Defendants' position amounts to a claim that Dr. Kokes's long experience as a forensic pathologist undergirds these opinions. But that argument commits the fallacy noted by the Sixth Circuit in *Berry,* 25 F.3d at 1350: just because a person has done something related to the question before the Court does not mean that that person is an expert on the question in suit.

Dr. Kokes himself reports that the function of forensic pathologists is to determine a cause of death of a person who is already dead. Undoubtedly, as Defendants argue, he has "performed hundreds of autopsies on overdose victims. . . ." (Memo in Opp., ECF No. 2341, PageID 114326.) But has he ever performed an autopsy on someone who overdosed on midazolam? He certainly does not say so. More generally, he does not show how his experience in performing thousands of autopsies empowers him to testify about the effects of a 500 mg dose of midazolam on a living person.

Dr. Kokes states at the outset of his Report that he has "personally performed autopsies on seven inmates executed by lethal injection. In two other lethal injection execution cases, I directly supervised another pathologist who performed the autopsy. I have also reviewed the postmortem

9

examination reports of all inmates executed in Arkansas since the early 1990's." (ECF No. 2289, PageID 110981-82). The data derived from these autopsies provide a basis for testimony, but the Court would have to know what the execution protocols were in these cases[8] to determine relevance.

### 3. Dr. Kokes Offers Opinions Beyond the Scope of his Expertise

Dr. Kokes is a long-practicing forensic pathologist. He avers also makes him an expert in "such fields as are necessarily related to forensic pathology, including physiology, pharmacology, general medicine and scientific research." *Id.* at ¶ 7, PageID 110983. That simply does not follow logically. As an experienced forensic pathologist, he may well have specialized knowledge of the pharmacology of drugs seen in overdose deaths, but not of pharmacology generally. He is not a published researcher nor, so far as his Report shows, has he practiced "general medicine." He makes no claim about anesthesiology, but offers opinions in that field as well. He simply has not shown that he is qualified to offer opinions beyond forensic pathology.

**Conclusion**

The Court declines to strike the Kokes Report. Dr. Kokes may testify to opinions deriving from his experience as a forensic pathologist and shown at the time of the hearing to be logically and scientifically derived from that experience, but his opinions on pharmacology, anesthesiology, and scientific research will be excluded and his opinions on physiology will be limited to those

---

[8] Presumably thiopental plus a paralytic and potassium chloride from 1990-2004 (Kokes Report, ECF No. 2289, PageID 110987, ¶ 18)..

directly derived from his experience, except to the extent they are within the knowledge of a medical doctor. He has not yet shown a reliable basis for opinions about "consciousness."

August 15, 2019.

s/ *Michael R. Merz*<br>
United States Magistrate Judge