## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: OHIO EXECUTION PROTOCOL LITIGATION** | **Case No. 2:11-cv-1016** |
| **This document relates to:** | **CHIEFJUDGE EDMUND A. SARGUS JR. Magistrate Judge Michael R. Merz** |
| **PLAINTIFF JAMES HANNA** | **DEATH PENALTY CASE:** |
| | **Execution date scheduled for December 11, 2019** |

### Plaintiff James Hanna's Motion For Stay of Execution, Preliminary Injunction, and Evidentiary Hearing

Plaintiff James Hanna respectfully moves this Honorable Court for a stay of execution, and, pursuant to Federal Rule of Civil Procedure 65(a), for a preliminary injunction on claims arising from his Fifth Amended Complaint, which is comprised of the Fourth Amended Omnibus Complaint (ECF No. 1252) and his Third Amended Individual Supplemental Complaint (ECF No. 2396).

This Court should grant injunctive relief on the following claims contained in Hanna's Complaint:

(1)    Hanna's death sentence violates the Eighth Amendment, because Ohio's midazolam-based three-drug protocol is sure or very likely to cause severe pain and suffering and there are feasible, available, alternative execution methods that would significantly reduce the substantial risk of severe harm compared

1

to the current protocol. Those alleged alternatives include firing squad; shooting; or two different drug combinations, one using secobarbital, and another using four drugs. (*See* Third Amended Individual Supplemental Complaint, ECF No. 2396, ¶¶1913-2168, PageID 115229-77.)

(2)     The use of the midazolam-based three-drug protocol violates the Eighth Amendment, because, given his individual characteristics, Hanna will have a paradoxical reaction to the midazolam, which will heighten his sensation of pain, creating even greater pain and suffering with a protocol that already causes extreme, unconstitutional pain and suffering. (*See* Third Amended Individual Supplemental Complaint, ECF No. 2396, ¶¶1899-1901, PageID 115223-24.)

(3)     Defendants' use of expired execution drugs or drugs past their use-by date violates the Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment (*see e.g.*, Fourth Amended Omnibus Complaint (ECF No. 1252, ¶¶891-893, 910, PageID 45637-38, 45644; Fourth Cause of Action, ¶¶ 1329 *et seq.*), as well as equitable principles of judicial estoppel.

Hanna moves to stay the death warrant issued by the Supreme Court of Ohio and to bar Defendants and/or their agents, collectively and individually, from acting jointly or severally to implement or otherwise facilitate any part of the Defendants' Execution Protocol as to him. Hanna similarly seeks to bar the

same from attempting to execute him on December 11, 2019, by means of Defendants' Execution Protocol and policies which will deprive him of his rights in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

In light of Hanna's imminent execution date, a preliminary injunction and stay of execution (collectively referred to herein as "injunctive relief") are necessary to allow Hanna to litigate his claims before he is unconstitutionally executed. Hanna further requests expedited discovery as needed, and an evidentiary hearing on this Motion, of sufficient duration to accommodate numerous expert and lay witnesses. The reasons supporting Hanna's requests are explained in the memorandum in support that follows.

## MEMORANDUM IN SUPPORT

### I.  Introduction

This Court has already granted Plaintiff Cleveland Jackson[1] a
preliminary injunction hearing on Eighth Amendment claims that Ohio's
midazolam-based three-drug protocol: (a) is sure or very likely to create a
substantial risk of severe pain suffering; and (b) the alleged alternatives of
firing squad, shooting, oral injection of secobarbital in a sweet liquid, and/or
oral injection of a four-drug combination are available in all respects and would
significantly reduce a substantial risk of severe pain posed by the current
execution protocol.  *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1121 (2019);
*Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015).  Because Hanna has raised
identical claims to Jackson's (*see* Hanna's Third Amended Individual
Supplemental Complaint, ECF No. 2396, ¶¶1913-2168, PageID 115229-77),
he, too, should have those claims addressed at this Court's upcoming
preliminary injunction hearing.  Hanna incorporates by reference and adopts
the arguments and analysis asserted in Jackson's Motion for Injunctive Relief
(ECF No. 2242), and Jackson's Reply In Support of his motion for injunctive
relief (ECF No. 2276).  And injunctive relief should issue as to Hanna for the
same reasons and on the same evidence that warrants injunctive relief for
Jackson on those same claims.

---

[1] References herein to "Jackson" refer to Plaintiff Cleveland Jackson
unless otherwise specifically identified.

