**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: OHIO EXECUTION PROTOCOL LITIGATION**<br><br>**This document relates to: Plaintiff Cleveland Jackson** | **Case No. 2:11-cv-1016**<br><br>**CHIEF JUDGE EDMUND A. SARGUS, JR. Magistrate Judge Michael R. Merz**<br><br>**DEATH PENALTY CASE**<br><br>**Execution scheduled for: November 13, 2019** |

**Plaintiff Cleveland Jackson's Supplemental Motion for Preliminary
Injunction Against the Use of Expired Execution Drugs**

Plaintiff Cleveland Jackson hereby moves this Honorable Court for a stay of execution, and, under Fed. R. Civ. P. 65(a), a preliminary injunction on claims arising from his Fifth Amended Complaint, which comprises the Fourth Amended Omnibus Complaint (ECF No. 1252) and his Second Amended Individual Supplemental Complaint (ECF No. 2227).

Jackson moves to stay the death warrant issued by the Supreme Court of Ohio and to bar Defendants, and/or their agents, collectively and individually, from acting to implement or otherwise facilitate any part of Defendants' Execution Protocol (ECF No. 667-1) as to him. Jackson similarly seeks to bar the same from attempting to execute him on November 13, 2019, by means of Defendant's Execution Protocol and policies, which will deprive him of his rights in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

In light of Jackson's imminent execution date, a preliminary injunction and stay of execution are necessary to allow Jackson to litigate his claims before he is unconstitutionally executed.  Jackson further requests expedited discovery as needed, and an evidentiary hearing on this Motion, of sufficient duration to accommodate numerous expert and lay witnesses.  The reasons supporting Jackson's requests are explained in the attached memorandum.

In sum, Jackson seems to bar Defendants from implementing their Execution Protocol, and attempting to execute him, using drugs which have exceeded their FDA-approved expiration date.  Such conduct violates Jackson's rights under the Eighth Amendment, as well as his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as well as various State and federal statutes and regulations.  It also directly contravenes promises made by Defendants, or their predecessors, under oath and to the Court in this litigation.

**Respectfully submitted this 3d day of September, 2019.**

**Deborah L. Williams**
Federal Public Defender

by

**/s/ Allen L. Bohnert**

**Allen L. Bohnert (0081544)**
Trial Attorney for Plaintiff Jackson                          and

and                                                          Richard Cline (0001854)
                                                             Chief Counsel
David C. Stebbins (0005839)                                  Death Penalty Department
Assistant Federal Public Defender
Supervising Attorney                                         Randall L. Porter (0005835)
Co-Counsel for Plaintiff Jackson                             Assistant State Public Defender

Lisa M. Lagos (0089299)                                      Office of the Ohio Public Defender
Paul R. Bottei (TN 17036)                                    250 E. Broad Street - Suite 1400
Adam M. Rusnak (0086893)                                     Columbus, Ohio 43215-9308
Assistant Federal Public Defenders                           Telephone: (614) 466-5394
Co-Counsel for Plaintiff Jackson                             Facsimile: (614) 644-0708
                                                             Richard.Cline@opd.ohio.gov
Theodore C. Tanski (PA 314189)                               Randall.Porter@opd.ohio.gov
Research & Writing Attorney                                  Co-Counsel for Plaintiff Jackson
Co-Counsel for Plaintiff Jackson
                                                             and
Office of the Federal Public Defender
for the Southern District of Ohio                            James A. King (0040270)
Capital Habeas Unit                                          Porter, Wright, Morris & Arthur LLP
10 West Broad Street, Suite 1020                             41 South High Street
Columbus, Ohio 43215                                         Columbus, Ohio 43215
614-469-2999                                                 614-227-2051
614-469-5999 (fax)                                           614-227-2100 (fax)
Allen_Bohnert@fd.org                                         Email: jking@porterwright.com
David_Stebbins@fd.org                                        Co-Counsel for Plaintiff Jackson
Lisa_Lagos@fd.org
Paul_Bottei@fd.org                                           **Counsel for Plaintiff Jackson**
Adam_Rusnak@fd.org
TC_Tanksi@fd.org

iii

**Table of Contents**

I.   Background ................................................................................. 2

II.  Argument ................................................................................... 7

    A. The use of expired execution drugs would subject Jackson to cruel
       and unusual punishment, and violates his rights under the Eighth
       Amendment. ...................................................................... 8

    B. The use of expired execution drugs shocks the conscience, and
       violates Jackson's rights under the Fourteenth Amendment. ........... 11

    C. The use of expired execution drugs subjects Jackson to disparate
       treatment, and violates his rights under the Equal Protection Clause
       of the Fourteenth Amendment. ............................................. 14

    D. The use of expired execution drugs reneges on past, sworn promises
       to this Court, and is barred by the doctrine of judicial estoppel. ...... 25

III. Conclusion ............................................................................... 29

## MEMORANDUM IN SUPPORT

Jackson files this supplementary motion for preliminary injunctive relief to address a clear and simple threat to his constitutional rights: Ohio has no execution drugs that are not expired—no midazolam, no paralytic, no potassium chloride. Defendant Governor Mike DeWine, to be sure, has issued a statement that Ohio will not use expired drugs to conduct an execution. Yet other Defendants, who lead Ohio's Department of Rehabilitation and Correction ("ODRC") and who speak on its behalf, have refused to forswear the use of expired drugs, including in Jackson's execution. Further, they have declared, under oath, that past promises made by former Defendants, including notably former ODRC Director Gary Mohr, carry no weight, even though such promises were made under oath, to this Court. To the contrary, Warden Ron Erdos, testifying on behalf of ODRC as its representative witnesses under Fed. R. Civ. P. 30(b)(6), made clear that the Department is not bound by such promises, and that irrespective of Director Mohr's representations, the use of expired drugs to execute Cleveland Jackson is permissible and would be considered.

The Court should not tolerate this conduct, which flies in the face of numerous State and federal regulations, shocks the conscience, and reneges on sworn assurances. It is especially troubling that Defendants would threaten the use of expired drugs when Defendant Governor DeWine, through his spokesperson, has stated that it is his intention that Ohio do no such thing. But until Jackson can be assured the expired drugs will not be used in his execution, he has no choice but to seek injunctive relief from this Court.

