# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| IN RE: OHIO EXECUTION PROTOCOL LITIGATION | : | Case No. 2:11-cv-1016 |
| | : | Chief Judge Edmund A. Sargus, Jr.<br>Magistrate Judge Michael R. Merz |
| This document relates to:<br>  Plaintiff James Hanna, | : | |

## DECISION AND ORDER DENYING MOTION TO TRANSPORT

This § 1983 method of execution case is before the Court on Petitioner James Hanna's Motion to Transport and for Order Authorizing Neuroimaging (ECF No. 2436). Defendants have filed a memorandum *contra* (ECF No. 2477), and Hanna has filed a reply in support (ECF No. 2484).

The Motion was filed after Douglas Scharre, M.D., Director of the Division of Cognitive Neurology and a Professor of Clinical Neurology and Psychiatry at The Ohio State University, reviewed Hanna's neurological history. His declaration (ECF No. 2436-3) and curriculum vitae are attached to the Motion (ECF No. 2436-4). Hanna states that "[t]he Office of the Federal Public Defender for the Southern District of Ohio will be responsible for all costs related to this testing and subsequent interpretation." (Motion, ECF No. 2436, PageID 117180-81).

As a non-dispositive pre-trial matter, the Motion is within the initial decisional authority of an assigned Magistrate Judge.

1

**Jurisdiction**

As authority for the requested order, Hanna argues that through his Third Amended Individual Supplemental Complaint, in which he alleges that his brain damage will cause a "paradoxical reaction" to the 500 mg of midazolam in the State's lethal injection protocol (ECF No. 2396, PageID 115223-24, ¶¶ 1899-1901), he has shown the requested neuroimaging "to be relevant to the issues now pending before this Court." (Motion, ECF No. 2436, PageID 117185, citing Fed.R.Civ.P. 35(a)(1).). Yet, multiple Courts of Appeals have held a party may not use Rule 35 to order a physical examination *upon himself*, *Berg v. Prison Health Servs.*, 376 F. App'x 723, 724 (9th Cir. 2010), citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964); *Brown v. United States*, 74 F. App'x 611, 614 (7th Cir. 2003), and Hanna has cited no authority to the contrary.

Alternatively, Hanna argues that the Court has authority under the All Writs Act, 28 U.S.C. § 1651, to order his transport (Motion, ECF No. 2436, PageID 117185). In support, he notes that in *Elmore v. Shoop*, the undersigned concluded that under the All Writs Act this Court could order the transport of Petitioner Philip Elmore (who is also a Plaintiff in this case) as a matter ancillary to its undisputed jurisdiction to adjudicate his capital habeas corpus petition. *Id.*, citing 28 U.S.C. § 2241; No. 1:07-cv-776, 2019 U.S. Dist. LEXIS 84144, at *2 (S.D. Ohio May 20, 2019) (Merz, Mag. J.). Yet *Elmore* is a habeas case, and in a relatively recent, unpublished decision, a court in this District declined to order transport of a plaintiff in support of his section 1983 claim, holding that such an order "is not authorized by either the habeas corpus statute or the All Writs Act." *Wilson v. Hill*, No. 2:08-cv-552, 2011 U.S. Dist. LEXIS 45717, at *5 (S.D. Ohio Apr. 27, 2011) (King, Mag. J.), citing *Ivey v. Harney*, 47 F.3d 181 (7th Cir. 1995).

Petitioner argues that *Wilson* is itself inapposite, noting that it "was a decision on a motion to quash a subpoena after finding that the expense to be borne by [the Ohio Department of Rehabilitation and Corrections] would be an undue burden" (Reply, ECF No. 2484, PageID 127435, citing Fed.R.Civ.P. 45(c)(3)(A)(iv); *Wilson*, 2011 U.S. Dist. LEXIS 45717, at *4-5). However, nothing in the *Wilson* opinion suggested that the analysis was limited to the Rule 45 context, and in *Ivey*, the Defendant Illinois "Department of Corrections . . . appealed, as a custodian ordered to produce its prisoner may do even though the litigation between the parties continues." 47 F.3d at 183. The *Wilson* Court's narrow analysis is consistent with the Supreme Court's jurisprudence since the case of *United States v. New York Telephone Co.*, 434 U.S. 159 (1977): "Since *New York Telephone,* however, the Supreme Court has limited the scope of the All Writs Act." *Hodges v. Bell*, 170 F. App'x 389, 394 (6th Cir. 2006), citing *Syngenta Crop Protection, Inc.*, 537 U.S. 28 (2002); *Penn. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34 (1985).[1] Finally, Hanna cites no case in which a transport order under the All Writs Act was granted (or in the case of *Ivey*, upheld) for a section 1983 plaintiff.

In light of the above, and mindful that a district court should not lightly infer any implicit expansion of its limited jurisdiction, *see Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011), the Court concludes that it is without jurisdiction to order transport, and denies the Motion.

