# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

IN RE: OHIO EXECUTION : Case No. 2:11-cv-1016
PROTOCOL LITIGATION

                                                                  Judge Edmund A. Sargus, Jr.
: Magistrate Judge Michael R. Merz

This document relates to:
  Plaintiffs James Hanna and Melvin Bonnell.    :

## SUPPLEMENTAL OPINION ON THE MOTION *IN LIMINE* TO EXCLUDE JOSEPH ANTOGNINI, M.D.

This § 1983 case is before the Court on Plaintiff Cleveland Jackson's Motion *in Limine* to Exclude and/or Limit the Testimony of Defendants' expert Joseph F. Antognini, M.D. (Antognini Motion, ECF No. 2318). After that Motion was filed, the Magistrate Judge consolidated the injunctive relief hearings of Melvin Bonnell, James Hanna, Cleveland Jackson, and Kareem Jackson (Scheduling Order, ECF No. 2378) and ordered a hearing under Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) (ECF No. 2385). During a status conference on August 26, 2019, the Magistrate Judge stated that the hearing would cover Bonnell, Hanna, and Cleveland Jackson (Trans., ECF No. 2423, to be released publicly Nov. 29, 2019). The Court heard live testimony from Dr. Antognini on September 9, 2019 (Hearing Trans., ECF No. 2534). On September 19, 2019, the Magistrate Judge issued a Decision and Order Denying the *Motion in Limine* (Antognini Order, ECF No. 2513). As Cleveland Jackson and Defendants had consented to plenary Magistrate Judge jurisdiction for all matters related to his Motion for Preliminary Injunction (ECF No. 2242), the Antognini Order, as it pertains to Cleveland Jackson, is not appealable prior to final judgment. 28 U.S.C. § 636(c). On September 20, 2019, Bonnell

1

and Hanna, as to whom there is not unanimous consent, appealed the Antognini Order to Judge Sargus (Hanna Appeal, ECF No. 2525; Bonnell Appeal, ECF No. 2528[1]), and on September 26, 2019, Judge Sargus recommitted the matter to the Magistrate Judge for reconsideration in light of the objections (Recommittal Order, ECF No. 2555). Defendants filed a combined memorandum in opposition (ECF No. 2536), and after obtaining leave of Court, Hanna filed a reply (ECF No. 2556).

**Jurisdiction**

In their memorandum *contra*, Defendants assert that "the district court does not have jurisdiction over Hanna and Bonnell's purported objections and appeal." (Memo. in Opp., ECF No. 2536, PageID 129545). In support, they argue that "[n]either Hanna nor Bonnell joined in the motion in limine" and that "[w]hile the hearing on Hanna and Bonnell's motions for preliminary injunction were consolidated with the hearing for Cleveland Jackson, that consolidation was for the purposes of hearing only." *Id*. at PageID 129544, citing Scheduling Order, ECF No. 2378. Not so. As discussed above, the injunctive relief proceedings were consolidated *in toto* for Bonnell, Hanna, and Cleveland Jackson, and specifically the *Daubert* proceeding. Thus, Bonnell and Hanna's Appeals are proper under 28 U.S.C. § 636(b).

---

[1] In his Appeal, Bonnell stated that he "joins and adopts the Objections to and Appeal filed by Plaintiff James Hanna[,]" (ECF No. 2528, PageID 128948, citing ECF No. 2525), and indeed, the documents appear to be virtually identical. Accordingly, any references to Hanna's Appeal applies to both Bonnell and Hanna unless otherwise expressly stated.

**Interpretation of *Henness***

The gravamen of Hanna and Bonnell's objections to the Antognini Order is that the Magistrate Judge erred in his interpretation of the opinion of the United States Court of Appeals for the Sixth Circuit in *In re: Ohio Execution Protocol Litig. (Henness v. DeWine)*, 937 F.3d 759 (6th Cir. 2019), for several reasons (Hanna Appeal, ECF No. 2525, PageID 128927). *First*, he argues that "it appears the Magistrate Judge reads *Henness* to conclusively determine that Ohio's three-drug midazolam protocol can never be shown to be unconstitutional." *Id*. at PageID 128930. That argument is belied by the Court's admission and consideration of voluminous evidence in connection with the preliminary injunction motions of Bonnell, Hanna, and Cleveland Jackson (*See, e.g.*, Notation Orders, ECF Nos. 2543-47). The Court would not go through the process of admitting and considering the evidence if it had concluded that, as a matter of law, an inmate could *never* meet the first prong of *Glossip v. Gross*, 135 S.Ct. 2726 (2015), with respect to Ohio's current execution protocol.

