# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re:  OHIO EXECUTION
 PROTOCOL LITIGATION,

:  Case No. 2:11-cv-1016

District Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

This Order relates to Plaintiff James Hanna

---

# REPORT AND RECOMMENDATIONS ON MOTION FOR
# PRELIMINARY INJUNCTION

---

This case is before the Court on Plaintiff James Hanna's Motion for Preliminary Injunction (ECF No. 2435).  Defendants opposed the Motion (ECF No. 2485) and Hanna filed a Reply in support (ECF No. 2494).  The Court admitted evidence on the Motion and heard oral argument on the Motion on September 24, 2019 (Transcript, ECF No. 2610).  The Magistrate Judge ordered Hanna to submit evidence in support of his individual "paradoxical reaction claim" (Supp. Opinion, ECF No. 2589), which he did on October 15, 2019 (Supp. Motion, ECF No. 2598).

Hanna's Motions are referred to the undersigned under 28 U.S.C. § 636(b) for a report and recommendations.[1]  The recommendations embodied herein, even if adopted, are not binding at trial on the merits or at future preliminary injunction proceedings in this consolidated case.  *United*

---

[1] Former Plaintiffs Ronald Phillips, Gary Otte, Raymond Tibbetts, Alva Campbell, Jr., and Robert Van Hook, and current Plaintiffs Warren Henness and Cleveland Jackson were referred under 28 U.S.C. § 636(c) upon unanimous consent of the parties.  However, there has not been unanimous consent as to subsequent Plaintiffs, so the reference reverts to 28 U.S.C. § 636(b).  A motion for preliminary injunction is a dispositive pre-trial motion withdrawn from Magistrate Judge decisional authority by the statute.

*States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2014), citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). The relevant pleadings are Plaintiffs' Fourth Amended Omnibus Complaint (ECF No. 1252), Defendants' Answer (ECF No. 2148), Hanna's Third Amended Individual Supplemental Complaint (ECF No. 2396), and Defendants' Answer (ECF No. 2453).

**Litigation History**

This case and its predecessors,[2] brought by most of Ohio's death row inmates, have been pending in this Court since very shortly after the Supreme Court allowed method-of-execution claims to be brought under 42 U.S.C. § 1983. *Nelson v. Campbell*, 541 U.S. 637 (2004). District Judge Gregory L. Frost managed this litigation from its inception until his retirement in May 2016. In December 2011, with the agreement of counsel, Judge Frost consolidated all lethal injection method-of-execution § 1983 cases in this District and set a trial date of August 13, 2012, but no trial has ever been held in this case or its predecessors. Since 2004 until his retirement, Judge Frost granted injunctive relief to some Plaintiffs and denied it to others, with varying results on appeal. The pattern has been one of hurried litigation of preliminary injunction motions, with executions when relief was denied either in this Court or on appeal, rendering moot the claims of those executed (*See, e.g.,* ECF Nos. 675, 1130, and 1251). There has never been a final judgment in the case; appeals have all been on the grant or denial of preliminary injunctive relief, except for a single certified interlocutory appeal of a protective order. *Fears v. Kasich*, 845 F.3d 231 (6th Cir. 2016).

---

[2]*Reynolds v. Kasich*, Case No. 2:10-cv-027; *Broom v. Kasich*, Case No. 2:09-cv-823; *Hartman v. Kasich,* Case No. 2:09-cv-242; and *Cooey v. Kasich,* Case No. 2:04-cv-1156.

There was a three-and-a half year hiatus in Ohio executions after that of Dennis McGuire on January 16, 2014. Concerned about obtaining drugs for use in executions, the Ohio General Assembly, at the urging of then-Attorney General (now Governor) R. Michael DeWine, adopted H.B. 663 (codified at Ohio Revised Code §§ 2949.221-2949.222, the "Secrecy Statute") to provide confidentiality to suppliers of execution drugs. Defendants subsequently sought a protective order in this case for that information. Judge Frost upheld the constitutionality of the new statutes, *Phillips v. DeWine*, 92 F. Supp. 3d 702 (S.D. Ohio 2015), granted the protective order (ECF No. 629, PageID 19409), certified that order for interlocutory appeal, and stayed this litigation pending appeal. *Id.* at PageID 19411-12.

Without awaiting the results of either of those appeals, Ohio announced a new execution protocol, 01-COM-11, effective October 7, 2016 (Notice, ECF No. 667), and scheduled executions at approximately one-month intervals to begin in January 2017 with former Plaintiff Ronald Phillips. The Court then vacated the litigation stay as to Plaintiffs Phillips, Raymond Tibbetts, and Gary Otte and set an aggressive schedule to prepare for a preliminary injunction hearing on those three Plaintiffs' motions in early January 2017. On November 2, 2016, the United States Court of Appeals for the Sixth Circuit held death row inmates lacked standing to attack Ohio's Secrecy Statute, affirming Judge Frost's dismissal of the attack on that legislation. *Phillips v. DeWine*, 841 F.3d 405 (6th Cir. 2016). The circuit court subsequently upheld Judge Frost's issuance of the protective order, referencing the Secrecy Statute as "an evidentiary data point for analysis only" and without endorsing it as a new federal privilege. *Fears*, 845 F.3d at 240.

