# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

In re:  OHIO EXECUTION
  PROTOCOL LITIGATION,

                                        :       Case No. 2:11-cv-1016

                                            District Judge Edmund A. Sargus, Jr.
                                            Magistrate Judge Michael R. Merz

This Order relates to All Plaintiffs except
   Warren Henness and Cleveland Jackson.        :

---

# SUBSTITUTED DECISION AND ORDER ON ANONYMITY OF
# DRC EMPLOYEE NO. 1

---

On September 27, 2019, the Magistrate Judge filed a Decision and Order Regarding Continued Anonymity of DRC Employee #1 ("Decision," ECF No. 2566, modified at ECF No. 2588).[1] Defendants appealed that Decision to District Judge Sargus[2] (ECF No. 2595) and Plaintiffs responded (ECF Nos. 2601 and 2602).  Judge Sargus has recommitted the appealed matter for reconsideration (ECF No. 2603).  The Magistrate Judge heard oral argument on the matter on October 23, 2019 (Tr., ECF No. 2630).

---

[1] The Decision ruled on Plaintiff's Motion to Admit the Deposition Testimony of DRC Employee No. 1 (ECF No. 2506), which Defendants had opposed (ECF No. 2530).

[2] As the Decision was initially filed, it applied to all Plaintiffs and Defendants indicated they would appeal to both Judge Sargus and the Sixth Circuit.  To eliminate potentially competing parallel appeals, the Magistrate Judge modified the Order so that it applies to only those Plaintiffs as to whom there is not unanimous consent (ECF No. 2588).

Defendants also moved on October 2, 2019, to seal their witness list (the "Witness List," ECF No. 2293) for the September 24, 2019, hearing[3] on the motions for preliminary injunction of Cleveland Jackson, James Hanna, and Melvin Bonnell (ECF No. 2578). Plaintiffs oppose the Motion (Memo in Opp., ECF No. 2585) and Defendants have filed a reply in support (ECF No. 2594).

On September 30, 2019, having been denied a copy of Defendants' Witness List when he orally requested it at the counter in the Clerk of Court's Office in Columbus, Associated Press reporter Andrew Welsh-Huggins, at the Magistrate Judge's suggestion, filed a written request for the list (ECF No. 2569) which has been docketed as a motion. Defendants opposed the release, given their pending Motion to Seal (ECF No. 2579).

Finally, on October 29, 2019, Defendants filed a Response to Questions raised by the Court during oral argument (ECF No. 2617) to which Plaintiffs have responded (ECF No. 2620).

Because of the numerous issues raised in the parties' filings, the Magistrate Judge has determined to file this Substituted Decision and Order to decide the outstanding issues in one place and provide for a consolidated review by District Judge Sargus.

**Defendants' Requests to Seal**

Beginning with a deposition taken by Plaintiffs on August 21, 2019, Defendants in various ways have requested that one of their number be allowed to proceed under the pseudonym of "DRC Employee No. 1." At the outset of the deposition, when DRC Employee No. 1 was asked his name, Defendants' co-counsel Katherine Mullin objected: "So we're going to object to any

---

[3] The Magistrate Judge cancelled the taking of live testimony at that hearing after the decision *In re: Ohio Execution Protocol Litig. (Henness v. DeWine)*, 937 F.3d 759 (6th Cir. 2019).

identifying information as to him as to previous orders. . . . So that would be ECF 629 and ECF 838." (ECF No. 2457-2, PageID 120449). Defendants later added the protective order at ECF No. 1052 and the Ohio Execution Secrecy Bill, codified at Ohio Revised Code §§ 2949.221 and .222, as bases for their claims and then broadened the request for sealing to include all of "the documents cited in the Court Order [ECF No. 2566] and Plaintiffs' filings identifying DRC Employee No. 1's actual identity." (Reply, ECF No. 2594, PageID 129985.)

In objecting to the original Decision on this issue, Defendants denied that they had "waived confidentiality of the identity of the person procuring execution drugs." (Objections, ECF No. 2595, PageID 129989-92.) They relied on Ohio Revised Code § 2949.221 and asserted that "DRC Employee No. 1's testimony has not, until recently, contained information that identified or reasonably led to the identification of DRC Employee No. 1 as the person who actually procures the drugs used in executions or participates in the purchasing activities regarding executions." *Id.* at PageID 129989. They argued that the fact that DRC Employee No. 1 was listed as a witness who knew something about the procurement of execution drugs did not connect him with participation in that activity and his identity would still be protected by the statute. *Id.* at PageID 129990. Noting that numerous prior public filings contained DRC Employee No. 1's name, Defendants claimed "none of those documents identify or reasonably lead to the identification of that person and his/her participation in the actual procurement of the drugs." *Id.*

Defendants further argue that they have met the strict legal standard for sealing court documents (Objections, ECF No. 2595, PageID 129992, citing *Press-Enter. Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 509-11 (1984); *Baxter, Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002); and *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165,

1176 (6th Cir. 1983)). Finally, Defendants claim DRC Employee No. 1 is protected by Judge

Frost's Protective Order, docketed on October 26, 2015, at ECF No. 629. *Id.* at PageID 129994.

