# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| IN RE:  OHIO EXECUTION PROTOCOL LITIGATION | : | Case No. 2:11-cv-1-19.016 |
| | : | |
| | | District Judge Edmund A. Sargus, Jr. |
| | : | Magistrate Judge Michael R. Merz |
| This document relates to Plaintiff Lamont Hunter. | : | |

# REPORT AND RECOMMENDATIONS: DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED EXCEPT AS PREVIOUSLY RECOMMENDED

This consolidated § 1983 method of execution case is before the Court on the Defendants' Motion to Dismiss (ECF No. 2922) the Second Amended Individual Supplemental Complaint of Plaintiff Lamont Hunter. ("ISC" ECF No. 2830).  Plaintiff filed a memorandum *contra* (ECF No. 3058), Defendants replied (ECF No. 3110), and the Court heard oral argument on August 20, 2020 (Minute Entry, ECF No. 3170; Hrg. Tr., ECF No. 3259).

On September 10, 2020, the Magistrate Judge filed a Report and Recommendations recommending dismissal of the claims made in the ISC which parallel those pleaded in the Fourth Amended Omnibus Complaint ("4AOC") which have already been dismissed ("Report 1," ECF No. 3211).  For the reasons set forth below, Defendants' Motion should be DENIED to the extent it challenges all other claims made in the ISC.

1

## I.  Background

### A.  *Henness II* and Defendants' Motion

As part of this ongoing consolidated litigation, this Court denied the Motion for Preliminary Injunction of Plaintiff Warren K. Henness.  In so doing, this Court concluded that Henness:

> [I]s likely to prevail at trial on the first prong of the *Glossip* test: executing him by Ohio's current three-drug protocol will certainly or very likely cause him severe pain and needless suffering because the dose of midazolam intended to be used will not render him sufficiently unconscious as to prevent him from suffering the severe pain caused by injection of the paralytic drug or potassium chloride or the severe pain and needless suffering caused by pulmonary edema from the midazolam itself. However, he has not satisfied the second prong of *Glossip* because has not proved that the alternative methods he proposes are available, feasible, and can be readily implemented.

*In re:  Ohio Execution Protocol Litig. (Henness)*, 2019 U.S. Dist. LEXIS 8200, at *251 (S.D. Ohio Jan. 14, 2019) (Merz, Mag. J.) ("*Henness I*"), citing *Glossip v. Gross*, 576 U.S. 863 (2015).[1]

On appeal, the United States Court for the Sixth Circuit affirmed the denial of preliminary injunctive relief.  *Henness v. DeWine*, 946 F.3d 287 (6th Cir. 2019) ("*Henness II*"), *cert. denied*, ___ S.Ct. ____, 208 L.Ed.2d 146 (2020) (copy at ECF No. 3355).  The appellate court left undisturbed this Court's factual findings that the 500 mg dose of midazolam in Defendants' execution protocol would do nothing to render Henness insensate or otherwise attenuate the pain caused by the second and third drugs in the protocol and would likely cause inmates to suffer acute pulmonary edema, which would cause their lungs to fill with fluid and induce chest pain, chest tightness, and pain and terror akin to suffocation and drowning.  *See, e.g.*, *Henness I*, 2019 U.S.

---

[1] As Plaintiff Henness and Defendants unanimously consented to plenary Magistrate Judge jurisdiction as to Henness's consolidated case, the undersigned's denial was an order, rather than a report and recommendations (Order Referring Case, ECF No. 1805).

Dist. LEXIS 8200 at *105-06, 251. However, the panel overruled this Court's conclusion that

such pain is sufficient to meet prong one of *Glossip*:

> We disagree. *Glossip*'s first prong, to begin, presents a high bar. Because the U.S. Constitution does not guarantee "a painless death," prisoners must show more than a risk of pain. To be constitutionally cognizable, the pain has to be "severe." How severe? *Bucklew* tells us that earlier modes of execution offer "instructive" examples, both of what qualifies as too severe ("[b]reaking on the wheel, flaying alive, rending asunder with horses") and what does not (hanging). Take death by hanging. "Many and perhaps most hangings were evidently painful for the condemned person," *Bucklew* observed, "because they caused death slowly," namely through suffocation over several minutes. Despite that risk of pain, despite indeed the near certainty of that pain, hangings have been considered constitutional for as long as the United States have been united. All of this puts Henness's claims about risks of pain in context. Yes, he points to the risks of chest tightness and chest pain. But that pales in comparison to the pain associated with hanging. And yes, he points to the risks of sensations of drowning and suffocation. But that looks a lot like the risks of pain associated with hanging, and indeed may present fewer risks in the typical lethal-injection case.

