## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

IN RE: OHIO EXECUTION   :   Case No. 2:11-cv-1016
PROTOCOL LITIGATION

          :

            District Judge Edmund A. Sargus, Jr.
          :   Magistrate Judge Michael R. Merz

This document relates to Plaintiff
  John David Stumpf.       :

---

## REPORT AND RECOMMENDATIONS: DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED TO THE EXTENT IT CHALLENGES CLAIMS ALREADY DISMISSED FROM THE FOURTH AMENDED OMNIBUS COMPLAINT

---

This consolidated § 1983 method of execution case is before the Court on the Defendants' Motion to Dismiss (ECF No. 2705) the Third Amended Individual Supplemental Complaint of Plaintiff John David Stumpf ("ISC" ECF No. 2693). After the filing of a memorandum *contra* (ECF No. 2727) and a reply in support (ECF No. 2836), this Court heard oral argument on August 20, 2020 (Minute Entry, ECF No. 3170; Hrg. Tr., ECF No. 3259). For the reasons set forth below, Defendants' Motion should be GRANTED to the extent it challenges claims already dismissed from the Fourth Amended Omnibus Complaint ("4AOC") and DENIED in all other respects.

## I.  Background

### A.  Motion and Briefing

Defendants' briefing focuses largely on Plaintiff's claims concerning the three-drug

1

method of execution and his allegations that this protocol produces constitutionally-prohibited pain, claims that Defendants argue have been rejected repeatedly and, thus, failed as matters of law (Stumpf Motion, ECF No. 2705, PageID 133819-21, citing *Glossip v. Gross*, 576 U.S. 863 (2015); . *Henness v. DeWine*, 946 F.3d 287 (6th Cir. 2019) ("*Henness II*"), *cert. denied*, ___ S.Ct. ____, 208 L.Ed.2d 146 (2020) (copy at ECF No. 3355); *Campbell v. Kasich*, 881 F.3d 447 (6th Cir. 2018); *Fears v. Morgan*, 860 F.3d 811 (6th Cir. 2017) (*en banc*)). Defendants also claimed that "Stumpf does *not* allege specifically that *any* of his 'individual characteristics,' which include such things as his age, high cholesterol, obesity, past alcohol abuse, etc. are physical or medical conditions that in and of themselves will cause severe pain which Defendants' procedures would not remedy." This lack of plausible connection, Defendants argued, is fatal to Stumpf's "as-applied" claims. *Id*. at PageID 133821, citing *Bucklew v. Precythe*, 131 S.Ct. 1112, 1129 (2019); *Glossip*, 576 U.S. 863; *Baze v. Rees*, 553 U.S. 35 (2008). Moreover, Defendants argue that Stumpf's Twelfth, Twenty-Third, Twenty-Eighth, Twenty-Ninth, Thirty-Fifth through Forty-Second, and Forty-Fifth Causes of Action are not individual claims at all, as they "on their face do not allege anything 'unique' or 'individual' to Stumpf." *Id*. at PageID 133823, citing Stumpf ISC, ECF No. 2693, PageID 133108-13, 133134-37, 133162-72, 131180-133235, ¶¶ 2273-88, 2366-76, 2468-95, 2529-2652, 2655-2722. Thus, Plaintiffs are left with nothing more than the facial challenges to a protocol that has been upheld repeatedly. *Id*. at PageID 133824 (citations omitted). Finally, they argue that Stumpf's proposed alternative methods—the second prong of *Glossip*—are immaterial in light of his inability to meet the first prong. *Id*. at PageID 133824-25, citing Stumpf ISC, ECF No. 2694, PageID 133032-133106, ¶¶ 1927-2261.

  In his memorandum in opposition, Stumpf argues that *Henness II*[1] cannot serve as the basis

---

[1] Stumpf refers to this case throughout his memorandum as "*Henness III*", in a seeming acknowledgment that the decision at 946 F.2d 287 was a superseding opinion of *In re Ohio Execution Protocol Litig.*, 937 F.3d 759 (6th Cir.

to foreclose his claims as matters of law.  *First*, he notes that *Henness II* was decided in overruling a motion for preliminary injunction, and thus, is not an adjudication on the merits (Stumpf MIO, ECF No. 2727, PageID 135134, quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Hubbard Feeds, Inc. v. Animal Feed Supp., Inc.*, 182 F.3d 598, 603 (8th Cir. 1999); *Thomas v. Blocker*, No. 4:18-cv-812, 2019 U.S. Dist. LEXIS 45662, *3 n.14 (M.D. Pa. Mar. 20, 2019).) *Second*, Stumpf claims that contrary to Defendants' argument, no case, has ever foreclose challenges to the protocol as matters of law, and *Henness II* is no different.  *Id*. at PageID 135135-36, citing *Glossip*, 576 U.S. 863; *Campbell*, 881 F.3d 447; *Fears*, 860 F.3d at 886.  Rather, the relevant question was the "level of certainty" that unconstitutional pain and suffering would occur—not the degree of pain—and these cases simply held that the movants had failed to present sufficient evidence that the three-drug protocol was sure or likely to cause unconstitutional pain and suffering.  *Id*. at PageID 135115-16, quoting *Campbell*, 881 F.3d at 449, 450-51; citing *Glossip*, 576 U.S. at 881; *Fears*, 860 F.3d at 890, 892.