Moreover, Hanna has raised additional claims on which he also seeks injunctive relief: (1) Given his neurological, physiological, and psychiatric characteristics, Hanna will suffer a paradoxical reaction to midazolam, resulting in even greater awareness and sensation of the terrifying pulmonary edema caused by the midazolam, and the painful injections of the paralytic and potassium chloride, in violation of the Eighth Amendment (*see* Third Amended Individual Supplemental Complaint, ECF No. 2396, ¶¶1899-1901, PageID 115223-24); and (2) Defendants' use of expired execution drugs (the only drugs they currently have) to attempt and/or to carry out an execution also violates the Eighth and Fourteenth Amendments (*see, e.g.*, Fourth Amended Omnibus Complaint, ECF No. 1252, ¶¶891-893, 910, PageID 45637-38, 45644; Fourth Cause of Action, ¶¶ 1329 *et seq.*)). Furthermore, Hanna also argues, in light of recently uncovered evidence from depositions of high-ranking DRC decision-makers—including a Rule 30(b)(6) deposition of ODRC itself—that Defendants should be judicially estopped from using expired execution drugs to carry out a lethal injection execution.

This Court should grant Hanna a hearing on these additional claims as well. After presentation of proof at an injunctive relief hearing, Hanna will establish a strong likelihood of success on the merits of those two additional constitutional claims, as well as his equitable claim. In combination with the remaining stay equities (irreparable harm, public interest, harm to others), Hanna's likelihood of success will ultimately entitle him to injunctive relief.

This Court, therefore, should grant Hanna an injunctive relief hearing on his constitutional claims (Eighth Amendment *Bucklew* claim, Eighth Amendment paradoxical reaction claim, and Eighth and Fourteenth Amendment expired drugs claims) and his equitable relief arguments, and afterwards grant him a stay of his death warrant and a preliminary injunction prohibiting Defendants' use of Ohio's midazolam-based three-drug protocol.

## II. This Court Should Grant Hanna An Injunctive Relief Hearing On His Constitutional Claims And Afterwards, Grant A Preliminary Injunction And Stay of Execution.

### A. This Court Has Ordered A Hearing On Claims That Ohio's Midazolam-Based Protocol Violates The Eighth Amendment Under *Bucklew* And *Glossip*, And After That Hearing, This Court Should Grant A Preliminary Injunction And Stay of Execution.

This Court is already well aware of the two-pronged Eighth Amendment standards governing certain method-of-execution challenges. As the Supreme Court has required in *Bucklew v. Precythe*, 139 S.Ct. 1112 (2019) and *Glossip v. Gross*, 135 S.Ct. 2726 (2015), to succeed on a challenge alleging the risk of severe pain in violation of the Eighth Amendment, a plaintiff must establish that the Defendants' lethal injection protocol is sure or very likely to cause a risk of severe pain and suffering, and that risk is substantial when compared to available alternatives that the State has unreasonably or unjustifiably refused to adopt. *Bucklew*, 139 S. Ct. at 1125–26; *Glossip*, 135 S. Ct. at 2737. An alleged comparative alternative must be available in all respects (meaning it is theoretically feasible and readily implemented relatively easily and reasonably quickly, and the State has not unreasonably or unjustifiably

6

refused to adopt it), and an alleged alternative must significantly reduce a substantial risk of severe pain. *Bucklew*, 139 S. Ct. at 1129–30.

Plaintiff Hanna is likely to prevail on this claim, not only in securing injunctive relief, but also on the merits. Indeed, this Court has already concluded that an individual like Hanna satisfies the first three criteria for a preliminary injunction: Like Warren Keith Henness, Hanna "will suffer irreparable harm without preliminary injunctive relief and . . . a stay pending trial could not harm others. The public interest favors resolution of serious constitutional issues on the merits. Thus [Hanna] satisfies three branches of the general test for a preliminary injunction." (Decision and Order, ECF No. 2133, PageID 105266); *see also Nken v. Holder*, 556 U.S. 418, 426 (2009) (preliminary injunction equities). And the evidentiary record on which this Court reached those findings has already been admitted for purposes of the impending injunctive relief hearing to which Hanna has now been consolidated. (Decision and Order on Motion to Admit Prior Evidence and Testimony, ECF No. 2191, PageID 106838 et seq., as extended and applied to rescheduled hearing during telephonic status conference on June 25, 2019.)

Further, and also exactly like Henness, Hanna is "likely to prevail at trial on the first prong of the *Glossip* test: executing him by Ohio's current three-drug protocol will certainly or very likely cause him severe pain and needless suffering because the dose of midazolam intended to be used will not render him sufficiently unconscious as to prevent him from suffering the severe pain caused by injection of the paralytic drug or potassium chloride or the severe

7

pain and needless suffering caused by pulmonary edema from the midazolam itself." (Decision and Order, ECF No. 2133, PageID 105266.)