1

## I.     Background

In the interests of judicial economy, Jackson will only briefly summarize the procedural and factual background relevant to his claims.

Since at least 2011, ODRC officials have taken the position that Ohio will not use expired drugs in executions.  In a sworn affidavit provided in the predecessor matter to this litigation, produced as part of an agreed response to discovery requests propounded by Plaintiff Kenneth Smith, former ODRC Director Ernie L. Moore averred that ODRC "will not use or attempt to use" any execution drug "that is expired at the time of the scheduled execution per the expiration date on the original manufacturer's packaging."  Moore Aff., *Cooey (Smith) v. Strickland*, No. 2:04-cv-1156, ECF No. 817-1, PageID 17564.  Similarly, Director Moore affirmed that ODRC would "use only [an execution drug] that is pure, unadulterated, unexpired, not compounded, and in the sealed, original manufacturer's packaging."  *Id.*

At an evidentiary hearing the following year, former ODRC Director Gary Mohr testified that "the use of expired drugs is 'unconscionable' to him and would fly in the face of every policy behind the protocol."  *Cooey (Brooks) v. Kasich*, No. 2:04-cv-1156, 2011 U.S. Dist. LEXIS 128192, at *29 (S.D. Ohio Nov. 4, 2011).  This statement, the Court explained, was one of many practices which "qualif[ied] as [] unwritten policies to this Court," which "serve[] to supplement the written protocol, and Ohio is now bound by the representation its agent has made to this Court."  *Id.* at *29.  In part as a result of these statements, the Court ultimately rejected the Equal Protection claims brought

2

by former Plaintiff Reginald Brooks, because "the Court accepts [Director] Mohr's testimony that Ohio will not use expired drugs even if the written protocol does not explicitly preclude such action." *Id.* at *28. The Court concluded that, "[i]n light of the fact that the issue of Ohio's past use of expired drugs has been laid to rest and the binding concession presenting to this Court, it would make sense for Ohio to promptly destroy the expired drugs and wholly obviate the risk that human error in recordkeeping or action will render this drugs [sic] of future concern in this or similar litigation." *Id.* at 29–30.[1]

After that, Director Mohr testified further in a subsequent hearing in this consolidated litigation. He testified that using expired execution drugs would constitute an impermissible variation (or deviation) from Core Element # 2 of DRC's execution protocol, Policy 01-COM-11. (Wiles Hr'g Tr., ECF No. 106, PageID 5092–93.) That provision is one of four (later five) provisions of 01-COM-11 from which variations are not constitutionally permissible. And, as Director Mohr explained, the law regarding the execution drugs must be followed. (*See id.*). As such, it was believed that questions regarding Defendants' potential use of expired execution drugs were no longer at issue.

---

[1] *See also Cooey (Smith) v. Kasich*, 801 F. Supp. 2d 623, 641 (S.D. Ohio 2011) ("[Deputy Director Edwin Voorhies] also testified that Ohio had also rejected the option of compounding drugs or using expired drugs that had been given an extended expiration date."); *In re Ohio Execution Protocol Litig. (Phillips)*, No. 2:11-cv-1016, 2013 U.S. Dist. LEXIS 159680, at *49 n.6 (S.D. Ohio Nov. 7, 2013) ("Team Member #17, who has participated in the prior thirty-odd executions, denied in his testimony that he has or ever would use expired drugs.")

Yet recent events have reawakened the specter of expired drugs in this litigation.  Several senior officials within ODRC—Defendants in this lawsuit—have now repeatedly insisted that using expired drugs is not only within the State's authority, but that such conduct would be acceptable to them.  Indeed, they explicitly refused to confirm their continuing commitment to the promises described above, and asserted that it was a fair possibility that expired drugs could be used in the execution of Cleveland Jackson.

Defendant ODRC Director Annette Chambers-Smith testified under oath that, if certain testing was done, she would authorize an execution using expired drugs, and that she was "not ruling out" a discussion with the Governor about going forward with such an execution.  (Dep. Tr., ECF No. 2431-1, PageID 116602.)  When asked about her knowledge of former Director Gary Mohr's promise never to use expired drugs in an execution, she stated that she "would need to review" such statements before committing to following them.  (*Id.* at PageID 116603.)

Even more troublingly, Defendant Warden Ron Erdos, appearing on behalf of ODRC as a Rule 30(b)(6) representative, testified that the department is "permitted to use expired execution drugs," if those drugs are tested for potency.  (Rough Transcript, p. 106.)[2]  He emphasized that "[i]t's possible" that ODRC would make use of such expired drugs, and was clear that any promises

---

[2] A final version of this transcript has not yet been filed with the Court.

made by Director Mohr to the contrary do *not* still stand, and that such promises "can be changed depending on who's in charge." (*Id.* at pp. 106–08.)

In light of Defendants' refusal to forswear the use of expired execution drugs, and their assertion that even sworn representations to the courts can be changed and policy applied differently depending on who's in charge, Plaintiff Jackson must seek relief from this Court. Jackson seeks injunctive relief on the following grounds:

(A) Defendants violate Jackson's rights under the Eighth Amendment to be free from cruel and usual punishment, arising from the sure or very likely harm posed by "contamination, concentration, pH levels, sterility, adulteration, misbranding, expiration/beyond use date, improper storage or handling . . . of the drugs to be administered to cause his death under the Execution Protocol." (Jackson Second Am. Individ. Supp. Compl., Twenty-First Cause of Action, ECF No. 2227, ¶ 2329, PageID 107682.)

(B) Defendants violate Jackson's rights under the Due Process Clause of the Fourteenth Amendment, by providing inadequate procedural safeguards, and engaging in conduct which shocks the conscience, by violating numerous state and federal statutes and regulations that prohibit the use of expired drugs. (4th Am. Omnibus Compl., Fourteenth Cause of Action, ECF No. 1252, ¶¶ 1610–17, PageID 45805–06[3].)