---

[1] Moreover, in the recent lethal injection case of *Irick v. Mays*, the district court denied Plaintiff's motion for leave to serve a subpoena *duces tecum*, pursuant to the All Writs Act, to compel "independent testing of the compounded lethal injection chemicals and . . . discovery of the results." No. 3:18-cv-737, 2018 WL 3753208 (M.D. Tenn. Aug. 8, 2018).

**Undue Delay**

In their memorandum *contra*, Defendants claim that because Hanna's trial attorneys "presented the testimony of a psychologist who opined that [Hanna] has brain damage and neurological disorders, . . . he has had knowledge of this potential medical claim for approximately twenty years," yet he has never before sought requested testing. (ECF No. 2477, PageID 127413). Moreover, they argue that Hanna's "brain damage Eighth Amendment claim" is not new, but rather, was set forth in his *Second* Amended Individual Supplemental Complaint ("SAISC:"), filed on April 28, 2018. *Id*., citing SAISC, ECF No. 1501. Given the Supreme Court's recent statement in *Bucklew v. Precythe* that district courts must "police carefully against" unjustified delays in death penalty motion practice, they argue that Hanna's Motion should be denied on the basis of undue delay as well. *Id*., quoting 139 S.Ct. 1112, 1134 (2019).

In his reply, Hanna states that he will disclose the results of the neuroimaging to Defendants as soon as possible after the testing is conducted, likely before the end of September. Thus, he argues, Defendants will have plenty of time to evaluate the results in preparation for litigating Hanna's Motion for Preliminary Injunction, as his execution date "is still three months away[,]" (Reply, ECF No. 2484, PageID 127436). Further, he claims that "[a]ny argument that Defendants might make about the timing of Hanna's submission of neuroimaging evidence to this Court is an argument to be made later (if at all), *after* Hanna has received the neuroimaging." *Id*. (emphasis in original). Moreover, he argues that Defendants' undue delay argument is "disingenuous at best[,]" as it "ignores the practical realities of how the litigation in this complex, consolidated litigation has been conducted by *both* sides[,]" *id*. at PageID 127437 (emphasis in original), and that "Defendants' timeliness argument here is essentially arguing that any inmate who claims

4

medical issues that might require testing must request transport and testing at the time he files an amended complaint." *Id*. "That [added complexity], too, militates against accepting Defendants' timeliness arguments here." *Id*. at PageID 127438.

In the SAISC, Hanna alleged a history of brain damage that renders him sure or very likely to experience the serious harms alleged throughout the SAISC as a result of the State's current protocol (ECF No. 1501, PageID 61322, ¶¶ 1899-1900). He even alleged that "his mental/psychological characteristics alleged above create a sure or very likely risk that Plaintiff will have a paradoxical reaction to the execution drug(s)." *Id*. at PageID 61323, at ¶ 1901. The allegations in the Third Amended Individual Supplemental Complaint (ECF No. 2396, PageID 115223-24, ¶¶ 1899-1901), go into greater detail about the nature of Hanna's brain injury and why he believes a paradoxical reaction will occur, but do not differ in substance. Yet, Hanna does not explain why he did not know or should not have reasonably known of the need for neuroimaging when the SAISC was filed in April 2018.

Moreover, Hanna is correct that this litigation does not occur in a vacuum. Philip Elmore, Hanna's co-Plaintiff in this case and also represented by Paul Bottei and the Federal Public Defender, filed his Motion to Transport on February 28, 2019 (Case No. 1:07-cv-776, ECF No. 169). In his Supplemental Briefing, Elmore stated that he would be examined by Dr. Scharre, who had been retained by the Federal Public Defender evaluate his brain injury (Case No. 1:07-cv-776, ECF No. 171, PageID 13064). In other words, Hanna's testing would be done by the same doctor who was contracted to do the testing for Elmore, and who would be paid from the same source for the testing on both of them. Yet, Hanna did not file his Motion until almost six months after Elmore filed his similar motion; Hanna gives no reason for that delay, either. Finally, Hanna argues that, unlike the petitioner in *Bucklew*, "the merits of this case have not been reached because

the parties and the Court have been entirely occupied litigating injunctive relief matters over a seemingly never-ending string of execution dates—dates that are controlled by Defendants alone." (Reply, ECF No. 2484, PageID 127438). Yet, Hanna has known of his execution date since September 1, 2017 (Warrant of Reprieve, ECF No. 1193-1, PageID 44498). In sum, Hanna has not shown good cause as to why he has waited so long to move for leave to obtain new evidence, and even if this Court would be found to have jurisdiction, his Motion would be denied on the grounds of undue delay as well.[2]

**Conclusion**

Based on the foregoing analysis, the Motion to Transport is DENIED.

September 17, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[2] Moreover, although not raised by the parties, the recent decision in *In re Ohio Execution Protocol Litig. (Henness)* upholding the use of midazolam in the State's lethal injection protocol, --- F.3d ----, 2019 U.S. App. LEXIS 27365 (6th Cir. Sept. 11, 2019), renders dubious any claim by Hanna that the evidence sought will be useful in adjudicating his Motion for Preliminary Injunction.