*Second*, Hanna argues that the Magistrate Judge clearly erred in concluding that "the issue of whether midazolam can induce analgesia at any dose, or the extent to which it can suppress consciousness, is no longer properly before the Court in light of . . . *Henness*[.]" (Hanna Appeal, ECF No. 2525, PageID 128927, quoting Antognini Order, ECF No. 2513, PageID 128356). He claims that the paralytic and potassium chloride, the second and third drugs, respectively, in Ohio's protocol, have been held to cause unconstitutional pain unless a drug can subjectively alter the experience of pain from those drugs. *Id*. at PageID 128928, citing *Henness*, 937 F.3d at 762; *Fears v. Morgan*, 860 F.3d 881, 886 (6th Cir. 2017) (en banc). Thus, he claims that, because the Sixth Circuit's view is that "midazolam can 'alter[] an inmate's ability to subjectively experience pain,

3

. . .the relevant inquiry is whether an inmate injected with 500 milligrams of midazolam would subjectively experience' that same level ('severe') of pain." *Id*. at PageID 128989 (brackets in original), quoting *Henness*, 937 F.3d at 762. Consequently, he argues, "evidence about whether midazolam can induce analgesia at any dose, or the extent to which it can suppress consciousness is still directly relevant to questions that remain in dispute in this case, contrary to the Magistrate Judge's assessment." *Id*. (internal quotation marks omitted).

In *Henness*, the Sixth Circuit held that while:

> To be sure, the bulk of Henness's evidence focuses on the fact that midazolam is incapable of rendering an inmate insensate to pain. But "the Eighth Amendment does not guarantee a prisoner a painless death," so it is *immaterial* whether the inmate will experience *some* pain—as noted, the question is whether the level of pain the inmate subjectively experiences is constitutionally excessive.

937 F.3d at 762 (emphasis added), quoting *Bucklew v. Precythe*, 139 S.Ct. 1112, 1124 (2019). It is difficult to read the Sixth Circuit's holding as meaning anything other than that analgesia—the absence of sensation of pain—is immaterial with respect to the first prong of *Glossip*. Moreover, in light of *Henness*, the issue of whether midazolam sufficiently suppresses consciousness also is not dispositive as to whether an inmate would subjectively experience unconstitutional pain. After all, the Sixth Circuit had before it evidence that midazolam would do nothing to reduce the pain felt by the second and third drugs, including David J. Greenblatt, M.D.'s testimony that "once you choose midazolam, *you lose*." (Henness Hearing Trans., ECF No. 2113, PageID 104217 (emphasis added). Yet, the panel barely discussed such evidence in its opinion, and instead relied on the fact that "midazolam is sometimes used alone for intubation" to conclude that midazolam can prevent an inmate from subjectively experiencing pain that "is constitutionally excessive." *Henness*, 937 F.3d at 762 (internal quotation marks omitted), quoting *Fears*, 860 F.3d at 888. Accordingly, Hanna and Bonnell's objections to that effect are not well-taken.

4

*Third*, Hanna argues that the Magistrate Judge's reasoning that "'whether the movements are actually indicia of pain is immaterial to the Court's analysis'" . . . is "the most striking example of the Magistrate Judge's erroneous reading of *Henness*." (Hanna Appeal, ECF No. 2525, PageID 128934 (emphasis removed), quoting Order Denying Motions, ECF No. 2513, PageID 128362). He claims that his proffered evidence "will establish that movements demonstrated by inmates during their executions with midazolam protocols are sure or very likely to be expressions of severe pain. . . . That evidence solidifies the proof that the condemned individuals are, in fact, indeed experiencing pain at a severe, unconstitutionally high level." *Id*. at PageID 128935. Moreover, "where Dr. Antognini completely ignores this critical evidence—as he conceded he has, in his *Daubert* hearing testimony—his opinion evidence is unreliable and should be excluded." *Id*. at PageID 128935-36.

The transcript of the *Daubert* hearing for Dr. Antognini was docketed on September 23, 2019 (ECF No. 2534). Yet, nowhere in Hanna's briefing does he state where in the *Daubert* testimony Dr. Antognini conceded that he ignored the evidence that the movements demonstrated by inmates were indicia of severe pain, despite his Reply's not being filed until after that date. Moreover, the Court has admitted and will consider the evidence discussed above. The admission and consideration of that evidence—similar to that which was before the Sixth Circuit in *Henness*—does not necessarily require the exclusion of Dr. Antognini's contrary opinions.