After hearing five days of testimony in January 2017, this Court preliminarily enjoined the executions of Phillips, Tibbetts, and Otte. *In re Ohio Execution Protocol Litig.*, 235 F. Supp. 3d 892 (2017) (Merz, Mag. J.). Although affirmed by the hearing panel, 853 F.3d 822 (6th Cir. 2017),

that decision was reversed by the *en banc* Sixth Circuit. *Fears v. Morgan*, 860 F.3d 881 (6th Cir. 2017). Phillips was executed on July 26, 2017, the day after certiorari was denied by the Supreme Court. This Court denied Otte's renewed preliminary injunction motion (ECF No. 1168, denied at ECF No. 1226). He took no appeal and was executed September 13, 2017 (ECF No. 1251).

Plaintiffs Tibbets and Alva Campbell, Jr., then moved for preliminary injunctive relief (ECF Nos. 1261, 1262), which the Court denied. *In re Ohio Execution Protocol Litig.*, 2017 U.S. Dist. LEXIS 182406 (S.D. Ohio Nov. 3, 2017) (Merz, Mag. J.), *aff'd Campbell v. Kasich,* 881 F.3d 447 (6th Cir. 2018), *cert den. sub nom. Tibbetts v. Kasich,*139 S.Ct. 216 (2018). Campbell died of natural causes in March 2018, and then-Governor John R. Kasich, Jr., commuted Tibbets's sentence to life without parole in July 2018.

In August 2018, the Court adopted a schedule for preliminary injunction proceedings in the case of Plaintiff Warren Henness (ECF No. 1914). The Court took four days of testimony December 11-14, 2018 (Transcripts, ECF Nos. 2112, 2113, 2117, and 2120), and in a lengthy opinion, denied preliminary injunctive relief. *In re Ohio Execution Protocol Litig. (Henness),* 2019 U.S. Dist. LEXIS 8200 (S.D. Ohio Jan. 14, 2019) (Merz, Mag. J.). Based on the extensive expert testimony presented, the Court found that the initiatory drug in Ohio's current execution protocol, a 500 mg dose of midazolam administered in a bolus by peripheral intravenous injection, was sure or very likely to cause severe pain by causing pulmonary edema which would cause the inmate to suffer symptoms similar to those caused by waterboarding before being paralyzed by the second drug and then being killed by the third drug, potassium chloride, which causes cardiac arrest. The Court denied injunctive relief, however, because it found Henness had not met the second prong of *Glossip v. Gross*. *Id*. at * 247-48, citing 576 U.S. ___, 135 S.Ct. 2726 (2015).

The Court, on February 6, 2019, adopted a schedule for litigating any preliminary injunction motion that might be filed by Plaintiff Cleveland Jackson, who, at the time, was the next inmate scheduled to be executed (Scheduling Order, ECF No. 2154).

In January 2019, Mike DeWine became Governor   Shortly after taking office, he announced that Ohio would not continue to use the three-drug midazolam-initiated protocol that has been in place since October 7, 2016.  He reprieved Henness's execution to a later date (Warrant of Reprieve, ECF No. 2146-3) and instructed the Ohio Department of Rehabilitation and Corrections, now directed by his appointee, Defendant Annette Chambers-Smith, to prepare a new protocol.  *In re: Ohio Execution Protocol Litig. (Henness)* (hereinafter *Henness v. DeWine*), 937 F.3d 759, 763 (6th Cir. 2019), citing Andrew J. Tobias, *Gov. Mike DeWine Freezes All Ohio Executions While New Method Developed*, Cleveland.com (February 19, 2019), https://perma.cc/2HUL-HBUG (last accessed Oct. 24, 2019).  At the same time, David A. Yost succeeded DeWine as Ohio Attorney General and became responsible for representing Defendants in both this litigation and the pending Henness appeal.

Both Plaintiffs' counsel and the Court took Governor DeWine's statement as announcing state policy.  On that basis, Henness filed a motion to extend the briefing schedule in the Sixth Circuit (Case No. 19-3064, ECF No. 21).  The Court convened an in-person status conference to discuss a stay of these proceedings pending the adoption of a new protocol (Order, ECF No. 2167).

In response, the Defendants' counsel advised the Sixth Circuit that the Governor's announcement did not represent state policy and that Ohio might well continue to use the present protocol if it were approved by the circuit court (6th Cir. Case No. 19-3064, ECF No. 22).  In the same filing, they criticized this Court for lauding the Governor's position.  *Id.* at PageID 3-4.  At the March 7, 2019, status conference, Defendants' counsel had no progress to report on a new

protocol and refused to agree to a stay pending a Sixth Circuit decision in *Henness* (Transcript, ECF No. 2183, PageID 106724).

In scheduling conferences from then through early September 2019, Defendants' position remained the same: they reported no progress on a new protocol, they continued to decline a stay pending a decision in *Henness*, and they advised the Court that, as a matter of prudence, the case should continue to be litigated as if there would be no new protocol (*See, e.g.*, Transcripts, ECF Nos. 2204, 2212, 2243, 2264-65, 2310). On April 1, 2019, the Supreme Court decided *Bucklew v. Precythe*, 139 S.Ct. 1112 (2019), setting forth the current Court's thinking on the *Glossip* standards. On July 23, 2019, Defendants filed their Appellee Brief in the Sixth Circuit, relying heavily on *Bucklew* and urging the Sixth Circuit to reject this Court's approach to the science in the case and to require that the second prong of *Glossip* be adjudicated first (Case No. 19-3064, ECF No. 33, PageID 12, 34). The case remained in that posture until the Sixth Circuit issued its decision on the *Henness* appeal on September 11, 2019. Based on that decision, discussed in detail below, this Court canceled the eight days of live testimony scheduled to begin September 24, 2019, and ordered the case submitted on the paper record and oral argument (ECF No. 2507).

**The Parties' Positions**

Hanna asserts that execution with the current three-drug protocol[3] will violate his rights to be free from cruel and unusual punishment protected by the Eighth Amendment. As did Warren

---

[3] As is implicit in the history recited above, Ohio has promulgated no new protocol and the parties have thus had no opportunity to litigate the constitutionality of any possible new protocol, either one that replaces or supplements the present version. Because Ohio statutory law currently requires that executions be done by lethal injection, adoption of any other method would require action by the General Assembly. While that possibility has been publicly discussed since the Governor's announcement in January, the Court is not advised that any legislation to that effect has even been introduced.

Henness, he claims that the 500 mg initiatory dose of midazolam will itself cause unconstitutionally severe pain through the mechanism of pulmonary edema. He claims that the midazolam will not protect him from suffering the unconstitutionally severe pain caused by the second and third execution drugs. He further asserts that Ohio has a feasible and readily available alternative method of execution, either by using the common medical-assistance-in-dying drugs previously testified to by Charles Blanke, M.D., or by shooting him to death with bullets, using a firing squad as Utah has done in the recent past, or by a bullet directed to his brain stem (ECF No. 2435). Finally, Hanna claims that several conditions, described below, make it likely that he will have a "paradoxical reaction" to the intravenous injection of midazolam, which will in turn cause him to experience a heightened sense of pain from all three drugs in the protocol (ECF No. 2498).

Defendants assert Hanna's claims are precluded as a matter of law by *Bucklew*, particularly as read by the Sixth Circuit in *Henness* (ECF No. 2485).

# Analysis

The Court forebears any discussion of Hanna's underlying crime. The Eighth Amendment prohibits a cruel and unusual method of execution without regard to the heinousness of the crime.

**Applicable General Legal Standards**

> In determining whether preliminary injunctive relief is merited in a capital § 1983 case, a trial or appellate court must apply the following established standards:
>
> (1) whether [plaintiff] has demonstrated a strong likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay. *Workman v. Bredesen*, 486 F.3d 896,

905 (6th Cir. 2007); *[N.E.]. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991).

*Cooey (Biros) v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009) ("*Cooey I*"). Judge Frost applied these criteria earlier in this consolidated case in *In re Ohio Execution Protocol Litig. (Lorraine),* 840 F. Supp. 2d 1044, 1048 (S.D. Ohio 2012), citing *Cooey I*, 589 F.3d at 218.

Supreme Court case law is consistent:

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citations omitted).

The purpose of a preliminary injunction is to "preserve the court's power to render a meaningful decision after a trial on the merits[.]" *Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005), *quoting* 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2947 (2nd ed.).

Although the fundamental fairness of preventing irremediable harm to a party is an important factor on a preliminary-injunction application, the most compelling reason in favor of entering a Rule 65(a) order is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act. . . . [T]he preliminary injunction is appropriate whenever the policy of preserving the court's power to decide the case effectively outweighs the risk of imposing an interim restraint before it has done so.

11A WRIGHT, *ET AL.*, § 2947 (3rd ed).

Failure to enjoin an imminently pending execution will obviously render the case moot as to that inmate long before any trial can be held. As noted above, there has never been a trial in this consolidated case; Plaintiffs who failed to obtain preliminary injunctive relief have had their cases rendered moot by their executions. Even though a plaintiff's interest in his life is the most serious issue a court can adjudicate, stays of execution are not to be granted routinely. A court must weigh the interest of a state in carrying out a lawful death sentence and its parallel interest in finality of criminal judgments. *Workman v. Bredesen*, 486 F.3d 896, 912-13 (6th Cir. 2007). As a matter of practice, both the federal courts of appeals and the Supreme Court have treated state-chosen execution dates with the utmost of deference, leaving the district courts with no option but to litigate method-of-execution cases as fully as possible at the preliminary injunction stage.

This Court previously found in favor of Plaintiff Henness and former Plaintiffs Phillips, Otte, and Tibbetts on the irreparable harm, balance of equities, and public interest branches of the test and those conclusions were not disturbed on appeal. *Henness*, 937 F.3d 759; *Fears*, 860 F.3d 881. Hence the Court analyzes here only the substantial likelihood of success prong, which the Sixth Circuit has said will usually be determinative in capital cases. *Zagorski v. Haslam,* 741 F. App'x 320, 321 (6th Cir. 2018).

42 U.S.C. § 1983 creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *See, e.g.*, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999); *Carey v. Piphus,* 435 U.S. 247, 253 (1978). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (*citing Carey*, 435 U.S. at 254-57). In order to be granted relief, a plaintiff must establish that the defendant

deprived him of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See, e.g.*, *West v. Atkins,* 487 U.S. 42, 48 (1988).

Named and served as Defendants in this case are Governor DeWine, ODRC Director Chambers-Smith, and her subordinates in the ODRC Ronald Erdos, Donald Morgan, Stephen Gray, Edwin Voorhies, Richard Theodore, Charlotte Jenkins, John Coleman, and anonymous members of the Execution Team. Each Defendant is sued in his or her official capacity and for acts to be done under color of state law (Fourth Amended Omnibus Complaint, ECF No. 1252, PageID 45460-64). Actions against state officials in their official capacities are deemed actions against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

An action against a state official in his or her official capacity for injunctive relief to prevent a constitutional violation is not barred by the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908). There is no dispute that the actions Defendants intend to take in the execution of Hanna are pursuant to formal State policy embodied in the execution protocol, 01-COM-11 (filed at ECF No. 2026-1, PageID 96818-38).


## Law of the Case and Vertical *Stare Decisis*

In the *Henness* decision on preliminary injunction, the undersigned devoted significant attention to the law of the case doctrine and how it would be applied in that matter. 2019 U.S. Dist. LEXIS 8200, at *29-35. No party has challenged that reading, either on appeal in *Henness* or in subsequent proceedings in this consolidated case. The Court will accordingly adhere to that analysis here.

**New evidence presented does not entitle Hanna to injunctive relief**

**Eighth Amendment claim in common with other Plaintiffs**

In response to the Court's September 11, 2019, Order to Show Cause (ECF No. 2478), Cleveland Jackson set forth what he argues is significant new evidence contained in the reports of his expert witnesses, Mark A. Edgar, M.D., Matthew C. Exline, M.D., and David J. Greenblatt, M.D., and transcribed eyewitness statements from the State of Tennessee's execution of Donnie Johnson (C. Jackson Response, ECF No. 2490, PageID 127579-127636, 127660-61).[4] Hanna incorporated Cleveland Jackson's evidence and arguments by reference (Hanna Response, ECF No. 2491, PageID 127695).[5] Plaintiffs have argued that this new evidence is sufficient to show that he can meet even the heightened burden for the first *Glossip* prong set forth in *Henness*: that midazolam cannot lessen, much less prevent, the severe pain and suffering from the paralytic and potassium chloride in the State's lethal injection protocol, and that the pulmonary edema caused by the pulmonary edema, coupled with the severe pain from the second and third drugs, create a subjective experience of pain that is constitutionally unacceptable. *Id*. at PageID 127573-74, 127579. Pursuant to the Court's Order Vacating Evidentiary Hearing, the Court allowed the parties to proffer evidence and move for its admission on September 24, 2019 (ECF No. 2507,

---

[4] Plaintiffs cite portions of the report of Steven L. Shafer, M.D. (C. Jackson Response, ECF No.2490, PageID 127636-57). However, Dr. Shafer is a rebuttal expert (Shafer Report, ECF No. 2332), and at the September 24, 2019, hearing, Plaintiffs did not dispute Defendants' assertion that the Court could not consider his opinions in support of whether they had met their respective *prima facie* burdens on prong one of *Glossip*.

Plaintiffs also cite the eyewitness reports, as recorded and relayed by media sources, from lethal injections in Alabama that postdated the December 2018 evidentiary hearing for Plaintiff Warren K. Henness, and in which midazolam was used (Response, ECF No. 2490, PageID 127659-60). On September 23, 2019, the Magistrate Judge excluded those statements as inadmissible hearsay (Order, ECF No. 2542, PageID 129583-84).

[5] On September 30, 2019, Defendant Governor Mike DeWine reprieved Cleveland Jackson's execution date to January 13, 2021 (C. Jackson Warrant of Reprieve, ECF No. 2571-1, PageID 129690).

PageID 127901-02). The reports cited by Plaintiffs, along with other exhibits, were admitted into evidence that day without specific objection (Minute Entry, ECF No. 2559)[6]. The Magistrate Judge has carefully considered the new evidence.

Plaintiffs argue that midazolam's inability to induce a state of general anesthesia and lack of analgesic properties means that "there is, consequently, no way, as a matter of science, for midazolam to protect the inmate from being exposed to and experiencing the full measure of severe pain and suffering." (C. Jackson Response, ECF No. 2490, PageID 127580 (emphasis removed), quoting Greenblatt Report, ECF No. 2258, PageID 108780, ¶ 32).). Specifically, inmates will not only experience the severe pain and suffering associated with the paralytic and potassium chloride as though there were nothing blocking the pain from those drugs at all (because there is nothing), but the severe pain and suffering of acute, noncardiogenic pulmonary edema from the midazolam. *Id.* at PageID 127581, quoting Greenblatt Report, ECF No. 2258, PageID 108781, ¶ 34. Dr. Greenblatt offered several points in support of his conclusions:

o Contrary to the State's argument in *Henness*, midazolam cannot suppress consciousness enough to avoid the pain, because it cannot induce a state of general anesthesia. (C. Jackson Response, ECF No. 2490, PageID 127582, quoting Greenblatt Report, ECF No. 2258, PageID 108793, ¶ 60).

o If an inmate is not insensate, then he is experiencing full pain, just as a fully conscious person would, "because in that situation there is nothing to blunt the pain." *Id.* at PageID 127583, quoting Greenblatt Report, ECF No. 2258, PageID 108795, ¶ 63.

o Sedation that, like the sedation induced by midazolam, does not produce insensation is not sufficient to guard an inmate from subjectively feeling pain, even if that sedation constricts his ability to express pain. *Id.* at PageID 127584-85, quoting Greenblatt Report, ECF No. 2258, PageID 108796-97, ¶ 66-67.

o Despite the state terming an "assumption" Dr. Greenblatt's statement that an inmate given 500 mg of midazolam will subjectively experience pain as though he were fully awake,

---

[6] Defendants objected generally to the admission of any evidence, arguing it was precluded as a matter of law by *Henness*. (Transcript, ECF No. 2610, PageID 130685-86).

"**that is not an 'assumption.' Rather, it is a conclusion born of the science involved.**" *Id*. at PageID 127585 (emphasis in original), quoting Greenblatt Report, ECF No. 2258, PageID 108798, ¶ 69.

o Midazolam does not change its pharmacological mechanisms at a higher, non-therapeutic dosage amount, such that it can provide insensation. Consequently, and contrary to the arguments of Defendants and their expert Joseph F. Antognini, M.D., an inmate will experience the full range of pain "regardless of the dosage." (C. Jackson Response, ECF No. 2490, PageID 127588-89, quoting Greenblatt Rebuttal, ECF No. 2334, PageID 113673, ¶ 9).

o Defendants' expert Charles Kokes, M.D., "conflates 'consciousness' with sensation." Midazolam can suppress consciousness to the point where someone would not *react* to the consciousness checks, but that says nothing about *experiencing* pain. *Id*. at PageID 127603 (emphasis added), quoting Greenblatt Rebuttal, ECF No. 2334, PageID 113720-22, ¶¶ 93-94.

Hanna is incorrect in asserting that any of the above is "new" evidence. Rather, Dr. Greenblatt opined and testified at length about all these matters in the Henness preliminary injunction proceedings. (Greenblatt Henness Report, ECF No. 1956; Greenblatt Henness Rebuttal, ECF No. 2003; Henness Hrg. Tr., ECF No. 2113). Dr. Greenblatt summarized his opinions on midazolam's pharmacological inability to protect from the second and third drugs in the protocol by testifying that "once you choose midazolam, *you lose*." (Henness Hrg. Tr., ECF No. 2113, PageID 104217 (emphasis added)). The Court extensively set forth Dr. Greenblatt's opinions and testimony, *In re Ohio Execution Protocol Litig. (Henness)*, 2019 U.S. Dist. LEXIS 8200, at *94-112, noted that very few people, if any, know more about midazolam than Dr. Greenblatt, *id*. at *94-95, 112, and relied upon his opinions and testimony in concluding that midazolam could not, at any dose, shield inmates from the pain of the second and third drugs. *Id*. at *224-28.

It is difficult to conceive of how the Court could have weighed Dr. Greenblatt's previous reports and testimony more heavily or favorably. Yet the Sixth Circuit, presented with that evidence and this Court's factual findings and legal conclusions, concluded that Henness had not presented "evidence showing that a person deeply sedated by a 500 milligram dose of midazolam

is still 'sure or very likely' to experience an unconstitutionally high level of pain[.]" *Henness*, 937 F.3d at 763.  The evidence contained in Dr. Greenblatt's instant Reports does not cover different subject matter than what was set forth previously; nor does he present the Court with any new evidence regarding midazolam's pharmacokinetic properties—or anything else about the drug— that would allow the Court to conclude that Hanna has met his evidentiary burden with respect to the first prong of *Glossip* as interpreted in *Henness.*

Plaintiffs state that after reviewing the autopsy reports from the recent Alabama and Tennessee executions and the eyewitness reports, Dr. Exline concluded that inmates' movements were signs of severe pain under the Critical Care Pain Observation Tool, consistent with pulmonary edema, air hunger, and pain at the site of injection (C. Jackson Response, ECF No. 2490, PageID 127607-09, quoting Exline Report, ECF No. 2260, PageID 109223-24, 109226, ¶¶ 13-17, 25-29).  Dr. Exline also noted that "deeply sedated and unresponsive [people] are still able to display increased respiratory effort including abdominal breathing, choking, or gasping as reported by the eyewitness accounts[,]" (Exline Rebuttal, ECF No. 2331, PageID 113235-36, ¶ 13), and thus, "a superficial physical exam, such as a consciousness check (such as is done in the case of the lethal injection protocol) is not reflective of the overall consciousness and sensation that a subject may experience." *Id*. at PageID 113237-38, ¶ 18.  Further, and contrary to the opinions of Defendants' experts, people:  (1) receiving midazolam do not commonly "lurch," "gasp," or "strain;" (2) experiencing those symptoms are not resting comfortably, but are in need of analgesia; and (3) suffering cerebral hypoxia are not rendered insensate, but experience severe pain themselves.  *Id*. at PageID 113236-37 ¶¶ 16-17.

Much of Dr. Edgar's reports center on his conclusion that the rapid onset pulmonary edema occurring in at least 84.3% of inmates injected with midazolam for whom autopsy reports are

available means that the pulmonary edema is noncardiogenic, as opposed to pulmonary edema caused by overdoses of barbiturates and opioids, which is cardiogenic (Edgar Report, ECF No. 2257, PageID 108265, ¶¶ 16-17; Edgar Supp. Report, ECF No. 2380, PageID 114809, ¶ 11). Further, he claims that Dr. Kokes's admission that the blood may be acidic when it reaches the heart "**is an important concession, because he undermines the argument that the injected midazolam would be completely buffered to neutral at the injection site or before it reaches the heart.**" (C. Jackson Response, ECF No. 2490, PageID 127624-25 (emphasis in original), quoting Edgar Rebuttal, ECF No. 2333, PageID 113519, ¶ 40). The high acidity of the midazolam solution poses danger to "the extremely delicate nature of the pulmonary capillary endothelium tissue, which can be easily damaged by acid, as shown in things like chlorine gas attacks[.]" *Id.* at PageID 127625, quoting Edgar Rebuttal, ECF No. 2333, PageID 113520, ¶ 41. Finally, he avers that any respiratory depression, apnea, and cerebral hypoxia experienced by inmates do not, as opined by Dr. Kokes, lessen the pain from the second and third drugs. Rather, Dr. Edgar argues that Dr. Kokes inverted the causal arrow with respect to respiratory depression—pulmonary edema is what causes the depression and difficulty breathing; the decrease in respiratory function does not make the pulmonary edema more bearable. *Id.* at PageID 127626-27, 127628, quoting Edgar Rebuttal, ECF No. 2333, PageID 113522-23, 113524, ¶¶ 46, 51.

As with Dr. Greenblatt, Drs. Exline and Edgar opined and testified before this Court in the Henness proceedings (Exline Henness Report, ECF No. 1948; Edgar Henness Report, ECF No. 1950; Edgar Henness Rebuttal, ECF No. 1999; Exline Henness Rebuttal, ECF No. 2001; Henness Hrg. Tr., ECF Nos. 2112, 2113); the Court evaluated their opinions extensively, and found them highly credible. *In re Ohio Execution Protocol Litig. (Henness)*, 2019 U.S. Dist. LEXIS 8200, at * 50-94, 224-27. Indeed, Dr. Edgar's reports and testimony about midazolam causing pulmonary

edema, and the pain and suffering that pulmonary edema causes independent of the paralytic and potassium chloride, were key to the Court's conclusion that Henness had met the first prong of *Glossip*. *Id*. at *226-27, 230-31. Again, all of that evidence and this Courts' findings and conclusions were before the Sixth Circuit, which held that, "[a]s an initial matter, neither pulmonary edema nor the symptoms associated with it qualify as the type of serious pain prohibited by the Eighth Amendment." *Henness*, 937 F.3d at 762. Specifically, "[b]ecause suffocation does not qualify as 'severe pain and needless suffering,' it follows that Ohio's use of midazolam—which could cause pulmonary edema, i.e., suffocation—is not constitutionally inappropriate." *Id*., citing *Bucklew* 136 S.Ct. at 1124. In light of this strong, conclusive language from the Sixth Circuit, the Court cannot reasonably conclude that the additional evidence regarding the non-cardiogenic nature of the pulmonary edema caused by midazolam is "constitutionally inappropriate" in light of *Henness*, even assuming that the pain is more severe than cardiogenic pulmonary edema. Further, and contrary to Plaintiffs' argument, Dr. Exline's evidence and opinions—that based on his expertise, the autopsy and eyewitness reports, and other data are consistent with the inmates having experienced severe pain from the three-drug protocol—is not different in kind from the evidence of pain and suffering that the Sixth Circuit considered and rejected, reiterating that "'the Eighth Amendment does not guarantee a prisoner a painless death,' so it is immaterial whether the inmate will experience *some* pain[.]" *Id*. (emphasis in original)

Finally, the admitted statements of eyewitnesses to the execution of Donnie Johnson (Press Conf. Tr., ECF No. 2260-1, PageID 109333-56), do not differ in substance from the eyewitness statements testified to during Henness's preliminary injunction hearing (*See* Henness Hrg. Tr., ECF No. 2112). The Sixth Circuit was aware that eyewitnesses had expressed concerns that inmates were making movements that indicated severe pain from the protocol, yet concluded that

Henness had not met the first prong of *Glossip*. The statements admitted and considered are substantively similar to those considered in *Henness*; consequently, they are not the type of evidence that would allow Plaintiffs to meet their burdens in light of *Henness*.[7]

In *Henness*, the Sixth Circuit stated that "Henness's failure to satisfy *Glossip*'s first prong *necessarily means that he cannot demonstrate a likelihood of success on the second prong*." 937 F.3d at 763, citing *Fears v. Morgan*, 860 F.3d at 890. Hanna's co-Plaintiff Melvin Bonnell urges this Court to consider the quoted language "dicta because it was unnecessary to the Court's core finding that Henness did not—and could not—meet *Glossip's* first prong." (Bonnell Appeal, ECF No. 2514, PageID 128378 n.1). However, the Court reads the forceful, unambiguous language as holding that satisfying prong one of *Glossip* is a condition precedent to presenting evidence on prong two. Consequently, the Court does not consider the evidence offered by Plaintiffs in an attempt to meet the second prong of *Glossip*.

**Paradoxical Reaction Claim**

Hanna argues that he is sure or very likely to experience a "paradoxical reaction" to the 500 mg of midazolam in the protocol due to his: (1) advanced age; (2) history of post-traumatic stress disorder; (3) frontal lobe brain damage; (4) neurocognitive disorder; (5) borderline personality disorder; and (6) history of alcohol abuse (Supp. Motion, ECF No. 2598, PageID 130010-12). Consequently, he claims that he is "very likely to endure a heightened experience of pain from the pulmonary edema caused by midazolam, as well as the severe pain and suffering caused by each of the paralytic and potassium chloride used in the execution protocol." *Id.* at PageID 130113. Specifically, "[t]he 'severe, intense pain associated with the protocol would not

---

[7] The evidence above also reinforces the Court's logic expressed in its Order Vacating Evidentiary Hearing (ECF No. 2507), that after *Henness*, the parties' dispute is one of law, rather than fact.

be attenuated in any manner, given the highly likely paradoxical reaction' that Hanna would suffer." *Id.* at PageID 130016, quoting Expert Report of David Lubarsky, M.D., ECF No. 2598-11, PageID 130484, ¶ 21.

The Court has considered the evidence submitted by Hanna in support of his paradoxical reaction Eighth Amendment claim, including but not limited to the expert declarations of: (1) Howard Fradkin, Ph.D. (ECF No. 2598-2); (2) Thomas P. Swales, Ph.D. (ECF No. 2598-4); (3) Douglas Scharre, M.D. (ECF No. 2598-6); (4) Craig W. Stevens, Ph.D. (ECF No. 2598-8); and (5) Dr. Lubarsky (ECF No. 2598-11). From that evidence, the Magistrate Judge concludes that Hanna's above-described conditions render him especially prone to suffering a paradoxical reaction from the administration of 500 milligrams of intravenous midazolam. Moreover, it is likely that the paradoxical reaction will alter how Hanna will "subjectively experience pain" during the execution, *Henness v. DeWine*, 937 F.3d 759, 762 (6th Cir. 2019), because the midazolam would no longer have its undisputed sedative and anxiolytic properties.[8]

However, simply because Hanna will subjectively experience pain does not mean that he can meet the first prong of *Glossip*—specifically, that the protocol will make him "sure or very likely to cause serious illness and needless suffering[.]" *Glossip*, 135 S.Ct. at 2737 (internal quotation marks omitted), quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008). In *Henness*, the United States Court of Appeals for the Sixth Circuit was presented with this Court's findings that: (a) the intravenous injection of 500 milligrams of midazolam would surely or very likely cause pulmonary edema, which would "induc[e] a sense of drowning and the attendant panic and terror, much as would occur with the torture tactic known as waterboarding"; and (b) the inability of midazolam

---

[8] Although Hanna sought neuroimaging by Dr. Scharre "to prove that he suffers brain damage that will lead to the paradoxical reaction[,]" (Motion to Transport, ECF No. 2436, PageID 117183), such imaging is unnecessary to reach a decision, and the Court's doing so does not prejudice Hanna—the undersigned is assuming that, indeed, Hanna is likely to suffer a paradoxical reaction.

to provide analgesia or induce a state of general anesthesia meant that an inmate would experience the full pain of the paralytic and potassium chloride. *In re Ohio Execution Protocol Litig. (Henness)*, 2019 U.S. Dist. LEXIS 8200, at *226-27, 230-31. The Sixth Circuit held that, "[w]ithout evidence showing that a person deeply sedated by a 500 milligram dose of midazolam is still 'sure or very likely' to experience an unconstitutionally high level of pain, Henness has not met his burden on this prong, and the district court clearly erred in concluding otherwise." *Henness*, 937 F.3d at 763. Thus, the fact that Hanna, suffering a paradoxical reaction, would experience the severe pain and suffering from the second and third drugs is immaterial. Hanna would experience the pain from the paralytic and potassium chloride regardless of his level of sedation, and in light of the above holding, that pain is not "unconstitutionally high." Indeed, after *Henness*, query whether proceeding with executions in Ohio employing only the paralytic drug and potassium chloride with no sedation at all, never mind anesthesia or analgesia, would amount to "an unconstitutionally high level of pain[.]" *Id.*

Hanna's other argument appears to be that the paradoxical reaction will make him even more sensitive to the pain and terror associated with pulmonary edema vis-à-vis Henness or other inmates who do not have his myriad ailments. Yet, the Sixth Circuit held that "[b]ecause suffocation does not qualify as 'severe pain and needless suffering,' it follows that Ohio's use of midazolam—which could cause pulmonary edema, i.e., suffocation—is not constitutionally inappropriate. The district court therefore clearly erred in concluding to the contrary." *Henness*, 937 F.3d at 762, citing *Bucklew*, 139 S.Ct. at 1124. The Magistrate Judge cannot reasonably conclude that even though the pain and terror of midazolam-induced pulmonary edema is constitutionally appropriate, Hanna's heightened sensitivity to that pain and terror render the use of midazolam constitutionally inappropriate.

Hanna also argues that the recent Supreme Court decision in *Bucklew* "makes it eminently clear that any Eighth Amendment assessment whether a particular execution method like Ohio's is unconstitutional "is a *necessarily* comparative exercise," which requires "comparing that method with a viable alternative."  (Supp. Motion, ECF No. 2598, PageID 130017 (emphasis in original), quoting 139 S.Ct. at 1126).  Yet, the Sixth Circuit held that this comparative inquiry is necessary *only if* the movant has met the first prong of by demonstrating that the State's execution protocol:

> Henness's failure to satisfy *Glossip*'s first prong necessarily means that he cannot demonstrate a likelihood of success on the second prong.  In other words, because Henness has not shown that Ohio's existing method of execution causes severe pain (discussed above), it is impossible for him to show that the existence of an alternative method of execution would "significantly reduce [the] substantial risk of severe pain" caused by the existing method.

*Henness*, 937 F.3d at 763, quoting *Bucklew*, 139 S.Ct. at 1129; citing *Glossip*, 135 S.Ct. at 2737; *Fears v. Morgan*, 860 F.3d at 890 (6th Cir. 2017).  Accordingly, whether any of Hanna's proposed alternatives (Supp. Motion, ECF No. 2598, PageID 130018-20), is available, "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain[,]" *Glossip*, 135 S.Ct. at 2737 (alteration in original, internal quotation marks and citations omitted), is immaterial to the Court's analysis, because he has not demonstrated, in light of *Henness*, that the State's lethal injection protocol is sure or very likely to cause severe (*i.e.*, unconstitutional) pain and suffering.

**Conclusion**

For the foregoing reasons, it is recommended that Hanna's Motion for Preliminary Injunction (ECF No. 2435) and Supplemental Motion (ECF No. 2498), be DENIED.

October 24, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). **Because Hanna's execution date is set for December 11, 2019, no extensions of time to object to this Report will be granted.**