In their Motion to Seal their Witness List, Defendants acknowledge "there is a strong

interest in obtaining the information contained in the court record and the public is entitled to

assess for itself the merits of judicial decisions[.]" (ECF No. 2578, PageID 129845, citing *Shane*

*Grp., Inc., v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 305-06 (6th Cir. 2016)). However,

they argue, because Defendants did not expect the Court to rely in reaching a decision on the

identity of DRC Employee No. 1, as opposed to the content of his testimony, releasing his identity

would not aid the public in assessing this Court's decision, and therefore it should not be released.

*Id.*

Defendants likewise objected to the release of their Witness List to the press. While

acknowledging the public's presumptive right to inspect and copy judicial documents, the

Defendants ask the Court to exercise its discretion to deny access because of the weight of the

"interests favoring nondisclosure." (Memo. in Opp., ECF No. 2579, PageID 129848-49, citing

*Nixon v. Warner Comm'ns, Inc.,* 435 U.S. 589, 599, 602 (1978); *Rudd Equip. Co. v. John Deere*

*Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016); *Bank of Am. Nat'l Trust & Sav. Ass'n*

*v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3rd Cir. 1986); *Newman v. Graddick*, 696 F.2d

796, 803 (11th Cir. 1983); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981).

In their Reply in Support of their Motion to Seal, Defendants argue that the fact that DRC

Employee No. 1's name has been included in various filed documents does not connect him with

the function of procuring execution drugs, which is the identification link Defendants want to

protect (ECF No. 2594, PageID 129984-86).

During oral argument, Defendants elaborated on their position.[4]  The State's interest in confidentiality was recognized, they argue, in *Fears v. Kasich*, 845 F.3d 231 (6th Cir. 2016) (Tr., ECF No. 2630, PageID 131369).  The Execution Secrecy Bill protects individuals as well as corporations.  *Id.* at PageID 131369-70.  DRC Employee No. 1 is in fear of being attacked personally.  *Id.* at PageID 131370.  His role became more important with *Glossip v. Gross,* 576 U.S. ___, 135 S.Ct. 2726 (2015), because of the need for testimony on the feasibility of alternative methods of execution.  *Id*. at PageID 131371.  Defendants alleged DRC Employee No. 1 may be subject to "doxing"[5] if not protected.  Raising the stakes, Defendants argue that revealing DRC Employee No. 1's identity to the public, characterized by Defendants as "unmasking the executioner," "is a way to make it [this case] about whether to have a death penalty and not how" which would "walk this court toward error and . . . should be resisted[.]"  *Id*. at PageID 131372.

The Magistrate Judge asserted in the original Decision that pharmaceutical companies that did not want their products used in executions had an interest in knowing who they were selling to so as to protect that interest.  Presumably identifying DRC Employee No. 1 by name would protect that interest.  While Defendants' counsel agreed that was a valid interest, he argued it had to be weighed against the interest of the State in acquiring drugs to carry out executions (Tr., ECF No. 2630, PageID 131392).

Responding to questions raised by the Court at oral argument, Defendants advised that midazolam is a Schedule IV controlled substance, but that the paralytic agents and potassium chloride are not (Supp. Response, ECF No. 2617, PageID 131155).  Defendants note that the

---

[4] Oral argument for Defendants was made by attorney Mark Landes, a senior member of the Bar of this Court, who entered his appearance in the case only on October 1, 2019 (ECF No. 2572).

[5] "[P]ublicly identify[ing] or publish[ing] private information about (someone) especially as a form of punishment or revenge."  *Doxing*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/dox (last viewed on Nov. 6, 2019).

Southern Ohio Correctional Facility, where executions are carried out; the Ohio Pharmacy Services Center; and the vendors supplying that entity "each possess[es] proper state and federal licenses to acquire, possess and transfer controlled substances," but there are no requirements for stating an intended use. *Id.* at PageID 131156.

**Plaintiffs' Opposition to Sealing**

Plaintiffs oppose sealing because, they claim, DRC Employee No. 1's "actual identity, and his connection with lethal-injection-drug procurement activities, have been a matter of public record for years . . ." (Response, ECF No. 2601, PageID 130553). Plaintiffs assert the Execution Secrecy statute does not apply, citing Judge Frost's decision, *In re: Ohio Execution Protocol Litig.*, 2015 WL 6446093, at *7 (S.D. Ohio Oct. 26, 2015) (ECF No. 629) and the Magistrate Judge's later decision, *In re: Ohio Execution Protocol Litig.*, 2016 WL 7368187 (S.D. Ohio Dec. 20, 2016) (ECF No. 838). *Id.* at PageID 130558, citing *Fears*, 845 F.3d at 241 (Stranch, J., dissenting). Further, they contend that if it applied at all, it would not cover DRC Employee No. 1 because he is not a "public office"[6] within the meaning of Ohio Revised Code § 117.01(D), and records of this Court are not records held by such an office. Second, the statute only protects activities that occur prior to the expiration date of the statute, March 23, 2017. *Id.* at PageID 130559.

Third, Plaintiffs claim, there are numerous places in the public record that connect DRC Employee No.1's identity with his participation in the procurement of execution drugs (Response, ECF No. 2601, PageID 130559-62), specifically citing DRC Employee No. 1's in-court testimony

---

[6] Plaintiffs do not address whether DRC Employee No. 1 is a "public official," defined as "any officer, employee, or duly authorized representative or agent of a public office," Ohio Rev. Code § 117.01(E), which he clearly is.

during the Warren K. Henness preliminary injunction hearing (ECF No. 2117, PageID 104532 *et seq.*), and other instances (filed separately under seal at ECF No. 2602).

In opposing the Motion to Seal the Witness List, Plaintiffs argue that such a sealing would be futile because of the other places in the record where DRC Employee No. 1 is identified with his functions in the procurement of execution drugs (Response, ECF No. 2585, PageID 129907-10). They expressly argue that "[p]ublic hearing testimony cannot be retroactively sealed." *Id.* at PageID 129908, citing *Craig v. Harney*, 331 U.S. 367, 374 (1947); *Pfizer, Inc. v. Teva Pharm. USA Inc.*, No. 08-1331, 08-2137, 2010 U.S. Dist. LEXIS 67631, at *4 (D. N.J. Jul. 7, 2010). In general, they argue that once something "is public, it necessarily remains public." *Id.* at PageID 129909, citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 145 n.11 (2nd Cir. 2004).

Plaintiffs note the First Amendment interest invoked by the Associated Press request for the Witness List and the higher burden that places on Defendants to justify sealing. (ECF No. 2585, PageID 129916, citing *Shane Grp.*, 825 F.3d at 305.) It is the First Amendment interests of the general public that are involved here, and not any particular interest of any of the Plaintiffs. *Id.* at PageID 129917, citing *G & V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071,1079 (6th Cir. 1994); *accord*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995).

During oral argument Plaintiffs devoted a great deal of attention to their claim that the Witness list had been filed as a public document (Tr., ECF No. 2630 , PageID 131350-63, 131367-68). Although that belief was quite reasonable, and indeed the Court shared it when the original Decision was filed, it is not correct as explained below. During oral argument, Plaintiffs' counsel reiterated the arguments outlined above from their earlier filings. *Id.* at PageID 131372-77.

**How the Defendants' Preliminary Injunction Witness List Became Sealed**

Pursuant to the Scheduling Order for Plaintiff Cleveland Jackson's preliminary injunction hearing, Defendants' were required to file a witness list by July 24, 2019, and did so (ECF No. 2293). That document now displays on the docket as seen by the undersigned with a single padlock symbol in the margin. Upon opening the document, one sees the Court's Case Management/ Electronic Case Filing system ("CM/ECF") header including the word "SEALED." Because this represents a different state of the document from when it was first filed, Plaintiffs' counsel asked the Magistrate Judge to explain how the change occurred.

When an extrajudicial user of the CM/ECF files a document in an existing case, he or she is presented with a menu of possible categorizations of the document. The menu for "Other Filings" offers the following choices: ADR Documents, Discovery Documents, Notices, Trial Documents, Appeal Documents, Other Documents, Foreclosure Documents, Social Security Documents, and Mediation Documents. The category Trial Documents has an associated hyperlink to a menu for various categories of trial documents, one of which is "Witness List." When the filer chooses "Witness List" as the appropriate category for the document being filed, the CM/ECF system automatically restricts electronic access to that document to case participants. That restriction is not associated with any visible symbol that appears on the docket as it would be viewed by a judge assigned to the case, so it would appear from the docket that the Witness List had been filed "publicly," when in fact it was accessible only to case participants. Failing to understand these electronic facts, the Magistrate Judge erroneously found, in the Decision appealed from, that "[t]he identity of DRC Employee No. 1 was publicly disclosed on July 24, 2019, in the 'Witness List.'" (Decision, ECF No. 2566, PageID 129670-71). That finding was

based on the Magistrate Judge's misinterpretation of the docket and is hereby WITHDRAWN.[7] The Witness List has never been available to the public.

During oral argument, Plaintiffs' counsel argued it has been customary in this case to file witness lists using the CM/ECF filing event "Notice."  A cursory examination of the docket confirms this.  Documents filed using that categorization are automatically public documents, *i.e.*, available to the general public through use of a PACER (Public Access to Court Electronic Records) account or for viewing at a public access terminal in any federal courthouse.  While using the Notice filing event for witness lists has in fact been common in this case, the Magistrate Judge observed during oral argument that the Court had never directed which filing events to use for any filings or that required witness lists to be filed as public documents (Tr., ECF No. 2630, PageID 131357).  No one dissented from this observation.

On the early afternoon of September 30, 2019, Associated Press reporter Andrew Welsh-Huggins requested a copy of the Witness List at the counter in the Clerk's Office in Columbus.  Aware of the restrictions applied by the CM/ECF system to documents filed as "witness lists," the Deputy Clerk in charge declined the request.  Mr. Welsh-Huggins contacted the Court and was advised to file a motion.  Having been unaware of these technical niceties at the time, the undersigned directed the courtroom deputy to mark the document as "sealed" on the afternoon of September 30, 2019.  At that time the Magistrate Judge was well aware of the disputed question between the parties about the anonymity of DRC Employee No. 1.  Releasing the document at that time would have effectively mooted that dispute without full consideration.  Thus, the Witness

---

[7] The electronic filing system has been in place in this Court since September 1, 2003, and in many federal courts before that.  It is now nationally implemented.  For general comment on the slow adaptation of institutions to new technology, see EVERETT M. ROGERS, DIFFUSION OF INNOVATIONS (5th ed. 2003).

List was preliminarily sealed to protect any confidentiality interest the State might have, pending final decision on sealing.

# Analysis

**What this Substituted Decision is Not About**

Despite Defendants' fears expressed at oral argument, neither this Substituted Decision nor the original Decision is about whether the State of Ohio shall have a death penalty or not. The Court has no intention by this or any other decision in this case to assist death row inmates generally in their campaign against the penalty nor impede Defendants in carrying out their lawful duty to execute those who have been sentenced to death. As the Supreme Court reminded us recently "[t]he same Constitution that permits States to authorize capital punishment also allows them to outlaw it. But it does mean that the judiciary bears no license to end a debate reserved for the people and their representatives." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122-23 (2019).

Rather, this Magistrate Judge strongly believes decisions in death penalty litigation must be made consistent with the general body of the law. That is, in capital litigation as in all litigation, judges ought to decide issues on the basis of neutral principles of law whose application is broader than the subject matter of the issue and which are not chosen by the judge because of a preferred outcome on the issue. The Supreme Court has indeed said "death is qualitatively different[.]" *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). But that must not become an excuse on either side of a capital case for shaping the law in unprincipled ways. The same judge who wrote for the court in *Fears v. Morgan (In re: Ohio Execution Protocol),* 860 F.3d 881 (6th Cir. 2017)

(*en banc*), also authored *Shane Group*, without any suggestion its principles did not apply in capital cases.

**Sources Relied on by Defendants**

In seeking protection for the identity of DRC Employee No. 1, Defendants rely on the prior protective orders entered in this case and on the Execution Secrecy Bill, codified at Ohio Revised Code § 2949.221 and .222. The statute was effective March 23, 2015, and provides:

> **Confidentiality of Manufacturers, Suppliers, etc. of Drugs for Lethal Injection**
>
> (A) As used in this section:
>
> (1) "Person" has the same meaning as in section 1.59 of the Revised Code.
>
> (2) "Licensing authority" means an entity, board, department, commission, association, or agency that issues a license to a person or entity.
>
> (3) "Public office" has the same meaning as in section 117.01 of the Revised Code.
>
> (B) If, at any time prior to the day that is twenty-four months after the effective date of this section, a person manufactures, compounds, imports, transports, distributes, supplies, prescribes, prepares, administers, uses, or tests any of the compounding equipment or components, the active pharmaceutical ingredients, the drugs or combination of drugs, the medical supplies, or the medical equipment used in the application of a lethal injection of a drug or combination of drugs in the administration of a death sentence by lethal injection as provided for in division (A) of section 2949.22 of the Revised Code, notwithstanding any provision of law to the contrary, all of the following apply regarding any information or record in the possession of any public office that identifies or

11

reasonably leads[8] to the identification of the person and the person's participation in any activity described in this division:

(1) The information or record shall be classified as confidential, is privileged under law, and is not subject to disclosure by any person, state agency, governmental entity, board, or commission or any political subdivision as a public record under section 149.43 of the Revised Code or otherwise.

(2) The information or record shall not be subject to disclosure by or during any judicial proceeding, inquiry, or process, except as described in division (B)(4) of this section or in section 2949.222 of the Revised Code.

(3) The information or record shall not be subject to discovery, subpoena, or any other means of legal compulsion for disclosure to any person or entity, except as described in division (B)(4) of this section or in section 2949.222 of the Revised Code.

(4)
(a) If the information or record pertains to the manufacture, compounding, importing, transportation, distribution, or supplying of any of the items or materials described in division (B) of this section, the person or entity that maintains the information or record shall disclose the information or record to the Ohio ethics commission and the commission may use the information or record, subject to division (B)(1) of this section, only to confirm the following:

(i) That the relationship between the person and the department of rehabilitation and correction is consistent with and complies with the ethics laws of this state;

(ii) That at the time of the specified conduct, the person has all licenses required under the laws of this

---

8 Presumably the General Assembly meant "reasonably could lead."

state to engage in that conduct and the licenses are valid.

(b) If the Ohio ethics commission receives any information or record pursuant to division (B)(4)(a) of this section, the commission shall complete its use of the information or record for the purposes described in that division within fourteen days of its receipt and shall promptly report its findings to the director of rehabilitation and correction.

(C)

(1) If, at any time prior to the day that is twenty-four months after the effective date of this section, an employee or former employee of the department of rehabilitation and correction or any other individual selected or designated by the director of the department participates or participated in the administration of a sentence of death by lethal injection, as provided for in division (A) of section 2949.22 of the Revised Code, subject to division (C)(2) of this section and notwithstanding any other provision of law to the contrary, the protections and limitations specified in divisions (B)(1), (2), and (3) of this section shall apply regarding any information or record in the possession of any public office that identifies or reasonably leads to the identification of the employee, former employee, or other individual and the employee's, former employee's, or individual's participation in the administration of the sentence of death by lethal injection described in this division.

(2) Division (C)(1) of this section does not apply with respect to information or a record that identifies or reasonably leads to the identification of the director of rehabilitation and correction or the warden of the state correctional institution in which the administration of the sentence of death takes place.

(D) The protections and limitations specified in divisions (B)(1), (2), and (3) of this section regarding information and records that identify or may reasonably lead to the identification of a person

described in divisions (B) or (C) of this section and the person's participation in any activity described in the particular division are rights that shall be recognized as follows:

(1) With respect to a person that is an individual, without any requirement for the person to take any action or specifically apply for recognition of such rights.

(2) With respect to a person that is not an individual, the rights do not exist unless the person requests to have the rights recognized by applying in writing to the director of rehabilitation and correction.

The director of rehabilitation and correction by rule shall establish the procedure according to which a person who is not an individual may apply in writing for the rights described in divisions (B)(1), (2), and (3) of this section. The director shall approve an application that is submitted in compliance with the rules. A person whose application is approved is entitled to the rights for twenty years after the person ceases the qualifying activity as contemplated by the first paragraph of division (B) of this section. The director shall notify any person, who is not an individual and who is entitled to the rights, of the application procedures.

(E) If a person or entity that, at any time prior to the day that is twenty-four months after the effective date of this section, participates in, consults regarding, performs any function with respect to, including any activity described in division (B) of this section, or provides any expert opinion testimony regarding an execution by lethal injection conducted in accordance with division (A) of section 2949.22 of the Revised Code is licensed by a licensing authority, notwithstanding any provision of law to the contrary, the licensing authority shall not do any of the following as a result of that participation, consultation, performance, activity, or testimony by the person or entity:

(1) Challenge, reprimand, suspend, or revoke the person's or entity's license;

(2) Take any disciplinary action against the person or entity or the person's or entity's licensure.

(F) A person may not, without the approval of the director of rehabilitation and correction, knowingly disclose the identity and participation in an activity described in the particular division of any person to whom division (B) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division or of an employee, former employee, or other individual to whom division (C)(1) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division. Any person, employee, former employee, or individual whose identity and participation in a specified activity is disclosed in violation of this division has a civil cause of action against any person who discloses the identity and participation in the activity in violation of this division. In a civil action brought under this division, the plaintiff is entitled to recover from the defendant actual damages, punitive or exemplary damages upon a showing of a willful violation of this division, and reasonable attorney's fees and court costs.

(G) If division (B), (C), or (D) of this section applies to a person with respect to any conduct or activity of the person occurring at a time prior to the day that is twenty-four months after the effective date of this section, the expiration of that twenty-four month period does not affect, add to, or diminish the protections and limitations specified in division (B) or (C), division (D), and division (E) of this section with respect to their application to that person.

In the Decision, the Magistrate Judge concluded the statute applied to DRC Employee No. 1 because he is "a person [who] . . . transports, distributes, supplies, prescribes, [or] prepares, . . . any of the . . . drugs or combination of drugs, . . . used in the application of a lethal injection of a drug or combination of drugs in the administration of a death sentence by lethal injection. . . ." Ohio Rev. Code § 2949.221(B) (ECF No. 2566, PageID 129670). The Court further concluded

that the identity DRC Employee No. 1 had been publicly disclosed by the filing of the Witness List. *Id.* at PageID 129670-71. That last conclusion was in error as explained above.

Plaintiffs assert the secrecy statute does not bind this Court, citing Judge Frost's 2015 decision and the Magistrate Judge's 2016 decision (ECF No. 838), discussed above (ECF No. 2601, PageID 130558). In the referenced decision, Judge Frost granted a protective order and elided the applicability of HB 663, ruling

> It is not because there is a state secrecy statute creating a privilege that Defendants are entitled to a protective order, but rather because the same concerns that apparently led to the creation of the statute exist: the burden on and prejudice to the state that disclosure presents. Any statutory protection is simply an add-on. To be clear, the Rule 26(c) considerations warrant a protective order, whether taken alone *or* in conjunction with Ohio's secrecy statute.

(ECF No. 629, PageID 19405). It was this decision – granting a Fed.R.Civ.P. 26(c) motion for protective order from discovery – that Judge Frost certified for interlocutory appeal under 28 U.S.C. § 1292(b). *Id.* at PageID 19411. The Sixth Circuit accepted that appeal and decided it in *Fears v. Kasich*, *supra*.

Judge Siler's opinion in *Fears* makes clear that only discovery questions are at issue, and not any question of sealing courts records. In the course of the decision, however, the court acknowledges Ohio's "significant interest in meting out a sentence of death in a timely fashion." 845 F.3d at 239, quoting *Cooey v. Strickland*, 604 F.3d 939, 946 (6th Cir. 2010). It also accepted Judge Frost's finding that allowing discovery of the sources of execution drugs would place an undue burden on that interest. 845 F.3d at 238-39.

Shortly after *Fears v. Kasich* was issued, the undersigned filed a set of Rulings on Defendants Claims of Privilege (ECF No. 838).[9]  Those Rulings included that federal, not state, law "governs the recognition of any privilege to refuse to provide discoverable information in this case." *Id.* at PageID 24913.  In addition, the Court found it had "authority in ruling on a motion for protective order under Fed. R. Civ. P. 26(c) to recognize and accommodate the interests of Ohio in obtaining the drugs necessary to carry out the death sentences imposed on Plaintiffs by lethal injection. . . ." *Id.* at PageID 24914.  The Court found that a recognizing a qualified privilege was warranted as a matter of comity to protect the confidentiality interests sought to be protected by the secrecy statute.  *Id.*  None of these three decisions discussed in any way the question of sealing court records.

The other Order relied on by Defendants is the Decision and Order regarding Defendants' Motion for Partial Redaction of Depositions (ECF No. 1052).[10]  In opposing the redactions, Plaintiffs relied on the public right of access to court records, both constitutional and common law. The Court, however, noted that the depositions in question were all discovery depositions[11] to which the right of public access did not apply.  *Id.* at PageID 40665, citing *Leucadia, Inc., v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3rd Cir. 1993).  The Court affirmed that it had not relied on deposition testimony in reaching its preliminary injunction decision and therefore rejected Plaintiffs' objection to redaction on that basis.  *Id.* at PageID 40666.  The Court also recognized that "Defendants cannot any longer have a valid and protectable confidentiality interest in what they themselves have revealed to the public."  *Id.* at PageID 40667, referencing the

---

[9] Technically, these rulings were made in the consolidated cases of Ronald Phillips, Gary Otte, and Raymond Tibbetts, all of which were referred to the undersigned under 28 U.S.C. § 636(c).

[10] This order was also made in the consolidated cases of Ron Phillips, Gary Otte, and Raymond Tibbetts.

[11] Upon assuming management of this consolidated case in 2016, the Magistrate Judge ordered all discovery documents filed, Fed.R.Civ.P. 5 to the contrary notwithstanding, in order to keep track of what was happening in the case.

depositions of Stephen Gray and DRC Employee No. 1 cited in Defendants' merit brief in *Henness v. DeWine*, 6th Cir. Case No. 17-3076, ECF No. 33.

Based on these authorities, the Court stands by its prior decision that Defendants have a qualified privilege not to disclose information protected by the Execution Secrecy Act when disclosure would substantially impede Ohio's ability to carry out lethal injection executions. Likewise, DRC Employee No. 1 has a qualified privilege not to disclose his part in the execution process if disclosure would expose him to a substantial risk of harm. Defendants are understood to assert that qualified privilege supports the sealing of court records they presently seek.

The Sixth Circuit *prima facie* draws a sharp distinction between confidentiality interests shielded by protective orders in discovery and those that would be protected by sealing court records.

> By way of background, there is a stark difference between so-called "protective orders" entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other. Discovery concerns the parties' exchange of information that might or might not be relevant to their case. "Secrecy is fine at the discovery stage, before the material enters the judicial record." *Baxter Int'l, Inc. v. Abbott Labs.,* 297 F.3d 544, 545 (7th Cir. 2002). Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of "good cause[.]" Fed. R. Civ. P. 26(c)(1). These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection.
>
> "At the adjudication stage, however, very different considerations apply." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record. *Baxter*, 297 F.3d at 545. Unlike information merely exchanged between the parties, "[t]he public has a strong interest in obtaining the information contained in the court record." *Brown & Williamson Tobacco Corp.*

*v. F.T.C.,* 710 F.2d 1165, 1180 (6th Cir. 1983). That interest rests on several grounds. Sometimes, the public's interest is focused primarily upon the litigation's result—whether a right does or does not exist, or a statute is or is not constitutional. In other cases—including "antitrust" cases, *Id.* at 1179—the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id*. And in any of these cases, the public is entitled to assess for itself the merits of judicial decisions. Thus, "[t]he public has an interest in ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions." *Id.* at 1181; *see also, e.g., Baxter,* 297 F.3d at 546.

The courts have long recognized, therefore, a "strong presumption in favor of openness" as to court records. *Brown & Williamson,* 710 F.2d at 1179. The burden of overcoming that presumption is borne by the party that seeks to seal them. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). The burden is a heavy one: "Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access. See *Brown & Williamson*, 710 F.2d at 1179. For example, in class actions—where by definition "some members of the public are also parties to the [case]"—the standards for denying public access to the record "should be applied . . . with particular strictness." *Cendant*, 260 F.3d at 194. And even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason. *See, e.g., Press-Enter. Co. v. Superior Court of California, Riverside Cnty.,* 464 U.S. 501, 509-11, 104 S.Ct. 819, 78 L. Ed. 2d 629 (1984). The proponent of sealing therefore must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter*, 297 F.3d at 548.

In like fashion, a district court that chooses to seal court records must set forth specific findings and conclusions "which justify nondisclosure to the public." *Brown & Williamson*, 710 F.2d at

> 1176. That is true even if neither party objects to the motion to seal, as apparently neither did in *Brown & Williamson*. (There, our court "reach[ed] the question" of the district court's seal "on our own motion." *Id*.) As our decision there illustrates, a court's obligation to explain the basis for sealing court records is independent of whether anyone objects to it. And a court's failure to set forth those reasons—as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary—is itself grounds to vacate an order to seal. *Id.; see also United States v. Kravetz,* 706 F.3d 47, 60 (1st Cir. 2013) ("Appellate courts have on several occasions emphasized that upon entering orders which inhibit the flow of information between courts and the public, district courts should articulate on the record their reasons for doing so"); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (reversing because "[w]e find no evidence in the record that the district court balanced the competing interests prior to sealing the final order").
>
> We review the court's orders to seal its records for an abuse of discretion—although, "[i]n light of the important rights involved, the district court's decision is not accorded" the deference that standard normally brings. *Knoxville News-Sentinel*, 723 F.2d at 476.

*Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 306 (6th Cir. 2016) (Kethledge, J.). To summarize, in the discovery context the public has little or no interest in the content of exchanged information. Its interest is much stronger in the content of court records and especially in cases such as this which involve grave matters of public concern.

As the issue stands after oral argument, the question is whether the confidentiality interests of the State of Ohio in procuring execution drugs and those of DRC Employee No. 1 in avoiding public shaming outweigh those of the public in access to court records. Although it has not done so as yet in this case, the Court might be prepared to find the State's interests outweigh the public access rights. See *Baxter*, 297 F.3d at 546 (noting that, "[i]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and

information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)," is typically enough to overcome the presumption of access).

However, the Court need not decide that issue at this juncture because the Magistrate Judge concludes the Defendants have waived or forfeited[12] any qualified privilege interest in protecting the link between DRC Employee No. 1 and the procurement of execution drugs by voluntarily disclosing that information.

Without doubt recognized privileges can be forfeited by failing to maintain the confidences they protect. For example, in federal law the attorney-client privilege is waived or forfeited by voluntary disclosure of the communication in such a way as to breach confidentiality. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2000), citing *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996); *Leybold-Heraeus Tech. Inc. v. Midwest Instrument Co.,* 118 F.R.D. 609 (E.D.Wis. 1977); *Fonar Corp. v. Johnson & Johnson*, 277 U.S.P.Q. 886 (D. Mass. 1985). Even inadvertent disclosure may be sufficient to bar application of the privilege. *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del. 1977). Applicants for relief from conviction under 28 U.S.C. § 2255 who claim ineffective assistance of trial counsel and rely on off-the-record communications with counsel are routinely warned that such clams waive attorney-client privilege as to relevant communications.

---

[12] The Supreme Court has explained the distinction:

> We note here the distinction between defenses that are "waived" and those that are "forfeited." A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve. *Kontrick v. Ryan*, 540 U.S. 443, 458, n. 13 (2004); *United States v. Olano,* 507 U.S. 725, 733 (1993). That distinction is key to our decision in [this] case.

*Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012). This Court has not been as careful in making the distinction as it wishes it had. To be clear, Defendants have never affirmatively waived their confidentiality interest protected by HB 663.

Plaintiffs' claim Defendants have forfeited any confidentiality interest in the link between DRC Employee No. 1's identity and his involvement in procurement of execution drugs by revealing that link publicly. They point first to DRC Employee No. 1's public testimony in the Henness preliminary injunction hearing. DRC Employee No. 1 was called as upon cross-examination by Plaintiff Henness. After he identified various licensures for SOCF, the following colloquy occurred:

> Q.　 Okay.· Doctor, you are involved in the process of obtaining execution drugs, right?  Sorry, not Doctor.· Mr. [DRC Employee No. 1].
>
> A.　 Yes, I am.
>
> Q.　 Okay.· And so you would know whether Ohio has obtained a large quantity of midazolam  for use in executions, right?
>
> A.　 I would.
>
> Q.　 Okay.· And, in fact, Ohio has obtained a large quantity of midazolam for use in executions, correct?
>
> A.　 I'm not sure, you know, about the meaning of large, but we've obtained a quantity, yes.

(Transcript, ECF No. 2117, PageID 104542.)  The testimony then discusses his maintenance of the inventory of execution drugs at SOCF.  *Id.* at PageID 104543-44.  He agreed that the quantities of midazolam on hand at the time of the Van Hook execution were obtained through "the normal drug procurement process that you always follow for getting execution drugs."  *Id.* at PageID 104548.  Defendants lodged no objections to this testimony.

This testimony clearly links DRC Employee No. 1 with the acquisition of Ohio's execution drugs. The testimony was given in open court and considered by the Court in its decision of the preliminary injunction motion.

Plaintiffs provide the following additional record references which they assert constitute public case filings disclosing DRC Employee No.1's drug procurement and related activities (ECF No. 2602):

1.  Deposition of DRC Employee No. 1 at ECF No. 1073-5. However, that document is presently filed under seal. ECF No. 2016.

2.  Former Defendant Gary Mohr's Response to Discovery at ECF No. 853-1. Defendants filed this document with a reservation of objections under the protective order at ECF No. 838. Construing the answers, the Court finds they do not state a role of DRC Employee No. 1 in the procurement of execution drugs, as opposed to handling them within the prison system.

3.  Email correspondence with DEA which shows DRC Employee No. 1 inquiring about the importation of drugs for executions (ECF No. 964-1). This document was submitted by Defendants as an exhibit for the preliminary injunction hearing in the Henness case.

4.  Plaintiff's Witness List for the Cleveland Jackson preliminary injunction hearing (ECF No. 2256). This is a filing by Plaintiffs and therefore does not constitute any waiver/forfeiture by Defendants.

5.  ECF No. 1974 Defendants' Witness list for the Henness preliminary injunction hearing which identifies DRC Employee No. 1 as a person who "will testify briefly as to his education and training as a pharmacist and his role as responsible

23

pharmacist for SOCF. He will testify regarding ODRC procedures for procurement, licensing, handling, transfer, transportation, delivery, storage and maintenance of drugs used in executions." This language is close to the language used in the Cleveland Jackson Witness List (ECF No. 2293) which Defendants argue only represents that DRC Employee No. 1 is a person competent to testify about procurement, not that he actually does it. On the other hand, the Secrecy Statute purports to protect information that could reasonably lead to the identification of protected persons, and this comes at least very close.

6.      ECF No. 2031-10 which was produced by Defendants in discovery and shows DRC Employee No. 1 as the person ordering various supplies for use in executions.

7.      Exchanges by the parties relating to DRC Employee No. 1's expected testimony in the Henness hearing (ECF Nos. 2053, 2019, 2095). These references do not constitute an admission of Defendants' of DRC Employee No. 1's role in procurement of execution drugs. Once again, they speak to his competence to testify on that subject, not to his personal involvement. They are, however, at least very close to the information described at ¶ 5 above.

8.      ECF No. 2031-6. This document merely shows DRC Employee No, 1's taking an inventory of execution drugs, not involvement with procurement of them.

9.      ECF No. 2031-23. Same as ¶ 8.

10.     ECF No. 2100. Merely shows DRC Employee No. 1's investigation of the possible availability of drugs for Henness's proposed alternative method of execution.

11.     ECF No. 2105. Same as ¶ 10.

12. ECF No. 1073-4. Transcript of Fed.R.Civ.P. 30(b)(6) deposition of Warden Erdos. Identifies DRC Employee No. 1 as one of the three people involved in obtaining execution drugs.

13. ECF No. 941. Transcript of preliminary injunction hearing January 2017 in which former Defendant Director Gary Mohr identified DRC Employee No. 1 as one of the persons involved in obtaining execution drugs. This was open court testimony to which no objection was lodged by Defendants.

In sum, even construing the language strongly in Defendants' favor, there are a number of places in the public record where DRC Employee No. 1 is specifically identified as a person involved in obtaining execution drugs for Ohio, to wit, the Henness preliminary injunction testimony (ECF No. 2117); the Phillips, Otte, and Tibbetts preliminary injunction testimony (ECF No. 941) and ECF Nos. 964-1, 1974, 2031-10, and 1073-4. Defendants' response to the voluntary disclosure objection was that none of the identifications of DRC Employee No. 1 link him with the function of procurement of execution drugs. These examples rebut that claim.

Defendants offer no authority for the proposition that confidentiality, once forfeited, can be reclaimed, especially if the forfeiture was by unobjected-to testimony in open court. Accordingly, Defendants' requests to seal court records in such a way as to keep confidential the identification of DRC Employee No. 1 are DENIED.

**Motion to Stay**

Defendants moved to stay the effectiveness of the original Decision (ECF No. 2583) and Plaintiffs opposed a stay (ECF No. 2587). Because this Substituted Decision replaces the earlier Decision, the Magistrate Judge treats the Motion to Stay as directed to this order.

Magistrate Judge decisions on non-dispositive pretrial matters are effective when entered unless stayed. S. D. Ohio Civ. R. 72.3. Defendants have an undoubted right to review of this order by Judge Sargus. Making the present Substituted Decision effective before Judge Sargus has an opportunity to review it, however, would deny Defendants review by an Article III judge because the matter sought to be sealed would then be open to the public pending that review. Accordingly, the effectiveness of this order is STAYED pending ruling by Judge Sargus on any objections or the expiration of the time to object, which occurs first.[13] The Magistrate Judge expresses no view on whether a losing party on review by Judge Sargus will be able to appeal immediately to the Sixth Circuit or whether any order by Judge Sargus should be stayed pending such an appeal.

November 6, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[13] This is consistent with the Magistrate Judge's practice of delaying the transfer orders on second or successive habeas corpus petitions pending District Judge review.