*Henness II*, 946 F.3d at 290, quoting *Bucklew v. Precythe*, ___ U.S. ____, 139 S.Ct. 1112, 1124

(2019); citing *Bucklew*, 139 S.Ct. at 1130, 1133 n.4; *Glossip*, 576 U.S. at 877-78.

Further, the panel continued:

> [I]t is immaterial whether the inmate will experience *some* pain—as noted, the question is whether the level of pain the inmate subjectively experiences is constitutionally excessive. *See Bucklew*, 139 S. Ct. at 1124. And the fact that midazolam may not prevent an inmate from experiencing pain is irrelevant to whether the pain the inmate might experience is unconstitutional. Without evidence showing that a person deeply sedated by a 500 milligram dose of midazolam is still "sure or very likely" to experience an unconstitutionally high level of pain, Henness has not met his burden on this prong, and the district court clearly erred in concluding otherwise.

*Id.*, citing *Bucklew*, 139 S.Ct. at 1124; *Fears v. Morgan*, 860 F.3d 881, 884-86 (6th Cir. 2017) (*en*

*banc*). Finally, the Sixth Circuit affirmed this Court's conclusion with respect to the second prong

of *Glossip*—that Henness had failed to demonstrate that one or more of his proposed alternatives

would substantially lessen the risk of severe pain and was feasible and readily available. *Id.* at

291, quoting *Bucklew*, 139 S.Ct. at 1129; *Glossip*, 576 U.S. at 877; *Fears*, 860 F.3d at 890.

However, that affirmance was only in the alternative:

> Henness's failure to satisfy *Glossip*'s first prong necessarily means
> that he cannot demonstrate a likelihood of success on the second
> prong. In other words, because Henness has not shown that Ohio's
> existing method of execution causes severe pain (discussed above),
> it is impossible for him to show the existence of an alternative
> method of execution that would "significantly reduce [the]
> substantial risk of severe pain" caused by the existing method.
>
> But even if we were to agree with Henness that Ohio's method of
> execution is very likely to cause either of the types of severe pain
> identified by Henness and the district court, we would still find that
> Henness has failed to carry his burden under *Glossip*'s second
> prong. This is because Henness's proposed alternative method—
> death by secobarbital—is not a viable alternative.

*Id.*, quoting *Bucklew*, 139 S.Ct. at 1129; citing *Bucklew*, 139 S.Ct. at 1128-30; *Fears*, 860 F.3d at

890.

On January 31, 2020, Hunter filed his ISC (ECF No. 2830). On February 27, 2020,

Defendants moved to dismiss the ISC *in toto*. Their Motion and Reply (ECF Nos. 2922, 3110)

focus on Eighth Amendment "*Baze/Glossip*" [2] claims regarding the current three-drug protocol.

Nonetheless, Defendants argue that, in light of *Henness II* and other jurisprudence from this

consolidated litigation and other method of execution cases, none of the claims in the ISC is viable,

and, consequently, that the entire ISC should be dismissed (Hunter Motion, ECF No. 2922, PageID

153190 n.1).

### B.  Memorandum *Contra* and *King v. Parker*

> In his Memorandum in Opposition, Hunter notes the narrowness of
> Defendants' argument, despite their request for dismissal of the ISC

---

[2] Referring to *Baze v. Rees,* 553 U.S. 35 (2008), and *Glossip,* 576 U.S. 863.

"in its entirety." Because a defendant moving for dismissal under Fed.R.Civ.P. 12(b)(6) bears the burden of persuasion, the defendant must at least present some argument in favor of the motion (Hunter MIO, ECF No. 3058, PageID 155046, quoting *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). Defendants should be "confined to the grounds raised in their motion and [supporting memorandum]." *Id.* at PageID 155047 (brackets in original), quoting *Osborne v. Pickaway Cty. Ohio*, No. 2:19-cv-3628, 2020 U.S. Dist. LEXIS 46254, at *22 n.4 (S.D. Ohio Mar. 17, 2020) (Sargus, J.). Perfunctory arguments, such as those made only in Defendants' footnote 1, are forfeited. *Id.*, citing *In re Anheuser-Busch Beer Labeling Mktg.*, 644 F. App'x 515, 529 (6th Cir. 2016), citing *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 487 (6th Cir. 2005); *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1002 (6th Cir. 1994)).

In their Reply Memorandum, Defendants assert that their Motion is adequate under Fed.R.Civ.P. 7 to ground dismissal of the ISC in its entirety (ECF No. 3110, PageID 155636-37, citing *Reynolds v. Dayton*, 533 F. Supp. 136, 143 (S.D. Ohio 1982) (Rice, J.); *Bumpus v. Uniroyal Tire Co., Division of Uniroyal, Inc.,* 392 F. Supp. 1405, 1406 (E.D .Pa. 1975)).

(Report 1, ECF No. 3211, PageID 156427).

Further, Hunter argues that Defendants have mischaracterized recent Supreme Court and Sixth Circuit jurisprudence with respect to what constitutes "constitutionally acceptable" levels of pain (Hunter MIO, ECF No. 3058, PageID 155048-49 n.1, quoting Hunter Motion, ECF No. 2922, PageID 153193, 153194). Hunter claims that, contrary to Defendants' argument, the constitutionality of a three-drug protocol has never been expressly upheld. *Id.* at PageID 155049-50, citing *Glossip*, 576 U.S. 863; *Fears*, 860 F.3d at 886; *King v. Parker*, No. 3:18-cv-1234, ___ F. Supp. 3d ____, 2020 U.S. Dist. LEXIS 148269 at *2, 6 (M.D. Tenn. Apr. 29, 2020). Hunter relies heavily on *King*, in which the State of Tennessee Defendants moved for judgment on the pleadings under Fed.R.Civ.P. 12(c) after *Henness II* was decided. *Id.* at PageID 155050, citing *King*, 2020 U.S. Dist. LEXIS 148269 at *4-5. The court in *King* noted that no court had interpreted *Glossip* as foreclosing as a matter of law challenges to lethal injection protocols—and indeed, that

argument had been rejected by multiple appellate courts. *King*, 2020 U.S. Dist. LEXIS 148269 at *6-8, quoting *Grayson v. Warden, Comm'r Ala. Dep't of Corr.*, 869 F.3d 1204, 1216 (11th Cir. 2017); *Fears*, 860 F.3d at 886, 890; citing *Campbell v. Kasich*, 881 F.3d 447, 449, 451 (6th Cir. 2018); *Grayson*, 869 F.3d at 1215-17.

Henness II did nothing to change that analysis, *King* concluded. 2020 U.S. Dist. LEXIS 148269 at *9-10. The *King* court noted that "the Sixth Circuit could have avoided the issue of *Glossip's* first prong entirely and affirmed simply on Henness's failure to meet his burden on the second prong. But it nevertheless opined that the district court had erred in two ways when it found Henness had satisfied the first prong." *Id*. at *9, citing *Henness II*, 946 F.3d at 289-91. First, *Henness II* found that the undersigned erred in not concluding that the pain resulting from pulmonary edema caused by the 500 mg dose of midazolam was "insufficient as a matter of law to support a claim under *Glossip*. Thus, it would be legally impossible for anyone alleging only sensations of drowning or suffocating to establish an Eighth Amendment violation in connection with a method of execution." *Id*. at *9-10, citing *Henness II*, 946 F.3d at 290. *Second*:

> Without evidence showing that a person deeply sedated by a 500 milligram dose of midazolam is "sure or very likely" to experience an unconstitutionally high level of pain [from the second and third drugs], Henness has not met his burden on this prong, and the district court *clearly erred* in concluding otherwise.

*Id*. at *9 (emphasis added and brackets in original), quoting *Henness II*, 946 F.3d at 290. But this holding, *King* surmised, "is not the same as holding that it would be legally impossible for him, or any other plaintiff, to do so. That possibility, therefore, remains open to Plaintiff." *Id*. at *10, citing *Henness II*, 946 F.3d at 290-91.

Rejecting the Defendants' argument that King "is bound by the outcome in *Henness* [*II*] because he alleged in his amended complaint that his evidence would be materially similar to the evidence offered in that case[,]" the trial court noted that, while the Sixth Circuit has expressed

6

fatigue over repeatedly addressing the issue of whether and to what extent midazolam can shield inmates from the pain of the second and third drugs, the question "has never been answered as a matter of law." *King*, 2020 U.S. Dist. LEXIS 148269 at *12, citing *Campbell*, 881 F.3d at 452. The Tennessee court further concluded that King's allegations, taken as true, could plausibly satisfy the first prong of *Glossip*. *Id*. at *10-11. Specifically, King's allegations that midazolam's lack of analgesic properties meant that he would not be shielded from the pain and suffering from the second and third drugs and the consequent cardiac arrest—which are themselves so severe as to be "constitutionally unacceptable"—were sufficient to allow his claims to proceed to discovery. "Whether his evidence will prove the truth of that allegation remains to be seen, but his allegations are sufficient to entitle him to try." *Id*. at *12.

## C. Oral Argument

At oral argument, Defendants argued that decisions rendered over the sixteen years of litigation over Ohio's lethal injection protocol[3], when taken together, have foreclosed as implausible any Eighth Amendment challenge to the protocol (Hrg. Tr., ECF No. 3259, PageID 156886-87). They claimed that twenty-two of the causes of action in Plaintiffs' ISCs[4] were Eighth Amendment claims, and thus, were foreclosed by *Henness II*; that the gravamen of those claims was presented by an individual plaintiff in a motion for preliminary injunction, rather than in a merits trial, is immaterial. *Id*. at PageID 156903-05. Defendants noted that *King* is an unpublished,

---

[3] Both in the instant case and its predecessor, *Cooey v. Kasich*, 2:04-cv-1156.

[4] The gravamen of the claims in the majority of Plaintiffs' ISCs (ECF Nos. 2732, 2734-58, 2760-64, 2766-71, 2773-83, 2786-93, 2796-2808, 2811-12, 2815-17, 2821-30) are largely identical. Defendants treated the ISCs as largely identical during oral argument, and Allen Bohnert and Adam Rusnak, attorneys of record for several of the Plaintiffs, argued on behalf of all Plaintiffs during oral argument (Hrg. Tr., ECF No. 3259, PageID 156938-39).

out-of-state decision and that Plaintiffs have had eleven years to research and develop claims with respect to a three-drug protocol. Yet, unlike the particularized allegation set forth by the Plaintiff in *Bucklew*, Plaintiffs merely offer "a laundry list of conclusory allegations[.]" *Id*. at PageID 156905-06, citing 139 S.Ct. 1112. They claimed that if this Court concluded that the myriad health concerns presented by individual Plaintiffs, including Hunter, added up to plausible claims for relief, then "not only will you have to go past 12(b)(6) but you also ultimately end up with 79 trials[.] . . . The litigation would . . . never end." *Id*. at PageID 156907. Defendants argued, both as a matter of common sense and to avoid the absurd outcome described above, that if a claim was dismissed in a previous iteration of this litigation, said claim should be dismissed in this iteration. *Id*. at PageID 156934-35. Defendants stated that seventeen claims in the ISCs met that classification, but did not identify them at oral argument or anywhere else. *Id*. at PageID 156935. Defendants further stated that six claims raised in the ISC were subsequently withdrawn, but again, did not identify those claims at oral argument or anywhere else. *Id*.

Plaintiffs argued that the only issue properly presented in Defendants' Motion and Reply was whether *Henness II* forecloses any Eighth Amendment "*Baze/Glossip*" challenge to the protocol. They claimed that only six of the forty-seven causes of action—Nos. 20 through 23, "potentially" 27, and 33—fit within that category, and noted that *King*, the case most directly on point, had already rejected that argument at the Rule 12 stage (Hrg. Tr., ECF No. 3259, PageID 156909-10, 156928). Arguing that *Henness II*'s adjudication of Eighth Amendment claims forecloses all claims, without more, is not enough to satisfy Fed.R.Civ.P. 7, "which requires that a motion be particular and state the particular bases for a motion." *Id*. at PageID 156910-11, 156915-16. Plaintiffs claimed that arguments made by Defendants as to non-*Baze/Glossip* claims have been forfeited for the purposes of the instant Motions; raising them at oral argument is not

8

enough for them to be fairly as grounds for dismissal.  *Id*. at PageID 156911-13.

This limited scope was Defendants' choice, Plaintiffs argued:

> [I]f the State wanted to seek summary judgment, then certainly they could have done that. They chose not to. They chose to seek dismissal under 12(b)(6) and so without additional evidence being brought into the picture, Your Honor, or even the chance to bring additional evidence into the picture it would be wholly inappropriate in this situation for Your Honor to go ahead and just sort of unilaterally or *sua sponte* convert these into summary judgment motions without giving the Plaintiffs any opportunity to address that.

(Hrg. Tr., ECF No. 3259, PageID 156919-20).  Plaintiffs argued that while the Sixth Circuit found that the pain from pulmonary edema was not itself constitutionally prohibited, that "is not the same as saying that the pain and suffering inflicted by pulmonary edema from the Midazolam (*sic*) does not matter."  *Id*. at PageID 156922, 156923, citing *Campbell*, 881 F.3d 447; *Fears*, 860 F.3d 881. They also claimed that there was no reasonable argument that the pain from the second and third drugs was "constitutionally insufficient," as it has been the law since *Baze* that the pain from a paralytic and potassium chloride *is* "constitutionally problematic.  *Id* at PageID 156925.  Further, Plaintiffs argued, the *King* court's interpretation of *Henness II*—that Henness's failure to present sufficient evidence to meet prong one of *Glossip* was *not* the same as Henness' being *legally unable* to present sufficient facts to meet that burden—was correct.  *Id*. at PageID 156926-27.  The facts alleged in the ISCs, far from being a "laundry list," established nexus between their individual characteristics (*e.g.*, paradoxical reaction, hyperalgesia) and the unconstitutional pain and suffering resulting from the protocol drugs.  *Id*. at PageID 156928-29.

### D.  Law of the Case Report and Recommendations

On September 10, 2020, the undersigned issued a Report and Recommendations

recommending that, under the law of the case doctrine, the following causes of action should be

dismissed from the ISC as duplicative because they were already dismissed from the 4AOC[5]:

- Second Cause of Action: Fourteenth Amendment Due Process violations;
- Fourth Cause of Action: Fourteenth Amendment Equal Protection violations through burdening of fundamental rights—Sub-claims:
  - **A.2:** Deviations from Ohio's execution statute;
  - **A.3:** Deviations from Ohio Constitution;
  - **A.4:** Failure to follow federal and Ohio laws related to imported drugs, unapproved drugs, misbranded drugs, adulterated drugs, controlled substances, and compounded drugs, including compounding sterile injectable controlled substances to be used as execution drugs;
  - **A.5:** Deviations from Ohio's definition-of-death law;
  - **A.6:** Deviations from Ohio and federal law prohibiting non-consensual human experimentation;
  - **A.7:** Use of an Execution Protocol and policies by which Defendants deny necessary medical and resuscitative care and permit a lingering death;
  - **A.8:** Use of midazolam and the unavoidable variation inherent in midazolam's efficacy on individual people;
  - **A.9:** Use of compounded execution drugs and the unavoidable variation inherent in compounded drugs;
- Fourth Cause of Action—Fourteenth Amendment Equal Protection violations through "Class of One" disparate treatment
  - **B.2:** Unequal application of Ohio's execution statute to Plaintiff as a class of one;
  - **B.3:** Unequal application to Plaintiff, as a class of one, of federal and Ohio state laws related to imported drugs, unapproved drugs, misbranded drugs, adulterated drugs, controlled substances, or compounded drugs, including compounding sterile injectable controlled substances to be used as execution drugs;
  - **B.4:** Unequal application of Ohio's definition-of-death law to Plaintiff as a class of one;
  - **B.5:** Unequal application of federal and Ohio state laws prohibiting non-consenting human experimentation to Plaintiff as a class of one;
  - **B.6:** Disparate denial of necessary medical care and permitting a lingering death;

---

[5] Report 1 also recommended dismissal of the Third Cause of Action and sub-claims A.1, A.10, B.1, and B.8 of the Fourth Cause of Action, although they were not duplicative (ECF No. 3211, PageID 156432).

- o **B.7:** Use of midazolam and the unavoidable variation inherent in midazolam's efficacy on individuals, which treats Plaintiff unequally as a class of one;
- Fifth Cause of Action—Violations of Fundamental Rights Arising Under The Principles Of Liberty and/or Natural Law Which Are Protected By The Ninth Amendment;
- Sixth Cause of Action—First Amendment Free Speech Clause Violations;
- Seventh Cause of Action—Fourteenth Amendment Due Process Violation for Failure to Identify Drug Source Defendants;
- Eighth Cause of Action—Fourteenth Amendment Due Process Clause Violations For Experimenting On Non-Consenting Prisoners ;
- Ninth Cause of Action—Fourteenth Amendment Privileges or Immunities Clause Violations For Experimenting on Non-Consenting Prisoners;
- Tenth Cause of Action—*Ex Post Facto* Violation;
- Twelfth Cause of Action— Eighth Amendment violation by Deliberately Indifferent and/or Reckless Denial of Resuscitative Health Care after the Execution is to be Completed;
- Fourteenth Cause of Action—Fourteenth Amendment Due Process Violation through Arbitrary and Capricious Government Action that Shocks the Conscience;
- Thirtieth Cause of Action—Fourteenth Amendment Due Process Violation for Failure to Comply with Federal Investigational New Drug Application Regulations with Respect to the Method and Choice of Drug to be Used in Plaintiff's Execution; and
- Thirty-First Cause of Action—Equal Protection Violations Related To Defendants' Failures To Comply With The [Investigational New Drug] Application Laws.

(Report 1, ECF No. 3211, PageID 156429-31, citing 2018 U.S. Dist. LEXIS 209769 at *46-49, 52-53; 4AOC, ECF No. 1252, PageID 45412-14, 45416-17). Report 1 made no recommendation with respect to any of the other causes of action in the ISC.


## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a

claim for relief." *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch,* 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh,* 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions "must be supported by well-pleaded factual allegations ... [that] plausibly give rise to an entitlement of relief." *Id.* at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

## III.    Analysis

### A.    Scope of Defendants' Motion

Defendants do not specifically address, in the Motion or Reply, any of the forty-seven claims in Hunter's ISC. Even though in oral argument they placed forty-five claims into three

categories (*Baze/Glossip*, previously adjudicated, and previously withdrawn), they did not identify by number a single claim that fit into any of those categories. As discussed above, their Motion made only passing reference to dismissing all claims from the ISC (ECF No. 2922, PageID 131950 n.1), arguing that *Henness II* forecloses any general challenge to the protocol and that Hunter's "as-applied" allegations regarding his individual characteristics presenting an unacceptable risk of severe pain and problems with administration of the protocol itself were merely conclusory, and do not state a cognizable claim in any event. *Id.* at PageID 131954-56 (citations omitted). No reference to an individual claim or paragraph number was included. Nor did they discuss any of the individual characteristics actually set forth in Hunter's ISC (ECF No. 2830, PageID 152094-95, ¶¶ 1909-13).

In their Reply, Defendants again recited caselaw in which challenges to three-drug protocols have been rejected by the Sixth Circuit and elsewhere (ECF No. 3110, PageID 155638), and argued that Hunter did "not explain or articulate the manner in which his 'individual characteristics' are sure or very likely to elevate, beyond a constitutionally tolerable level, the pain otherwise incident to his execution." *Id.* at PageID 155639.

In his memorandum *contra* and at oral argument, Hunter argued that Defendants' Motion did not "state with particularity the grounds for seeking the order;" Fed.R.Civ.P. 7(b)(1)(B), other than arguing that: (1) *Henness II* forecloses any general challenge to the protocol; and (2) Hunter has failed to allege how his individual characteristics could cause unconstitutional pain (Hunter MIO, ECF No. 3058, PageID 155046-47; Hrg. Tr., ECF No. 3259, PageID 156910-11). Hunter is correct. Unlike a Rule 12(b)(1) motion to dismiss, which obliges a court independently to recognize flaws in subject matter jurisdiction, a Rule 12(b)(6) motion is to be confined to the four corners of the complaint, motion, and briefing except in narrow circumstances, none of which is

applicable here. *Berry v. United States Dep't of Labor*, 832 F.3d 627, 637 (6th Cir. 2016) ("[W]e may look outside the four corners of the complaint and consider materials attached to a motion to dismiss if they are referred to in the complaint and central to the claim."). The above two arguments are the only arguments Defendants raised as to why any or all of Hunter's claims in the ISC should be dismissed.

Defendants argue that Hunter reads Rule 7 too strictly, and that there is nothing in the Rule suggesting "that Defendants are required to move *seriatim* to dismiss each of the forty-seven causes of action set forth in the 164-page Individual Supplemental Complaint." (Reply, ECF No. 3110, PageID 155636). While true, that proposition does not decide the issue. As the movants, it is Defendants' responsibility to place Hunter and the Court on notice of the reasons they think all claims should be dismissed. Defendants have repeatedly failed to expand their reasoning beyond the above two arguments. Accordingly, those arguments are the only ones the undersigned will consider in evaluating Defendants' Motion.[6]

This consolidated litigation is unique in the Magistrate Judge's experience. Despite being pending for sixteen years, none of the constituent cases has ever reached trial or a summary judgment adjudication. During his twelve-year management of the case, District Judge Gregory L. Frost several times expressed frustration at the pace and sequencing of the litigation, but apparently never had second thoughts about the consolidation. The consolidation has indeed brought many benefits. It has kept the capital method-of-execution matters together on one docket, which promotes continuity and consistency of judicial attention. It prevents the last-minute filings

---

[6] Defendants also argued that the Court could *sua sponte* convert Defendants' Motion into one for summary judgment (Hrg. Tr., ECF No. 3259, PageID 156907-08). While such conversion is undoubtedly within the Court's power, Plaintiffs are correct that making such a conversion without giving them the opportunity to respond and present evidence would be inappropriate. *Id.* at PageID 156919-20; *see also* Fed.R.Civ.P. 12(d) (If a Rule 12(b)(6) or 12(c) motion is converted to one for summary judgment, then "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

in capital cases so common across the country which have exasperated both the circuit and Supreme Courts. It has produced a common schedule for these cases which enhances predictability and deliberate consideration of each case.

Although there has never been a trial, the Court has expended many days in hearing evidence, but always pertinent to a preliminary injunction motion. In hearing that evidence, this Court has compiled one of the most extensive factual records in the country on the effects of very large doses of midazolam on the human body. But in making findings based on that evidence and other evidence, this Court has always emphasized that they are not conclusive findings of fact.

> The findings of fact and conclusions of law required by Fed.R.Civ.P.52 are embodied in this Decision and Order. They are not binding at trial on the merits or at future preliminary injunction proceedings in this consolidated case. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2014), citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

*Henness II,* 2019 U.S. Dist. LEXIS 8200 at *19. This language duplicates what Judge Frost did in his preliminary injunction motions in the case, *see. e.g.*, *Cooey v. Strickland*, No. 2:04-cv-1156, 2009 U.S. Dist. LEXIS 122025, at *7 n.1 (S.D. Ohio Dec. 7, 2009) (Frost, J.), and what the undersigned has done with each such motion since he assumed management of the case in October 2016. *See, e.g.*, *In re Ohio Execution Protocol Litig. (Phillips, Tibbets, and Otte)*, 235 F. Supp. 3d 892, 894 (S.D. Ohio 2017) (Merz, Mag. J.), *vacated and remanded on other grounds in Fears*, 860 F.3d 881.[7] Neither party has challenged this language in this Court or on appeal, nor has any party asked the Court to advance the trial on the merits under Fed.R.Civ.P. 65(a)2). Nor indeed has any part ever moved for summary judgment.

---

[7] As in *Henness I*, Plaintiffs Gary Otte, Ron Phillips, and Raymond Tibbets and Defendants unanimously consented to plenary Magistrate Judge jurisdiction (Order of Reference, ECF No. 734).

In federal litigation, conclusive findings of fact are made only at trial or on summary judgment. Appellate review of findings of fact on preliminary injunction does not make those findings final. Defendants essentially seek summary judgment on the basis of appellate review in *Henness II.* That is not a permissible way to proceed, even in this unusual litigation.

**B.** ***Henness II* does not mandate granting Defendants' Motion, and Hunter has made sufficient factual allegations to proceed**

As *King* discussed, *Henness II* made two key holdings with respect to the first prong in *Glossip.* Neither holding helps Defendants. True, the *Henness II* panel held unambiguously that the pain from midazolam-induced pulmonary edema was not constitutionally prohibited, 946 F.3d at 290, and had Defendants moved to dismiss the ISC to the extent Hunter was alleging that the pain from pulmonary edema constituted an Eighth Amendment violation, such a motion might have been viable. But Defendants did not do that, and their argument that *all* claims are foreclosed, even at the motion to dismiss stage, is too broad a reading of *Henness II.*

As to the other holding, that Henness had failed to demonstrate that the three-drug combination was likely to cause him substantial pain and suffering, *Henness*, 946 F.3d at 290-91, the opinion in *King*, while certainly not binding, is instructive. That court correctly notes that *Henness II did not* hold that there was no possibility that the pain from the three-drug protocol could form the basis of an Eighth Amendment violation; *Henness II* simply held that no plaintiff had yet made such a showing. *King*, 2020 U.S. Dist. LEXIS 148269 at *7-8, 10, citing *Henness II*, 948 F.3d at 290-91; *Campbell*, 881 F.3d at 449, 451; *Fears*, 860 F.3d at 886, 890, 892.

The issue, then, is whether Hunter's allegations add up to potentially plausible claims for relief. In addition to his general allegations as to the pain resulting from the three-drug protocol (Hunter ISC, ECF No. 2830, PageID 152090-93, ¶¶ 1893-1908)—pain that has been accepted as

true repeatedly, *see, e.g.*, *Baze*, 553 U.S. at 49-50 (paralytic and potassium chloride); *Henness II*, 946 F.3d at 290-91 (midazolam)—Hunter claims that his age, sex[8], and history of drug and alcohol abuse will likely cause him to have a "paradoxical reaction" to the drugs—*i.e.*, the overdose of midazolam, far from sedating or anesthetizing him, will send him into a state of hyperalgesia, making the pain from the second and third drugs *worse* than if he received no midazolam at all (Hunter ISC, ECF No. 2830, PageID 152095, ¶ 1916).

Accepting these allegations as true, as the Court must at this stage, the undersigned concludes that they support plausible claims that Hunter is sure or likely to suffer severe and needless pain and suffering, in violation of the Eighth Amendment. Moreover, Hunter has alleged sufficient nexus between those individual characteristics and how the execution drugs will allegedly exacerbate and cause him severe pain, such that any as-applied challenge is similarly plausible. "Whether his evidence will prove the truth of that allegation remains to be seen, but his allegations are sufficient to entitle him to try." *King*, 2020 U.S. Dist. LEXIS 148269 at *12.

After oral argument, Defendants submitted as additional authority (ECF No. 3177-1) the case of *In re Fed. Bureau of Prisons Execution Protocol Cases* (*Roane v. Barr*), No. 19-mc-145 (TSC), 2020 U.S. Dist. LEXIS 153354 (D.D.C. Aug. 15, 2020). Therein, Judge Tanya S. Chutkan, who had previously enjoined the federal government's execution of Daniel Lewis Lee and Dustin Lee Honkin, noted that the Supreme Court had vacated that injunction and allowed the executions to proceed. *Id*. at *10, citing *Barr v. Lee*, 140 S.Ct. 2590 (2020) (*per curiam*). The Supreme Court vacated the injunction despite accepting the district "court's conclusion that pulmonary edema and excruciating pain was very likely to occur" from the administration of pentobarbital. *Id*. at *11. From that decision, Judge Chutkan concluded that "[s]o long as pentobarbital is widely used, *Lee*

---

[8] Hunter's allegations relating to his "gender" (*see, e.g.*, Hunter ISC, ECF No. 2830, PageID 152095, ¶ 1916) are presumably references to his biological sex, not his gender identity.

suggests that no amount of new evidence will suffice to prove that the pain pentobarbital causes reaches unconstitutional levels." *Id*. at *13.

Defendants argue that *Lee* and *Roane* "powerfully validate Defendants' core contention that the plausibility of Plaintiffs' Eighth Amendment claims must be assessed in light of the controlling precedents of the Supreme Court and the Sixth Circuit which *do* address the three-drug method used by Ohio." (Reply, ECF No. 3260, PageID 156969 (emphasis in original)). Defendants' argument is correct but irrelevant in light of the overbreadth of their Motion. As Plaintiffs correctly argue, executions via pentobarbital versus a three-drug protocol are quite different for the purposes of the ISC:

> As this Court is aware, pentobarbital is a barbiturate, while midazolam is a sedative. A sufficient dose of the barbiturate pentobarbital will eventually cause anesthesia and insensation to pain. Plaintiffs have alleged that because midazolam is a *sedative* and not a barbiturate anesthetic, they will experience the full brunt of the pain inflicted by Defendants' protocol—the horrific pain and terror of pulmonary edema and the excruciating pain from the paralytic and potassium chloride.

(Resp. to Supp. Auth., ECF No. 3256-1, PageID 156848-49 (emphasis in original)).

Had Defendants specifically moved to dismiss ISC claims as they relate to pulmonary edema or any challenges to the protocol's permitting the use of pentobarbital[9], *Lee* and *Roane* would be persuasive even at the motion to dismiss stage. But Defendants did not do that; they moved to dismiss *in toto*. Consequently, *Lee* and *Roane* do not provide any basis to dismiss the ISC.

---

[9] Ohio's current protocol, 01-COM-11, authorizes a one-drug pentobarbital execution,  That alternative method has not been used since 01-COM-11 was adopted in its present from in October 2016 (ECF No. 965-13, PageID 34253).

**IV.** **Conclusion**

For the foregoing reasons, Defendants' Motion should be denied as to the causes of action not addressed in Report 1, to wit Hunter's First, Eleventh, Thirteenth, Fifteenth through Twenty-Ninth, and Thirty-Second through Forty-Seventh Causes of Action in the ISC.

November 21, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations no later than December 29, 2020. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. Any response to said objections must be served and filed no later than January 19, 2021.#