Stumpf claims that the Defendants took the *Henness II* decision out of context, extrapolating from Warren K. Henness's *factual failure* to meet prong of *Glossip* a *legal impossibility* that a plaintiff could ever do so.  This extrapolation was improper, as *Henness II* stated that it reached "the same conclusion" as *Fears*, and in *Fears*, the Sixth Circuit rejected Defendants' entreaties to bar categorically any challenge to the protocol.  (Stumpf MIO, ECF No. 2727, PageID 135118, citing *Henness II*, 946 F.3d at 290-91; *Campbell*, 881 F.3d at 449–51; *Fears*, 860 F.3d at 886, 890, 892.)  Similarly, Stumpf claims that the Sixth Circuit's rejection of Henness's claim that midazolam-induced pulmonary edema constituted unconstitutional pain was "speculation on the court's part, illustrating that an inmate like Stumpf must present more robust

---

2019); the Court began referring to this earlier decision as *Henness II* shortly after it was filed.  However, because that decision has been superseded, the case at 946 F.3d 287 is properly termed *Henness II*.

evidence to more clearly demonstrate the degree of risk and degree of pain and suffering inflicted by acute, non-cardiogenic pulmonary edema." *Id*. at PageID 135121. Stumpf argues that if *Henness II* did hold that pain from pulmonary edema could never be unconstitutional, then that holding was contrary to Supreme Court and Sixth Circuit precedent. *Id*. at n.3, citing *Baze*, 553 U.S. 35; *Campbell*, 881 F.3d 447; *Fears*, 860 F.3d 881.

*Third*, Stumpf claims that Defendants' argument regarding his individual characteristics not themselves causing severe pain is immaterial (Stumpf MIO, ECF No. 2727, PageID 135122, citing Stumpf Motion, ECF No. 2705, PageID 133822.) The relevant issue is whether those individual characteristics are likely to cause him severe pain *when the protocol is administered*, and Stumpf argues that he has alleged sufficient nexus between his characteristic and the likelihood that they will cause severe pain. *Id*. at PageID 135122-24.

As to Defendants' argument that "many of Stumpf's claims asserted in his individual supplemental complaint 'do not allege anything "unique" or "individual" to Stumpf[,]'" (Stumpf MIO, ECF No. 2727, PageID 135124, quoting Stumpf Motion, ECF No. 2705, PageID 133823), as immaterial and "simply incorrect. Indeed, that position fundamentally misunderstands the entire point of the ISC's [*sic*] in this case, which was to allow claims that required individual considerations to be pleaded in addition to those claims alleged in the omnibus complaint." *Id*.[2] *Finally*, Stumpf argues that the pleaded alternatives were not intended to be causes of action themselves, but as a necessary component of section 1983 claims in light of *Glossip*, and to enable the Court to conduct the required comparative analysis that, he claims, the Sixth Circuit failed to conduct in *Henness II*. *Id*. at PageID 135125-26, citing *Bucklew*, 139 S.Ct. at 1129-33; *Henness*

---

[2] Defendants do not address this issue in their reply. For the reasons set forth below, the Court agrees with Plaintiffs that the Twenty-Third, Twenty-Eighth, Twenty-Ninth, Thirty-Fifth through Forty-Second, and Forty-Fifth Causes of Action were sufficiently pleaded to avoid dismissal.

4

*II*, 946 F.3d at 291; Stumpf Motion, ECF No. 2705, PageID 133824.

Stumpf claims that, for four reasons, his ISC is plausible under that comparative analysis, as his proposed alternatives, accepted as true, are feasible, readily implemented, and substantially reduce the risk of severe pain (Stumpf MIO, ECF No. 2727, PageID 135126, citing *Bucklew*, 139 S.Ct. at 1136 (Kavanaugh, J., concurring); *Arthur v. Dunn*, 137 S.Ct. 725, 733-734 (2017) (Sotomayor, J., dissenting from denial of certiorari); Stumpf Motion for Prelim. Inj., ECF No. 2695, PageID133511-27; 133572-133614). *First*, "absent a sufficiently protective initiatory drug" to protect the inmate, the paralytic and potassium chloride will produce severe pain. *Id*. at PageID 135126-27; *Baze*, 553 U.S. at 53; *Fears*, 860 F.3d at 885-86; *Campbell*, 881 F.3d at 450-51. *Second*, midazolam not only causes severe pain and terror akin to suffocation and waterboarding, it also does not and cannot attenuate the pain of the second and third drugs. *Id*. at PageID 133527. *Third*, Stumpf's alternatives are available, feasible, and readily implemented. *Fourth*, Defendants have offered no legitimate reason not to use the alternative methods. *Id*. at PageID 133528, citing *Baze*, 553 U.S. at 50. Stumpf argues that because his claims are legally well-founded, and Defendants do not argue that his factual allegations are insufficient, Defendants' Motion should be denied. *Id*. at PageID 133529, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In their Reply, Defendants claim that Stumpf's argument that *Henness II*, *Campbell*, and *Fears* were "just preliminary injunctions" is disingenuous, given that *Henness II* held categorically that the pain associated with midazolam-induced pulmonary edema did not violate the Eighth Amendment, and that *Fears* was an *en banc* decision vacating a panel decision, an action undertaken "'only in the most compelling circumstances,' and simple disagreement with the panel's decision normally doesn't fit the bill." (Stumpf Reply, ECF No. 2836, PageID 152263-64, quoting *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Kethledge, J., concurring); citing

*Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*, 863 F.2d 891, 925, (D.C. Cir. 1988) (Ginsburg, J., concurring in the denial of rehearing *en banc*). Moreover, the Sixth Circuit's categorical bar to Henness's claim in *Henness II* was "consistent with the approach taken by Chief Justice [John G.] Roberts[, Jr.] in *Baze*[,]" *id.* at PageID 152264, in which the Court rejected challenges to Kentucky's three-drug protocol and Chief Justice Roberts, in his plurality opinion, stated that "[a] State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard." *Id.* at PageID 152264-65, quoting *Baze*, 553 U.S. at 61; citing *Cooey (Biros) v. Strickland*, 589 F.3d 210, 220 (6th Cir. 2009). As Ohio's three-drug protocol is substantially similar to that of Kentucky, "the court need not and should not entertain a succession of like challenges based on the possibility of new or better evidence." *Id.* at PageID 152265.

Stumpf's as-applied claims fare no better, Defendants argue, because they are nothing more than "legal conclusions piled onto the heap of legal conclusions set out in his complaint." (Stumpf Reply, ECF No. 2836, PageID 152266.) Merely pleading the elements of a claim is insufficient in light of *Iqbal*. *Id.*, quoting 556 U.S. 678-79. As Stumpf cannot meet the first prong of *Glossip*, his proposed alternatives—the second prong of *Glossip*—are immaterial, and the ISC should be dismissed, *Id.* at PageID 152266-67.

### B.     Oral Argument

At oral argument, Defendants argued that decisions rendered over the sixteen years of litigation over Ohio's lethal injection protocol[3], when taken together, have foreclosed as implausible any Eighth Amendment challenge to the protocol (Hrg. Tr., ECF No. 3259, PageID

---

[3] Both in the instant case and its predecessor, *Cooey v. Kasich*, 2:04-cv-1156.

156886-87). They claimed that twenty-two of the causes of action in Plaintiffs' ISCs[4] were Eighth Amendment claims, and thus, were foreclosed by *Henness II*; that the gravamen of those claims was presented by an individual plaintiff in a motion for preliminary injunction, rather than in a merits trial, is immaterial. *Id*. at PageID 156903-05. Defendants noted that *King* is an unpublished, out-of-state decision and that Plaintiffs have had eleven years to research and develop claims with respect to a three-drug protocol. Yet, unlike the particularized allegation set forth by the Plaintiff in *Bucklew*, Plaintiffs merely offer "a laundry list of conclusory allegations[.]" *Id*. at PageID 156905-06, citing 139 S.Ct. 1112. They claimed that if this Court concluded that the myriad health concerns presented by individual Plaintiffs, including Stumpf, added up to plausible claims for relief, then "not only will you have to go past 12(b)(6) but you also ultimately end up with 79 trials[.] . . . The litigation would . . . never end." *Id*. at PageID 156907. Defendants argued, both as a matter of common sense and to avoid the absurd outcome described above, that if a claim was dismissed in a previous iteration of this litigation, said claim should be dismissed in this iteration. *Id*. at PageID 156934-35. Defendants stated that seventeen claims in the ISCs met that classification, but did not identify them at oral argument or anywhere else. *Id*. at PageID 156935. Defendants further stated that six claims raised in the ISC were subsequently withdrawn, but again, did not identify those claims at oral argument or anywhere else. *Id*.

Plaintiffs argued that the only issue properly presented in Defendants' Motion and Reply was whether *Henness II* forecloses any Eighth Amendment "*Baze/Glossip*" challenge to the protocol. They claimed that only six of the forty-seven causes of action—Nos. 20 through 23, "potentially" 27, and 33—fit within that category, and noted that *King*, the case most directly on

---

[4] The gravamen of the claims in the majority of Plaintiffs' ISCs (ECF Nos. 2732, 2734-58, 2760-64, 2766-71, 2773-83, 2786-93, 2796-2808, 2811-12, 2815-17, 2821-30) are largely identical. Defendants treated the ISCs as largely identical during oral argument, and Allen Bohnert and Adam Rusnak, attorneys of record for several of the Plaintiffs, argued on behalf of all Plaintiffs during oral argument (Hrg. Tr., ECF No. 3259, PageID 156938-39).

point, had already rejected that argument at the Rule 12 stage (Hrg. Tr., ECF No. 3259, PageID 156909-10, 156928). Arguing that *Henness II*'s adjudication of Eighth Amendment claims forecloses all claims, without more, is not enough to satisfy Fed.R.Civ.P. 7, "which requires that a motion be particular and state the particular bases for a motion." *Id*. at PageID 156910-11, 156915-16. Plaintiffs claimed that arguments made by Defendants as to non-*Baze/Glossip* claims have been forfeited for the purposes of the instant Motions; raising them at oral argument is not enough for them to be fairly as grounds for dismissal. *Id*. at PageID 156911-13.

This limited scope was Defendants' choice, Plaintiffs argued:

> [I]f the State wanted to seek summary judgment, then certainly they could have done that. They chose not to. They chose to seek dismissal under 12(b)(6) and so without additional evidence being brought into the picture, Your Honor, or even the chance to bring additional evidence into the picture it would be wholly inappropriate in this situation for Your Honor to go ahead and just sort of unilaterally or *sua sponte* convert these into summary judgment motions without giving the Plaintiffs any opportunity to address that.

(Hrg. Tr., ECF No. 3259, PageID 156919-20). Plaintiffs argued that while the Sixth Circuit found that the pain from pulmonary edema was not itself constitutionally prohibited, that "is not the same as saying that the pain and suffering inflicted by pulmonary edema from the Midazolam (*sic*) does not matter." *Id*. at PageID 156922, 156923, citing *Campbell*, 881 F.3d 447; *Fears*, 860 F.3d 881. They also claimed that there was no reasonable argument that the pain from the second and third drugs was "constitutionally insufficient," as it has been the law since *Baze* that the pain from a paralytic and potassium chloride *is* "constitutionally problematic. *Id* at PageID 156925. Further, Plaintiffs argued, the *King* court's interpretation of *Henness II*—that Henness's failure to present sufficient evidence to meet prong one of *Glossip* was *not* the same as Henness' being *legally unable* to present sufficient facts to meet that burden—was correct. *Id*. at PageID 156926-27. The facts alleged in the ISCs, far from being a "laundry list," established nexus between their individual

characteristics (*e.g.*, paradoxical reaction, hyperalgesia) and the unconstitutional pain and suffering resulting from the protocol drugs. *Id*. at PageID 156928-29.

### C. *King v. Parker*

After the briefing was completed, the first district court decision to opine on a three-drug protocol post-*Henness II* was handed down, in which the State of Tennessee Defendants moved for judgment on the pleadings under Fed.R.Civ.P. 12(c). *King v. Parker*, No. 3:18-cv-1234, ___ F. Supp. 3d ____, 2020 U.S. Dist. LEXIS 148269 at *2, 4-5, 6 (M.D. Tenn. Apr. 29, 2020). The court in *King* noted that no court had interpreted *Glossip* as foreclosing as a matter of law challenges to lethal injection protocols—and indeed, that argument had been rejected by multiple appellate courts. *King*, 2020 U.S. Dist. LEXIS 148269 at *6-8, quoting *Grayson v. Warden, Comm'r Ala. Dep't of Corr.*, 869 F.3d 1204, 1216 (11th Cir. 2017); *Fears*, 860 F.3d at 886, 890; citing *Campbell v. Kasich*, 881 F.3d 447, 449, 451 (6th Cir. 2018); *Grayson*, 869 F.3d at 1215-17.

*Henness II* did nothing to change that analysis, *King* concluded. 2020 U.S. Dist. LEXIS 148269 at *9-10. The *King* court noted that "the Sixth Circuit could have avoided the issue of *Glossip's* first prong entirely and affirmed simply on Henness's failure to meet his burden on the second prong. But it nevertheless opined that the district court had erred in two ways when it found Henness had satisfied the first prong." *Id*. at *9, citing *Henness II*, 946 F.3d at 289-91. First, *Henness II* found that the undersigned erred in not concluding that the pain resulting from pulmonary edema caused by the 500 mg dose of midazolam was "insufficient as a matter of law to support a claim under *Glossip*. Thus, it would be legally impossible for anyone alleging only sensations of drowning or suffocating to establish an Eighth Amendment violation in connection with a method of execution." *Id*. at *9-10, citing *Henness II*, 946 F.3d at 290. *Second*:

9

> Without evidence showing that a person deeply sedated by a 500 milligram dose of midazolam is "sure or very likely" to experience an unconstitutionally high level of pain [from the second and third drugs], Henness has not met his burden on this prong, and the district court *clearly erred* in concluding otherwise.

*Id*. at *9 (emphasis added and brackets in original), quoting *Henness II*, 946 F.3d at 290. But this holding, *King* concluded, "is not the same as holding that it would be legally impossible for him, or any other plaintiff, to do so. That possibility, therefore, remains open to Plaintiff." *Id*. at *10, citing *Henness II*, 946 F.3d at 290-91.

Rejecting the Defendants' argument that King "is bound by the outcome in *Henness* [*II*] because he alleged in his amended complaint that his evidence would be materially similar to the evidence offered in that case[,]" the trial court noted that, while the Sixth Circuit has expressed fatigue over repeatedly addressing the issue of whether and to what extent midazolam can shield inmates from the pain of the second and third drugs, the question "has never been answered as a matter of law." *King*, 2020 U.S. Dist. LEXIS 148269 at *12, citing *Campbell*, 881 F.3d at 452. The Tennessee court further concluded that King's allegations, taken as true, could plausibly satisfy the first prong of *Glossip*. *Id*. at *10-11. Specifically, King's allegations that midazolam's lack of analgesic properties meant that he would not be shielded from the pain and suffering from the second and third drugs and the consequent cardiac arrest—which are themselves so severe as to be "constitutionally unacceptable"—were sufficient to allow his claims to proceed to discovery. "Whether his evidence will prove the truth of that allegation remains to be seen, but his allegations are sufficient to entitle him to try." *Id*. at *12.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted."  The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief."  *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch,* 946 F.2d 451, 454-55 (6th Cir. 1991).  The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993).  In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh,* 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.*  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  Legal conclusions "must be supported by well-pleaded factual allegations ... [that] plausibly give rise to an entitlement of relief."  *Id.* at 679.  "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

### III.    Analysis

#### A.    Claims Duplicative of those Raised in the 4AOC

This consolidated action under 42 U.S.C. § 1983 and its predecessors in this Court have been pending since shortly after the Supreme Court authorized bringing method-of-execution claims in 42 U.S.C. § 1983 actions in *Nelson v. Campbell,* 541 U.S. 637 (2004).  On September 22, 2017, the Plaintiffs filed the 4AOC, pleading forty-seven causes of action (ECF No. 1252).  Defendants filed a Motion to Dismiss the 4AOC *in toto* on November 20, 2017 (ECF No. 1379), and during the pendency of that motion, its scope was narrowed such that only the Second through Tenth, Fourteenth, Thirtieth, and Thirty-First Causes of Action were under consideration (Report and Recommendations, ECF No. 1429, PageID 55221-22, 55265-70 (explaining that various causes of action were not subject to the Motion or were to be repleaded elsewhere)).  Then-Chief Judge Sargus subsequently adopted the undersigned's Reports and Recommendations[5], granting in part and denying in part Defendants' Motion (ECF No. 2104, reported at *In re Ohio Execution Protocol Litig.*, 2018 U.S. Dist. LEXIS 209769 (S.D. Ohio Dec. 12, 2018)).  In doing so, he dismissed the following claims:

- Second Cause of Action:  Fourteenth Amendment Due Process violations;
- Fourth Cause of Action:  Fourteenth Amendment Equal Protection violations through burdening of fundamental rights—Sub-claims:
  - **A.2:**  Deviations from Ohio's execution statute;
  - **A.3:**  Deviations from Ohio Constitution;
  - **A.4:**  Failure to follow federal and Ohio laws related to imported drugs, unapproved drugs, misbranded drugs, adulterated drugs, controlled substances, and compounded drugs, including compounding sterile injectable controlled substances to be used as execution drugs;
  - **A.5:**  Deviations from Ohio's definition-of-death law;

---

[5] Those Reports and Recommendations did not pertain to the claims of Plaintiffs Alva Campbell, Jr., Raymond Tibbets, or Robert Van Hook, for whom there was unanimous consent to plenary Magistrate Judge jurisdiction (Report and Recommendations, ECF No. 1429, PageID 55213 (citations omitted)).  During the pendency of Defendants' Motion, Campbell died in prison, Van Hook was executed, and then-Governor John R. Kasich, Jr., commuted Tibbets's sentence to life without parole.

- o **A.6:** Deviations from Ohio and federal law prohibiting non-consensual human experimentation;
- o **A.7:** Use of an Execution Protocol and policies by which Defendants deny necessary medical and resuscitative care and permit a lingering death;
- o **A.8:** Use of midazolam and the unavoidable variation inherent in midazolam's efficacy on individual people;
- o **A.9:** Use of compounded execution drugs and the unavoidable variation inherent in compounded drugs;
- Fourth Cause of Action—Fourteenth Amendment Equal Protection violations through "Class of One" disparate treatment
  - o **B.2:** Unequal application of Ohio's execution statute to Plaintiff as a class of one;
  - o **B.3:** Unequal application to Plaintiff, as a class of one, of federal and Ohio state laws related to imported drugs, unapproved drugs, misbranded drugs, adulterated drugs, controlled substances, or compounded drugs, including compounding sterile injectable controlled substances to be used as execution drugs;
  - o **B.4:** Unequal application of Ohio's definition-of-death law to Plaintiff as a class of one;
  - o **B.5:** Unequal application of federal and Ohio state laws prohibiting non-consenting human experimentation to Plaintiff as a class of one;
  - o **B.6:** Disparate denial of necessary medical care and permitting a lingering death;
  - o **B.7:** Use of midazolam and the unavoidable variation inherent in midazolam's efficacy on individuals, which treats Plaintiff unequally as a class of one;
- Fifth Cause of Action—Violations of Fundamental Rights Arising Under The Principles Of Liberty and/or Natural Law Which Are Protected By The Ninth Amendment;
- Sixth Cause of Action—First Amendment Free Speech Clause Violations;
- Seventh Cause of Action—Fourteenth Amendment Due Process Violation for Failure to Identify Drug Source Defendants;
- Eighth Cause of Action—Fourteenth Amendment Due Process Clause Violations For Experimenting On Non-Consenting Prisoners ;
- Ninth Cause of Action—Fourteenth Amendment Privileges or Immunities Clause Violations For Experimenting on Non-Consenting Prisoners;
- Tenth Cause of Action—*Ex Post Facto* Violation;

- Fourteenth Cause of Action—Fourteenth Amendment Due Process Violation through Arbitrary and Capricious Government Action that Shocks the Conscience;
- Thirtieth Cause of Action—Fourteenth Amendment Due Process Violation for Failure to Comply with Federal Investigational New Drug Application Regulations with Respect to the Method and Choice of Drug to be Used in Plaintiff's Execution; and
- Thirty-First Cause of Action—Equal Protection Violations Related To Defendants' Failures To Comply With The [Investigational New Drug] Application Laws.

2018 U.S. Dist. LEXIS 209769 at *46-49, 52-53; 4AOC, ECF No. 1252, PageID 45412-14, 45416-17.

Despite this dismissal, the ISC contains claims which are covered by the dismissal order. Stumpf's Twelfth Cause of Action —Eighth Amendment violation by Deliberately Indifferent and/or Reckless Denial of Resuscitative Health Care after the Execution is to be Completed (Stumpf ISC, ECF No. 2694, PageID 133334-39)—is virtually identical to sub-claim A.7 in the Fourth Cause of Action in the 4AOC. Without further explanation, Stumpf's ISC also incorporates by reference from the 4AOC the Second, Fourth through Tenth, Fourteenth, Thirtieth, and Thirty-First Causes of Action (among others). *Id*. at PageID 133333-34, 133342, 133398.

When Judge Sargus entered the dismissal, the Magistrate Judge offered the parties an opportunity to seek circuit review and thus obtain some finality on these claims:

> Although the Order determines with finality which claims made in the Fourth Amended Omnibus Complaint can proceed, it is not appealable without entry of judgment with an express determination by the Court that there is no just reason for delay. Fed. R. Civ. P. 54(b). Although this consolidated case and its predecessors have been pending for fourteen years, there has never been a trial and no trial date is presently set. Thus there is no likelihood of a final judgment on all claims in the near future.
>
> Given that status of the case, the Magistrate Judge urges the parties to consider moving for a partial judgment under Fed. R. Civ. P. 54

14

> so that a decision of the Sixth Circuit on the many issues raised in Defendants' Motion to Dismiss can be obtained.

(Scheduling Order, ECF No. 2109, PageID 103627-28). None of the parties accepted this invitation, so there has as yet been no circuit review of this Court's analysis of the listed claims in the 4AOC. Stumpf (and the other Plaintiffs) therefore cannot be faulted for repeating these claims in his ISC to preserve them for eventual appeal.

Nevertheless, the viability of the listed claims under Fed.R.Civ.P. 12(b)(6), applying what the Magistrate Judge continues to believe is the correct standard for Rule 12(b)(6) motions, has already been decided by this Court. Failure of the Defendants to specify these claims in the Motion to Dismiss does not deprive this Court of authority to stand on its prior decision and imposes no unfairness on Stumpf, who had adequate opportunity to litigate the viability of these claims under Fed.R.Civ.P. 12(b)(6) in the 2017-18 proceedings. The Magistrate Judge elects to decide the Motion to Dismiss as to those claims on the basis of the law of the case.

Under the law of the case doctrine, findings made at one point in litigation become the law of the case for subsequent stages of that same litigation. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994), citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993). "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *citing* 1B J. MOORE & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶0.404 (2nd ed. 1980); *Patterson v. Haskins*, 470 F.3d 645, 660-61 (6th Cir. 2006); *United States v. City of Detroit*, 401 F.3d 448, 452 (6th Cir. 2005), citing *Moored*, 38 F.3d at 1421. "If it is important for courts to treat like matters alike in different cases, it is indispensable that they 'treat the same litigants in the same case the same way throughout the same dispute.'" *United*

*States v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016) (Sutton, J.), *quoting* BRYAN A. GARNER, ET AL. THE LAW OF JUDICIAL PRECEDENT 441 (2016).

In deciding the motion for preliminary injunction of Warren Henness, the Court analyzed how law of the case doctrine should apply here. It noted that the Sixth Circuit had approved a slightly different standard for law of the case in consolidated cases and stated the approach it would follow:

> Based on these discussions in the circuit court, this Court concludes it is not *bound* by the law of the case doctrine to decide issues in Warren Henness's § 1983 case as it decided the same issues in the Phillips, Otte, Tibbetts, and Campbell cases. On the other hand, applying general principles of precedent, Henness's § 1983 case is very similar to those prior cases, about as similar as any five such cases could be: all are being decided by the same Court, all are parties to the same or very similar omnibus complaints, all attack the same method of execution and seek to enjoin the same state officials, all have been litigated by the same institutional litigators within two years of one another, subject to review by the same appellate court. Very few distinguishing facts among the Plaintiffs are relevant to their § 1983 cases.
>
> Although the Court is not bound by law of the case doctrine to decide issues the same way, it would destroy the economy of consolidation as well as raise serious equal justice considerations to decide the issues differently. Like cases should be decided alike, and Henness's case is very like those of former Plaintiffs Phillips, Otte, Tibbetts, and Campbell. Therefore, prior rulings in this consolidated case, including those made by Judge Frost, will be treated as very persuasive precedent, but not binding under the law of the case doctrine. Prior rulings in the case, just like precedent from other courts, will be analyzed and applied based on the context in which they were made and therefore applied with appropriate nuance, and not like proof-texts.

*In re Ohio Execution Protocol Litig. (Henness)* ("*Henness I*"), 2019 U.S. Dist. LEXIS 8200, at * 33-34 (S.D. Ohio, Jan. 14, 2019) (Merz, Mag. J) (emphasis in original), citing *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338-39 (6th Cir. 2016), *rev'd on other grounds at In re: Ohio*

*Execution Protocol Litig.*, 937 F.3d 759, *substituted decision at Henness II*, 946 F.3d 287, *cert. denied*, Case No. 20-3243 ___ S.Ct. ____, 2020 WL 5880254 (Mem.) (Aug. 3, 2020). This portion of the *Henness I* decision received no criticism from the United States Court of Appeals for the Sixth Circuit in *Henness II*, and will continue to be followed here. Although application of the law of the case doctrine in prisoner cases has been much disputed, the Sixth Circuit has just now applied it to deny a Certificate of Appealability ("COA") on a claim in a capital case because it had previously denied a COA on the same claim. *Cunningham v. Shoop*, Nos. 11-3005, 20-3429, 2020 U.S. App. LEXIS 26947, at *4 (6th Cir. Aug. 24, 2020), citing *Dillingham v. Jenkins*, No. 17-3813, 2017 WL 5438882, at *1 (6th Cir. Nov. 8, 2017).

The relationship between claims made by Stumpf in the 4AOC which have been dismissed under Fed.R.Civ.P. 12(b)(6) and parallel claims made in the ISC is even closer than the parallels between Warren Henness's claims and those made by former Plaintiffs Ron Phillips, Gary Otte, Tibbetts, and Campbell. On the basis of the prior decision, it is respectfully recommended that Stumpf's Second, Fourth (with the exception of Sub-Claims A.1, A.10, B.1, and B.8) through Tenth, Twelfth, Fourteenth, Thirtieth and Thirty-First Causes of Action be dismissed.

### B.     Novel Claims in the ISC

The Magistrate Judge must emphasize that this consolidated litigation is unique in his experience. Despite being pending for sixteen years, none of the constituent cases has ever reached trial or a summary judgment adjudication. During his twelve-year management of the case, District Judge Gregory L. Frost several times expressed frustration at the pace and sequencing of the litigation, but apparently never had second thoughts about the consolidation. The consolidation has indeed brought many benefits. It has kept the capital method-of-execution matters together on

17

one docket, which promotes continuity and consistency of judicial attention.  It has prevented the

last-minute filings in capital cases so common across the country which have exasperated both the

circuit and Supreme Courts.  It has produced a common schedule for these cases which enhances

predictability and deliberate consideration of each case.

Although there has never been a trial, the Court has expended many days in hearing

evidence, but always pertinent to a preliminary injunction motion.  In hearing that evidence, this

Court has compiled one of the most extensive factual records in the country on the effects of very

large doses of midazolam on the human body.  But in making findings based on that evidence and

other evidence, this Court has always emphasized that they are not conclusive findings of fact.

> The findings of fact and conclusions of law required by Fed.R.Civ.P.52 are embodied in this Decision and Order. They are not binding at trial on the merits or at future preliminary injunction proceedings in this consolidated case. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2014), citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).

*Henness II,* 2019 U.S. Dist. LEXIS 8200 at *19.  This language duplicates what Judge Frost did

in his preliminary injunction decisions in the consolidated cases, *see. e.g.*, *Cooey v. Strickland*, No.

2:04-cv-1156, 2009 U.S. Dist. LEXIS 122025, at *7 n.1 (S.D. Ohio Dec. 7, 2009) (Frost, J.),  and

what the undersigned has done with each such motion since he assumed management of the case

in October 2016.  *See, e.g.*, *In re Ohio Execution Protocol Litig. (Phillips, Tibbets, and Otte*), 235

F. Supp. 3d 892, 894 (S.D. Ohio 2017) (Merz, Mag. J.), *vacated and remanded on other grounds

in Fears*, 860 F.3d 881.[6]  Neither party has challenged this language in this Court or on appeal, nor

has any party asked the Court to advance the trial on the merits under Fed.R.Civ.P. 65(a)(2).  Nor

---

[6] As in *Henness I*, Plaintiffs Gary Otte, Ron Phillips, and Raymond Tibbets and Defendants unanimously consented to plenary Magistrate Judge jurisdiction (Order of Reference, ECF No. 734).

indeed has any party ever moved for summary judgment.

In federal litigation, conclusive findings of fact are made only in the trial court at trial or on summary judgment. Appellate affirmance of findings of fact on preliminary injunction does not make those findings final[7]. Defendants essentially seek summary judgment on the basis of appellate review in *Henness II*. That is not a permissible way to proceed, even in this unusual litigation.

As *King* discussed, *Henness II* made two key holdings with respect to the first prong in *Glossip*. Neither holding helps Defendants. True, the *Henness II* panel held unambiguously that the pain from midazolam-induced pulmonary edema was not constitutionally prohibited, 946 F.3d at 290, and had Defendants moved to dismiss the ISC to the extent Stumpf was alleging that the pain from pulmonary edema constituted an Eighth Amendment violation, such a motion might have been viable. But Defendants did not do that, and their argument that *all* claims are foreclosed, even at the motion to dismiss stage, is too broad a reading of *Henness II*.

As to the other holding, that Henness had failed to demonstrate that the three-drug combination was likely to cause him substantial pain and suffering, 946 F.3d at 290-91, the opinion in *King*, while certainly not binding, is instructive. That court correctly notes that *Henness II did not* hold that there was no possibility that the pain from the three-drug protocol could form the basis of an Eighth Amendment violation; *Henness II* simply held that no plaintiff had yet made such a showing. *King*, 2020 U.S. Dist. LEXIS 148269 at *7-8, 10, citing *Henness II*, 948 F.3d at 290-91; *Campbell*, 881 F.3d at 449, 451; *Fears*, 860 F.3d at 886, 890, 892.

The issue, then, is whether Stumpf's allegations add up to potentially plausible claims for relief. In addition to his general allegations as to the pain resulting from the three-drug protocol

---

[7] Of course in this consolidated case and in many other capital cases across the country, failure on preliminary injunction usually results in an execution, rendering the case moot as to that particular inmate.

(Stumpf ISC, ECF No. 2694, PageID 133250-53, ¶¶ 1893-1908)—pain that has been accepted as true repeatedly, *see, e.g.*, *Baze*, 553 U.S. at 49-50 (paralytic and potassium chloride); *Henness II*, 946 F.3d at 290-91 (midazolam)—Stumpf claims that his "peripheral vascular disease, chronic venous insufficiency, critical limb ischema, bilateral lower extremity edema and hypertension," obesity, age, sex, history of alcohol abuse and impulsive actions, and symptoms of obstructive sleep apnea (Stumpf ISC, ECF No. 2694, PageID 133254-55, ¶¶ 1909-15) will likely cause him to have a "paradoxical reaction" to the drugs—*i.e.*, the overdose of midazolam, far from sedating or anesthetizing him, will send him into a state of hyperalgesia, making the pain from the second and third drugs *worse* than if he received no midazolam at all. *Id*. at PageID 133255-56, ¶¶ 1917-18.

Accepting these allegations as true, as the Court must at this stage, the undersigned concludes that they support plausible claims that Stumpf is sure or likely to suffer severe and needless pain and suffering, in violation of the Eighth Amendment. Moreover, Stumpf has alleged a sufficient nexus between those individual characteristics and how the execution drugs will allegedly exacerbate and cause him severe pain, such that any as-applied challenge is similarly plausible. "Whether his evidence will prove the truth of that allegation remains to be seen, but his allegations are sufficient to entitle him to try." *King*, 2020 U.S. Dist. LEXIS 148269 at *12.

In their reply memorandum and at oral argument, Defendants expressly declined to opine whether *Henness II* articulated a new rule as to what pain resulting from an execution constitutes "cruel and unusual punishment" for Eighth Amendment purposes. As the movants do not argue that this Court should draw such a conclusion, and *Henness II* does not compel such a conclusion from the undersigned's reading, the Court will not reach Stumpf's argument that *Henness II* may have articulated a new rule and that such a rule contravenes a wide scope of Supreme Court precedent (Stumpf MIO, ECF No. 2727, PageID 135121 n.8). Defendants are correct that *Henness*

*II* unambiguously held that the evidence presented by Henness of nearly certain pain and suffering from midazolam-induced pulmonary edema was not constitutionally prohibited pain. In light of *Henness II*, the undersigned is dubious that any Eighth Amendment challenge to the pain of midazolam itself would succeed. Yet, as discussed above, Stumpf alleged significantly more than that, such that the *Henness II* does not foreclose his claims as matters of law at the motion to dismiss stage.

After oral argument, Defendants submitted as additional authority (ECF No. 3177-1) the case of *In re Fed. Bureau of Prisons Execution Protocol Cases* (*Roane v. Barr*), No. 19-mc-145 (TSC), 2020 U.S. Dist. LEXIS 153354 (D.D.C. Aug. 15, 2020). Therein, Judge Tanya S. Chutkan, who had previously enjoined the federal government's execution of Daniel Lewis Lee and Dustin Lee Honkin, noted that the Supreme Court had vacated that injunction and allowed the executions to proceed. *Id*. at *10, citing *Barr v. Lee*, 140 S.Ct. 2590 (2020) (*per curiam*). The Supreme Court vacated the injunction despite accepting the district "court's conclusion that pulmonary edema and excruciating pain was very likely to occur" from the administration of pentobarbital. *Id*. at *11. From that decision, Judge Chutkan concluded that "[s]o long as pentobarbital is widely used, *Lee* suggests that no amount of new evidence will suffice to prove that the pain pentobarbital causes reaches unconstitutional levels." *Id*. at *13.

Defendants argue that *Lee* and *Roane* "powerfully validate Defendants' core contention that the plausibility of Plaintiffs' Eighth Amendment claims must be assessed in light of the controlling precedents of the Supreme Court and the Sixth Circuit which *do* address the three-drug method used by Ohio." (Reply, ECF No. 3260, PageID 156969 (emphasis in original)). Defendants' argument is correct but irrelevant in light of the overbreadth of their Motion. As Plaintiffs correctly argue, executions via pentobarbital versus a three-drug protocol are quite

21

different for the purposes of the ISC:

> As this Court is aware, pentobarbital is a barbiturate, while
> midazolam is a sedative. A sufficient dose of the barbiturate
> pentobarbital will eventually cause anesthesia and insensation to
> pain. Plaintiffs have alleged that because midazolam is a *sedative*
> and not a barbiturate anesthetic, they will experience the full brunt
> of the pain inflicted by Defendants' protocol—the horrific pain and
> terror of pulmonary edema and the excruciating pain from the
> paralytic and potassium chloride.

(Resp. to Supp. Auth., ECF No. 3256-1, PageID 156848-49 (emphasis in original)).

Had Defendants specifically moved to dismiss ISC claims as they relate to pulmonary edema or any challenges to the protocol's permitting the use of pentobarbital[8], *Lee* and *Roane* would be persuasive even at the motion to dismiss stage. But Defendants did not do that; they moved to dismiss *in toto*. Consequently, *Lee* and *Roane* do not provide any basis to dismiss the ISC.

For the foregoing reasons, Defendants' Motion to Dismiss is granted as to the Second, Fourth (with the exception of Sub-Claims A.1, A.10, B.1, and B.8), Fifth through Tenth, Twelfth, Fourteenth, Thirtieth and Thirty-First Causes of Action, and denied as to all other causes of action.

November 21, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[8] Ohio's current protocol, 01-COM-11, authorizes a one-drug pentobarbital execution, That alternative method has not been used since 01-COM-11 was adopted in its present from in October 2016 (ECF No. 965-13, PageID 34253).

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations no later than December 29, 2020. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. Any response to said objections must be served and filed no later than January 19, 2021. #