Moreover, at a preliminary injunction hearing on this claim, Hanna (along with Plaintiff Cleveland Jackson) will be presenting additional proof further bolstering this Court's previous findings that midazolam is sure or very likely to fail to render him insensate to the horrifyingly painful effects of pulmonary edema, the paralytic, and the potassium chloride. That proof includes proof that additional inmates executed with a functionally identical midazolam protocol have suffered severe, unconstitutional pain. (*See, e.g.*, Report of Dr. Mark Edgar, M.D., ECF No. 2257, PageID 108259-92; Report of Dr. Matthew Exline, M.D., ECF No. 2260, PageID 109221-29; Report of Dr. David Greenblatt, M.D., ECF No. 2258, 108766-902; Rebuttal Report of Dr. Steven Shafer, M.D., ECF No. 2332, 113322-400; Rebuttal Report of Mark Edgar, M.D., ECF No. 2333, PageID 113505-68; Rebuttal Report of Matthew Exline, M.D., ECF No. 2331, PageID 113231-39; Rebuttal Report of Dr. David Greenblatt, M.D., ECF No. 2334, PageID 113670-736; Supplemental Report of Mark Edgar, M.D., ECF No. 2380, PageID 114806-17; Supplemental Report of Dr. David Greenblatt, M.D., ECF No. 2383, PageID 114876-81.)

Hanna relies on, in part, and incorporates by reference the evidence presented by Warren Keith Henness (*see* Order Admitting Prior Evidence and Testimony for Cleveland Jackson, ECF No. 2191, PageID 106838-39 as further applied by oral order during telephonic status conference on June 25, 2019). Henness has satisfied the first prong of the *Glossip* test and Hanna will present

even more proof than Henness. *A fortiori*, Hanna satisfies the first prong of the *Glossip* test.

With regard to the second prong of the *Glossip-Bucklew* standard, Hanna will also be presenting extensive proof that demonstrates there are several alternatives that are available in all respects and which would significantly reduce a substantial risk of pain and suffering: firing squad, shooting, oral injection secobarbital, and oral injection of the four-drug combination. (*See* Hanna's Third Amended Individ. Supp. Compl., ECF No. 2396, PageID 115228–277, allegations in which are incorporated here by reference; *see also, e.g.,* Expert Report of Dr. James Williams, M.D., ECF No. 2261, PageID 109359-418 & Exhibits, ECF Nos. 2262-1 through 2262-4, PageID 109422-110297; Expert Report of Dr. Charles Blanke, M.D., ECF No. 2259, PageID 109118-99; Rebuttal Expert Report of Dr. Blanke, ECF No. 2330.)

The viability of the firing squad alternative as both available and a reduction in the risks of severe pain and needless suffering is confirmed by the fact that Utah uses firing squad, while the United States Military has promulgated and/or used three different firing squad protocols from 1944, 1947, and 1959. *See Bucklew*, 139 S. Ct. at 1128–29. The only reason that Defendants have offered to dispute that a firing squad alleged alternative—such as that which Hanna alleges—would not satisfy *Bucklew-Glossip*'s two-part standard is that Ohio law does not permit any method or manner of execution other than lethal injection. But the Supreme Court has already rejected that defense as a matter of law. *Id.* All other arguments by the State are secondary

9

and based solely in speculation, because the State has adamantly asserted, repeatedly, that they simply have not done any research or otherwise explored the firing squad alternative.  Thus, the State has not reasonably refused to adopt the firing squad alterative, nor has the State refused to adopt the firing squad for any legitimate penological reason.  Yet Hanna has provided extensive and detailed allegations in support of his alleged firing squad alternatives.  (*See* Hanna's Third Am. Individ. Suppl. Compl., ECF No. 2396, PageID 115254–268; *see also* Expert Report of Dr. James Williams, M.D., ECF No. 2261, PageID 109359-418 & Exhibits, ECF Nos. 2262-1 through 2262-4, PageID 109422-110297, adopted here for Hanna by reference.)  That is, Hanna has provided allegations sufficient to satisfy the showing contemplated under *Glossip* and *Bucklew*.  Thus, regardless of any of the other three alleged alternatives, Hanna has a strong likelihood of success on the merits of the second prong of the *Glossip-Bucklew* test, and thus an overall likelihood of success on the merits, warranting a preliminary injunction.

Furthermore, even beyond the evidence of historical usage which should satisfy Hanna's burden, Hanna will also present additional evidence to demonstrate that the firing squad alleged alternative will satisfy the *Bucklew-Glossip* test in all respects.  (*See* Jackson's Amended Motion for Injunctive Relief, ECF No. 2242, PageID 108072–84, incorporated here as to Hanna and adopted by reference; *see also id.* at PageID 108063–71 (same).)

Additionally, Hanna will also satisfy the same showing as to his shooting, secobarbital, and four-drug alternatives.  The evidence will show that each of

those is also available in all respects, and that each of those alternatives would significantly reduce the substantial risks of severe pain and needless suffering compared to Ohio's current three-drug midazolam protocol, making Ohio's current execution protocol superadded pain and suffering barred by the Eighth Amendment.  (*See id.* at PageID 108085–121, 108124, incorporated here as to Hanna and adopted by reference.)

This Court previously granted Plaintiff Cleveland Jackson an injunctive relief hearing on his claims that the midazolam three-drug protocol violates the Eighth Amendment.  Having done so, this Court has now consolidated Hanna's identical claims with those of Jackson to be heard at a September/October, 2019 hearing.  (*See* Scheduling Order, ECF No. 2378, PageID 114799-805.) That includes the evidence and arguments that Jackson asserts regarding the current protocol as well as the four alleged alternatives that Jackson and Hanna share in common, evidence in support of which applies to Hanna as well as Jackson.  After that hearing, this Court should grant Hanna a preliminary injunction and stay of execution on his claims that the Ohio execution protocol violates the Eighth Amendment, because he will have established all four requirements for a preliminary injunction: irreparable harm, no harm to others, relief is in the public interest, and his strong likelihood of success on the merits.

To the extent necessary, Hanna adopts and incorporates by reference the arguments asserted in Jackson's Amended Motion for Injunctive Relief as to

why this Court should grant a hearing on this motion.  (*See* Jackson's Am. Mot. for Injunctive Relief, ECF No. 2242, PageID 108131–32.)

**B.  This Court Should Grant Hanna An Injunctive Relief Hearing And Relief On His Claims That His Execution Using The Midazolam Protocol Violates The Eighth Amendment Because He Will Suffer A Paradoxical Reaction To The Midazolam Which Will Heighten The Protocol's Already Unconstitutional Pain And Suffering.**

Hanna need not show that he can satisfy the injunctive relief standard on each of his claims in order to obtain such relief.  And, as discussed above, he can demonstrate that injunctive relief is warranted on the claims that he shares in common with Plaintiff Jackson.  Nevertheless, Hanna also presents additional, more individualized claims on which injunctive relief is also warranted.

In his amended complaint, Hanna alleged that he faces an unconstitutional execution under the Eighth Amendment because he will suffer a paradoxical reaction to midazolam which will amplify the severe pain he will be sure or very likely to experience when subjected to Ohio's lethal injection protocol.  (*See* Third Amended Individual Complaint, ¶¶1899-1901, ECF No. 2396, PageID 115223-24.)  It is sure or very likely or almost certain that Hanna will suffer such a reaction, where he possesses a large constellation of characteristics that identify persons who are sure or very likely to suffer such paradoxical reactions.

Midazolam generally works as a sedative, but midazolam and other benzodiazepines cause paradoxical reactions in certain individuals.  Rather

than sedating such persons, midazolam (and other benzodiazepines) instead causes *increased* arousal and awareness in the cerebral cortex and/or "acute excitement,"[2] or disinhibition.[3]  Such increased arousal occurs at the same time that midazolam causes hyperalgesia (a heightened sense of pain).[4]

Such paradoxical reactions correlate with specific neurological, psychiatric, and biophysical characteristics.  Persons who suffer (or face a serious risk of suffering) paradoxical reactions to midazolam include the young or "the elderly" (about whom there are many reports of paradoxical reactions),[5] persons with post-traumatic stress disorder (PTSD) or other psychiatric

---

[2] *See e.g.*, Paton, Benzodiazepines and disinhibition: a review, *Psychiatric Bulletin* (2002), 26, 460-62; Bruining et al., Paradoxical Benzodiazepine Response: A Rationale for Bumetanide in Neurodevelopmental Disorders?, *Pediatrics* 136(2) e539 (2015) (paradoxical reaction characterized by restlessness, arousal, and talkativeness); Mohri-Ikuzawa, Delirium During Intravenous Sedation with Midazolam Alone and With Propofol in Dental Treatment, *Anesth Prog* 2006(53): 95-97 (62-year-old man demonstrated "uncontrolled agitation, a state of excitement, and moaning").

[3] *See e.g.*, Goldney, Paradoxical Reaction to a New Minor Tranquilizer, *Med. J. Aust.* 1977(1): 139-40.

[4] *See e.g.,* Testimony of Dr. Ashish Sinha, M.D., ECF No. 1363, PageID 51534 (even under normal circumstances, midazolam has hyperalgesic effect).

[5] Paradoxical Reaction to Midazolam and Control with Flumazenil, *Gastrointestinal Endoscopy*, 1994, 40(1): 86, 87 (71-year-old patient); Jordahn, Reversal of a Suspected Paradoxical Reaction to Zopiclone with Flumazenil, *Case Reports in Critical Care*, 2016 (Article ID 3185873) (81-year-old woman suffered paradoxical reaction).

disorders,[6] individuals with neurocognitive disorders,[7] persons with personality disorders and borderline personality disorder in particular,[8] individuals with brain injury,[9] and those with a history of alcohol abuse.[10]  *See also* Paton, *supra* n.2 at 461 (those with impulse control problems, neurological disorders, and over 65 years of age face significant risk of paradoxical reaction).  Some researchers describe those at risk as persons who have a "vulnerable brain." Schieveld et al., On Benzodiazepines, Paradoxical Agitation, Hyperactive Delirium, and Chloride Homeostasis, *Critical Care Medicine*, Sept. 2018, 46(9): 1558.

Hanna has such a "vulnerable brain," and the likelihood of his having a paradoxical reaction to midazolam is high.  In fact, he possesses a constellation of at least six characteristics of persons who suffer such paradoxical reactions. The synergy of these numerous characteristics makes a paradoxical reaction to midazolam quite likely:

(1)    Hanna is **70 years old** (and suffers other age-related health problems);

---

[6] Lund et al., Patient and Facility Characteristics Associated with Benzodiazepine Prescribing for Veterans with PTSD, *Psychiatr. Serv.* 2013, 64, 149-155; Mancuso, Paradoxical Reactions to Benzodiazepines: Literature Review and Treatment Options, *Pharmacotherapy* 2004, 24(9): 1177-1185 (advanced age, genetic predisposition, alcoholism, psychiatric and/or personality disorders).

[7] Guina et al., Benzodiazepines I: Upping the Care on Downers: The Evidence of Risks, Benefits, and Alternatives, *J. Clin. Med.* 2018, 7, 17 at 12.

[8] *Id.*; Gardner et al., Alprazaolam-induced dyscontrol in borderline personality disorder, *Am J. Psychiatry*, 1985(142): 98-100.

[9] Bruining, *supra*, n. 2, at e539 (right temporal lobe anomaly on MRI).

[10] Mancuso, *supra*, n. 6, at 1177.

(2)	As Dr. Howard Fradkin, Ph.D., explains, Hanna suffers two major mental illnesses:

(a)	Notably, Hanna suffers from **Post Traumatic Stress Disorder**, the result of a long history of sexual abuse (including being repeatedly raped by the pedophilic foster father in whose custody he was placed), and being beaten and repeatedly raped in prison (*see* Declaration of Howard Fradkin, Ph.D. at 39-41, 48 (PTSD) (attached as Exhibit 1).  Hanna also endured numerous adverse childhood experiences, or ACEs, as a child that have contributed to his mental illness.  (*Id.* at 8-18 (Hanna suffered 9 of 10, and 15 out of 17 ACEs, *inter alia*, the loss of a parent, sexual abuse, family mental illness, emotional and physical neglect));

(b)	As a result of his long history of trauma, Hanna also suffers **Major Depression**, which is recurrent (*id.* at 10, 31, 33, 47-48);

(3)	Hanna was diagnosed with a **Cognitive Disorder** at the time of trial (*see* Exhibit 3 at 004-005, Trial Transcript at 1562-63) (testimony of Kathleen Burch, Psy.D.));

(4)	In addition, Hanna suffers **Borderline Personality Disorder**, noted to be a significant risk factor for suffering a paradoxical reaction to midazolam (*see* Declaration of Howard Fradkin, Ex. 1 at 41, 42, 48);

(5)	Hanna likewise has **Brain Damage**, at a minimum, in the frontal and parietal lobes, which means he does indeed have a vulnerable brain (Ex. 3 at 003, 007, Trial Transcript at 1561, 1565).  Hanna will establish the full extent of that brain damage through neuroimaging in seeking this preliminary

15

injunction.  Contemporaneously with this filing, Hanna will file a motion seeking an order for testing and transport to Ohio State University Wexner Medical Center to secure these necessary medical neuroimaging tests.  (*See* Declaration of Douglas Scharre, M.D., attached as Exhibit 4 (identifying Hanna's history of headaches, head injuries, blackouts, fainting, and loss of consciousness as supporting the need for MRI and PET scans to evaluate the extent and nature of Hanna's brain damage)); and

(6)    Hanna has a history of **Alcohol Abuse** as well, as noted by Dr. Fradkin.  (Exhibit 1 at 48, 49.)

In sum, therefore, Hanna is the very type of person whose characteristics make it sure or very likely that he will suffer a paradoxical reaction to midazolam.  Whereas persons have paradoxical reactions when possessing perhaps one or two known risk factors, Hanna has an even larger constellation of risk characteristics – six – which makes a paradoxical reaction highly likely, if not almost certain.  The scientific literature establishes that Hanna faces an extraordinarily high risk of a paradoxical reaction – which would make the use of the already terrifying and painful midazolam protocol even more horrific and thus unconstitutional under the Eighth Amendment (when, under *Bucklew*, there are available but much less painful alternatives).

Hanna thus states a viable claim on which he may obtain injunctive (and merits) relief.  This Court, therefore, should grant him an injunctive relief hearing at which he can prove his entitlement to injunctive relief under the Eighth Amendment given his unique personal characteristics and how he will

surely or very likely react to the midazolam injected as part of Ohio's current execution protocol.

At this time, Hanna anticipates presenting available proof of the psychiatric, neurological, matters he has already outlined.  As this Court requested in its recent scheduling order (ECF No. 2418), Hanna would expect to present the following testimony in support of this portion of his motion for injunctive relief:

(1)    **Dr. Douglas Scharre, M.D.**, an expert in neurology, would testify about Hanna's brain injuries and dysfunction, as shown by neuroimaging tests that are needed, notably PET (positron emission tomography) and MRI (magnetic resonance imaging) scans.  Contemporaneous with this motion, Hanna is seeking an order for testing and atransport order to Ohio State University Wexner Medical Center so that these neuroimaging scans may be conducted.  Once this Court issues that order, Hanna will secure the funding for the neuroimaging and for Dr. Scharre's interpretation and report.[11]  If the testing and transport order is issued, these reports should be available relatively promptly, and by October 28-29, 2019, the dates Hanna has

---

[11] Counsel for Hanna have been restrained by budget limitations and the ongoing uncertainty surrounding the use of the current midazolam protocol from previously committing the substantial funding necessary for neuroimaging and for Dr. Scharre to read and interpret those tests and provide an additional report of his expert opinions about the paradoxical effects that midazolam will have on Hanna.  Because it now appears that Hanna will need to present that proof as soon as early October, 2019, counsel are prepared to secure the funding for the neuroimaging and Dr. Scharre as soon as the testing and transport order is issued.

proposed for a bifurcated hearing on such matters beyond the hearing on the claims common between Plaintiff Jackson and Hanna.

(2) **Dr. Howard Fradkin, Ph.D.**, will testify about Hanna's mental health history and psychiatric diagnoses, such as those contained in his declaration: PTSD, Depression, Borderline Personality Disorder, in accord with his report. (*See* Exhibit 1.) Having done his evaluation and written a report already, Dr. Fradkin has already completed most of the extensive work required to present this testimony to the Court. Dr. Fradkin would be able to be prepared and present testimony shortly after the start of the new fiscal year, which begins October 1, 2019. He would be available to testify by the October 28-29, 2019 dates proposed by Hanna.

(3) **Dr. Craig Stevens, Ph.D.**, an expert in pharmacology who has previously testified in this Court, will testify about midazolam and its effects upon the brain, particularly the paradoxical reaction to midazolam and associated risk factors. Dr. Stevens has agreed to assist on Hanna's case, and could also be prepared to testify shortly after the start of the new fiscal year, and by October 28-29, 2019 the dates Hanna has proposed for a hearing on such matters.

(4) **Dr. David Lubarsky, M.D.**, is an expert in anesthesiology who also has previously testified in this Court. As this Court is aware, for various editions of *Miller's Anesthesia*, Dr. Lubarsky has been co-author of the chapter on Intravenous Anesthetics, including benzodiazepines. Dr. Lubarsky will testify about paradoxical reactions to midazolam, risk factors, and how

18

Hanna's individualized characteristics and risk factors make such a reaction sure or very likely.  Dr. Lubarsky has agreed to assist Hanna, but he and counsel would require a reasonable time after October 1, 2019, and by October 28-29, the dates Hanna has proposed for a hearing on such matters to prepare a report and present testimony.

As this Court has repeatedly recognized, it is unclear (and seemingly unlikely) that the midazolam protocol upon which Hanna is to present proof about his paradoxical reaction will ever be used.  Defendant Governor DeWine has repeatedly and publicly declared that Ohio would not use the midazolam protocol.  Similarly, Defendants' supply of execution drugs—including its supply of midazolam—has expired, and Governor DeWine (along with the former Defendant DRC Directors Ernie Moore and Gary Mohr) has publically stated that Ohio would not use expired drugs.  Governor DeWine has already stated on several occasions now that the State cannot buy additional supplies of drugs to be used in executions.  Governor DeWine (and recent depositions of high-ranking DRC officials who are Defendants in this case) have also recently confirmed that there is a new execution protocol in the works—the details of which have yet to be disclosed.

In light of the lengthy history in this case of proceeding with injunctive relief litigation for the "next man up," and given that matters surrounding Ohio's lethal injection protocol remain in flux while counsel for the Defendants have repeatedly assured the Court that a new protocol is forthcoming, counsel for Hanna have proceeded in the same manner that previous Plaintiffs in this

consolidated litigation have proceeded.  Counsel have investigated and located expert witnesses but have not committed the substantial funds necessary to prepare for a hearing until that hearing was actually granted and scheduled.  It was not previously understood that Hanna needed to raise and litigate his own claims on the same schedule as Jackson.  Because the Court has now ordered Hanna to announce his experts and his proof, however, Hanna will seek to obtain the substantial funding required for these experts and to expeditiously present his claims to this Court, in accordance with his previously proposed schedule.

This Court, therefore, should grant Hanna a hearing and injunctive relief on this Eighth Amendment challenge to Defendants' execution protocol as causing needless pain and suffering, which takes into account Hanna's personal characteristics, as set forth in ¶¶1899-1901 of his amended complaint.  These claims are properly before this Court.  This Court should grant him needed time to fully investigate and present testimony and evidence on these issues after October 1, 2019, and set a hearing for late October, 2019, as Hanna has requested, at which he may show his likelihood of success on the merits and his entitlement to a preliminary injunction.

### III.    This Court Should Grant Hanna Injunctive Relief On His Claims That The Use Of Expired Execution Drugs Is Unconstitutional.

Hanna also adopts and incorporates here by reference the analysis and arguments that Plaintiff Jackson alleges in his forthcoming supplemental motion for injunctive relief, seeking injunctive relief prohibiting Ohio from

using expired execution drugs to carry out Plaintiffs' executions because use of expired drugs is unconstitutional.

## IV.  This Court Should Grant Hanna Injunctive Relief On His Equitable Arguments Against Using Expired Drugs.

Hanna also adopts and incorporates here by reference the analysis and arguments that Plaintiff Jackson alleges in his forthcoming supplemental motion for injunctive relief, seeking injunctive relief prohibiting Ohio from using expired execution drugs to carry out Plaintiffs' executions because Defendants are judicially estopped from using expired drugs to carry out an execution.

## V.  Conclusion and Prayer for Relief

Like Henness argued before, and as Cleveland Jackson has also currently alleged, Defendants will inflict severe pain and needless suffering on Mr. Hanna as they attempt to end his life, putting various drugs to uses for which they are entirely unsuited, and failing to taking any steps to protect Mr. Hanna from that immense pain.  They will inject him with several ounces of extremely caustic acid that will be sure or very likely to burn like fire upon injection and immediately attack his lungs, rapidly filling them with fluid.  That large volume of acid will sedate Hanna, perhaps even to the point where he can no longer convey to communicate that he is in pain.  But pain is binary—one is either sensate or not.  The acid will not have any pain-blocking capabilities to protect Hanna from the acute pulmonary edema and burning in his veins; in the absence of a pain-blocking drug, Hanna will remain sensate to the full

measure of pain imposed, regardless of his ability to communicate what he is experiencing. Nor will that acid protect Hanna from the indisputably severe pain and suffering that follows when Defendants inject the paralytic and potassium chloride. It is sure or very likely that Hanna will feel severe pain and suffering as a result. That is objectively intolerable, particularly when, as Hanna will demonstrate, there are alternatives that are available and which significantly reduce the substantial risk of serious harm posed by the current protocol's drugs.

Defendants will violate Hanna's Eighth Amendment right against cruel and unusual punishment if he is executed using Ohio's current three-drug protocol. This Court found sufficient evidence to establish, at a merits trial level of proof, that an Ohio inmate executed using that current protocol is certain or very likely to cause severe pain and suffering. That same evidence applies equally to Hanna, it has already been adopted as to a hearing for which this motion is consolidated, and this Court should adopt its previous findings or reach the same findings on the same evidence, and then provide any further, bolstering findings as it sees fit. *Cf.* Br. of State Appellees, *Henness v. DeWine*, 6th Cir. Case No. 19-3064, Doc. No. 33, 56–74 (June 28, 2019) (accusing the Court in *Henness* of clearly erring in its factual findings and reasoning on *Glossip* prong 1 when it relied on the established scientific consensus of pre-eminent experts). And Hanna will provide even more evidence on that point, on which the Court should provide further factual findings. True, the Court found what it believed to be some flaws with the evidentiary picture that Plaintiff

22

Henness painted on the second *Glossip* prong, and thus believed it could not grant him injunctive relief.  But the Court made clear it is uncomfortable with that result.  While the *Henness* decision remains pending on appeal, Hanna's December 11, 2019 execution date remains in effect after a warrant of reprieve was granted to Henness, even as Defendant Governor DeWine instructed DRC personnel to explore different execution protocol options.  Recent discovery production confirms that a draft revised execution protocol was sent to the Governor's office several weeks ago.  (*See* ECF No. 2234-1, PageID 108014.) But barring any future developments to the contrary, the aggressive position Defendants asserted in their *Henness* brief, combined with their unwillingness to disclose their revised protocol, and their refusal to provide any further information about reprieves or a stay pendent lite as this Court has requested, makes clear they intend to move forward with executions using the three-drug midazolam protocol, the evidence about the current protocol and this Court's discomfort notwithstanding.  Thus, Hanna is now forced to bring this injunctive relief motion.

To secure his constitutional rights, and aid the Court, Hanna will demonstrate that a number of alleged alternative execution manners and methods should be available with ordinary transactional effort, because each of them is feasible, readily implemented, and there is no impediment to implementation via a justified State refusal to adopt the alternative.  Further, Hanna will demonstrate that each of those alleged alternatives would significantly reduce the torturous harm he is facing under the State's current

execution protocol. Defendants will violate Hanna's Eighth Amendment right against cruel and unusual punishment if not enjoined from using their current execution protocol.

Additionally, Hanna will present evidence to demonstrate that his individual conditions greatly increase the risk that he will experience a paradoxical reaction to the midazolam, causing him to have heightened awareness and hyperalgesia following injection of that drug at the start of his execution. That, too, poses an Eighth Amendment violation.

Additionally, Hanna will present evidence to demonstrate constitutional violations arising from Defendants' use of expired execution drugs. And Defendants should be judicially estopped from using expired execution drugs for a lethal injection execution as a matter of equitable relief—an equitable claim for which Hanna will likewise present evidence as necessary.

In sum, Hanna has a strong likelihood of prevailing on the merits of his constitutional claims asserted above; there is a threat of irreparable harm to him that only injunctive relief and a stay of execution can remedy; an injunction will not cause substantial harm to others; and the public interest favors preventing an unconstitutional execution. Furthermore, as to any additional consideration for stays of execution, there is no failure of diligence on Hanna's part.

For the reasons outlined in this memorandum, this Court should further:

1) grant Hanna expedited discovery as needed;

24

2)      grant Hanna a multi-day evidentiary hearing on his motion, of sufficient duration to accommodate numerous expert and lay witnesses;

3)      grant Hanna the opportunity to submit post-hearing briefing, if the Court deems it necessary;

4)      grant Hanna's motion, granting him a stay of execution staying enforcement of Hanna's death warrant and a preliminary injunction prohibiting Defendants or anyone acting on their behalf from attempting to implement any element of Defendants' Execution Protocol as to him on or before his scheduled execution date of December 11, 2019, and until further order of the Court; and

grant any other relief as this Court deems appropriate.

**Respectfully submitted this 3rd day of September, 2019.**

**Deborah L. Williams**

**Federal Public Defender**
Southern District of Ohio

By

**/s/ *Allen L. Bohnert***
**Allen L. Bohnert (0081544)**
Trial Attorney for Plaintiff Hanna

Paul R. Bottei
Co-Counsel for Plaintiff Hanna

Assistant Federal Public Defender
Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, Ohio 43215
Telephone: 614.469.2999
Fax:  614.469.5999
Allen_Bohnert@fd.org
Paul_Bottei@fd.org

David L. Doughten
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 361-1112
Co-Counsel for Plaintiff Hanna

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2019, I electronically filed the

foregoing **Plaintiff James Hanna's Motion For Stay of Execution,**

**Preliminary Injunction, and Evidentiary Hearing** with the Clerk of the

United States District Court for the Southern District of Ohio using the

CM/ECF system, which will send notification of such filing to the email

addresses of opposing counsel that are on file with the Court.


*/s/ Allen L. Bohnert*
Trial Attorney for Plaintiff Hanna