---

[3] Although the Court previous dismissed the Fourteenth Cause of Action from the Omnibus Complaint, the Magistrate Judge explained, and the Court adopted, reasoning that allows for the potential for further claims: the Magistrate Judge criticized Plaintiffs for failing to "offer any examples of conduct which has been held to shock the conscience and compare them with the conduct of Defendants," and noted that, with respect to the use of midazolam, "[o]f course, it is possible that evidence will accumulate to the point that a different result would be required." (Report & Recommendation, ECF No. 1620, PageID 69633.) Because evidence of Defendants' willingness to use expired drugs (and unwillingness to forswear such use) only very recently came to light, Jackson submits that evidence has so accumulated to require a different result.

(C) Defendants violate Jackson's rights under the Equal Protection Clause of the Fourteenth Amendment, by engaging in disparate treatment of similarly situated individuals, without sufficient justification, in a way that is arbitrary, irrational, and capricious, including by failing to adhere to their own policies, practices, and procedures. (*Id.*, Fourth Cause of Action, PageID 45737 *et seq.*)

(D) Defendants are also subject to judicial and equitable estoppel, based on their past promises, under oath an in open court, in this very litigation and to this very Court.

It is telling that the Fourth Amended Omnibus Complaint prophesied the very risk that Jackson now faces. In Paragraph 910 of the Omnibus Complaint, Jackson alleged that

> In light of Defendants' history of changing their positions on execution drugs that may be used for an execution, along with their previous refusal or failure to destroy or otherwise divest themselves of the expired execution drugs in their possession, and their simultaneous insistence that they will not and have not illegally obtained execution drugs when the available evidence suggests intentions otherwise, there is a substantial risk that Defendants, finding it difficult or impossible to carry out an execution using only non-imported, legally obtained and legally dispensed, distributed and administered execution drugs that are not expired and not past their use-by date, will resort to using drugs that are illegally obtained, dispensed, distributed or administered or expired or past their use-by date, despite previous sworn testimony and assurances to this Court.

(*Id.*, ¶ 910, PageID 45644.)

Jackson seeks injunctive relief now, to prevent the realization of this foretold misadventure.

6

## II.    Argument

Jackson "is not required to prove his case in full."  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  Although he must "show more than a mere possibility of success," *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997), it is "ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation," *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (internal quotation marks omitted).  Jackson does so now.

As explained in his prior Motion for Preliminary Injunction (ECF No. 2242), Jackson can satisfy all four equitable factors, which are to be considered both for an injunction and a stay of execution: 1) whether Jackson has demonstrated a strong likelihood of success on the merits; (2) whether Jackson will suffer irreparable harm in the absence of equitable relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010).

For the reasons explained in his prior Motion, Jackson can establish that he is threatened with of irreparable injury; the lack of harm to others; and the public interest ways in his favor.  (*See* Motion, ECF No. 2242, PageID 108125–29).  Nor has there been any undue delay in the filing of this Motion: Jackson only learned that all of Ohio's execution drugs are expired on Wednesday,

August 21, less than two weeks ago; he notified the Court and the parties of his intent to file this Motion days later, on August 27 (*see* Notice, ECF No. 2411.) Believing that Defendants had committed not to use expired drugs on any inmate in Ohio, until he learned otherwise from Defendants' sworn testimony at the recent depositions, Jackson could not reasonably have brought this motion any earlier.  *Cf. Nelson v. Campbell*, 541 U.S. 637, 650 (2004) (noting strong equitable presumption against a stay "where a claim could have been brought at such a time as to allow consideration of the merits without requiring the entry of a stay").

Jackson notes that Defendant Governor DeWine has stated, via a spokesperson, that he "does not support using expired drugs in executions."[4] Nevertheless, absent more definitive assurances from Defendants and their counsel, and in the face of sworn testimony that conflicts with the Governor's statement on this point, Jackson must take steps to protect his rights and prevent his being subjected to an unconstitutional and likely painful execution.

### A. The use of expired execution drugs would subject Jackson to cruel and unusual punishment, and violates his rights under the Eighth Amendment.

The use of expired drugs in his execution violates Jackson's right to be free from cruel and usual punishment secured by the Eighth Amendment. U.S. Const. amend. VIII.

---

[4] Marty Schladen, *Will Ohio really use drugs that have expired for executions?*, THE COLUMBUS DISPATCH, Aug. 29, 2019, *available at* https://www.dispatch.com/news/20190829/will-ohio-really-use-drugs-that-have-expired-for-executions (last accessed Sept. 3, 2019).

As an initial matter, Defendants' use of expired execution drugs, should they attempt to execute Jackson in such a way, would *per se* constitute a violation of the Eighth Amendment.  Simply stated, use of execution drugs violates the law.  Dispensing of expired drugs also violates the law.  Defendants can neither dispense, nor use, expired drugs in an execution without violating multiple state and federal laws.  And there is good reason that Defendants should not be allowed to do so.  Expiration dates for FDA-approved drugs are mandated precisely to "assure that a drug product meets applicable standards of identity, strength, quality, and purity at the time of use."  21 C.F.R. § 211.137(a).  Executing a person in contravention of these regulations is constitutionally "unusual" on its face; and where such regulations are in place to ensure quality, purity, and strength of drug products—essential for a drug to do its job—it is constitutionally "cruel" as well.  *Cf. Brewer v. Landrigan*, 562 U.S. 996, 997 (2010) (vacating temporary restraining order because plaintiff could not show a risk of harm, since there was "no showing that the drug was unlawfully obtained, nor was there an offer of proof to that effect.")

Jackson can also establish that use of expired execution drugs violates the Eighth Amendment test established by *Baze v. Rees*, 553 U.S. 35 (2008), *Glossip v. Gross*, 135 S. Ct. 2726 (2015), and reiterated in *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019).  Jackson has outlined in detail the governing legal framework for such a claim in his Amended Motion for Preliminary Injunction, (*see* ECF No. 2242, PageID 108045–52), and, in the interests of judicial economy, he incorporates that discussion by reference here.

9

In sum, use of expired execution drugs "presents a sure or very likely risk" that Jackson will suffer severe pain and needless suffering.  Once beyond their mandated expiration date, Defendants can no longer be certain that the drugs they will use to end Jackson's life will do so quickly, effectively, and without unconstitutional pain.  Drug strength degrades over time, and the FDA-mandated expiration dates are established by rigorous stability testing and evaluation.  *See* 21 C.F.R. § 211.166.  Further, beyond their official shelf-lives, drugs begin to develop particulates, impurities, and other degradations in quality that are sure or very likely to impair the ability of the drugs to function as intended.  Most critically, even supposing that midazolam can act as the State alleges (a fact which Jackson has vigorously contested), *expired* midazolam cannot be relied upon to act in the same way.  And, as Jackson has explained at length, without a drug that will block or attenuate pain, he will suffer extreme pain and suffering from the second and third drugs in Ohio's Execution Protocol.

Further, Jackson can succeed in his Eighth Amendment claim by showing an available alternative.  First, any of the alternatives alleged in Jackson's Second Amended Individual Supplemental Complaint, (ECF No. 2227, PageID 107599–665), and his Amended Motion for Preliminary Injunction, (ECF No. 2242, PageID 108072–124), are available, meaning they are feasible and readily implemented, and would significantly reduce the substantial risks of severe pain posed by the current protocol, and even more so those risks posed by the current protocol *using expired drugs*.  Further,

10

although Jackson does not concede that the current protocol is constitutional, use of the same protocol and *unexpired* drugs would also significantly reduce risks to Jackson associated with using expired drugs. He would not need to fear that the drugs injected to bring about his death—and to protect him from experiencing severe pain—are adulterated, impure, or otherwise lacking in sufficient strength to act as the State intends them to act.

This Court should enjoin Defendants from using expired drugs to execute Mr. Jackson.

### B. The use of expired execution drugs shocks the conscience, and violates Jackson's rights under the Fourteenth Amendment.

To prevail on a substantive due process claim, a plaintiff must allege either "the denial of a right, privilege, or immunity secured by the Constitution or federal statute" or official conduct that "shocks the conscience." *Mertik v. Blalock*, 983 F.2d 1353, 1367–68 (6th Cir. 1993). State conduct that shocks the conscience is an infringement upon a constitutional guarantee that is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 169. If the government action does not shock the conscience, that action does not violate substantive due process so long as it is rationally related to a legitimate state interest. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1993).

Defendants conduct here fails on all accounts. First, the use of expired drugs defies numerous state and federal laws and regulations that specifically forbid the use of such drugs. This ecosystem of interlocking regulations

11

further demonstrates the judgment of our national community that expired
drugs should not be used; conduct in violation of this clear judgment shocks
the conscience.  Further, even if the Court should find to the contrary,
Defendants' conduct is still unacceptable and should be enjoined, because it is
not rationally related to any legitimate state interest.

The use of expired drugs, in an execution context just as much as in a
therapeutic one, is unacceptable and illegal.  Multiple Ohio and federal statutes
and regulations make this clear.  *See, e.g.*, 21 C.F.R. § 205.50 ("Prescription
drugs that are outdated, damaged, deteriorated, misbranded, or adulterated
shall be quarantined and physically separated from other prescription drugs
until they are destroyed or returned to their supplier."); Ohio Rev. Code
§ 3715.55 (requiring that drugs which are "expired" under 21 C.F.R. § 211.137
must be affixed with a tag or marking "giving notice that the article is . . .
expired and has been detained or embargoed, and warning all persons not to
remove or dispose of the article by sale or otherwise until permission for
removal or disposal is given by the director [of agriculture] or the [Ohio] board
[of pharmacy] or the court," and mandating that "no person may remove or
dispose of a detained or embargoed article by sale or otherwise without such
permission."); Ohio Admin. Code § 4729-9-01(B)(3) (delineating expired drugs
as "adulterated" drugs); *id.* at § 4729:5-3-06 (noting that adulterated drugs
must be separately stored "to prevent their use").

Although "[v]iolations of state and federal law do not per se rise to the
level of Due Process violations," (ECF No. 1429, at PageID 55266 (citing *Levine*

*v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)), some may be so egregious as to constitute a violation of substantive due process.  Government conduct "shocks the conscience" when it "offend[s] the community's sense of fair play and decency."  *Rochin v. California*, 342 U.S. 165, 173 (1952).

As the Sixth Circuit has explained, "[m]erely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is 'intended to injure' without any justifiable government interest, most clearly rises to the 'conscience-shocking' level.  *Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014).  Although Jackson does not allege that Defendants "intend to injure" him by the use of expired drugs, his claim goes beyond what past plaintiffs have alleged: he does not claim simple negligence, nor even reckless conduct by Defendants.  Rather, Defendants act knowingly, by their own admission, to ignore state and federal regulations—the community's judgment of what is fair and decent—to reach for expired execution drugs.

What's more, Defendants' conduct cannot be excused as a matter of exigent circumstances or extreme haste.  Cf. *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (inquiring "whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct.").  To the contrary, Defendants have had ample time to consider the appropriateness of their conduct, and they continue to assert their ability to use expired drugs even though Defendant Governor DeWine has indicated that he does not support such action.

13

In short, as Jackson explained in his Notice (ECF No. 2411), Defendants' mandate to carry out his death sentence does not extend to the ability to pursue his execution by any and all means that Defendants might seize upon. Jackson's Warrant of Execution does not empower them to violate state and federal laws simply to expedite his death.  Defendants' willingness to do so, in the face of well-established and long-settled community norms, and in contravention to their own past promises, as well as recent representations by the Governor of Ohio, rises to the level of egregious and unconscionable conduct.  The notion that a government, carrying out a punishment for breaking the law, would flout the law in the process is shocking to the conscience.  No rational purpose underlies this conduct, and it cannot be justified by any legitimate state interest.  This Court should enjoin Defendants from using expired drugs to execute Mr. Jackson.

### C. The use of expired execution drugs subjects Jackson to disparate treatment, and violates his rights under the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The purpose of the equal protection clause "is to secure every person within the State's jurisdiction against intentional and arbitrary" differential treatment, whether "occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir.

2005) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (internal quotation marks and citation omitted)).

To prevail, Jackson must show that (1) Defendants treated or will treat him disparately as compared to similarly situated persons; and (2) that such disparate treatment burdens a fundamental right.  *See Club Italia Soccer v. Shelby*, 470 F.3d 286, 298 (6th Cir. 2006) (citations omitted); *see also Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (same).

This Court has recently confirmed that "Eighth Amendment and Equal Protection analyses are analytically distinct," and that "intentional state action in connection with an execution which burdens an inmate's fundamental Eighth Amendment right by increasing the risk that he will suffer severe pain and needless suffering is actionable under the Equal Protection Clause."  *In re Ohio Execution Protocol Litig. (Campbell & Tibbetts)*, No. 2:11-cv-1016, 2017 U.S. Dist. LEXIS 182406, *80–81 (S.D. Ohio Nov. 3, 2017).  The Court also noted that to "impose liability on a governmental entity for the acts of one of its agents, a plaintiff must prove that the agent acted pursuant to custom or policy."  *Id.* at *25–26 (citing *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 690 (1978)).  Further, the Court reiterated that an "unconstitutional governmental policy can be inferred from a single decision by the highest officials responsible for setting policy in a particular area of the government's business."  *Id.* at *26 (citing *Owen v. City of Independence*, 445 U.S. 622 (1980); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

15

Thus, this Court explained, "to prove an Equal Protection violation, Plaintiffs must show an intentional state action (action properly attributable to the State under *Monell* . . .) which treats one death row inmate disparately from others and burdens that inmate's Eighth Amendment right by increasing the risk he will suffer severe pain and needless suffering." *Id.* at *81.  If Jackson can establish that an impermissible deviation from the execution protocol is "likely to reoccur and will affect the risk of pain," then he can satisfy his burden. *Id.* at 82.

When Jackson can show state action and disparate treatment that burdens a fundamental right, then strict scrutiny applies. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (explaining that strict scrutiny is the standard of review where a state practice interferes with a fundamental right or discriminates against a suspect class of individuals); *Satawa v. Macomb County Rd. Comm'n*, 689 F.3d 506, 529 (6th Cir. 2012); *Mixon v. Ohio*, 193 F.3d 389, 402 (6th Cir. 1999) (same); *see also Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010) (explaining that strict scrutiny is appropriate if state action treating persons differently infringes on a class of people's fundamental rights); *In re Ohio Execution Protocol Litig. (Lorraine)*, 840 F. Supp. 2d 1044, 1054 (S.D. Ohio 2012).

Under strict scrutiny, state action is presumptively unconstitutional, and must be enjoined—*e.g.*, by a prohibitory injunction—or required—*e.g.*, by a mandatory injunction—if the subject state action is not necessary to achieve a compelling state interest. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432,

16

440 (1985).  In the context of this specific case, "[w]hat this means is that any core deviation from the protocol is permissible only if it is narrowly tailored to a compelling governmental interest."  *Lorraine*, 840 F. Supp. 2d at 1054.

Jackson can satisfy the requisite showings regarding Defendants' use of expired execution drugs.

First, he can show unconstitutional policy based on the decisions of the "highest officials responsible for setting policy" regarding executions, namely the Director of ODRC and a Rule 30(b)(6) representative of ODRC whose testimony represents the binding policy position of that agency.

Here, not one but two Directors of ODRC made the decision that Ohio would not use expired execution drugs.  According to sworn testimony from Defendant Edwin Voorhies Jr., former Director Ernie Moore had instructed that expired execution drugs would not be used.  *Cooey (Smith) v. Kasich*, 801 F. Supp. 2d 623, 641 (S.D. Ohio 2011) ("[Deputy Director Edwin Voorhies] also testified that Ohio had also rejected the option of compounding drugs or using expired drugs that had been given an extended expiration date."); *see also* Hr'g Tr., *Cooey (Smith) v. Strickland*, No. 2:04-cv-1156, ECF No. 945, PageID 25873 (Jul. 7, 2011).  Furthermore, former Director Gary Mohr had stated to Judge Frost in sworn open court testimony, on more than one occasion, that Ohio would not use expired execution drugs.  *See, e.g., Brooks*, 2011 U.S. Dist. LEXIS 128192, at *28–30; *see also* Hr'g Tr., *Cooey (Brooks) v. Kasich*, No. 2:04-CV-1156, ECF No. 1054, PageID 30080–81; (*see also* Hr'g Tr., *In re Ohio Execution Protocol Litig. (Wiles)*, ECF No. 106, PageID 5091–92).  As the Court

17

found, Director Mohr "testified that the use of expired drugs is 'unconscionable' to him and would fly in the face of every policy behind the protocol." *Brooks*, 2011 U.S. Dist. LEXIS 128192, at *29.  On direct examination from his own counsel, Director Mohr testified that "I will tell you that we are not going to use expired drugs."  Hr'g Tr., *Cooey (Brooks) v. Kasich*, No. 2:04-CV-1156, ECF No. 1054, PageID 30080–81.  He also testified that "to legally, constitutionally end a life does not allow for exceptions like an expired drug.  It is just -- it's unconscionable to me."  *Id.* at PageID 30081.

Defendant Director Mohr similarly testified at the *Wiles* hearing:

Q. Okay. Now, you've testified that there would be no deviations from the four core elements, right?[5]

A. Yes.

Q. And that includes core requirement number 2, that only the drugs specified in the policy will be used?

A. Yes.

* * *

Q. Would using expired drugs be a violation of requirement number 2?

A. Yes.

(Wiles Hr'g Tr., ECF No. 106, PageID 5092–93.)  Director Mohr also testified that the law regarding the execution drugs must be followed.  (*See, e.g.*, *id.* at PageID 5092–93 (stating that Core Element # 2 requires not only the specific

---

[5] Although 01-COM-11 has been revised since the *Wiles* proceedings, in part to formalize Core Element # 5, Core Element # 2 remains unchanged in the current version of 01-COM-11: "The drugs required by this policy shall be used."  (ECF No. 667-1, PageID 19815.)

18

identities of the execution drugs, but also that DRC is to follow the law regarding those drugs).)

In other words, Director Mohr's testimony was not about specifics of how an execution should be done that are not part of the Protocol. *See Tibbetts & Campbell*, 2017 U.S. Dist. LEXIS 182406, at *95–96 (noting that Director Mohr's testimony about the specific number of consciousness checks that will be performed "does not become a part of the Protocol"). Rather, his testimony was about the crucial meaning of what the protocol's most important provisions actually mean, what they permit and what they don't. That testimony from Director Mohr established that expired execution drugs are *not* "the drugs required by" 01-COM-11, and that it is the status of the drugs as expired that makes them so because using expired drugs would be illegal. And, once again, variations from Core Elements # 1–5 are constitutionally impermissible.

Thus, in sum, the binding, official policy, accepted by this Court and applicable here, is two-fold: 1) there can be no variations from Core Elements # 1-5, and 2) Core Element # 2 does not permit Ohio to use expired drugs to carry out an execution. Indeed, to defeat a previous Equal Protection claim by a previous Plaintiff in this consolidated litigation, "the Court accept[ed] Mohr's testimony that Ohio will not use expired drugs even if the written protocol does not explicitly preclude such action." *Brooks*, 2011 U.S. Dist. LEXIS 128192, at *28–29. That assurance from former Defendant Director Mohr meant that "Ohio is now bound by the representation its agent has made to this Court" as

19

to what Core Element # 2 means.  *In re Ohio Execution Protocol Litig. (Phillips)*, No. 2:11-cv-1016, 2013 U.S. Dist. LEXIS 159680, *47 (S.D. Ohio Nov. 7, 2013) (quoting *Brooks*, 2011 U.S. Dist. LEXIS 128192, at *29).

By contrast, however, Defendants now have taken an official policy provision that would treat similarly situated inmates differently, and discard the sworn representations of non-deviation variance from Core Element # 2. Under new DRC leadership, lethal injection executions may apparently proceed using the State's stock of expired drugs.  At recent depositions taken by Plaintiff Jackson, senior ODRC officials admitted that they would be willing to proceed with an execution using the midazolam three-drug protocol making use of the expired drugs that the agency has in its possession.

Defendant ODRC Director Annette Chambers-Smith testified under oath that she could authorize an execution using expired drugs, and that she was "not ruling out" a discussion with the Governor about going forward with such an execution.  (Dep. Tr., ECF No. 2431-1, PageID 116601–02.)  When asked about her knowledge of former Director Gary Mohr's promise never to use expired drugs in an execution, she stated that she "would need to review" such statements before committing to following them.  (*Id.* at PageID 116602–03.)

Perhaps most troubling, however, was testimony by Defendant Warden Ron Erdos, appearing on behalf of ODRC as a Rule 30(b)(6) representative, providing binding testimony about the State's official positions.  He testified that "[i]t's possible" that ODRC would make use of expired execution drugs. (Rough transcript, at 106–08).  He also testified not just that DRC "could" use

expired execution drugs, but that DRC "potentially" *would* use "expired execution drugs for any execution currently scheduled." (*Id.* at 122–23.) And most disconcerting of all, he was unequivocal that any promises made by Director Mohr to the contrary do *not* still stand, and that such promises "can be changed depending on who's in charge." (*Id.* at 108.)

That variable approach to applying the law, based solely on the whims of DRC leadership—not a change or amendment to 01-COM-11—is the essence of impermissible disparate treatment under the law. Core Element # 2 is the "policy of the State of Ohio as expressed in 01-COM-11." *Tibbetts & Campbell*, 2017 U.S. Dist. LEXIS 182406, at *89. And, based on the testimony of the "highest officials responsible for setting policy," it is now apparently the official policy that Ohio will disparately apply the law by permitting the use of expired execution drugs in contravention to Core Element # 2.

As this Court explained in *Tibbetts & Campbell*, "if [Jackson] ha[s] shown that there was a custom or practice of ignoring the policy or if [he] had shown the person responsible for making the policy . . . had in effect told staff to ignore" Core Element # 2's prohibitions, he "might have made out a case" of an Equal Protection violation. 2017 U.S. Dist. LEXIS 182406, at *89. That is what he has done here. Or, to paraphrase Judge Frost, we are once again back in the situation where "[i]t is the policy of the State of Ohio that the State follows its written execution protocol, except when it does not. This is nonsense." *Smith*, 801 F. Supp. 2d at 624.

21

Jackson is similarly situated with other condemned inmates subject to execution at Defendants' hands merely by sharing the singular characteristic that they are all subject to execution under Defendants' policy.  *See Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (explaining that in assessing the "similarly situated" inquiry, "courts should not demand exact correlation, but should instead seek relevant similarity" (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))).

Jackson will be treated disparately due to Defendants' variations or deviations from Core Element # 2, which Defendants have previously testified and this Court previously accepted as binding on Defendants, and which flatly prohibits the use of expired execution drugs.  *Brooks*, 2011 U.S. Dist. LEXIS 128192, at *28–29.  This is not a low-level employee mistakenly or negligently failing to follow official state policy; this is an apparently new state policy or custom to apply the law differently depending on who is in charge at a given moment, and to disregard the binding provisions of 01-COM-11.  These are policy decisions set by the highest officials responsible for setting policy in this area, a direct consequence of which is the unconstitutional governmental policy of disparate treatment of similarly situated individuals.

Defendants Chambers-Smith and Erdos as the Rule 30(b)(6) DRC representative suggested that a provision of 01-COM-11 permitting analytical testing of execution drugs somehow authorizes using expired drugs.  But that provision—found on page 6 of 01-COM-11, (*see* ECF No. 667-1, PageID 19817)—is only prescribed as to compounded execution drugs.  Testing of "a

22

sample of non-compounded Execution Drugs" is totally discretionary, at the Director's choosing. In other words, that paragraph is not mandatory as to expired execution drugs, contrary to Defendants' apparent belief, and it does not remediate the unconstitutional deviation from Core Element # 2 that, by Defendants' own sworn testimony, using expired execution drugs constitutes. Analytical testing does not change the nature of the drugs from expired drugs, the dispensing of which is unlawful under federal and state law, the use of which would "fly in the face" of carrying out a legal, constitutional execution and which is thus prohibited by Core Element # 2, to unexpired drugs that can be lawfully and properly used under Core Element # 2.

Having demonstrated intentional state action properly attributable to the State under *Monell* through the words of Defendants Chambers-Smith and Erdos, and that such action treats Jackson disparately from others, he must also show only that the disparate treatment burdens his Eighth Amendment right by increasing the risk he will suffer severe pain and needless suffering. *Tibbetts & Campbell*, 2017 U.S. Dist. LEXIS 182406, at *81. And he can satisfy this showing as well.

As Judge Frost previously explained, deviation from any of the Core Elements is presumptively a constitutional violation, because (1) the written execution protocol is the prophylactic safeguard that protects the inmate from unconstitutional pain and suffering during an execution; and (2) non-compliance with the Core Elements means that the entire protocol is nothing more than suggestions, and thus protective of nothing. *Smith*, 801 F. Supp. 2d

at 653 ("But core deviations that introduce uncertainty and eliminate safeguards meet neither of these state interests [in "[C]ompleting executions in a constitutional manner" or "[C]ompleting them in a manner that ensures their humane nature"] nor any other combination of legitimate interests of which this Court can conceive."); *id.* at 643–44 (discussing the apparent change from a "controlling set of mandates" to "an advisory compilation of guidelines subject to being ignored," a "sea change in the characterization and treatment of the written protocol" that "is significant"); *see also Lorraine*, 840 F. Supp. 2d at 1056. When deviations or variations from the Core Elements of 01-COM-11 are permitted, those are "substantive departures from some of the most fundamental tenets of Ohio's execution policy. These tenets or core components embody concerns that cannot be disregarded." *Smith*, 801 F. Supp. 2d at 645. The Core Elements of 01-COM-11 are the "core components of the protocol that safeguard[] the constitutionality of Ohio's execution process." *Lorraine*, 840 F. Supp. 2d at 1058. As such, variations or deviations from those Core Elements unconstitutionally "punctures" those core provisions. *Id.*

Variations or deviations from those core components, in turn, increases the risk of pain and suffering to which Jackson is subjected, thereby burdening his Eighth Amendment right against suffering cruel and unusual punishment. Deviations or variations from the Core Elements "at least burden Plaintiff's fundamental right by negating some of the precise procedural safeguards that this Court and the Sixth Circuit heralded" previously. *Smith*, 801 F. Supp. 2d

24

at 653.  Strict scrutiny therefore applies, Defendants' use of expired execution

drugs is presumptively unconstitutional, and Defendants cannot show that

using expired execution drugs is narrowly tailored and necessary to accomplish

a compelling state interest.  *Cf. Smith*, 801 F. Supp. 2d at 652–53 ("This means

that Defendants' core deviations are permissible only if they are narrowly

tailored to a compelling governmental interest"; but "[m]ere pursuit of

administrative convenience that risks flawed executions is not a legitimate

state interest.").

Accordingly, Defendants' use of expired execution drugs to carry out

Jackson's execution would be a violation of the Fourteenth Amendment's Equal

Protection Clause.  This Court should enjoin Defendants from using any

expired execution drugs to carry out a lethal injection execution.

### D. The use of expired execution drugs reneges on past, sworn promises to this Court, and is barred by the doctrine of judicial estoppel.

Judicial estoppel is a common law doctrine against the calculated use of

inconsistent positions in litigation.  It protects the integrity of the judicial

process by prohibiting a party from gaining an advantage in litigation by

successfully advancing one theory and then seeking an unfair advantage by

later pursuing an inconsistent theory.  *See, e.g., New Hampshire v. Maine*, 532

U.S. 742, 749–50 (2001); *Reynolds v. Commissioner of Internal Revenue*, 861

F.2d 469, 472–73 (6th Cir. 1988).

In reviewing this claim, the Court should consider: (1) whether a party

has taken a position that is clearly inconsistent with its earlier position; (2)

whether the party succeeded in persuading the court to adopt its earlier
position; and (3) whether, in the absence of estoppel, the party seeking to
assert an inconsistent position would "derive an unfair advantage or impose an
unfair detriment on the opposing party[.]" *New Hampshire*, 532 U.S. at 750–
51.  Ultimately, the decision of whether to invoke judicial estoppel "lies within
the court's discretion." *Id.* at 750.

    The conduct giving rise to this estoppel claim is simple.  In 2010 and
2011, in the predecessor litigation with which this case was consolidated, and
whose docket entries are a part of this case, prior Plaintiffs argued that Ohio
would violate their constitutional rights if they were executed using expired
execution drugs.  Former ODRC Director Ernie Moore averred that Defendants
would not use expired or adulterated execution drugs.  Then ODRC Director
Gary Mohr testified that Ohio would not use expired drugs.  The Court relied
upon that representation:

> [T]he Court accepts Mohr's testimony that Ohio
> will not use expired drugs even if the written protocol
> does not explicitly preclude such action.
>
> This last portion of testimony is another
> unwritten practice or policy that serves to supplement
> the written protocol, and Ohio is now bound by the
> representation its agent has made to this Court.  The
> same applies to Mohr's representation that Ohio will not
> use imported drugs.  Granted, Mohr testified that there
> were no unwritten policies that were part of the
> execution policy, but this subjective assessment turns
> on perhaps a different use of terminology than that
> applied by this Court.  Mohr also testified that the use
> of expired drugs is "unconscionable" to him and would
> fly in the face of every policy behind the protocol.
> Numerous instances of state practices described herein
> qualify as such unwritten policies to this Court, some

26

> of which aid Defendants. Whether Mohr labels them
> unwritten policies is not important. What matters is
> that Ohio follows them and that they serve the interests
> of constitutionality, not detract from these interests.
>
> In light of the fact that the issue of Ohio's past
> use of expired drugs has been laid to rest and the
> binding concession presented to this Court, it would
> make sense for Ohio to promptly destroy the expired
> drugs and wholly obviate the risk that human error in
> recordkeeping or action will render this drugs of future
> concern in this or similar litigation.

*Brooks*, 2011 U.S. Dist. LEXIS 128192, at *28–30. Former Director Mohr

offered even more unambiguous testimony that Ohio would not use (and,

because such use would constitute an impermissible variation from Core

Element # 2, *could not* use) expired execution drugs during the *Wiles* hearing,

as discussed above; that testimony followed consolidation in this case.

The application of judicial estoppel is appropriate here. Defendants now

take a position that is clearly inconsistent with their earlier position, which was

unambiguously expressed under oath in open court multiple times.

Defendants succeeded in persuading this Court to adopt that position: the

Court accepted former Director Mohr's representations; it denied the Equal

Protection claim brought by former Plaintiff Reginald Brooks, and Mr. Brooks

was executed. And, if Defendants are now allowed to renege on their prior

promises, they would "derive an unfair advantage or impose an unfair

detriment" on Jackson. Had the prior claim been litigated in full, and an order

banning the use of expired drugs been entered by this Court, Defendants

would not now be able to claim the possibility of using such drugs. The fact

that they can, and do, demonstrates that they have gained a significant

27

advantage: Mr. Brooks is dead; his litigation was terminated; executions proceeded; and now Defendants seek to assert the option to resume practices which they previously forswore.  Similarly, Defendants gained a benefit from Director Moore's sworn affidavit, in that they no longer needed to produce discovery documents that Plaintiff Smith (who remains an active Plaintiff in this case and whose discovery requests would otherwise remain subject to an ongoing duty for Defendants to supplement) had requested.  Judicial estoppel is appropriate in these circumstances.

Nothing in the Sixth Circuit's recent en banc decision changes that analysis.  In that decision, the en banc court pointed out that those prior Plaintiffs were arguing about promises made regarding a three-drug protocol comprised of sodium thiopental, a paralytic, and potassium chloride.  This was a critical difference, the court explained, since "there is no reason to think that a trial about sodium thiopental would have affected [the midazolam] issue one way or the other."  *In re Ohio Execution Protocol*, 860 F.3d 881, 892 (6th Cir. 2017) (en banc).  Such is not the case here: a trial, in 2011, about the State's ability to use expired drugs would have yielded a result *precisely* on point for the present circumstances, since Defendants seek to return to precisely the same conduct as their previously renounced.

The en banc court also explained that a State's change in policy "in response to unforeseen circumstances" is "hardly the kind of inconsistency that warrants estoppel."  *Id.*  The en banc court made reference to unspecified "death-penalty opponents" who "successfully prevent Ohio . . . from obtaining

28

the drugs necessary to use the one-drug protocol," thus, in the court's view, forgiving the State's reversion to the use of a three-drug protocol. *See id.* Whatever the merits of this characterization, the same cannot be said here. No party has yet raised allegations that "death-penalty opponents" have made non-expired midazolam, paralytic, or potassium unavailable to Ohio, thus forcing it use expired drugs. To the contrary, testimony establishes that Ohio purchased supplies of those drugs as recently as January of this year. (*See* Dep. Tr. of Steven Knight, ECF No. 2415-1, PageID 116281.)

Whether the State would *want* to make such a purchase now, or whether voters would find such a purchase politically desirable, is entirely a different question. Judicial estoppel prohibits "'playing fast and loose with the courts'—that is, 'abusing the judicial process through cynical gamesmanship' by changing positions 'to suit an exigency of the moment.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 749–50). Putting aside the question of "gamesmanship," Defendants appear to be committing precisely the error the en banc court cautioned them against: changing positions to suit an exigency of the moment. This, the Court should not allow.

### III. Conclusion

Defendants' recent announcement that the use of expired execution drugs in a lethal injection execution is within their power, and that such use for Mr. Jackson cannot be ruled out, reverses multiple binding promises made to this Court under oath, violates numerous federal and state statutes and regulations, and deprives Jackson of his constitutional rights guaranteed

29

under the Eighth and Fourteenth Amendments.  This Court should not permit the State of Ohio to transgress federal law, state regulation, and its own binding promises.  The Court should hold the State to its promises, and enjoin the use of expired execution drugs in Mr. Jackson's education.

**Respectfully submitted this 3d day of September, 2019.**

Deborah L. Williams
Federal Public Defender

by

/s/ Allen L. Bohnert

and

**Allen L. Bohnert (0081544)**
Trial Attorney for Plaintiff Jackson

Richard Cline (0001854)
Chief Counsel
Death Penalty Department

and

David C. Stebbins (0005839)
Assistant Federal Public Defender
Supervising Attorney
Co-Counsel for Plaintiff Jackson

Randall L. Porter (0005835)
Assistant State Public Defender

Lisa M. Lagos (0089299)
Paul R. Bottei (TN 17036)
Adam M. Rusnak (0086893)
Assistant Federal Public Defenders
Co-Counsel for Plaintiff Jackson

Office of the Ohio Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio 43215-9308
Telephone: (614) 466-5394
Facsimile: (614) 644-0708
Richard.Cline@opd.ohio.gov
Randall.Porter@opd.ohio.gov
Co-Counsel for Plaintiff Jackson

Theodore C. Tanski (PA 314189)
Research & Writing Attorney
Co-Counsel for Plaintiff Jackson

and

Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, Ohio 43215
614-469-2999
614-469-5999 (fax)
Allen_Bohnert@fd.org
David_Stebbins@fd.org
Lisa_Lagos@fd.org
Paul_Bottei@fd.org
Adam_Rusnak@fd.org
TC_Tanksi@fd.org

James A. King (0040270)
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, Ohio 43215
614-227-2051
614-227-2100 (fax)
Email: jking@porterwright.com
Co-Counsel for Plaintiff Jackson

**Counsel for Plaintiff Jackson**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I electronically filed the

foregoing **Plaintiff Jackson's Supplemental Motion for Preliminary**

**Injunction Against the Use of Expired Execution Drugs** with the Clerk of the

United States District Court for the Southern District of Ohio using the

CM/ECF system, which will send notification of such filing to the email

addresses of opposing counsel that are on file with the Court.

/s/ Adam M. Rusnak
**Adam M. Rusnak**
Co-Counsel for Plaintiff Jackson