*Finally*, Hanna argues that Dr. Antognini's opinions "are 'misleading junk science' that is precisely the type of expert testimony that Federal Rule of Evidence 702 and *Daubert* are intended to screen out." (Hanna Appeal, ECF No. 2525, PageID 128930, citing *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011); *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009)). During the *Daubert* hearing, counsel for Hanna walked Dr. Antognini through nearly-

5

identical portions of the Fourth through Eighth Editions of *Miller's Anesthesia* (Hearing Trans., ECF No. 2534, PageID 129063-83), which stated that "[m]idazolam is the benzodiazepine of choice for use in anesthetic induction," and that "[b]enzodiazepines lack analgesic properties and must be used with other anesthetic drugs to provide sufficient analgesia[.]" *See, e.g.*, *id*. at PageID 129083. Yet, while Dr. Antognini testified that the book "is preeminent in the field" of anesthesiology, *id*. at PageID 129063, he also reiterated his prior testimony that "it didn't undergo really strict peer review like a journal article would." *Id*. at PageID 129084. Moreover, on re-direct examination, Dr. Antognini testified that the statement at issue in *Miller's Anesthesia* "from 1990 to the present edition is unreferenced. There is no reference attached to that statement." *Id*. at PageID 129209. The lack of external verification undercuts Plaintiffs' argument that any opinion differing from the statement at issue in *Miller's Anesthesia* is necessarily "junk science." In light of the above, the Court need not exclude Dr. Antognini's opinions *in toto*. Rather, the extent to which those opinions are outside the scientific consensus is properly considered in the weight to be assigned to those opinions.[2]

**Materiality of New Evidence**

In their memorandum *contra*, Defendants argue that the new evidence offered by Bonnell, Hanna, and Cleveland Jackson is not material, and is instead comprises nothing more than "a few more autopsies that purportedly evidence pulmonary edema, and a few more non-medical witness observations that are for all intents and purposes the same as the observations testified to in

---

[2] Historically, the Magistrate Judge has accorded little weight. *See In re: Ohio Execution Protocol Litig. Henness*, 2019 U.S. Dist. LEXIS 8200, at *224 (discounting Dr. Antognini's opinions regarding midazolam vis-à-vis the opinions of Dr. Greenblatt).

6

*Henness*." (Memo. in Opp., ECF No. 2536, PageID 129547). Hanna counters that "there is new expert opinion evidence that directly and unambiguously answers the 'relevant inquiry' from *Henness*," and that "Dr. Greenblatt expressly addresses the arguments that Defendants raised *for the first time on appeal* in *Henness*." (Reply, ECF No. 2556 (emphasis in original), citing Greenblatt Report, ECF No. 2258, PageID 108793-98, 108802, 108806, 108813-14, ¶¶ 60-69, 82, 92, 116-17). The materiality of the evidence offered by Plaintiffs has only tenuous relevance to the issue of whether *Defendants'* expert should be excluded. The parties are reminded to limit their briefing to the relevant subject matter.

A major purpose of *Daubert* and its progeny and of the amendments to the Fed. R. Evid. 702 and 703 was to prevent juries from leaping to the conclusion that because a witness has been labeled an expert, his or her opinion should be accepted as determining the outcome of a case. In explaining the 2000 Amendments, the Evidence Rules Advisory Committee wrote:

> The amendment continues the practice of the original Rule in referring to a qualified witness as an 'expert.' This was done to provide continuity and to minimize change. The use of the term 'expert' in the Rules does not, however, mean that a jury should actually be informed hat a qualified witness is testifying as an 'expert.' Indeed there is much to be said for a practice that prohibits the use of the term 'expert' by both the parties and the court at trial. Such a practice "ensures that trial courts do not inadvertently put their stamp of authority" on a witness's opinion, and protects against the jury's being "overwhelmed by the so-called 'experts'." Hon. Charles Richey, Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials, 154 F.R.D. 537, 559 (1994) (setting forth limiting instructions and a standing order employed to prohibit the use of the term "expert" in jury trials).

Finding that Dr. Antognini is qualified to testify on the subject of anesthesiology in no way implies that the Magistrate Judge, sitting as a finder of fact in a preliminary injunction hearing, is likely to be "overwhelmed" by Antognini's testimony. Juries are not seated to hear preliminary

7

injunction proceedings. Given the vigorous cross-examination to which Dr. Antognini has been subjected in these proceedings and the focus of multiple Plaintiffs' experts in refuting his views, there is no error in allowing his opinion to be considered. He is qualified under Fed. R. Evid. 702, however much of an outlier his opinions on midazolam may be.

**Conclusion**

Based on the foregoing analysis, Hanna and Bonnell's Appeals are not well-taken, and the Magistrate Judge's Order Denying the Motion *in Limine* Excluding Dr. Antognini (ECF No. 2513) should remain in effect.

October 15, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge